## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

BANK OF AMERICA, N.A. Successor By
Merger to BAC HOME LOANS
SERVICING LP,  f/k/a COUNTRYWIDE
HOME LOANS SERVICING

CASE NO:  15-cv-81325

     Plaintiff,

vs.

GARY L. ZASKEY a/k/a Gary Lynn Zaskey;
LORI A. ZASKEY a/k/a Lori Ann Zaskey;
BRENDA LYNN ZASKEY; UNKNOWN SPOUSE
OF BRENDA LYNN ZASKEY; et al.

     Defendants.
_____/

GARY L. ZASKEY and LORI A. ZASKEY

     Counter-Plaintiffs

vs.

BANK OF AMERICA, N.A.,
GREEN TREE SERVICING, LLC,
HARBOR LAND TITLE, L.C.
and OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY

     Counter-Defendants
_____/

## SECOND AMENDED COUNTERCLAIM

Defendants / Counter-Plaintiffs, GARY L. ZASKEY and LORI A. ZASKEY, by and

through their undersigned attorney, hereby file this Second Amended Counterclaim against BANK

OF AMERICA, N.A., GREEN TREE SERVICING, LLC, HARBOR LAND TITLE, L.C., and

OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY, and state as follows:

## I.  JURISDICTION AND PARTIES

1.      The Counter-Plaintiffs have a pending motion to remand before this Court, in which the Counter-Plaintiffs contend that the Court is without jurisdiction over this matter. In light of the deadlines contained in the Court's scheduling order, the Counter-Plaintiffs have filed this proposed amended pleading, in the event the Court denies the Counter-Plaintiffs' motion to remand.

2.      Counter-Plaintiffs, Gary L. Zaskey and Lori A. Zaskey (collectively the "Zaskeys") were the fee simple owners of the property located at 5834 S. 37th Court, Greenacres, Florida (the "Property").

3.      The Zaskeys are debtors and/or alleged debtors as that term is defined by section 559.55(2), Florida Statutes. The Zaskeys are also "consumers" as that term is defined by 15 U.S.C. § 1692a(3).

4.       At all times material hereto, Bank of America and Green Tree's debt collection efforts were directed against a debt incurred for personal, family or household purposes.

5.      Counter-Defendant, BANK OF AMERICA, N.A (hereinafter "Bank of America"), is a duly licensed financial institution, licensed by the State of Florida, and conducting business within the State of Florida, including Palm Beach County.

6.      Counter-Defendant, GREEN TREE SERVICING, LLC (hereinafter "Green Tree"), is a Florida corporation, licensed by the State of Florida, and conducting business within the State of Florida, including Palm Beach County. Green Tree acted as the loan servicer for the Zaskeys' promissory note and mortgage with Bank of America during a portion of the events described herein.

7.      Counter-Defendant, HARBOR LAND TITLE, L.C. (hereinafter "Harbor Title"), is a Florida corporation, licensed by the State of Florida, and conducting business within the State of

Florida, including Palm Beach County. Harbor Title served as the closing/settlement agent for the Zaskeys' short sale of their Property.

8.     Counter-Defendant, OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY (hereinafter "Old Republic"), was and is a Florida licensed title insurance company, conducting business within the State of Florida, including Palm Beach County, Florida.

## II.     PROCEDURAL SUMMARY OF STATE COURT ACTION

9.     The Zaskeys' short sale closing occurred on or about April 26, 2012. Subsequently, the following occurred:

a.  Five months later, Bank of America filed a foreclosure action against the Zaskeys referencing the same property Bank of America had previously approved for a short sale and had closed.

b.  The Zaskeys retained undersigned counsel who attempted on numerous occasions to mitigate the issues concerning Bank of America's unwarranted foreclosure action. The Zaskeys'counsel engaged in several discussions and emails containing short sale closing documents with Bank of America's counsel, who refused to dismiss the foreclosure action.

c.  On November 21, 2013 the state trial court granted nunc pro tunc Zaskey's Motion for Leave to File Answer and Counterclaims filed on August 13, 2013.

d.  On June 15, 2015 this same court granted Zaskeys' Motion for Leave to File Amended Counterclaim and Third-Party Complaint.

e.  Subsequently, on July 21, 2015 Bank of America voluntarily dismissed its foreclosure action against the Zaskeys.

    f.   On August 12, 2015 the Zaskeys filed their Motion for Entitlement and Award of Attorneys' Fees and Costs, and on September 23, 2015 Bank of America filed its Notice of Removal to the United States District Court for the Southern District of Florida.

