## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:15-cv-81325-ROSENBERG/HOPKINS

BANK OF AMERICA, N.A., Successor by
Merger to BAC Home Loans Servicing, LP,
*f/k/a* Countrywide Home Loans Servicing,

      Plaintiff,

v.

GARY L. ZASKEY *a/k/a* GARY LYNN
ZASKEY; LORI A. ZASKEY *a/k/a* LORI
ANN ZASKEY; and BRENDA LYNN ZASKEY,

      Defendants.

_____/

GARY L. ZASKEY and LORI A. ZASKEY,

      Counter-Plaintiffs/Third-Party
      Plaintiffs,

v.

BANK OF AMERICA, N.A.,

      Counter-Defendant,

GREEN TREE SERVICING, LLC;
HARBOR LAND TITLE, L.C., and
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

      Third-Party Defendants.

_____/

### ORDER GRANTING IN PART AND DENYING IN PART
### BANK OF AMERICA AND GREEN TREE'S MOTIONS TO DISMISS

    **THIS CAUSE** is before the Court on Bank of America's Motion to Dismiss Counter-

Plaintiffs' Third Amended Counterclaim [DE 81] and Green Tree Servicing, LLC's Motion to

Dismiss Third Amended Counterclaim [DE 85].

## I.        BACKGROUND

The operative pleading at issue, the Third Amended Counterclaim filed by Gary and Lori Zaskey, alleges the following. Bank of America obtained a mortgage on a piece of Florida property owned by the Zaskeys. *See* DE 80 at ¶ 9. In March 2012, after the Zaskeys fell behind on their payments, Bank of America approved a short sale of the property. *Id.* at ¶¶ 10, 11. Bank of America laid out the terms of the short sale in two letters, which the parties now refer to as the Short Sale Agreement. *See* DE 80-2 at 24-27.

Harbor Title acted as the closing agent for the sale. *See* DE 80 at ¶ 12. The closing took place on April 26, 2012. *Id.* at ¶ 16. However, Harbor Title failed to successfully wire the short sale proceeds to Bank of America until August 9, 2012. *Id.* at ¶¶ 18-19. Bank of America returned the short sale proceeds to Harbor Title on August 16, 2012. *Id.* at ¶ 19.

Bank of America and Green Tree Servicing, LLC, which began servicing the loan in May 2013, began collection activity against the Zaskeys. *Id.* at ¶¶ 24-29. In September 2012, Bank of America filed a foreclosure action against the Zaskeys in the Florida Fifteenth Judicial Circuit Court in and for Palm Beach County. *Id.* at ¶ 28(g). Although Bank of America voluntarily dismissed its foreclosure claim, the Zaskeys filed counterclaims against Bank of America, as well as third-party claims against Harbor Title, Green Tree, and Old Republic National Title Insurance Company. Green Tree removed the Zaskeys' claims to this Court. *See* DE 1.

The Zaskeys currently bring the following claims against Bank of America and Green Tree: (1) breach of contract (the Short Sale Agreement) against Bank of America; (2) breach of the implied covenant of good faith and fair dealing (in the promissory note and mortgage) against Bank of America, Green Tree, and Harbor Title; (3) malicious prosecution against Bank of America; (4) violation of the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), Fla. Stat. § 501.201, against Green Tree; (5) violation of Florida's Consumer Collection

Practices Act ("FCCPA"), Fla. Stat. § 559.72, against Bank of America and Green Tree; (6) violation of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, against Bank of America and Green Tree; (7) violation of the Real Estate Settlement Procedures Act ("RESPA"), 12 U.S.C. § 2605(e), against Green Tree; (8) negligence against Bank of America and Green Tree; (9) negligence against Harbor Title. *See* DE 80. Bank of America and Green Tree have moved to dismiss the claims against them. *See* DE 81-82, 85.

## II.    LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this "plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

## III.    ANALYSIS

The Court's jurisdiction in this case is premised on the Zaskeys' claims sounding in federal law, pursuant to 28 U.S.C. §§ 1331, 1441 and 1446. *See* DE 1 (notice of removal). Accordingly, the Court will first address the Zaskeys' federal causes of action. If those counts

fail to state a claim, the Court may decline to exercise supplemental jurisdiction over the claims sounding in Florida law.

## A.      Claims Based on Federal Law

### 1.      Count 6: FDCPA Violation against Bank of America

Bank of America argues that Count 6 fails to state a claim because the allegations in the Third Amended Counterclaim show that Bank of America obtained the loan prior to default. *See* DE 81 at 31-35. A defendant is not a "debt collector" under the FDCPA if the collection activity "concerns a debt which was not in default at the time it was obtained by such person." 15 U.S.C. § 1692a(6)(F)(iii). Thus, "creditors and loan servicers are not 'debt collectors' for purposes of the FDCPA if they acquired or began servicing a loan prior to the debtor defaulting." *Diaz v. First Marblehead Corp.*, No. 14-15797, 2016 WL 736361, at *1 (11th Cir. Feb. 25, 2016).

The Third Amended Counterclaim alleges that the Zaskeys refinanced the property in December 2006 through another lender, and that "[t]he loan was subsequently transferred to Bank of America." DE 80 at ¶ 9. The next paragraph alleges, "After moving to Green Bay, Wisconsin, and experiencing financial difficulties, the Zaskeys inquired with Bank of America about options to avoid foreclosure" and "ultimately . . . agreed to enter into a short sale of their Green Acres, FL Property." *Id.* at ¶ 10; *see also id.* at ¶ 8 ("While owners of the Property, the Zaskeys moved to Green Bay Wisconsin. *Soon thereafter*, the Zaskeys fell behind on their mortgage payments and contacted Bank of America concerning options to avoid foreclosure[.]") (emphasis added). The clear import of these allegations is that the Zaskeys' debt was not in default when Bank of America obtained it. *See Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005) (noting, "[w]e must make reasonable inferences in Plaintiffs' favor, but we are not required to draw Plaintiffs' inferences" and finding it was "unreasonable to infer, based on the facts alleged here" what the Plaintiffs argued).

4

The Zaskeys assert that whether they were in default presents a triable issue of fact. *See* DE 92 at 24. They argue that "any evidence that . . . the Zaskeys were behind on their monthly payments, or [were] . . . late on their payments prior to or at the time of transfer, would render the Zaskeys in 'default' under the terms of their Note" and that "[t]he evidence in this case, whether presented at summary judgment or at trial, will reveal that the Zaskey loan was in 'default,' as that term is defined by the Note, since December 2010," prior to Bank of America obtaining the loan. *Id.* at ¶ 25. Even assuming *arguendo* that the Zaskeys' broad definition of default is applicable in interpreting this provision of the FDCPA, there are no facts pled in the Third Amended Counterclaim to suggest that the Zaskeys were behind or late on their monthly payments when Bank of America acquired the loan. *See generally Davidson v. Capital One Bank (USA), N.A.*, 797 F.3d 1309, 1313 (11th Cir. 2015) ("in order to survive Capital One's motion to dismiss, Davidson must plead 'factual content that allows the court to draw the reasonable inference that' Capital One is a 'debt collector' under the FDCPA and therefore liable for the misconduct alleged"). Moreover, the Zaskeys do not explain what factual allegations or evidence would support the notion that the loan had been in default since December 2010. *Cf. Aldana*, 416 F.3d at 1248 ("'Bald assertions' will not overcome a Rule 12(b)(6) motion.")

