UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 9:15-cv-81325-ROSENBERG/HOPKINS

BANK OF AMERICA, N.A., Successor by
Merger to BAC Home Loans Servicing, LP,
*f/k/a* Countrywide Home Loans Servicing,

    Plaintiff,

v.

GARY L. ZASKEY *a/k/a* GARY LYNN
ZASKEY; LORI A. ZASKEY *a/k/a* LORI
ANN ZASKEY; and BRENDA LYNN ZASKEY,

    Defendants.
_____/

GARY L. ZASKEY and LORI A. ZASKEY,

    Counter-Plaintiffs/Third-Party
    Plaintiffs,

v.

BANK OF AMERICA, N.A.,

    Counter-Defendant,

GREEN TREE SERVICING, LLC;
HARBOR LAND TITLE, L.C., and
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

    Third-Party Defendants.
_____/

**ORDER GRANTING IN PART AND DENYING IN PART
OLD REPUBLIC'S MOTION TO DISMISS**

**THIS CAUSE** comes before the Court on the Motion to Dismiss [DE 82] filed by Old

Republic National Title Insurance Company ("Old Republic"). The Court has reviewed the

1

motion, the response filed by Gary and Lori Zaskey, *see* DE 91, and Old Republic's reply, *see* DE 95. As more fully explained below, the motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.   BACKGROUND

The operative pleading at issue, the Third Amended Counterclaim filed by Gary and Lori Zaskey, alleges the following: After the Zaskeys fell behind on their mortgage payments to Bank of America, a short sale was approved and arranged. *Id.* at ¶¶ 9-11. Harbor Land Title, L.C. ("Harbor Title") acted as the closing agent for the sale. *See* DE 80 at ¶ 12. The closing took place on April 26, 2012. *Id.* at ¶ 16. Pursuant to the short sale agreement between the Zaskeys and Bank of America, the short sale proceeds were supposed to be wired to Bank of America within 48 hours. *See* DE 80-2 at 25. However, Harbor Title failed to successfully wire the short sale proceeds to Bank of America until August 9, 2012. *Id.* at ¶¶ 18-19. Bank of America returned the short sale proceeds to Harbor Title on August 16, 2012. *Id.* at ¶ 19.

Bank of America and Green Tree Servicing, LLC ("Green Tree"), the latter of which began servicing the loan in May 2013, began collection activity against the Zaskeys. *Id.* at ¶¶ 24-29. In September of 2012, Bank of America filed a foreclosure action against the Zaskeys in the Florida Fifteenth Judicial Circuit Court in and for Palm Beach County. *Id.* at ¶ 28(g).

In November 2013—after Bank of America had rejected Harbor Title's belated transfer of the short sale proceeds in August 2012—Harbor Title transferred the short sale proceeds to its title insurer, Old Republic National Title Insurance Company ("Old Republic"). *Id.* at ¶ 163. Old Republic then held the short sale proceeds for about nine months, until August 2014, before transferring the money to Green Tree. *Id.* at ¶ 166. During the time Old Republic was holding the funds, Bank of America and/or Green Tree continued collection activities against the Zaskeys.

2

*Id.* at ¶ 165. Old Republic "had full knowledge the short sale proceeds had not reached either BANK OF AMERICA or GREEN TREE" and "knew, or should have known, that these funds did not belong to OLD REPUBLIC or HARBOR TITLE." *Id.* at ¶¶ 162, 164.

Bank of America eventually voluntarily dismissed its foreclosure claim. However, the Zaskeys filed counterclaims against Bank of America, as well as third-party claims against Harbor Title, Green Tree, and Old Republic. Green Tree removed the Zaskeys' claims to this Court. *See* DE 1.

Counts 10 and 11 of the Third Amended Counterclaim are brought against Old Republic. Count 10 alleges that Old Republic was negligent in its handling of the short sale proceeds between November 2013 and August 2014. *See* DE 80 at ¶¶ 158-68. Count 11 alleges that Old Republic should be held vicariously liable for Harbor Title's negligent failure to timely wire the short sale proceeds to Bank of America. *Id.* at ¶¶ 169-178. Old Republic has moved to dismiss both counts for failure to state a claim. *See* DE 82.