## III.    GENERAL ALLEGATIONS

10.    In June 2008, the Zaskeys purchased the underlying Property, at which time they obtained a mortgage through Bank of America. Attached as Composite Exhibit "A" is the foreclosure Complaint filed by Bank of America on September 26, 2012 containing, among other things, as attached exhibits the promissory Note and Mortgage associated with the Zaskeys' purchase of the Property.

11.    After experiencing financial difficulties and falling behind on their payments, the Zaskeys inquired with their mortgage provider, Bank of America, about options to avoid foreclosure. Ultimately, upon the advice of Bank of America, the Zaskeys agreed to enter into a short sale of their Property.

12.    Thereafter, Tony Pino, a Re/Max Platinum Realtor contacted the Zaskeys. Mr. Pino informed the Zaskeys that he represented Bank of America, and represented himself as an agent of Bank of America. Further, on behalf of Bank of America, Mr. Pino listed the property for sale, obtained an offer from a proposed buyer, secured the Zaskeys' signature on the Contract for Sale, submitted the short sale offer to Bank of America, secured approval of the short sale from Bank of America, and recruited the closing agent, Harbor Title to close on the transaction.

13.    At all times material to this action, and specifically during the time the Zaskeys were attempting to obtain a short sale of their Property, the Zaskeys followed the directions and

recommendations of Bank of America and its agents. The Zaskeys resided in the state of Wisconsin at the time of the short sale, and trusted and relied on the advice and recommendations of Bank of America and its agents to ensure that the short sale was completed correctly.

14.     After reviewing the Zaskeys' short sale proposal submitted by its assigned agent/realtor, Mr. Pino, Bank of America agreed to the sales price, consented to the short sale, and agreed to accept less than the balance amount owed on the promissory note in full satisfaction of the mortgage debt owed by the Zaskeys.  *See* Composite Exhibit "B."

15.     Throughout the short sale process, Bank of America, through its representatives and agents, directed the closing of the short-sale, and recommended the services of ReMax Platinum to assist the Zaskeys in closing on the short sale.

16.     On or about April 26, 2012, a short sale closing took place on the Zaskeys' Property, whereby the Property was sold to the third-party buyers, Bernando Moreno and Doralba Vargas. Under the terms of the short sale, Bank of America was to receive the proceeds, in the amount of $26,788.44, in full satisfaction of the note and mortgage it held on the subject Property. Attached as Composite Exhibit "C" is the HUD-1 Settlement Statement from this closing, which evidences that $26,788.44 was to be forwarded to Bank of America.

17.     Harbor Title conducted the April 26, 2012 closing, which served as the settlement and escrow agent for the transaction, and is identified as such on the HUD-1 Settlement Statement attached as Exhibit "C".

18.     On information and belief, Harbor Title sent the proceeds from the short sale to Bank of America, via wire transfer, on either April 26 or April 27, 2012.  For reasons currently unknown, such wire transfer was not finalized, and on information and belief, one or more of the Counter-Defendants were responsible for such failed wire transfer.

19.     On information and belief, on or about August 9, 2012, Harbor Title again sent Bank of America a wire transfer, consisting of the short-sale proceeds. Bank of America improperly rejected this second attempted wire transfer, and returned it to Harbor Title on or about August 16, 2012.

20.     Harbor Title sent an original wire transfer to Bank of America in April of 2012, which for reasons currently unknown Bank of America either rejected, or otherwise returned said wired funds to Harbor Title. In August 2012, Bank of America refused to accept a second attempted wire transfer of the short-sale proceeds, despite the Zaskeys proper performance all of their obligations under the short-sale agreement. Harbor Title repeatedly attempted to wire said funds from the short sale closing to Bank of America in full settlement of the Zaskeys' Mortgage and Note. At such time Bank of America should have taken the appropriate steps to properly credit this payment to the Zaskeys' account. Further Bank of America should have then closed and designated the Zaskeys' account as having been fully satisfied.

21.     On information and belief, after Bank of America wrongfully rejected the Zaskeys' wire transfer – the closing agent (Harbor Title) – contacted representatives at Green Tree and Old Republic, and attempted to transfer the Zaskeys' sale proceeds to Green Tree, in full satisfaction of the Zaskeys' debt and in accordance with the Zaskeys' short-sale agreement. Like Bank of America, and without any justification, Green Tree also refused to accept the funds from the short sale closing, and instead continued its debt collection efforts described herein.

22.     At no time did Bank of America ever contact the Zaskeys to discuss any issues or problems relating to the wire transfer of the sales proceeds from the Zaskeys' short-sale which was previously approved by Bank of America.

23.     On information and belief, Bank of America never communicated with its settlement agent, Harbor Title, or its assigned realtor, Mr. Pino of Re/Max Platinum, to inquire as to the status of the Zaskeys' short sales proceeds.