The Court notes that this is the fourth iteration of the Zaskeys' counterclaim. The Zaskeys have been on notice of this issue since at least December 2015, when Green Tree moved to dismiss the FDCPA claim against it on identical grounds. *See* DE 9 at 19-20 (motion to dismiss arguing that the counterclaim was bereft of facts showing that the loan was in default at the time it was assigned to Green Tree). The Zaskeys added an allegation that *Green Tree* obtained the loan after default, but added no such allegation as to *Bank of America. See* DE 80 at ¶ 118. Furthermore, the amended pleadings deadline in this case passed on December 28, 2015, and the Court previously warned the Zaskeys that it did not anticipate permitting any further

amendments to the counterclaim. *See* DE 79. Accordingly, the Court finds that the Zaskeys cannot state a claim for a violation of the FDCPA against Bank of America, and this claim is dismissed with prejudice.

    2.    **Count 6: FDCPA Claim against Green Tree**

Green Tree argues that the FDCPA claim against it should be dismissed as time-barred under the one-year statute of limitations set forth in 15 U.S.C. § 1692k(d). Because a statute of limitations bar is an affirmative defense, and plaintiffs are not required to negate an affirmative defense in their complaint, a Rule 12(b)(6) dismissal on statute of limitations grounds is appropriate only if it is apparent from the face of the complaint that the claim is time-barred. *La Grasta v. First Union Sec., Inc.*, 358 F.3d 840, 845 (11th Cir. 2004). The Eleventh Circuit has held that, where an FDCPA claim is based on a collection letter, the one-year period in 15 U.S.C. § 1692k(d) begins to run on the day after the letter is mailed. *See Maloy v. Phillips*, 64 F.3d 607, 608 (11th Cir. 1995).

The Third Amended Counterclaim alleges that Bank of America transferred servicing rights to the Zaskeys' loan to Green Tree effective May 1, 2013. *See* DE 80 at ¶ 29(b). In the "General Allegations" section, it lists letters sent by Green Tree between May 2013 and August 2014, *id.* at ¶ 29(g), (i), (m)-(o), as well as phone calls the Zaskeys received from Green Tree in June, July, November, and October 2013, *id.* at ¶ 29(h), (k)-(*l*), and generally alleges: "from May 2013 through *at least the end of 2014*, Green Tree engaged in a pattern of repeated telephone calls and written demand letters to the Zaskeys[.]" *Id.* at ¶ 30 (emphasis added). In the FDCPA claim, which is brought against both Bank of America and Green Tree, the Zaskeys allege:

> [F]rom June 2012 *through July 2015*, BANK OF AMERICA, through its predecessors in interest, its own representatives, and other debt collectors it retained as its agents (including GREEN TREE), sent numerous written demands for payment, and made dozens of telephone calls to the ZASKEYS' home, in an attempt to collect and enforce a debt . . .

. . . *From May 2013 and onward*, GREEN TREE joined in these debt collection activities.

DE 80 at ¶¶ 112, 114 (emphasis added).

Green Tree contends that the Zaskeys' FDCPA claims are time-barred because none of the collection activity specified occurred within 12 months of August 24, 2015, the date on which the Zaskeys served Green Tree with the third party complaint filed in state court. *See* DE 85 at 13 (motion to dismiss); DE 107 at 16 (reply); DE 1 at 2 ¶ 5 (notice of removal). Assuming that August 24, 2015 is the relevant date for statute of limitations purposes,[1] when the Court reads the Third Amended Counterclaim as a whole and draws all inferences in the Zaskeys' favor, as the Court is required to do on a motion to dismiss, it is not apparent from the face of the counterclaim that the FDCPA claims against Green Tree are barred by the statute of limitations. The Zaskeys allege collection activity as late as July 2015. Although it is not clear precisely whether it was actions by Green Tree or actions by Bank of America that continue into July 2015, since the FDCPA count lumps Bank of America and Green Tree together, the Court finds it is sufficient to survive a motion to dismiss on statute of limitations grounds. Green Tree may raise this argument as an affirmative defense.[2] Accordingly, Green Tree's Motion to Dismiss Count 6 is denied.

### 3.   Count 7: RESPA Claim against Green Tree

---

[1] Neither party addresses whether the Zaskeys' third-party claim against Green Tree would relate back to its originally filed counterclaim against Bank of America under Federal Rule of Civil Procedure 15. *See* DE 93 at 19 (Zaskey's response, arguing: "Putting aside the applicability of the relation back doctrine, Fed R. Civ. P. 15(c), Green Tree is at a minimum liable for debt collection activities that occurred one year prior to that date" when Green Tree was added to the case). *See generally Williams v. Grieg Shipping A/S*, 219 F.R.D. 537, 538 (S.D. Ala. 2003) (laying out the three-part test that an amendment adding a new party must meet to relate back to the original pleading, for statute of limitations purposes). The original counterclaim against Bank of America was filed on August 13, 2013. *See* DE 1 at 2 ¶ 2. Given the Court's holding that the Zaskeys' claims are not time-barred on the face of the counterclaim, the Court leaves this issue to be fleshed out at a later stage in the proceedings.

[2] Because the Court concludes that the FDCPA claims against Green Tree are not, on their face, barred by the statute of limitations, the Court finds it unnecessary to reach Green Tree's argument that the August 2014 communications at issue were "loss mitigation options" that do not count as debt collection activity under the FDCPA.

RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan, including the obligation to respond to a Qualified Written Request ("QWR") submitted by a borrower. *Williams v. America's Serv. Co.*, No. 2:09-cv-775-FtM-29DNF, 2011 WL 1060652, at *1 (M.D. Fla. Mar. 22, 2011). RESPA defines a QWR as follows:

> **(B) Qualified written request**
> For purposes of this subsection, a qualified written request shall be a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that--
> **(i)** includes, or otherwise enables the servicer to identify, the name and account of the borrower; and
> **(ii)** includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2695(e)(1)(B). A servicer must generally acknowledge receipt of the correspondence within 5 days and take action to correct the account or investigate the error within 30 days. *See* 12 U.S.C. § 2605(e)(1)(A), (e)(2). "[T]o state a claim for violation of RESPA § 2605(e), plaintiffs must allege facts to support that: (1) defendant is a loan servicer, (2) plaintiffs sent defendant a valid QWR, (3) defendant failed to adequately respond within the . . . statutory period, and (4) plaintiffs are entitled to actual or statutory damages." *Williams*, 2011 WL 1060652, at *2.