## II.   LEGAL STANDARD

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Although this pleading standard "does not require 'detailed factual allegations,' . . . it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id*. (alteration added) (quoting *Twombly*, 550 U.S. at 555). Pleadings must contain "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555 (citation omitted). Indeed, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Iqbal*, 556 U.S. at 679 (citing *Twombly*, 550 U.S. at 556). To meet this

"plausibility standard," a plaintiff must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678 (alteration added) (citing *Twombly*, 550 U.S. at 556).

### III.   ANALYSIS

**A.   Count 10: Negligence**

The Zaskeys contend that Old Republic "owed a duty of reasonable care and skill to the parties relevant to this transaction when it learned of the unwired short sale proceeds." DE 80 at ¶ 162. They contend that Old Republic breached this duty by: (1) failing to make sufficient, good faith efforts to contact the Zaskeys, the third-party buyers, Bank of America, and Green Tree to advise them that Old Republic was in possession of the short-sale proceeds, *id.* at ¶ 165; (2) failing to ensure that the funds were "immediately and appropriately disbursed" to Bank of America or Green Tree to satisfy the mortgage, *id.* at ¶ 168.

**1.   Whether Old Republic owed a duty to the Zaskeys**

Old Republic argues that Count 10 fails to state a claim because, as a matter of law, it owed no duty to the Zaskeys. *See* DE 82 at 4. Old Republic relies on *Krehling v. Baron*, 900 F. Supp. 1578 (M.D. Fla. 1995), in which the court held that a mortgagee could not bring a negligence claim against title insurance companies for issuing policies that did not reflect unrecorded mortgages held by the mortgagee, because the title insurer owed no duty to the mortgagee:

> Plaintiff does not meet the first requirement of showing that Defendants Fund and Commonwealth owed him a duty of reasonable care. . . . There is no relationship between Plaintiff, holder of an unrecorded mortgage, and Defendants Fund and Commonwealth, who are title insurance companies issuing title insurance commitments to third party purchasers. *Plaintiff was not a party to any of the closings on the sale of units to third party purchasers. Defendants Fund and Commonwealth had a duty only to their insureds*. Plaintiff's negligence claim

4

>against these Defendants must fail, on the basis of the absence of a duty to Plaintiff.

*Id.* at 1582 (emphasis added).

The Zaskeys respond that, although under normal circumstances a title insurer might not owe a common law duty to borrowers or short sale sellers such as the Zaskeys, Old Republic's liability "stems from the fact that it voluntarily accepted the receipt of the sales proceeds, which were intended for Bank of America," and that Old Republic thereby "voluntarily assumed certain duties, in addition to those ordinary contractual duties owed to its insured" through its "own affirmative conduct[.]" DE 91 at 7. The Zaskeys cite Florida case law holding that a common law duty may arise "from the general facts of the case" where "a foreseeable zone of risk aris[es] from the acts of the defendant." *Curd v. Mosaic Fertilizer, LLC*, 39 So. 3d 1216, 1228 (Fla. 2010); *see also Clay Elec. Co-op, Inc. v. Johnson*, 873 So. 2d 1182, 1185-86 (Fla. 2003). The Zaskeys also cite case law in which, they argue, defendants became liable under a negligence theory when they undertook to hold funds belonging to someone else. *See, e.g., Nat'l Title Ins. Co. v. Lakeshore 1 Condo. Ass'n*, 691 So. 2d 1104, 1106 (Fla. Dist. Ct. App. 1997) ("We hold that the [defendant condo] Association, having undertaken to manage the [insurance] proceeds on behalf of unit owners and mortgagees, owed [plaintiff] National, a mortgagee, a duty to use reasonable care in the management of the proceeds. . . . Florida law recognizes that a legal duty arises 'whenever a human endeavor creates a generalized and foreseeable risk of harming others.'").