24.     In July 2012, three months after the short sale closing, Bank of America had not updated the Zaskeys' account, or credited the account for the finalized short sale. On July 26, 2012, the Zaskeys received a letter from Bank of America stating that their "Trial Period Plan" for a Loan Modification was pending. This was the first of many communications from Bank of America, in which they attempted to collect a debt from the Zaskeys that had already been approved by Bank of America, closed, and fully satisfied.

25.     Thereafter, Bank of America began a barrage of debt collection efforts directed to the Zaskeys, despite the fact that a) the company had approved a short sale of the Property, b) the sale and closing had already occurred, and c) the Zaskeys' debt had been fully satisfied. Bank of America did not have a process to ensure the successful completion of this short sale, or alternatively, did not successfully execute its documented process to follow through on the short sale.

26.     As described herein, Bank of America and Green Tree employed business practices resulting in the intentional harassment and abuse of the Zaskeys, and engaged in patterns of outrageous, abusive and harassing conduct by and through its agents and representatives, in an effort to collect the above referenced debt from the Zaskeys.

27.     For example, during the course of July through December of 2012, Bank of America, through its employees and authorized agents, continued to harass the Zaskeys about paying their mortgage and curing their "default" - despite the fact that Gary Zaskey had repeatedly explained to Bank of America representatives that the Property was sold via a bank-approved short

sale. Moreover, many of these debt collection activities occurred *after* Bank of America wrongfully rejected the wire transfer from Harbor Title, which was made in full satisfaction of the Zaskeys' debt obligation to Bank of America.

28.     These communications included, but were not limited to, the following:

a.   On July 12, 2012 at 6:58 p.m., the Zaskeys received a collection call for unpaid mortgage payments. They told the caller that the property was sold via a bank approved short sale.

b.   On July 13, 2012 at 5:51 p.m., the Zaskeys received another telephone call concerning this alleged debt.

c.   On July 14 at 1:08 p.m., July 16 at 2:11 p.m., July 17 at 7:31 p.m., July 18 at 2:42 p.m., July 19 at 12:49 p.m., July 20 at 1:36 p.m., July 25 at 4:27 p.m., July 27 at 3:33 p.m., and August 1, 2012 at 4:42 p.m., the Zaskeys received similar calls.

d.   On August 28 at 7:29 p.m., Mr. Zaskey received a collection call from David Lemen at Bank of America – Mr. Zaskey told Mr. Lemen that Bank of America's records were incorrect and that an approved short sale had already taken place. Mr. Lemen told Mr. Zaskey that he would update and note this fact in their records.

e.   On September 6 at 4:37 p.m., the Zaskeys received a collection call from Laura Belma at Bank of America, who demanded payment and had no record of any prior discussions between the parties. Mr. Zaskey again explained that the property was sold via an approved short sale.

f.  The Zaskeys received similar collection calls and demands for payment on September 15 at 2:50 p.m., September 27 at 3:16 p.m., October 8 at 2:37 p.m., October 10 at 2:14 p.m., October 12 at 11:28 a.m., and October 16 at 12:55 p.m.

g.  On September 26, 2012, Bank of America filed a foreclosure action against the Zaskeys even though Bank of America had previously approved a short sale, and the short sale had closed five months earlier on or about April 26, 2012, which satisfied the Mortgage and Note.

h.  During the afternoon of October 19, 2012, the Zaskeys received a collection call from Latoya Parks at Bank of America. After a lengthy telephone call during which Mr. Zaskey explained Bank of America's error, Ms. Parks assured Mr. Zaskey that this would be corrected and he would receive a confirmation letter that the matter had been corrected and the debt was marked as satisfied.

i.  On October 26th, the Zaskeys received another call from Latoya Parks. During this call, she acted as if she had never previously spoken to Mr. Zasky. It became clear that she had not investigated this matter, and she told Mr. Zasky that even though his property was "going through" a short sale, the foreclosure process would continue against him. As a result in November 2012 the Zaskeys retained the undersigned counsel.

j.  On November 1st, 9th, and 15th, the Zaskeys received collection calls from Desire Bostice at BAC Loan Servicing. After yet another lengthy telephone call, during which Mr. Zaskey explained Bank of America's error, Ms. Bostice told Mr. Zaskey she would look into the matter, but Bank of America's error was still not corrected. During the November 9th call, Ms. Bostice had not yet

bothered to confirm any of Mr. Zaskeys' information with the short sale department, and told him that the collection calls would continue, and that his "loan default" was still being reported to credit bureaus every month.

k.  Throughout November 2012, the Zaskeys received further collection calls, and on November 30, 2012 at 7:40 p.m., they received a collection call from "Martha," who indicated that if the Zaskeys elected to provide a deed-in-lieu of foreclosure to Bank of America, they would save their credit, the debt would show up on credit reports as being paid, and they would receive $3,000 at closing. Mr. Zaskey was understandably flabbergasted. After over five months of enduring these harassing collection calls, Bank of America had still not realized that the Property was sold months ago via a short sale that Bank of America itself approved, and from which it was wire transferred the sales proceeds.