The alleged QWRs are attached to the Third Amended Counterclaim. They consist of letters Green Tree sent to the Zaskeys, on which Mr. Zaskey hand-wrote notes. The first note states: "This property was sold thru [sic] a Bank of America short sale 4-26-12. I owe nothing on this loan." DE 80-4 at 6. The second note states: "Attn: Mario [the sender of the Green Tree letter.] Please check your records. This property was sold via a Bank of America Short Sale 4-26-2012[.]" DE 80-4 at 9. The Third Amended Counterclaim alleges that Mr. Zaskey then

returned these letters to Green Tree, which "failed to investigate, and ultimately failed to take corrective action within 60 business days." DE 80 at ¶¶ 135-38.

Green Tree argues these allegations are insufficient, first, because the Zaskeys have not pled facts showing that the QWR "was actually mailed on a specific date." DE 85 at 14. However, it is a fair inference from the counterclaim that the letters were mailed in May 2013, shortly after the Zaskeys received the letters, which are dated May 4 and May 11, 2013. Furthermore, the RESPA claims at issue in the cases Green Tree cites were far more deficient. *See Williams*, 2011 WL 1060652, at *3 (finding plaintiffs did "not allege when they sent the QWR *and* whether defendant failed to adequately respond within the statutory timeframe," and further "failed to allege that the QWR contained sufficient information to enable defendant to determine 'the name and account of the borrower'") (emphasis added); *Altman v. PNC Mortg.*, 850 F. Supp. 2d 1057, 1073-74 (E.D. Cal. 2012) (finding plaintiffs failed to allege a particular RESPA statute which was violated and failed to show that plaintiffs sent a legitimate QWR identifying grounds that the loan or account was defective or in error).

Green Tree argues, second, that the Zaskeys' allegations fail to show a causal link between their claimed damages and the alleged RESPA violation. DE 85 at 15. Citing the Zaskeys' negligence claim against Harbor Title, Green Tree argues, "By their own admission, but for Harbor Title's failure to timely disburse the short-sale proceeds, 'the Zaskeys would not have sustained the damages complained of herein.'" *Id.* (citing DE 80 at ¶ 156). The RESPA claim in the Third Amended Counterclaim alleges that the Zaskeys were injured by Green Tree's failure to investigate and respond to their QWRs because "they have endured harassing collection efforts for a debt obligation for which they had no financial responsibility, and suffered the effects of GREEN TREE's negative credit entries on the ZASKEYS' credit reports." DE 80 at ¶ 139. The claims at issue in the cases Green Tree cites did not include such detailed

factual allegations. *See Jenkins v. BAC Home Loan Servicing, LP*, 882 F. Supp. 2d 1369, 1377 (M.D. Ga. 2011) (dismissing claim that simply stated that, as a result of the RESPA violations, the plaintiff suffered damages); *Habib v. Bank of America Corp*., No. 10–04079, 2011 WL 2580971, at *4 (N.D. Ga. Mar. 15, 2011) ("Plaintiff's allegations fail to put Bank of America on notice as to how any purported RESPA violations harmed her. Indeed, '[t]he [c]omplaint does not allege any facts to support a finding that ... untimely response to the [plaintiff's QWR], if any, caused the [plaintiff] to suffer any type of monetary loss.'").

The Court finds the Zaskeys' allegations regarding damages are sufficient to state a claim under RESPA. Accordingly, Green Tree's Motion to Dismiss Count 7 is denied.

## B.   Claims Based on Florida Law

Because claims based on federal law remain pending, the Court may exercise supplemental jurisdiction over the Zaskeys' claims that are based in Florida law. *See generally* 28 U.S.C. § 1441. The Court therefore turns its attention to Bank of America and Green Tree's arguments for dismissal of these claims.

### 1.   Count 1: Breach of Contract (the Short Sale Agreement) against Bank of America

The Third Amended Counterclaim alleges that Bank of America breached the Short Sale Agreement by: (1) rejecting the short sale proceeds wired in August 2012; (2) failing to investigate after Harbor Title and Mr. Zaskey informed Bank of America that the short sale had closed; (3) failing to develop or follow internal procedures to ensure successful short sale; (4) failing to develop and follow internal procedures to respond to borrower complaints and properly credit short sale proceeds; and (5) "harassing and abusing" the Zaskeys through unwarranted debt collection activity. *See* DE 80 at ¶ 60(a)-(j).

The two letters from Bank of America that comprise the Short Sale Agreement are attached to the Third Amended Counterclaim. *See* DE 80-2 at 24-27. The initial letter states:

5. Closing must take place no later than April 30, 2012 *or this approval is void*. If an extension is requested and/or approved, interest on the loan will be charged per day through closing.

.  .  .

14. All funds must be wired. Please be advised that any other form of payment of funds will be returned. *Payoff funds must be received within 48 business hours of the HUD-1 settlement date*.

DE 80-2 at 25 (emphasis added). The second letter states that the Zaskeys were eligible to receive up to $5,000 in relocation assistance if the short sale closed by August 31, 2012. *See* DE 80-2 at 27. The letter also states: "The terms and conditions of your short sale agreement have not changed." *Id.*

### a.   Whether the failure to timely wire the funds was breach of a condition precedent in the Short Sale Agreement

Bank of America argues that, because it did not receive the payoff funds until more than 48 hours after the settlement date, the Zaskeys breached a condition precedent for the short sale and thereby voided the Short Sale Agreement. *See* DE 81 at 6-9. Thus, Bank of America argues, its subsequent actions cannot form the basis of a breach of contract claim. *Id.* The Zaskeys dispute whether the 48-hour provision was a condition precedent. *See* DE 92 at 11. They argue that only a failure to timely conduct the closing would have voided the contract, not a failure to timely wire the funds. *Id.* The Zaskeys also appear to argue that the second letter extended the closing deadline to August 31, 2012. *Id.* at 4.

"Contract interpretation is typically inappropriate at the motion to dismiss stage" unless "the contract . . . terms are unambiguous[.]" *Alhassid v. Bank of Am., N.A.*, 60 F. Supp 3d 1302, 1312 (S.D. Fla. 2014). In other words, where the interpretation of a contract is reasonably susceptible to more than one interpretation, the issue should be decided at the summary judgment stage rather than on a motion to dismiss. *See, e.g., Managed Care Solutions, Inc. v. Community Health Systems, Inc.*, No. 10-60170-CIV, 2011 WL 6024572, at *6 (S.D. Fla. Dec. 2, 2011); *Larach v. Standard Chartered Bank Intern. (Ams.), Ltd.*, 724 F. Supp. 2d 1228, 1239 (S.D. Fla.