At this stage of the proceedings, the Court cannot say, as a matter of law, that Old Republic owed no duty to the Zaskeys. When read in the light most favorable to the Zaskeys, the Third Amended Counterclaim alleges that Old Republic knew the nature of the funds it held and that such funds should have been transferred to Bank of America or Green Tree to satisfy the

5

mortgage. In the unique circumstances alleged in this case, Old Republic's failure to timely transfer such funds may have created "a foreseeable zone of risk" that Bank of America or Green Tree would pursue collection activities against the Zaskeys while Old Republic held the funds. *See Curd*, 39 So. 3d at 1228. The Court therefore denies Old Republic's motion to dismiss on this ground. However, this denial is without prejudice to Old Republic re-raising this legal issue at a later stage of the proceedings, when the facts are more fully developed. A more developed factual record will allow the Court to determine whether, under the circumstances of this case, Old Republic's acceptance and retention of the short sale funds created a "foreseeable zone of risk" to the Zaskeys that gave rise to a duty under *Curd* and *Clay*.[1]

## 2. Whether the Zaskeys have sufficiently pled causation

Alternatively, Old Republic argues that the negligence claim should be dismissed because there is no causal link between Old Republic's "alleged 'failure to communicate' and the failure to 'immediately' make the unpaid mortgage disappear, and any possible damages suffered by the Zaskeys[.]" DE 82 at 5. The Court disagrees. Pursuant to the allegations made in the Third Amended Counterclaim, any damages the Zaskeys suffered from the collection activities Bank of America and Green Tree undertook while Old Republic was holding the funds may be attributable, at least in part, to Old Republic. The arguments Old Republic raises—such as that the vast majority of the collection activity occurred before Old Republic received the funds and that forwarding the money to Bank of America would not necessarily have stopped the collection activities—are factual disputes more appropriately raised at a later stage of the proceedings.

---

[1] The Court disagrees with the Zaskeys' assertion that, because the existence of the duty turns on foreseeability, this is a question for the factfinder. *See* DE 91 at 9. Even where the existence of a duty turns on "whether the defendant's conduct foreseeably created a broader 'zone of risk' that poses a general threat of harm to others," the existence of a duty is "a minimal threshold *legal* requirement for opening the courthouse doors[.]" *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992). "Of course, to determine this legal question the court must make inquiry into the factual allegations." *Id.* at 502 n.2. Thus, facts developed at a later stage of the proceedings may aid the Court in determining this issue of law.

## B.        Count 11: Vicarious Liability

The Zaskeys allege that Harbor Title "is the contractual agent of" Old Republic and, pursuant to an agreement between the parties, "is contractually obligated to perform and act with reasonable care as a settlement/closing agent where OLD REPUBLIC issues a title insurance policy for real estate closings managed by HARBOR TITLE." DE 80 at ¶ 171. They allege, upon information and belief, that Harbor Title was acting as an agent of Old Republic when it served as the closing agent in the Zaskeys' short sale. *Id.* at ¶ 172. They allege that Harbor Title negligently failed to ensure that the short sale proceeds were paid to Bank of America in a timely manner, and that Old Republic "as principal and underwriter, is liable for the negligence of its agent," Harbor Title. *Id.* at ¶¶ 175, 177.

Old Republic argues that this claim fails as a matter of law under *Sommers v. Smith & Berman, P.A.*, 637 So. 2d 60 (Fla. Dist. Ct. App. 1994). In *Sommers*, buyers of a piece of residential property believed, based on representations made by the seller and the real estate broker, that the boundary of the lot was further from the house than it actually was. *Id.* at 61. They sued their attorney closing agent for knowing about the misrepresentation, and the title insurance company on the ground that the lawyer was the agent of the title insurer. *Id.* The Florida Fourth District Court of Appeal upheld the trial court's decision to dismiss the claim against the title insurance with prejudice:

> If a title insurance company acts as a "closing agent," then the title insurance company has a duty to conduct the closing in a "reasonably prudent manner." *Askew v. Allstate Title & Abstract Co.,* 603 So.2d 29 (Fla. 2d DCA 1992); *Florida Southern Abstract & Title Co. v. Bjellos,* 346 So.2d 635 (Fla. 2d DCA 1977).
>
> We conclude that this complaint does not allege that Chicago Title was acting as the closing agent. Rather, it alleges that buyers' lawyer was acting as closing agent, and that by virtue of his agency to issue the title insurance policy, Chicago Title became liable for his negligence, notwithstanding there is no defect in the title to the property conveyed and insured by the policy. Buyers cite no authority

7

> to support the proposition that the title insurance company would be liable under these circumstances.

*Sommers v. Smith & Berman, P.A.*, 637 So. 2d 60, 61 (Fla. Dist. Ct. App. 1994). The court cited a Texas case observing, "[T]he fact that a closing agent such as a lawyer or title company might 'wear two hats,' in selling the title insurance and closing the sale, does not make the title insurance company liable for the mishandling of the real estate closing." *Id.* at 62 (quoting *Cameron Cty. Savings Ass'n v. Stewart Title Guaranty Co.*, 819 S.W.2d 600 (Tex. Ct. App. 1991)).

The Zaskeys argue that *Sommers* stands only for the proposition that a title insurer can be liable for "only those acts within the scope of the agency relationship[.]" DE 91 at 12. Here, the Zaskeys argue, *Sommers* is distinguishable because they allege "that Harbor Title was authorized to conduct closings on behalf of Old Republic," and "the scope of that agency relationship includes the process of performing and overseeing real estate closings, in addition to issuing title policies[.]" *Id.* at 12-13. The Zaskeys also note that Old Republic "has not produced its contract with Harbor Title, which may determine the nature of their agency relationship." *Id.* at 13 n.6.

The Court disagrees that *Sommers* can be read so narrowly. *Sommers* stands for the proposition that, under Florida law, unless there is an allegation that the title insurer was acting as the closing agent, the title insurer is not liable for defects in the closing that are unrelated to defects in title. *See Sommers*, 637 So. 2d at 62 (noting Florida Station § 627.786(3), "which authorizes a title insurer to undertake more responsibility in a closing besides issue a title policy"); *see also Charles v. Fla. Foreclosure Placement Center, LLC*, 988 So. 2d1157, 1161 (Fla. Dist. Ct. App. 2008) (finding plaintiff did state a claim for negligence where the "count states that Quantum, a title insurance agency, acted as the closing agent for this 'sale'"). Here, the Zaskeys have not alleged that Old Republic was acting as the closing agent, but simply that

8

Old Republic should be liable for the acts of the closing agent, Harbor Title. *See* DE 80 at ¶¶ 169-78. Accordingly, this count is dismissed with prejudice.

### IV.   CONCLUSION

Based on the foregoing, it is hereby **ORDERED AND ADJUDGED** that:

1. Old Republic's Motion to Dismiss [DE 82] is **GRANTED IN PART** and **DENIED IN PART**.

2. As to Count 10 of the Third Amended Counterclaim, the motion is **DENIED**. However, Old Republic may re-raise the issue of whether the circumstances of this case created a "foreseeable zone of risk" giving rise to a legal duty to the Zaskeys, at a later stage of the proceedings when the factual record is more fully developed.

3. As to Count 11 of the Third Amended Counterclaim, the motion is **GRANTED** and the vicarious liability claim is **DISMISSED WITH PREJUDICE**.

4. On or before **Friday, May 20, 2016**, the Zaskeys should file a Fourth Amended Counterclaim that is consistent with this Order.

5. Old Republic should file an Answer to the Zaskeys' Fourth Amended Counterclaim no later than **Tuesday, May 31, 2016**.

**DONE AND ORDERED** in Chambers, Fort Pierce, Florida, this 18th day of May, 2016.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to:
Counsel of record