29.   These debt collection efforts continued beyond November of 2012 and included activity as recent as August and November of 2014, and beyond. These debt collection activities were conducted by Bank of America and Green Tree, as the servicer of the Zaskeys' loan, which Bank of America had otherwise approved for short sale and closed. Other instances of the Counter-Defendants' unlawful debt collection efforts include the following:

a.  In February 2014, almost two years after the short-sale closing – Green Tree sent the Zaskeys a Notice of Default and Right to Cure Default, which asserted that the Zaskeys' loan was in default, and demanded payment of $44,520.32 within thirty-days. If payment was not made, Green Tree threatened to file suit against the Zaskeys, to include a foreclosure claim.

b. In May 2014, Green Tree sent the Zaskeys a "Second and Final Notice" that demanded the Zaskeys either show proof of insurance on the underlying property, or purchase insurance to insure the property. The notice threatened that Green Tree planned to purchase force-placed insurance if no proof of insurance was received from the Zaskeys, and that Green Tree would require the Zaskeys to pay Green Tree for the cost of obtaining such insurance, even though the Zaskeys had short sold the Property with Bank of America's approval, and no longer were in possession of the Property.

c. In August 2014, Green Tree sent the Zaskeys a written demand for payment of their mortgage balance, and offered the Zaskeys the option of a short-sale, in lieu of foreclosure, even though the Zaskeys had closed on a short sale on the Property with Bank of America's approval more than two years earlier. Green Tree also threatened that if the Zaskeys did not accept Green Tree's proposed short-sale, Green Tree would proceed with foreclosure.

30. From May 2013 through at least the end of 2014, Green Tree engaged in a pattern of repeated telephone calls and written demand letters to the Zaskeys, demanding payment of a mortgage debt that the Zaskeys had already fully satisfied.

31. Bank of America and Green Tree are, or should be, in possession and/or control of call logs, account notes, autodialer reports and/or other records that detail the exact number of calls made to the Zaskeys' respective telephone numbers over the relevant time period.

32. At all times material hereto, Bank of America and Green Tree had actual or constructive knowledge that an approved short sale occurred, that the property was sold to a third-party, and that the closing agent repeatedly attempted to wire Bank of America the sales proceeds.

Nonetheless, Bank of America and Green Tree, through their agents and representatives, proceeded undeterred in its campaign of harassment and abuse of the Zaskeys, in an effort to collect the debt, which on information and belief, included, but was not limited to:

    a.  Calling the Zaskeys' telephone number several times per day and on back to back days through the present time (or such time as will be established after a thorough review of Bank of America's and Green Tree's records). In most instances, Bank of America and Green Tree would place a call to each number it had on file for the Zaskeys, within minutes of each other;

    b.  Calling the Zaskeys' telephone number from an automated telephone dialing system, and leaving pre-recorded messages on the Zaskeys' answering machine and respective voice mail boxes, identifying the parties and stating that the message was left in an attempt to collect a debt;

    c.  On other occasions calling the Zaskeys' telephone number and hanging up either prior to or as soon as Mr. Zaskey, members of the Zaskeys' household, or the Zaskeys' answering machine or voice mail boxes answered the call;

    d.  Calling from numerous different telephone numbers that appeared on the Zaskeys' caller ID as someone or some entity other than Bank of America or Green Tree, or with no identification at all;

    33.  During many of these phone calls, Gary Zaskey, who is legally blind, attempted to explain the situation to Bank of America and Green Tree representatives. He told them he no longer lived in or owned the Property, and the Property had been sold pursuant to a Bank of America approved short sale, and through which it received the sales proceeds.

34.     In response, Bank of America and Green Tree representatives made assurances and representations that they would investigate the matter and correct the error. Those assurances and representations were false, and they were known by Bank of America and Green Tree to be false at the time they were made.

35.     During this period, and despite numerous assurances by Bank of America and Green Tree that they would investigate and correct their error, Bank of America and Green Tree took no affirmative steps to do so. On several occasions, these representatives told Mr. Zaskey that the representatives would make a note on his file, and senior representatives who could fix the error would review it. As time went on, Mr. Zaskey realized those statements were also false, as it appears Bank of America and Green Tree may not have made any notations on the Zaskeys' file as sated. Instead, Bank of America and Green Tree continued to ignore Mr. Zaskey's explanations, and continued to harass the Zaskeys for a debt they had already fully satisfied.