2010) ("The parties' differing interpretations of their respective obligations under the pledge agreement demonstrate that this issue is not ripe for decision at the motion to dismiss stage."). In the present case, the Court finds that the Short Sale Agreement is ambiguous on the point disputed by the parties. *See generally Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005) ("Under Florida law, failure to make a payment on time does not constitute *per se* a material breach of contract. Rather, to constitute a material breach, the late payment must occur where time is of the essence. . . . Time is of the essence under Florida law when (1) the agreement explicitly so specifies; or (2) such may be determined from the subject matter of the contract; or (3) treating time as non-essential would produce a hardship; or (4) notice has been given to the defaulting party requesting performance within a reasonable time."). The parties' dispute as to the interpretation of the Short Sale Agreement therefore is not ripe for decision at the motion to dismiss stage.

### b. Whether there are sufficient factual allegations to show that Harbor Title was acting as Bank of America's agent

Bank of America also argues that the breach of contract claim, as well as the breach of implied covenant claim discussed *infra*, fail to state a claim because they are based on the actions of Harbor Title, and the Zaskeys have pled insufficient facts showing that Harbor Title was acting as Bank of America's agent during the closing. *See* DE 81 at 4-6. The Zaskeys respond that "the conduct of Harbor Title, as an agent of Bank of America, involves just one of several different breaches of the short sale agreement and the implied obligations therein." DE 92 at 9. The Court agrees with the Zaskeys, as many of the alleged breaches occurred after the short sale closing and concern Bank of America's continuation of debt collection activity in the face of the Zaskeys' protestations. *See* DE 80 at ¶ 60(a)-(j).  Bank of America does not address this issue or attempt to explain which parts of Counts 1 and 2 it believes are predicated on the agency relationship. *See* DE 102 at 2-4 (reply).

To the extent the claims *are* predicated on an agency relationship, the Third Amended Counterclaim alleges that Mr. Pino, the real estate agent who handled the short sale and represented himself as Bank of America's agent, recruited Harbor Title as closing agent, and that Harbor Title was engaged upon his recommendation. *See* DE 80 at ¶¶ 11, 152. The Court finds these allegations sufficient to survive a motion to dismiss. *See Larach*, 724 F. Supp. 2d at 1239 (finding that fact-intensive inquiries, such as whether plaintiffs have alleged facts establishing that a fiduciary or agency relationship existed, are inappropriate for consideration at the motion to dismiss stage, and denying the motion to dismiss with leave to renew at the summary judgment stage). Accordingly, as to Count 1, Bank of America's Motion to Dismiss is denied.

2. **Count 2: Breach of the Implied Covenant of Good Faith and Fair Dealing (in the Promissory Note and Mortgage) against Bank of America, Green Tree, and Harbor Title[3]**

a. **Whether Count 2 fails to state a claim against Green Tree because there are insufficient allegations of privity between Green Tree and the Zaskeys**

Green Tree argues that the breach of implied covenant claim should be dismissed with prejudice as to Green Tree because the Zaskeys have failed to allege any facts showing they are in privity with Green Tree for purposes of the note and mortgage; Green Tree argues that its status as the loan servicer does not satisfy this privity requirement. *See* DE 85 at 7-8. In *James v. Litton Loan Servicing, L.P.*, No. 4:09-CV-147 CDL, 2011 WL 59737 (M.D. Ga. Jan. 4, 2011), the district court granted summary judgment to the defendant servicer on the borrower's breach of contract claim, finding:

> Plaintiffs did not . . . allege that they had a contract with Litton, nor did they point to any evidence of such contract. As a loan servicer, Litton is not a party to or an assignee of the Note itself. In the absence of evidence of a contract between Plaintiffs and Litton, Plaintiffs' breach of contract claim fails.

---

[3]Harbor Title has not filed a motion to dismiss.

*Id.* at *11); *see also Edwards v. Ocwen Loan Serv., LLC*, 24 F. Supp. 3d 21, 28 (D.D.C. 2014) (dismissing borrower's breach of contract and breach of implied covenant claims against servicer, finding they were insufficient as a matter of law and noting: "Judges around the country—including at least two of my colleagues—have held that a loan servicer, as a lender's agent, has no contractual relationship or privity with the borrower and therefore cannot be sued for breach of contract.").

The Zaskeys respond that Green Tree is liable for breach of the mortgage, note, and Short Sale Agreement "to the extent that Bank of America assigned certain obligations to Green Tree" and to the extent "certain obligations were ultimately the responsibility of Green Tree, rather than Bank of America[.]" DE 93 at 9-10. The Zaskeys do not identify what those responsibilities are, and the Third Amended Counterclaim does not allege any supporting facts, other than the lender-servicer relationship between Bank of America and Green Tree. The Zaskeys protest that they "are not required at this stage of the proceedings to precisely identify the legal theory that may ultimately hold Green Tree liable" as long as "*any set of facts* consistent with the complaint would give him a right to recover[.]" DE 93 at 10 (emphasis added).

The Court disagrees. The Zaskeys are required to plead "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft*, 556 U.S. at 678; *see also Bell*, 550 U.S. at 562-63 (rejecting "no set of facts" language from prior case law as a pleading standard). They have not pled facts demonstrating that they are in privity with Green Tree. Given that this is the fourth iteration of the counterclaim and the amended pleadings deadline is many months past, Count 2 against Green Tree is dismissed with prejudice.

**b. Whether Count 2 fails to state a claim against Bank of America because the breach of good faith claim does not attach to the performance of a specific contractual obligation**

"Under Florida law, every contract contains an implied covenant of good faith and fair dealing, requiring that the parties follow standards of good faith and fair dealing designed to protect the parties' reasonable contractual expectations. *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). "A breach of the implied covenant of good faith and fair dealing is not an independent cause of action, but attaches to the performance of a specific contractual obligation." *Id.* "[A] claim for a breach of the implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." *Id.* at 1152. Such a claim "ordinarily arises when: 1.) the contract is ambiguous about the permissibility of the conduct, or 2.) when the conduct is undertaken pursuant to a grant of discretion and the scope of that discretion has not been designated." *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1318 (M.D. Fla. 2000).

Bank of America argues that Count 2 should be dismissed because none of the alleged breaches of good faith attach to a specific term of the note and mortgage. *See* DE 81 at 9. Count 2 alleges that Bank of America "owed the ZASKEYS an implied covenant of good faith and fair dealing with respect to the application of payments and the satisfaction of the ZASKEYS' Mortgage, as set forth in the parties' promissory Note and Mortgage." DE 80 at ¶ 63. In their response to Bank of America's motion to dismiss, the Zaskeys point to several uniform covenants in the mortgage governing application of payments and grievance notices. *See* DE at 12-13. However, as Bank of America points out, these covenants govern acceptance of regular payments towards interest and principal, and what the Zaskeys are really complaining about is the acceptance (or rather, the non-acceptance) of a payment under the Short Sale Agreement, which is a separate agreement to forbear enforcing the full amount of the debt.

Alternatively, the Zaskeys argue that they are not required to "specifically identify the provision of the mortgage giving rise to their claim," citing *Karp v. Bank of America, N.A.*, No.