36.     Over the course of 2012, Bank of America and its agents called the Zaskeys several times every week, demanding payment for the Zaskeys' mortgage, which they had satisfied. From May 2013 and onward, Green Tree joined in these debt collection activities.

37.     Despite actual knowledge of its wrongdoing, Bank of America and Green Tree continued the campaign of abuse.

38.     It appears Bank of America's and Green Tree's corporate policies are structured to permit continued calling of individuals like the Zaskeys, despite these individuals explaining that the debt previously owed to the creditor was either paid or satisfied. These corporate policies provided no means for the Zaskeys to have their telephone number removed from the call list, or to stop correspondence attempting to collect a debt that the Zaskeys no longer owed. Further, Bank

of America's and Green Tree's policies appear not to permit any investigation of a borrower's allegations that the Property was short sold and the debt no longer owed.

39.     It appears Bank of America and Green Tree have a corporate policy to harass and abuse individuals despite actual knowledge that the called parties did not provide prior express consent to receive the calls, or had revoked such prior express consent verbally or in writing.

40.     Bank of America and Green Tree followed these corporate policies to harass and abuse the Zaskeys, or alternatively failed to successfully execute policies meant to protect the Zaskeys from such abuse when attempting to communicate with the Zaskeys in connection with the debt at issue.

41.     Furthermore, Bank of America and Green Tree have been the recipient of numerous complaints from debtors, alleged debtors, and non-debtors across the country, similar to those alleged in this action by the Zaskeys.

42.     Not only did Green Tree engage in harassing debt collection efforts, but Green Tree purchased at least one, if not several, force-placed insurance policies on the Zaskeys' Property. Green Tree purchased these hazard insurance policies despite a) the Zaskeys having closed on their short sale and satisfied the underlying mortgage, and b) the Zaskeys no longer owning the property. Attached as Exhibit "D" is a 3/27/14 letter from Green Tree advising that they have procured force-placed insurance for the Property, and that they intend to collect the premium from the Zaskeys.

43.     Bank of America reported the mortgage debt (previously satisfied at the Zaskeys' short sale closing) as past-due and in default to all three major credit reporting agencies, which substantially lowered the Zaskeys credit rating, causing them additional damages.

44.     Green Tree also reported the debt (previously satisfied at the Zaskeys' short sale closing) as past-due and in default to all three major credit reporting agencies, which substantially lowered the Zaskeys credit rating, causing them additional damages.

45.     Both Bank of America and Green Tree continue to report to the credit bureaus that the Zaskeys are an undesirable risk. These negative credit entries have had a far reaching effect on the Zaskeys' life, as credit card, and auto and health insurance carriers use an individual's score to calculate rates and an individual's risk for non-payment of premiums. According to the Zaskeys' "Credit Karma" monthly report, Bank of America and Green Tree have caused the Zaskeys credit score to go from an "A" (excellent) to a "F" (very poor).

46.     Despite the Zaskeys' repeated attempts to explain to Bank of America and Green Tree representatives, a) they were not in default, as the loan was satisfied, and b) Bank of America approved the Property for a short sale that closed, Bank of America and Green Tree still refused to take any corrective action, refused to properly investigate the matter and update the Zaskeys' account, and instead continued to demand payment for a debt no longer owed, and a mortgage the Zaskeys' had satisfied.

47.     Bank of America, as owner of the Note, and Green Tree, as servicer, were both grossly negligent: a) in failing to conduct its own due diligence to investigate the matter appropriately, and b) in failing to properly note that the Zaskeys' account as settled and the debt satisfied, after Mr. Zaskey advised that a Bank of America approved short sale had closed, and the property sold to a third party.

48.     Instead of conducting its own due diligence and investigating the matter appropriately, Bank of America and Green Tree not only continued to demand payment for a fully satisfied mortgage, but Bank of America then filed a foreclosure action against the Zaskeys, which

Bank of America knew or should have known was unsupported by the applicable facts and law –
as Bank of America had approved the short sale, it closed, and the Property purchased by a third-
party.

49.    Upon receiving the initial proof of the short sale from the Zaskeys, Bank of America
and Green Tree should have immediately corrected its error and stopped all further collection
efforts, as well as removed all negative credit reporting information it provided to third-parties.
Had Bank of America not received the sales proceeds, it should have immediately contacted
Re/Max Platinum (the agency it recommended) and Harbor Title (its closing agent), and inquired
as to why it had not received the sales proceeds.