8:12-cv-1700-T-17MAP, 2013 U.S. Dist. LEXIS 36838, *10 (M.D. Fla. Mar. 18, 2013). The Zaskeys read *Karp* too broadly. There, the borrower argued that the lender had exercised its right to "force-place" insurance on the property in bad faith by, *inter alia*, failing to maintain the borrower's existing insurance and instead force-placing insurance for providers of the lender's choice with higher premiums. *Id.* at *8-9. Although the court stated it "reject[ed]" the lender's argument that the breach of good faith claim should be dismissed for failure to identify a specific provision of the mortgage, the court continued: "Although Plaintiff did not identify a specific section of the Mortgage by number or title, Plaintiff refers to the provision contained in the Mortgage that permits Defendant to 'force-place' insurance or to buy more insurance to cover the mortgaged property." *Id.* at *10.

The Zaskeys have failed to identify an express breach of the note and mortgage, which is required under Florida law to state a claim for breach of the implied covenant of good faith and fair dealing arising from the note and mortgage. For the aforementioned reasons, Count 2 against Bank of America is dismissed with prejudice.

### 3.    Count 3: Malicious Prosecution against Bank of America

The Zaskeys' malicious prosecution claim is based on the foreclosure proceedings Bank of America filed against them in September 2012. *See* DE 80 at ¶¶ 65-76. To maintain a claim for malicious prosecution under Florida law, the Zaskeys must demonstrate, *inter alia*, that "there was an absence of probable cause for the original proceeding" and "there was malice on the part of the present defendant." *Alamo Rent-A-Car, Inc. v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). "In the context of a claim for malicious prosecution, malice means without reasonable cause, out of ill will, animosity and with a desire to do harm for harm's sake," "may be inferred entirely from a lack of probable cause," and "may be alleged generally." *Rivas v.*

*Figueroa*, No. 11-23195-CIV, 2012 WL 1343949, at \*4 (S.D. Fla. Apr. 18, 2012) (quoting *Adams v. Whitfield*, 290 So. 2d 49, 51 (Fla. 1974) and Federal Rule of Civil Procedure 9(b)).

Bank of America argues that the Zaskeys cannot demonstrate malice or lack of probable cause because the short sale contract had been voided when the short sale funds were not transferred to it within 48 hours of closing. *See* DE 81 at 10-1. As discussed *supra* regarding the breach of contract claim, this is a disputed issue in the case that is not yet ripe for determination. Accordingly, as to Count 3, Bank of America's Motion to Dismiss is denied.

### 4.      Count 4: FDUTPA Claim against Green Tree

Count 4 of the Third Amended Counterclaim alleges that Green Tree violated FDUTPA by: (1) obtaining lender-placed insurance in the Zaskeys' name on the property that they no longer owned after the short sale; and (2) as part of collection activities against the Zaskeys, acknowledging receipt of a non-existent loan modification application, acknowledging approval of a non-exist short sale offer on the property no longer owned by the Zaskeys, and threatening to file an unwarranted foreclosure action against the Zaskeys. *See* DE 80 at ¶ 84.

#### a.   Whether the Zaskeys can bring a claim under FDUTPA even though they live outside Florida

Green Tree argues that the Zaskeys cannot invoke FDUTPA because they were living outside of Florida when the alleged FDUTPA violations occurred. *See* DE 85 at 11-12. Nothing in the plain language of FDUTPA limits its application to injuries occurring in Florida. *See* Fla. Stat. §§ 501.201, *et seq.* However, "the law in Florida on FDUTPA's applicability to out-of-state consumers is somewhat unclear." *F.T.C. v. Info. Mgmt. Forum, Inc.*, Case No. 6:12-cv-986-orl-31 KRS, 2013 WL 3323635, \*7 (M.D. Fla. June 28, 2013); *see also 2P Commercial Agency S.R.O. v. Familant*, No. 2:11-CV-652-FTM-29, 2012 WL 6615889, at \*4 (M.D. Fla. Dec. 19, 2012) ("Florida courts are split on whether the protections of FDUTPA extend to out-of-state consumers.").

Some Florida case law holds that FDUTPA should be applied only to in-state consumers, as they were FDUTPA's intended beneficiaries. *See Coastal Physician Servs. of Broward Cty., Inc. v. Ortiz*, 764 So. 2d 7, 8 (Fla. 4th DCA 1999) (in class action based on debt collection activity by Florida physician's office, limiting discovery to debt collection materials sent to in-state consumers); *Oce Printing Sys. USA, Inc. v. Mailers Data Servs., Inc.*, 760 So. 2d 1037, 1042 (Fla. 2d DCA 2000) (reversing order certifying nationwide class under FDUTPA because "only in-state consumers can pursue a valid claim" under FDUTPA). However, in *Millennium Communications & Fulfillment, Inc. v. Office of the Attorney General, Department of Legal Affairs, State of Florida*, 761 So. 2d 1256 (Fla. 3d DCA 2000), the court found that a FDUTPA claim could be based on communications to out-of-state consumers "where the allegations in this case reflect that the offending conduct occurred entirely within this state[.]" *Id.* at 1262; *see also Hutson v. Rexall Sundown, Inc.*, 837 So. 2d 1090, 1094 (Fla. 4th DCA 2003) (reaffirming *Coastal*, because there the injuries were alleged to have occurred both within and outside Florida; but distinguishing *Coastal* from cases where "the common injury occurred in Florida").

It appears that all of the federal courts in the Southern District of Florida that have considered this issue have followed *Millennium* and held that "FDUTPA applies to non-Florida residents if the offending conduct took place predominantly or entirely in Florida." *Karhu v. Vital Pharma., Inc.*, Case No. 13-60768-CIV, 2013 WL 4047016 (S.D. Fla. Aug. 9, 2013) ("The Court finds that the reasoning in *Millennium* and its progeny provides the fairest reading of FDUTPA's text and stated purpose. Nothing in the language of the statute suggests that it is limited to transactions involving Florida consumers."); *see also Barnext Offshore, Ltd. v. Ferretti Group, USA, Inc.*, Case No. 10-23869-CIV, 2012 WL 1570057, *6 (S.D. Fla. May 2, 2012) ("The Court is unpersuaded that the FDUTPA provides relief only to Florida consumers. . . . [N]othing in *Millennium* suggests that the FDUTPA applies *only* when conduct occurs entirely

within Florida."). Federal courts in the Middle District of Florida agree. *See Info Mgmt. Forum*, 2013 WL 3323635, at *6 ("I am persuaded that, among this varying case law, the facts of *Millennium* are the most analogous to this case and, thus, that the rationale of *Millennium* is applicable to this case."); *2P Commercial*, 2012 WL 6615889 ("The Court finds that *Millennium* . . . more appropriately reflects both the text of FDUTPA and its enumerated purpose."). This Court agrees with and adopts the reasoning of these federal decisions.