50.    As a direct and proximate result of the conduct alleged herein, the Zaskeys have
suffered compensatory, statutory and actual damages, which include, but are not limited to:
emotional distress, anxiety, fear, worry, embarrassment, inconvenience, and mental suffering,
mental anguish, and loss of capacity for the enjoyment of life.

51.    The Zaskeys' statutory and actual damages in the form of emotional distress,
anxiety, fear, worry, embarrassment, inconvenience and mental suffering, mental anguish, and loss
of capacity for the enjoyment of life, and have continued and are continuing as of the filing of this
Second Amended Counterclaim.

52.    All conditions precedent to the filing of this action, whether contractual, statutory
or otherwise, have been performed, waived or excused.

53.    Counter-Plaintiffs have retained the undersigned to represent them in this action,
and are obligated to pay the undersigned's reasonable attorneys' fees.

## COUNT I

### BREACH OF CONTRACT (SHORT SALE AGREEMENT) AGAINST BANK OF AMERICA

54.     Counter-Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 53 of this Counterclaim as if fully set forth herein.

55.     On or about March 16, 2012, the parties entered into a binding short sale agreement, whereby the Property would be sold to a third-party. The proceeds from the sale would go to Bank of America, and the mortgage debt owed by the Zaskeys would be deemed satisfied in full.  *See* Composite Exhibit B.

56.     Pursuant to the Short Sale Agreement, Bank of America agreed to "accept less than the payoff balance due on the above referenced property and release [the Zaskeys] from any further financial responsibility for the outstanding first lien mortgage loan."

57.     The Zaskeys complied with all their obligations pursuant to the parties' short sale agreement.

58.     In addition to the express obligations found in the parties' short sale agreement, Bank of America also owed the Zaskeys an implied covenant of good faith and fair dealing with respect to: maintaining proper and accurate loan records; maintaining a proper accounting for the underlying loan; and ensuring the accurate crediting of payments made by the Zaskeys.

59.     In this case, after contacting the Zaskeys and advising them they were approved for a short sale, based on the terms of the short sale proposal submitted by the Zaskeys, Bank of America, through conscious and deliberate acts, failed and refused to do the following, which Bank of America was obligated to do under the parties' short sale agreement. These breaches include, but are not limited to, the following:

(a) Bank of America failed to "accept less than the payoff balance due on the above

referenced property and release [the Zaskeys] from any further financial responsibility for the outstanding first lien mortgage loan," which it expressly agreed to do in the parties' agreement.

(b) Bank of America failed and refused to conduct its own due diligence and investigate the matter appropriately, after the Zaskeys advised it the Bank of America approved short sale had closed, and the Zaskeys no longer owed a mortgage debt to Bank of America.

(c) Bank of America, through its designated agents, failed to properly account for the Zaskeys' short sale closing, or account for the proceeds sent by Bank of America's closing agent directly to Bank of America, in full satisfaction of the promissory Note and Mortgage that Bank of America subsequently sought to foreclose.

(d) Bank of America and Green Tree both wrongfully rejected at least one, if not more, attempts by Harbor Title to wire the sales proceeds following the Bank of America approved short-sale.

(e) Alternatively, had Bank of America or Green Tree not received the sales proceeds, it should have developed processes to ensure a successful short sale closing, and executed these processes immediately. For example, Bank of America could have contacted Re/Max (its real estate agent) and Harbor Title (its closing agent), and inquired as to why it had not received the proceeds from the short sale.

(f) Bank of America and Green Tree failed to develop and successfully implement processes to respond to borrower complaints regarding its failure to properly account for short sale proceeds. For example, after the Zaskeys told Bank of America and Green Tree representatives they had closed on the lender-approved

short sale, both Bank of America and Green Tree failed to investigate the validity of the charges and payments it demanded from the Zaskeys, and made no effort to resolve the parties' dispute and potential claims arising therefrom.

(g) Bank of America and Green Tree failed to develop or successfully implement processes to ensure it would not file a foreclosure action after a short sale of the Property. For example, Bank of America initiated this foreclosure lawsuit after approving and completing a short sale of the Property, and continued to demand principal, interest, and other payments, which is unconscionable under the circumstances. Green Tree followed suit.

(h) In addition, Bank of America failed to develop and successfully implement processes to properly credit the receipt of the sales proceeds from the short sale to the Zaskeys' account, and failed to properly close the Zaskeys' mortgage account, which had been satisfied in full by virtue of the closing of a Bank of America approved short sale.

(i) Moreover, Bank of America, through conscious and deliberate acts, continued to harass the Zaskeys and demand further payments under the Mortgage and promissory Note, despite repeated efforts by the Zaskeys to explain that the Note and Mortgage were satisfied via a lender-approved short sale.