The Zaskeys' Third Amended Counterclaim alleges that Green Tree "was and is a Florida corporation, licensed by the State of Florida, and conducted business within the State of Florida, including Palm Beach County, during the periods relevant to this action." DE 80 at ¶ 5. It also alleges that, during the relevant time period, the Zaskeys were living in Wisconsin. *Id.* at ¶¶ 10, 14. The FDUTPA claim is based on communications Green Tree had with the Zaskeys regarding their mortgage on a property located in Florida. *Id.* at ¶ 84. Given the allegation that Green Tree was conducting business in Florida during the relevant time period, it is a fair inference that these communications originated in Florida. The FDUTPA claim is also based on Green Tree obtaining lender-placed insurance in the Zaskeys' name on the Florida property. *Id.* at ¶ 84.

The Court finds these allegations analogous to cases where courts have allowed FDUTPA claims to proceed. For example, in *Millennium*, where the Florida court concluded that "the offending conduct occurred entirely within the state," the FDUTPA claim was based on allegedly misleading postcards that a Florida corporation mailed around the country, as well as misleading representations made by that corporation over the phone. 761 So. 2d at 1258. Similarly, in *Karhu*, the federal district court concluded it was "reasonable to infer that all of Defendant's alleged misconduct took place in Florida" where "Plaintiff alleges that Defendant is a Florida corporation" with "its principal place of business is located in Davie, Florida," and where the FDUTPA claims were "based on Defendant's alleged misrepresentations that it made on its own

website and on the label of its product." 2013 WL 4047016, at *10 (noting that, "While Plaintiff is a New York resident and may have been injured in New York, 'the place of injury is less significant in the case of fraudulent misrepresentations.'"). Accordingly, to the extent Green Tree argues the FDUTPA claims should be dismissed because the Zaskeys live outside of Florida, its motion to dismiss is denied.

### b. Whether the Third Amended Counterclaim alleges that Green Tree engaged in "trade or commerce" under the FDUTPA

Green Tree also argues its complained-of behavior is not covered by FDUTPA because it was not in connection with "trade or commerce." *See* DE 85 at 12. FDUTPA outlaws "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices *in the conduct of any trade or commerce*[.]" Fla. Stat. § 501.204(1) (emphasis added). The statute defines "trade or commerce" as, in relevant part: "the advertising, soliciting, providing, offering, or distributing, whether by sale, rental, or otherwise, of any good or service, or any property, whether tangible or intangible, or any other article, commodity, or thing of value, wherever situated." Fla. Stat. § 501.203(8). "[T]he 'trade and commerce' requirement is often not met in cases dealing with borrowers alleging FDUTPA violations against mortgage servicers." *Benjamin v. CitiMortgage, Inc.*, Case No. 12-32291-CIV, 2013 WL 1891284, *4 (S.D. Fla. May 6, 2013). Many courts have held that a servicer's attempts to enforce a mortgage are not actionable under FDUTPA. *See id.* at *5; *Williams v. Nationwide Credit, Inc.*, 890 F. Supp. 2d 1319, 1322 (S.D. Fla. 2012) ("[T]he Court agrees with the other courts that have addressed debt collection and finds that Nationwide's debt collection activities do not give rise to a FDUTPA claim."); *Acosta v. James A. Gustino, P.A.*, No. 6:11-CV-1266-ORL-31, 2012 WL 4052245, at *1 (M.D. Fla. Sept. 13, 2012) ("An attempt to collect a debt by exercising one's legal remedies does not constitute 'advertising, soliciting, providing, offering, or distributing' as those terms are used in Fla. Stat. § 501.203(8).").

The Zaskeys argue, however, that their "allegations are far removed from the narrow debt collection allegations" in the cases cited *supra*, because they allege that Green Tree sought and obtained lender-placed insurance on the property in the Zaskeys' name. *See* DE 93 at 15-16 (response); *see* DE 80 at ¶¶ 29(i), 29(o), 82 (Third Amended Counterclaim). In *Martorella v. Deutsche Bank National Trust Co.*, 931 F. Supp. 2d 1218 (S.D. Fla. 2013), the court found that FDUTPA claims against a mortgage lender and servicer fell "squarely within [FDUTPA's] broad definition of 'trade or commerce'" where the plaintiff alleged that "the lenders/servicers have charged excessive and/or unreasonable amounts for force-placed insurance, for which they were paid commissions or other remunerations[.]" *Id.* at 1224. Although the Zaskeys' claims in this case are not precisely the same as in *Martorella*, they are analogous. The Zaskeys allege that Green Tree wrongfully demanded they purchase the insurance in order "to confuse and frustrate the ZASKEYS' efforts to resolve the error committed by the Counter-Defendants, and, finally, to otherwise force the ZASKEYS to expend additional and unnecessary sums in order to resolve the ZASKEYS' ongoing dispute with BANK OF AMERICA and GREEN TREE." DE 80 at ¶ 85.

Accordingly, to the extent the Zaskeys' FDUTPA claim is based on the force-placement of insurance on the property, Green Tree's motion to dismiss is denied. To the extent the Zaskeys' FDUTPA claim is based on other behavior, the Court finds that this is debt collection activity not actionable under FDUTPA, and Green Tree's motion to dismiss is granted.

### 5.  Count 5: FCCPA claims against Bank of America and Green Tree

Count 5 alleges that Bank of America and Green Tree violated the FCCPA in three ways: first, by threatening to and actually disclosing the debt to credit reporting bureaus without disclosing the disputed nature of the debt, s*ee* Fla. Stat. § 559.72(3) and (6); DE 80 at ¶ 102; second, by willfully engaging in conduct that could be reasonably expected to harass or abuse the Zaskeys, namely: undertaking collecting efforts via mail and the phone; disregarding Mr.

Zaskey's attempts to explain about the short sale; threatening legal proceedings; reporting negative information to credit bureaus; and serving the Zaskeys with process while they were hosting a party at their home, *see* Fla. Stat. § 559.72(7); DE 80 at ¶ 103; and third, attempting to collect a debt "with knowledge or constructive knowledge" that the debt was not legitimate. *See* Fla. Stat. § 559.72(9); DE 80 at ¶¶ 104, 105.

### a. FCCPA Claim against Green Tree

Green Tree argues that Count 5 fails to state a claim because, like FDUTPA, the FCCPA does not protect consumers living outside of Florida. *See* DE 85 at 12-13. Apart from *Coastal*, which is discussed *supra* in relation to the Zaskeys' FDUTPA claim, none of the case law Green Tree cites explicitly holds that FCCPA claims can only be brought by Florida residents. *Id.* Given the Court's holding that the Zaskeys may bring a FDUTPA claim, Green Tree's motion to dismiss the FCCPA on this ground is also denied.

### b. FCCPA Claim against Bank of America

Bank of America argues that Count 5 under the FCCPA fails to state a claim against it for four reasons. Each is briefly addressed below.