(j) To make matters worse, Bank of America executed service of process against the Zaskeys while they were hosting a social event at their home in front of all their guests. Thus causing the Zaskeys to suffer the expense, stress, anxiety, embarrassment, emotional distress, and inconvenience of addressing these matters, Bank of America has willfully engaged in conduct which could reasonably be

expected to harass or abuse the Zaskeys.

60.     As a direct result of the aforementioned acts and/or omissions by Bank of America, Bank of America has breached and frustrated the purpose of its short sale agreement, and has wrongfully deprived the Zaskeys of the benefits therefrom.

**WHEREFORE**, Counter-Plaintiffs demand judgment against Bank of America for all damages proven at trial, together with interest, attorneys' fees pursuant to the parties' underlying mortgage and promissory note, costs in this action, as well as any further relief this Court deems just and appropriate.

## COUNT II

### BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING (PROMISSORY NOTE AND MORTGAGE) AGAINST BANK OF AMERICA, GREEN TREE, AND HARBOR TITLE

61.     Counter-Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 53 of this Counterclaim, as if fully set forth herein.

62.     Pursuant to the promissory Note and Mortgage entered into by the parties, Bank of America and Green Tree, its authorized agent or successor in interest, owed the Zaskeys an implied covenant of good faith and fair dealing with respect to the application of payments and the satisfaction of the Zaskeys' Mortgage, as set forth in the parties' promissory Note and Mortgage.

63.     In this case, after advising the Zaskeys they were approved for a short sale, and after selecting an agent (Tony Pino of Re/Max Platinum) to assist with the closing, Bank of America, through conscious and deliberate acts, failed and refused to do the following, which Bank of America was obligated to do under the subject Note and Mortgage:

(a)  Bank of America failed and refused to conduct its own due diligence and investigate the matter appropriately, after the Zaskeys advised it of the short sale closing, and

they no longer owed a mortgage debt to Bank of America.

(b) Bank of America, through its designated agents, failed to properly account for the Zaskeys' short sale closing, or the proceeds sent by Bank of America's closing agent directly to Bank of America, in full satisfaction of the promissory Note and Mortgage upon which Bank of America filed foreclosure.

(c) When Bank of America did not receive the sales proceeds, it should have immediately contacted Re/Max Platinum (its realtor/agent) and Harbor Title (its closing agent), and inquired as to the reason it had not received those funds.

(d) After the Zaskeys told Bank of America representatives they closed on the lender approved short sale, Bank of America failed to investigate the validity of the charges and payments demanded from the Zaskeys, and made no effort to resolve the Zaskeys' dispute and potential claims arising therefrom.

(e) Harbor Title failed to ensure that the closing was properly conducted, and that the proceeds from the short sale were properly credited. Further, Harbor Title had no process for ensuring the proceeds were immediately sent to Bank of America, or alternatively failed to successfully execute its processes.

(f) Both Bank of America and Green Tree wrongfully refused to accept the wire transfer(s) of the sale proceeds from Harbor Title.

(g) After initiating this lawsuit, Bank of America and Green Tree continued to demand principal, interest, and other payments, which is unconscionable under the circumstances.

(h) Bank of America and Green Tree failed and refused to properly credit the receipt of the sales proceeds from the short sale to the Zaskeys' account, and failed to

properly close the Zaskeys' mortgage account, which was satisfied in full by virtue of the approved short sale closing.

(i) Moreover, Bank of America and Green Tree, through conscious and deliberate acts, continued to harass the Zaskeys and demand further payments under the Mortgage and promissory Note, despite the Zaskeys' repeated efforts to explain that they satisfied the Note and Mortgage via a lender approved short sale.

(j) To make matters worse, by executing service of process against the Zaskeys while they were hosting a social event at their home in front of all their guests, and causing the Zaskeys to suffer the expense, stress, anxiety, embarrassment, emotional distress, and inconvenience of addressing these matters, Bank of America and Green Tree willfully engaged in conduct which could reasonably be expected to harass or abuse the Zaskeys.

64.     As a direct result of the aforementioned acts and/or omissions by Bank of America, Green Tree and Harbor Title, which were done in both a conscious and deliberate manner, Bank of America, Green Tree and Harbor Title have both frustrated the purpose of the mortgage and promissory note and short sale, and have wrongfully deprived the Zaskeys of the benefits therefrom.

**WHEREFORE**, Counter-Plaintiffs demand judgment against BANK OF AMERICA, GREEN TREE, and HARBOR TITLE for all damages proven at trial together with interest, attorneys' fees pursuant to the parties' promissory note and mortgage, costs, and any further relief this Court deems just and proper.