### i. Whether the FCCPA claim fails to state a claim because the short sale contract was void

First, Bank of America argues that, because the short sale contract was voided when Harbor Title's failure to wire the funds within 48 hours, Bank of America's attempts to collect the debt were legitimate under Fla. Stat. § 559.72(9) and it was not required to report the dispute to credit reporting agencies under Fla. Stat. § 559.72(3) and (6). *See* DE 81 at 14-15. As discussed *supra* in section III.A.1, this issue of contract interpretation is not ripe at this stage of the proceedings. Accordingly, Bank of America's motion to dismiss the FCCPA claim on this ground is denied.

### ii.  Whether the filing of a foreclosure action is debt collection actionable under the FCCPA

Second, Bank of America argues that, to the extent the claim is based on the filing of a foreclosure action, this is not actionable under the FCCPA. *See* DE 81 at 12-13. Generally, "filing a foreclosure lawsuit is not a debt collection practice under § 559.72 of the FCCPA." *Trent v. Mortgage Elec. Registration Sys., Inc.*, 618 F. Supp. 2d 1356, 1361 (M.D. Fla. 2007), *aff'd,* 288 F. App'x 571 (11th Cir. 2008). However, the Zaskeys argue this is actionable because the foreclosure lawsuit sought a deficiency judgment. *See* DE 92 at 19 (response); DE 80 at 82-85 (foreclosure complaint, Ex. C of Third Amended Counterclaim). They point to cases interpreting the federal FDCPA, which have held that "[a] mortgage foreclosure action that *also seeks payment on the underlying promissory note* is debt collection for the purposes of the FDCPA." *Roban v. Marinosci Law Group*, 34 F. Supp. 3d 1252, 1254 (S.D. Fla. 2014) (emphasis added); *see also Freire v. Aldridge Connors, LLP*, 994 F. Supp. 2d 1284, 1288 (S.D. Fla. 2014) (same); *Rotenberg v. MLG, P.A.*, No. 13-CV-22624-UU, 2013 WL 5664886, at *2 (S.D. Fla. Oct. 17, 2013) (same). Although none of this case law specifically addresses the FCCPA, the FCCPA explicitly provides that, "[i]n applying and construing this section, due consideration and great weight should be given to the interpretations of . . . the federal courts relating to the federal Fair Debt Collection Practices Act." Fla. Stat. § 559.77(5). Moreover, Bank of America makes no attempt to distinguish this case law in its reply. *See* DE 102. Accordingly, Bank of America's motion to dismiss the FCCPA claim on this ground is denied.

### iii. Whether the filing of a foreclosure action is protected by Florida's common law litigation privilege and therefore cannot be actionable under the FCCPA

Third, Bank of America argues that, to the extent the FCCPA claim is premised on the filing of the foreclosure action, this is barred by Florida's common law litigation privilege. *See* DE 81 at 13. The Zaskeys argue that their claim is based on "events and conduct that occurred *before* any litigation was initiated[.]" DE 92 at 20.[4]

The FCCPA claim does appear to be based, at least in part, on the initiation of foreclosure proceedings. *See* DE 80 at ¶ 93 (Third Amended Counterclaim, alleging that "between June 2012 through July 2015, BANK OF AMERICA . . . pursued and threatened to pursue an unwarranted foreclosure action"). This is barred by Florida's litigation privilege. *See Echevarria. McCalla, Raymer, Barrett & Frappier v. Cole*, 950 So. 2d 380, 384 (Fla. 2007) ("The litigation privilege applies across the board to actions in Florida, both to common-law causes of action, those initiated pursuant to a statute, or of some other origin."); *Trent*, 618 F. Supp. 2d at 1360 ("The *Echevarria* holding precludes communications attached to or made part of a foreclosure complaint from forming the basis of a FCCPA or FDUTPA claim."). However, to the extent the FCCPA claim is based on communications that did not occur during the course of the judicial proceeding, it is not barred by the litigation privilege. *Trent*, 618 F. Supp. 2d at 1360 ("After detailed review of the *Echevarria* decision and the unsettled state of Florida law on this issue, this Court is unprepared to extend the litigation privilege to pre-suit communications . . . .").

Accordingly, Count 5 is dismissed with prejudice to the extent it is based on the filing of the foreclosure action. The Zaskeys should file a Fourth Amended Counterclaim consistent with this ruling.

---

[4] To the extent the Zaskeys argue that Bank of America's post-foreclosure debt collection proceedings are actionable as a violation of Florida Statute § 559.72(18), this theory is not pled in the Zaskeys' Third Amended Counterclaim and therefore will not be considered by the Court.

iv. **Whether the Zaskeys fail to plead the required scienter for an FCCPA claim under Florida Statute § 559.72(9)**

Fourth, Bank of America argues that with regard to the claim under Florida Statute § 559.72(9), the Zaskeys are required to plead that Bank of America had actual knowledge that the right to enforce the debt is not legitimate, and the Zaskeys have pled only that Bank of America "knew or should have known." DE 81 at 14. Section 559.72(9) provides that, in collecting consumer debts, no person shall "[c]laim, attempt, or threaten to enforce a debt when such person *knows* that the debt is not legitimate, or assert the existence of some other legal right when such person *knows* that the right does not exist." (Emphasis added.) Bank of America is correct that, to prove liability, the Zaskeys will have to show that Bank of America had actual knowledge that the debt was invalid, not merely that Bank of America "should have known." *LeBlanc v. Unifund CCR Partners*, 601 F.3d 1185, 1192 n.12 (11th Cir. 2010) ("In contrast to the FDCPA, Section 559.72(9) of the FCCPA requires a plaintiff to demonstrate that the debt collector defendant possessed *actual knowledge* that the threatened means of enforcing the debt was unavailable."); *see also Kaplan v. Assetcare, Inc.*, 88 F. Supp. 2d 1355, 1363 (S.D. Fla. 2000) ("It is clear that the FCCPA requires an allegation of knowledge or intent by the debt collector in order to state a cause of action.").

The Court finds that the Zaskeys have pled sufficient facts that, taken as true, could demonstrate that Bank of America had actual knowledge of the debt's invalidity. *See* DE 80 at ¶ 94 (alleging that Mr. Zaskey advised Bank of America representatives that the short sale had closed). Thus, the correct remedy for this incorrect pleading in the alternative is not to dismiss the claim but rather to strike the "should have known" language from the Third Amended Counterclaim. *See, e.g., Williams v. Streeps Music, Co., Inc.*, 333 So. 2d 65, 67 (Fla. 4th DCA 1976) ("Since the trial judge did not state his reasons for dismissing the complaint, it may be that the dismissal resulted from the allegation that appellee knew 'or should have known' that the

claim was not legitimate. Section 559.72(9) F.S. requires that the person against whom recovery is sought 'know' the claim is not legitimate. On remand the allegation 'or should have known' should be stricken."). Accordingly, the motion to dismiss Count 5 under the FCCPA is denied, but the Zaskeys should file a Fourth Amended Counterclaim striking the "should have known" language from this count.