CASE NO: 15-cv-81325

## COUNT III

### MALICIOUS PROSECUTION AGAINST BANK OF AMERICA

65.     Counter-Plaintiffs re-allege and incorporate the allegations contained in paragraphs 1 through 53 of this Counterclaim as if fully set forth herein.

66.     As further set forth in this Counterclaim, Bank of America has wrongfully maintained that the Zaskeys owed it certain sums for unpaid mortgage payments and other charges associated with the Property.

67.     On or about September 26, 2012, Bank of America filed a foreclosure action against the Zaskeys, concerning the Property the Zaskeys had already sold to a third-party, pursuant to a Bank of America approved short-sale. The basis for Bank of America's foreclosure action was the alleged non-payment of several months of mortgage payments. In paragraph 6 of its Complaint, Bank of America claimed that the Zaskeys owed $99,327.02 on the Mortgage and Note held by Bank of America.

68.     At all times material hereto, and particularly before initiating this action, Bank of America knew or should have known that: (1) the Zaskeys had closed on a lender approved short sale of the Property, such that title to the Property was transferred to a third-party purchaser; and (2) the sales proceeds from that closing were paid, or directed to be paid to Bank of America in full satisfaction of the promissory Note and Mortgage that Bank of America sought to foreclose. Had Bank of America exercised even basic due diligence before filing its action, Bank of America and its attorneys would have known that its foreclosure claim lacked any merit

69.     Nonetheless, Bank of America refused to take any corrective action after learning of its failure to properly credit the Zaskeys' account, refused to properly investigate the matter and

update the Zaskeys' account, and instead continued to demand mortgage payments and other charges that were no longer owed to Bank of America.

70.     Bank of America and its attorneys continued to seek the foreclosure of the Property and a money judgment from the Zaskeys, and relied on an alleged debt that the Zaskeys had fully satisfied.

71.     Bank of America filed and maintained a baseless foreclosure claim directed to the Zaskeys, in that Bank of America did not, and does not currently, have the legal authority to foreclose on the Property, as the debt giving rise to Bank of America's right of foreclosure was satisfied in full, by virtue of the Zaskeys' compliance with the short-sale agreement.

72.     Bank of America's representative Christina Hourden, Assistant Vice-President, signed the verified complaint on September 12, 2012 under penalty of perjury, and attested that the facts of the complaint are true and correct to the best of her knowledge and belief. The "facts" contained in the foreclosure complaint are not true, and Bank of America knew, or should have known, they were false.

73.     Had Ms. Hourden (or anyone else at Bank of America) engaged in even a cursory review or investigation of the facts of this case prior to filing suit, they would have easily discovered that Bank of America made arrangements for a short sale, that the lender approved short sale occurred and closed, and that this debt was fully satisfied or should have been fully satisfied by virtue of the lender approved short sale closing. Bank of America acted with legal malice, in that its lawsuit was without probable cause, was grossly negligent, or alternatively, was the result of great indifference to the Zaskeys' persons, property and legal rights.

74.     Bank of America maintained a baseless foreclosure claim against the Zaskeys for almost three years.

75.     On or about July 21, 2015, after the Zaskeys filed their counterclaim and amended counterclaim, Bank of America finally recognized that its foreclosure action lacked any merit, and filed its Notice of Voluntary Dismissal of its foreclosure claim, with prejudice. This dismissal with prejudice constitutes a bona fide termination of Bank of America's foreclosure proceeding in favor of the Zaskeys.

76.     By executing service of process against the Zaskeys while they were hosting a social event at their home in front of all their guests, and causing the Zaskeys to suffer the expense, stress, anxiety, embarrassment, emotional distress, and inconvenience of addressing these matters, Bank of America and its attorneys have willfully engaged in conduct which could reasonably be expected to harass or abuse the Zaskeys.

77.     As a result of Bank of America's conduct, the Zaskeys have suffered damages, including, but not limited to, the wrongful prosecution of a foreclosure action and the costs and fees incurred therein, and the wrongful claim for money damages against the Zaskeys for a fully satisfied debt, and all other damages arising therefrom.

**WHEREFORE**, Counter-Plaintiffs demand judgment against Bank of America for all damages, as well as attorneys' fees and costs, and grant any further relief this Court deems just and appropriate.

## COUNT IV

## VIOLATION OF FLORIDA'S CONSUMER COLLECTION PRACTICES ACT (FLA. STAT. 559.72) AGAINST BANK OF AMERICA AND GREEN TREE

78.     Counter-Plaintiffs re-allege and incorporate the allegations contained in paragraphs one through 53 of this Counterclaim as if fully set forth herein.