### 6. Count 8: Negligence versus Bank of America and Green Tree

The Zaskeys' negligence claim against Bank of America and Green Tree is pled "in the alternative, in the event the Court finds there is no enforceable contract between the parties governing the short sale agreement between the Zaskeys and Bank of America and/or Green Tree." DE 80 at ¶ 144. The Zaskeys allege that Bank of America and Green Tree, as servicers and holders of the note and mortgage, had a duty to exercise reasonable care and skill

> [1] to maintain proper and accurate loan records; [2] to discharge the debt upon receipt of payment from the short sale; as well as [3] take such other actions concerning the accounting and servicing of the underlying loan. These actions include, but not limited to, [4] ensuring the accurate receipt and crediting of the short sale proceeds wired to BANK OF AMERICA by HARBOR TITLE, and if such funds were not received pursuant to the short sale agreement, communicating with its assigned Re/Max realtor, Tony Pino, and HARBOR TITLE, its closing agent, and conducting an investigation as to whether the short sale actually closed, and the location of the short sale proceeds.

*Id.* at ¶ 145. The Zaskeys allege that Bank of America and Green Tree violated these duties by "refusing to take any correct action after learning" that the short sale had taken place, *id.* at ¶ 147, and by:

> (a) failing to properly and accurately credit payments made; (b) preparing and filing false documents alleging a false debt; (c) engaging in harassing and abusive collection efforts and continuing to pursue a debt for which the ZASKEYS were no longer financially responsible; (d) communicating false credit information to various credit reporting bureaus; (e) failing to properly investigate the issues raised by the ZASKEYS concerning the finalized short sale; (f) refusing to accept the wire transfer and attempted wire transfer of the short sale proceeds from HARBOR TITLE; (g) filing this foreclosure action without having the legal authority to do so, as BANK OF AMERICA and GREEN TREE knew or should have known the ZASKEYS were no longer financially responsible for the

> underlying debt which forms the basis of this earlier filed and subsequently dismissed foreclosure action; and (h) executing service of process against the ZASKEYS while they were hosting a social event at their home in front of all their guests, causing the ZASKEYS to suffer the expense, stress, anxiety, embarrassment, emotional distress, and inconvenience of addressing these matters.

*Id.* at ¶ 148.

Bank of America and Green Tree dispute whether they owed any common law duty of care to the Zaskeys, apart from any duties arising under the note, mortgage, or short sale agreement. DE 81 at 18. Notably, the Zaskeys have cited no case from Florida or any other jurisdiction establishing that a lender or servicer owes a borrower a common law duty of care in the servicing of a mortgage loan. In *Burdick v. Bank of America, N.A.*, 99 F. Supp. 3d 1372 (S.D. Fla. 2015), the plaintiff alleged that Bank of America and Green Tree wrongfully charged the plaintiff for force-placed insurance and improperly filed a foreclosure action. *Id.* at 1375. The court dismissed the plaintiff's negligence claims, holding that the claims "should have been brought in contract rather than in Negligence." *Id.* at 1378. The court noted that, for purposes of a negligence claim "the alleged duty cannot stem from a contractual relationship between the parties," and it is "only when the breach of contract action is attended by some additional conduct which amounts to an independent tort that such a breach can constitute negligence." *Id.* (citing *Tiara Condo. Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 408-09 (Fla. 2013)).[5]

---

[5] Other jurisdictions have also rejected the claim that a lender or servicer owes a common law duty of care to a borrower. *See Smith-Tyler v. Bank of Am., N.A.*, 992 F. Supp. 2d 1277, 1284 (N.D. Ga. 2014) (granting summary judgment for Defendant under Georgia law because "Plaintiff has not established a legal duty that was breached by the act of collecting on a satisfied debt. There is no confidential relationship giving rise to a duty between a lender and a borrower"); *Lawrence v. Aurora Loan Servs. LLC*, No. CV F 09-1598 LJO DLB, 2010 WL 364276, at *9 (E.D. Cal. Jan. 25, 2010) (finding that, under California law, "[a]s a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money," and finding that the complaint "lacks facts of special circumstances to impose duties on" the servicer).

The Zaskeys contend that the alleged duty arose "based on the unique facts of this case," that is, that the Zaskeys are alleged to have repeatedly told Bank of America and Green Tree that a short sale had been approved and concluded. *See* DE 92 at 26. These allegations are not sufficient to establish additional conduct that amounts to an independent tort. *Burdick*, 99 F. Supp. 3d at 1372. The Zaskeys also contend that "it is premature to dismiss the negligence count until the parties brief, and this Court decides, the respective contractual obligations between the Zaskeys, Bank of America, and Green Tree." DE 93 at 23-24. The Court disagrees. Regardless of which party bore the duty to follow-up with Harbor Title after it failed to timely wire the short sale proceeds to Bank of America – which is the gravamen of the parties' contractual dispute – this duty arises from and is governed by the parties' contractual relationship and does not give rise to an independent cause of action for negligence. Accordingly, this claim fails to state a claim as a matter of law and is therefore dismissed with prejudice.

## IV.    CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED**:

1.      Bank of America's Motion to Dismiss Counter-Plaintiffs' Third Amended Counterclaim [DE 81] is **GRANTED IN PART** and **DENIED IN PART**.

2.      Green Tree Servicing, LLC's Motion to Dismiss Third Amended Counterclaim [DE 85] is **GRANTED IN PART** and **DENIED IN PART**.

3.      Count 2 for breach of the implied duty of good faith and fair dealing is **DISMISSED WITH PREJUDICE** as to both Bank of America and Green Tree.

4.      Count 6 for violations of the FDCPA is **DISMISSED WITH PREJUDICE** as to Bank of America, but Count 6 remains pending against Green Tree.

5.      Count 8 for negligence is **DISMISSED WITH PREJUDICE** as to both Bank of America and Green Tree.

6.    The following claims remain pending against Bank of America and Green Tree: Count 1 for breach of the short sale agreement against Bank of America; Count 3 for malicious prosecution against Bank of America; Count 4 for violations of FDUTPA against Green Tree; Count 5 for violations of the FCCPA against Bank of America and Green Tree, provided the Zaskeys can amend the claim consistent with this Order; Count 6 for violations of the FDCPA against Green Tree; and Count 7 for violations of RESPA against Green Tree.[6]

7.    On or before **Friday, May 20, 2016**, the Zaskeys should file a Fourth Amended Counterclaim that is consistent with this Order. That is, the counterclaim should: delete the counts that have been dismissed with prejudice; amend Count 5 to avoid relying on the filing of the foreclosure action; and amend Count 5 to delete the "should have known" language related to the claim under Florida Statute § 559.72(9).

8.    Bank of America and Green Tree should file an Answer to the Fourth Amended Counterclaim no later than **Tuesday, May 31, 2016**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 18th day of May, 2016.

Copies furnished to:                     ROBIN L. ROSENBERG
Counsel of record                        UNITED STATES DISTRICT JUDGE

---

[6] Count 9 against Harbor Title and Counts 10 and 11 against Old Republic also remain pending. Harbor Title has not moved to dismiss any of the claims against it. The Court will address Old Republic's motion to dismiss in a separate order.

29