## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### CASE NO. 9:15-cv-81325

BANK OF AMERICA, N.A., Successor by
Merger to BAC Home Loans Servicing LP,
f/k/a Countrywide Home Loans Servicing,

      Plaintiff,

v.

GARY L. ZASKEY A/K/A GARY LYNN
ZASKEY; LORI A. ZASKEY A/K/A
LORI ANN ZASKEY; BRENDA LYNN
ZASKEY; UNKNOWN SPOUSE OF
BRENDA LYNN ZASKEY, *et al.*,

      Defendants.
_____/

GARY L. ZASKEY and LORI A.
ZASKEY,

      Counter-Plaintiffs/ Third-Party
      Plaintiffs,

v.

BANK OF AMERICA, N.A., GREEN
TREE SERVICING, LLC n/k/a DITECH
FINANCIAL LLC; HARBOR LAND
TITLE, L.C.; and OLD REPUBLIC
NATIONAL TITLE INSURANCE
COMPANY,

      Counter-Defendants / Third-Party
      Defendants.
_____/

### DEFENDANT GREEN TREE SERVICING, LLC N/K/A DITECH
### FINANCIAL LLC'S MOTION FOR SUMMARY FINAL JUDGMENT
### AND INCLUDED MEMORANDUM OF LAW

Defendant GREEN TREE SERVICING, LLC n/k/a DITECH FINANCIAL LLC
("Defendant" or "Green Tree"), pursuant to Fed. R. Civ. P. 56, hereby moves for summary
judgment in its favor and against Plaintiffs GARY L. ZASKEY and LORI A. ZASKEY
(collectively, "Plaintiffs" or the "Zaskeys").

<u>SUMMARY OF MATERIAL FACTS AND ARGUMENT</u>

In this action, Plaintiffs' primary contention is that the prior servicer of their mortgage loan (the "Loan"), Bank of America, N.A., as successor by merger to BAC Home Loans Servicing LP ("BOA"), conditionally approved a short sale of their mortgaged property (the "Mortgaged Property") in March 2012 and then allegedly breached that short sale agreement by refusing to accept the proceeds from an April 27, 2012 short sale of the Mortgaged Property in full satisfaction of the Loan.   (*DE 142, Fourth Amended Third-Party Complaint (the "Complaint") at ¶¶ 9-23*)  Plaintiffs then complain that first BOA, and then Green Tree, as the new servicer of Plaintiffs' Loan effective May 1, 2013, violated various statutes by continuing to try to collect the debt which Plaintiffs contend both BOA and Green Tree allegedly knew had been satisfied as a result of the April 2012 short sale.  (*DE 142, Complaint at ¶¶ 24-47*)

The entire premise of Plaintiffs' Complaint against Green Tree (and BOA), however, is without merit because the April 2012 short sale was unauthorized and did not close with BOA's final approval.  (*DE 202, SOF[1] at ¶¶ 14-25*)  In order to close the short sale, Plaintiffs and their closing agent[2] were first required to satisfy various conditions, after which BOA would provide its final approval to complete the conditionally-approved short sale.  *Id. at ¶¶ 14-15*.  Moreover, BOA expressly advised Plaintiffs that, "[i]f the terms and conditions of the short sale approval are not met, we will cancel the approval of this offer and continue the foreclosure process as permitted by the mortgage documents." *Id. at ¶¶ 14-15*.

That said, Plaintiffs failed to satisfy all of the required conditions for the conditionally-approved short sale.  (*DE 202, SOF at ¶¶ 16-25*)  For example, Plaintiffs and their closing agent failed to: (i) upload a certified copy of the final estimated HUD-1 Settlement Statement into

---

[1]     "SOF" refers to Green Tree's Statement of Material Facts filed in this action on July 8, 2016 at DE 202.

[2]     Plaintiffs attempt in this action to argue that the real estate agent, RE/MAX, and the closing agent, Harbor Land Title, for the April 2012 short sale at issue was not their agents, but BOA's agents.  This argument is without merit.  Plaintiffs themselves elected to retain RE/MAX, who in turn retained Harbor Land Title.  (*DE 202, SOF at ¶¶ 9-13*)  Further, Plaintiffs admitted that they understood at the time of the April 2012 short sale that the closing agent, Harbor Land Title, was communicating with BOA on their behalf.  *Id. at ¶ 13*.  In addition, Green Tree anticipates that BOA will also raise arguments in its motion for summary judgment that show that the real estate agent and the closing agent were Plaintiffs' agents, not BOA's agents, and Green Tree joins in these arguments.

BOA's short sale system 72 hours prior to the April 27, 2012 short sale closing date; (ii) obtain BOA's final approval of the closing costs prior to the April 27, 2012 short sale closing date; (iii) wire the short sale payoff funds to BOA within 48 business hours of the April 27, 2012 HUD-1 settlement date (instead the short sale payoff funds were first wired to BOA many months later on August 9, 2012, after the conditionally-approved short sale had already been declined by BOA); and (iv) upload a certified copy of the Final HUD-1 Settlement Statement into BOA's short sale system at the time of closing. *Id. at ¶¶ 16-23*. BOA thus did the very thing it had advised Plaintiffs it would do if the conditions for the conditionally-approved short sale were not met – it cancelled the approval of the short sale offer, sent a letter to Plaintiffs declining the conditionally-approved short sale on June 27, 2012, and continued the foreclosure process by filing a foreclosure action against Plaintiffs in September 2012. *Id. at ¶¶ 16-26*. There was therefore no authorized short sale of the Mortgaged Property, despite Plaintiffs' claim to the contrary. *Id. at ¶¶ 14-25*.

Further, even if the required conditions of the short sale had been met by Plaintiffs and BOA should have accepted the payoff funds from the April 2012 short sale in full satisfaction of Plaintiffs' debt, Green Tree never knew, nor should have known, this to be the case. (*DE 202, SOF at ¶¶ 29-43*) This is because, among other reasons, (i) BOA did not advise Green Tree that there had been an approved short sale that had closed or that an approved short sale was pending at the time of the May 2013 servicing transfer, as BOA was required to do; (ii)  BOA did not provide Green Tree at the time of the May 2013 servicing transfer with any documents or other data indicating that an approved short sale had closed or that BOA had received the proceeds from an April 2012 short sale of the Mortgaged Property; and (iii) after Green Tree was first made aware of the April 2012 short sale, BOA repeatedly advised Green Tree that there had not been any approved short sale of the Mortgaged Property and that the April 2012 short sale was not authorized. *Id. at ¶¶ 32-43*.

Despite the foregoing, Plaintiffs nevertheless have asserted claims against Green Tree for alleged violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA"), the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55, *et seq.* ("FCCPA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*,

("RESPA"), all based on Green Tree's alleged debt collecting activities after it began servicing Plaintiffs' Loan in May 2013.  (*DE 142, Complaint at Counts IV-VII, ¶¶ 90-154*)

Plaintiffs' claims are without factual or legal merit, and thus summary judgment should be entered on such claims against Plaintiffs and in Green Tree's favor.

First, summary judgment should be entered against Plaintiffs and in favor of Green Tree on Plaintiff's FDUTPA claim for the following reasons:

(i)   Because the Loan had not been satisfied as a result of the unauthorized April 2012 short sale, Green Tree was authorized under the Mortgage to purchase lender-placed insurance ("LPI") for Plaintiffs' Mortgaged Property in light of the fact that Plaintiffs failed to maintain any insurance on the Mortgaged Property.

(ii)  Even if the April 2012 short sale had been authorized, Green Tree still did not violate FDUTPA by engaging in any deceptive or unfair act when it purchased the LPI at issue because Green Tree never knew, nor should have known, that the short sale was authorized and the Loan was satisfied.

(iii) Even if Green Tree did violate FDUTPA when it purchased the LPI at issue, summary judgment should still be entered in Green Tree's favor on Plaintiffs' FDUTPA claim because Plaintiffs did not suffer any actual damages as a result of Green Tree's alleged violation (as Plaintiffs never paid or reimbursed Green Tree for the LPI at issue).

Second, summary judgment should be entered against Plaintiffs and in favor of Green Tree on Plaintiff's FDCPA claim for the following reasons:

(i)   The FDCPA is inapplicable because Plaintiffs' Loan was not for personal purposes, but instead for business purposes, as the Mortgaged Property was being used as a rental property at the time the Loan was originated.

(ii)  Plaintiffs' FDCPA claim based on any alleged violations that occurred prior to June 15, 2014 are barred by the applicable 1-year statute of limitations insofar as Plaintiffs did not file their third-party complaint against Green Tree until June 15, 2015.

(iii) Plaintiffs' FDCPA claims based on any written correspondence that Green Tree sent to Plaintiffs after December 6, 2013 is without merit because none of Green Tree's written correspondence after December 6, 2013 was sent in connection with the collection of a debt.

(iv)  Plaintiffs' FDCPA claim based on Green Tree's alleged May 2013 violation of 15 U.S.C. § 1692f(1) is without merit because the only amounts that Green Tree ever attempted to collect from Plaintiffs were outstanding principal, interest, late charges, escrow advances, and attorney's fees, which amounts were all expressly authorized by the Note and Mortgage.

(iv)   Plaintiffs' FDCPA claim based on Green Tree's alleged violations of 15 U.S.C. § 1692d and 15 U.S.C. § 1692e for allegedly "continuing to pursue collection of a disputed debt for which [Plaintiffs] had no financial responsibility" and allegedly reporting false information to the credit reporting agencies about the debt, respectively, are without merit because the April 2012 short sale was unauthorized and thus Plaintiffs were still responsible for the Loan.

Third, summary judgment should be entered against Plaintiffs and in favor of Green Tree on Plaintiff's FCCPA claim for the following reasons:

(i)   The FCCPA is inapplicable because Plaintiffs' Loan was not for personal purposes, but instead for business purposes, as the Mortgaged Property was being used as a rental property at the time the Loan was originated.

(ii)   Plaintiffs' FCCPA claim based on any alleged violations that occurred prior to June 15, 2013 are barred by the applicable 2-year statute of limitations insofar as Plaintiffs did not file their third-party complaint against Green Tree until June 15, 2015.

(iii)   Plaintiffs' FCCPA claim based on Green Tree's alleged violation of Fla. Stat. § 559.72(7) is without merit because Green Tree's telephone calls (of which there were only seven) and correspondence to Plaintiffs over the approximate sixteen months that Green Tree serviced Plaintiffs' Loan were not with such frequency or with such purpose as can reasonably be expected to abuse or harass the debtor.

(iv)   Plaintiffs' FCCPA claim based on Green Tree's mailing of certain letters advising Plaintiffs of (i) the name of their new account representative, (ii) their right to cure the default and their loss mitigation options following the February 2014 lifting of a bankruptcy stay, (iii) Green Tree's / Fannnie's August 2014 decision to accept the funds from the unauthorized April 2012 short sale in full satisfaction of the Loan, and (iv) the need for insurance and Green Tree's purchase of LPI is without merit because these letters were not sent in connection with the collection of a debt.

(v)   Plaintiffs' FCCPA claim based on Green Tree's alleged violation of Fla. Stat. § 559.72(9) for attempting to collect a debt which Green Tree allegedly knew was not legitimate is without merit because Green Tree did not know that the debt at issue was not legitimate.

(vi)   Plaintiffs' FCCPA claim based on the information that Green Tree furnished (or did not furnish) to the credit reporting agencies is preempted by the Fair Credit Reporting Act, 15 U.S.C. §§ 1681, *et seq.* ("FCRA")

Fourth, summary judgment should be entered against Plaintiffs and in favor of Green Tree on Plaintiff's RESPA claim for the following reasons:

(i)   RESPA does not apply to the Loan because the Mortgaged Property was non-owner-occupied rental property at the time the Loan was originated.

(ii)   Plaintiffs did not send the purported qualified written requests at issue to the specific address that Green Tree had advised Plaintiffs in writing they must use and thus Plaintiffs' correspondence did not trigger Green Tree's duties under RESPA.

<u>ARGUMENT</u>

## I.   <u>Standard For Motion For Summary Judgment</u>

A motion for summary judgment shall be rendered if the pleadings, depositions, answer to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c).

## II.   <u>Summary Judgment Should Be Entered In Green Tree's Favor On Plaintiffs' FDUTPA Claim</u>

In Count IV of Plaintiffs' Complaint, Plaintiffs have asserted a claim against Green Tree for alleged FDUTPA violations based on their contention that Green Tree violated FDUTPA when it allegedly "improperly sought and obtained lender-placed insurance in the Zaskeys' name, on a Property the Zaskeys no longer owned … in order to increase the balance owed by the Zaskeys." *See Complaint [D.E. 142] at Count IV, ¶¶ 97-98.* Summary judgment should be entered in Green Tree's favor on Plaintiffs' FDUTPA claim.

<u>First</u>, Green Tree did not act improperly when it purchased lender-placed insurance for Plaintiffs' mortgaged property. Despite Plaintiffs' mistaken belief to the contrary, the attempted short sale of the Mortgaged Property in April 2012 did not close with BOA's final approval and thus was unauthorized by BOA. (*DE 202, SOF at ¶¶ 14-25*) As such, Plaintiffs' Loan was not satisfied at the time that Green Tree began servicing the Loan effective May 1, 2013. *Id. at ¶¶ 6-8, 16-25, and 29-31.* That said, during the entire time that Green Tree serviced Plaintiffs' Loan from May 1, 2013 through the time that the Loan was satisfied in 2014, Plaintiffs were in default on the Loan, did not make any payments to Green Tree, and did not purchase or pay for any insurance for the Mortgaged Property. *Id. at ¶¶ 6-8, 29-31, and 70-73.* Green Tree therefore was authorized under the terms of Plaintiffs' Mortgage to purchase lender-placed insurance on the Mortgage Property during the time that it was servicing the Loan. *Id. at ¶ 70* (quoting Mortgage: "Borrower shall keep the improvements now existing or hereafter erected on the Property insured … If Borrower fails to maintain any of the coverages described above, Lender may obtain insurance coverage, at Lender's option and Borrower's expense.").

<u>Second</u>, even if the Court were to agree with Plaintiffs that the short sale should have

been authorized by BOA and that BOA should have accepted the Net Proceeds from the sale in August 2012 in satisfaction of the Loan, summary judgment should still be entered in Green Tree's favor on Plaintiffs' FDUTPA claim.  FDUTPA is intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce."  _See Rollins, Inc. v. Butland_, 951 So. 2d 860, 869 (Fla. 2nd DCA 2006) (citations omitted).  A deceptive practice is one that is "likely to mislead" consumers, and an unfair practice is "one that 'offends established public policy' and one that is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'"  _Id._ (citations omitted).

Thus, in a consumer claim for damages under FDUTPA, a consumer has to prove, among other things, a deceptive act or unfair practice.  _Id._  Here, however, Green Tree did not engage in any deceptive act or unfair practice.  Instead, Green Tree merely engaged in the act of purchasing the lender-placed insurance at issue, which it was permitted to do under the Mortgage and required to do in order to protect the interests of the owner of the Loan, Fannie Mae.  Green Tree did not know nor should it have known that there had allegedly been an authorized short sale of the Mortgaged Property in April 2012 and that the Loan should have been satisfied, negating any need for the lender-placed insurance.  (_DE 202, SOF at ¶¶ 14-25 and 29-43_)  Rather, all of the information that had been provided to Green Tree by BOA showed that BOA had declined the conditionally-approved short sale.  This information included, among other things, the following:

(i)    BOA did not apprise Green Tree of the April 2012 short sale at the time of servicing transfer, as BOA was required to do for any loss mitigation agreements in process.  (_DE 202, SOF at ¶ 32_);

(ii)   the loan payment history that Green Tree had received from BOA did not have any record of BOA having ever received and returned the Net Proceeds from the April 2012 sale.  (_DE 202, SOF at ¶ 33_);

(iii)  the documents that Green Tree received from BOA at the time of servicing transfer did not include any documents regarding the April 2012 short sale.  (_DE 202, SOF at ¶ 33_);

(iv)   the documents that Green Tree received from BOA at the time of servicing transfer did include an October 30, 2012 reinstatement calculation in the amount of $26,769.50 that indicated to Green Tree that the April 2012 short sale never closed. (_DE 202, SOF at ¶ 37_);

(v)    BOA advised Green Tree in December 2013 that "There was no completed Short

Sale processed by [BOA]". (*DE 202, SOF at ¶ 40)*; and

(vi) when Green Tree again followed up with BOA about a possible short sale in April 2012, BOA advised Green Tree in July 2014 that BOA had "declined the short sale for [Plaintiffs'] account [that it had conditionally approved in March 2012], decline was due to: Supporting Documents Not Received in 14 days" and provided Green Tree with a copy of the decline letter. (*DE 202, SOF at ¶¶ 41-42).*

Moreover, the information provided to Green Tree by Plaintiffs and their closing agent, Harbor Title, did not prove that the April 2012 short sale had been authorized by BOA. Instead, the March 2012 Short Sale Approval Letter showed only that BOA had conditionally approved a short sale in March 2012, not that the conditions set forth therein had been met or that BOA had given its final approval for the sale. Similarly, the HUD-1 Settlement Statement from the April 2012 sale and the Warranty Deed from Plaintiffs to the buyers showed only that the sale had occurred, not that the conditions set forth in BOA's March 2012 Short Sale Approval Letter had been satisfied or that BOA had given its final approval for the sale.

Therefore, because Green Tree did not know nor should it have known that there had been an authorized short sale of the Mortgaged Property in April 2012 and that the Loan should have been satisfied, negating any need for the lender-placed insurance, Green Tree did not engage in any misleading act or any "immoral, unethical, oppressive, unscrupulous or substantially injurious" practice that offends established public policy when it purchased the lender-placed insurance at issue. Instead, Green Tree was merely doing what was permitted under the Mortgage and required to protect the interests of the Loan's owner, Fannie Mae.

<u>Third</u>, even if Green Tree did engage in a deceptive act or unfair practice, summary judgment should still be entered in Green Tree's favor on Plaintiffs' FDUTPA claim because Plaintiffs have not suffered any actual damages as a result of Green Tree's alleged FDUTPA violation. FDUTPA provides that "In any action brought by a person who has suffered a loss as a result of a violation of this party, such person may recover *actual damages*, plus attorney's fees and court costs …" Fla. Stat. § 501.211(2) (emphasis added). "Actual damages", in turn, are defined in the context of FDUTPA as "the difference in the market value of the product or service in the condition in which it was delivered and its market value in the condition in which it should have been delivered according to the contract of the parties." *Rodriguez v. Recovery Performance & Marine, LLC*, 38 So. 3d 178, 180 (Fla. 3d DCA 2010) (citations omitted). Further, under FDUTPA, the term "actual damages" does not include special or consequential

damages.  *Id.* at 180 (citations omitted); *see also Smith v. 2001 S. Dixie Highway, Inc.*, 872 So. 2d. 992, 994 (Fla. 4th DCA 2004)(where plaintiff improperly sought consequential damages in her FDUTPA claim rather than actual damages in relation to the value of the car she purchased, dismissal with prejudice was proper).

Here, Plaintiffs have not suffered any "actual damages" with regard to the lender-placed insurance that Green Tree purchased for Plaintiffs' Mortgaged Property after May 1, 2013.  This is because, by their own admission, Plaintiffs have never made any payment to Green Tree since Green Tree first began servicing the Loan in May 2013 and have not incurred any "out of pocket" costs / damages associated with the lender-placed insurance at issue.  (*DE 202, SOF at ¶ 71)*; *see also (DE 183, Gary Dep. at 345:22-346:19) (where Plaintiffs admit that they never purchased any insurance for the Mortgaged Property after May 2013, and never repaid Green Tree or "came out of pocket any money" for any insurance Green Tree purchased for the Mortgaged Property).*  Summary judgment should therefore be entered in Green Tree's favor on Plaintiffs' FDUTPA claim.  *See Rodriguez*, 38 So. 3d at 180 (affirming entry of summary judgment in defendant's favor on plaintiff's FDUTPA claim because plaintiff failed to provide any evidence that she incurred any "actual damages"); *see also Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 7 (Fla. 3d DCA 2009) (affirming entry of summary judgment in defendant's favor on plaintiff's FDUTPA claim because plaintiff's alleged injury suffered to his credit reputation constituted consequential damages, not actual damages).

## III.   Summary Judgment Should Be Entered In Green Tree's Favor On Plaintiffs' FDCPA Claim

In Count VI of Plaintiffs' Complaint, Plaintiffs have asserted a claim against Green Tree for various alleged FDCPA violations.  *See Complaint [D.E. 142] at Count VI, ¶¶ 120-144*. Summary judgment should be entered in Green Tree's favor on Plaintiffs' FDCPA claim.

First, summary judgment should be entered in Green Tree's favor on Plaintiffs' FDCPA claim because Plaintiffs incurred the mortgage debt at issue after they had converted the Mortgaged Property to a rental property and thus the debt did not arise for personal purposes as required under the FDCPA.  To explain, the FDCPA defines a debt as "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes." *Zwicky v. Carlson & Associates, Ltd.*, 2011 WL 6203058, *1 (D. Minn.

Dec. 3, 2011) (*quoting* 15 U.S.C. § 1692a(5)).  Thus, to state a claim under the FDCPA, the debt at issue must arise for personal, not business, purposes.  *Id*.  Moreover, the relevant time for determining the nature of the debt is when the debt first arises.  *Id*. (*citing Miller v. McCalla, Raymer, Padrick, Cobb, Nichols & Clark, L.L.C.*, 214 F.3d 872, 874 (7th Cir. 2000)).

In *Zwicky*, the plaintiff asserted a FDCPA claim against the defendant based on a debt that arose out of a rental property that the plaintiff owned.  *Zwicky*, 2011 WL 6203058.  The defendant moved for summary judgment on the plaintiff's FDCPA claim, arguing that, because the property at issue was a rental property, the debt did not arise for personal purposes, but instead for business purposes, and thus the FDCPA did not apply.  *Id*.  In response, the plaintiff argued that the debt was, in fact, for personal purposes because the plaintiff had originally lived at the property at issue when he purchased it, and only later began operating the property as a rental property when he had moved out.  *Id*.  The court, however, rejected the plaintiff's argument and held that the debt was not for personal purposes, but instead for business purposes, because the debt arose after the plaintiff had converted the property to a rental property.  *Id*. at *2.  As such, the court held that the FDCPA did not apply to the debt at issue and entered summary judgment in the defendant's favor.  *Id*.

The same relevant facts are present here.  Plaintiff Gary Zaskey purchased the Mortgaged Property in the 1970s, but then moved out of the Mortgaged Property in 1983.  (*DE 202, SOF at ¶¶ 4-5)*  Thereafter, Plaintiff Gary Zaskey operated the Mortgaged Property as a rental property and was doing so at the time that the Loan was obtained in 2006.  *Id*.  The debt at issue, the Loan, therefore is not for personal purposes, but instead for business purposes.[3]  As such, the FDCPA does not apply to the Loan, and summary judgment should be entered in Green Tree's favor.

---

[3]      Plaintiff may claim that the Mortgaged Property was not always occupied and that his tenants did not always make their monthly rent payments in full or in part.  However, the fact that Plaintiffs may not have always been successful in renting the Mortgaged Property and/or collecting the full amount of the rent due from his tenants does not change this result.  *See Forgeron v. Hough*, 2011 WL 3205295, *5 (N.D. Ill. July 26, 2011) (dismissing plaintiff's FDCPA action after rejecting plaintiff's argument that the debt he had incurred in renting a car to pursue his musical career was not for business purposes because "he was only pursuing music 'as a hobby'";  "Regardless of the past nature of [plaintiff's] musical interests – in other words, 'hobby' or not – at the time [plaintiff] rented the car …, he was seeking to transform that hobby into a remunerative enterprise.  That he did not succeed is irrelevant.").

Second, summary judgment should be entered in Green Tree's favor on Plaintiffs' FDCPA claim to the extent that such claim is based on Green Tree's alleged violation of 15 U.S.C. § 1692g(b). *See Complaint [D.E. 142] at Count VI, ¶* 138.  Section 1692g(b) provides that, if the consumer notifies the debt collector in writing within thirty days of receiving the debt collector's debt validation letter that the debt is disputed, the debt collector shall cease collection of the debt until the debt collector obtains verification of the debt and the verification is mailed to the consumer.  Here, Plaintiffs contend that, in May 2013, they advised Green Tree in writing that they disputed the debt and that Green Tree nevertheless thereafter engaged in debt collection activities starting in May, June and July 2013.  Plaintiffs, however, did not file their third party complaint against Green Tree until June 15, 2015 (when Plaintiffs obtained an order granting its motion for leave to file the third party complaint against Green Tree).  *(DE 202, SOF at ¶ 76)* Plaintiffs' FDCPA claim based on Green Tree's alleged violation of Section 1692g(b) therefore is barred by the 1-year statute of limitations as they did not file their third party complaint against Green Tree within one year of Green Tree's alleged violation of this statutory section.  15 U.S.C. § 1692k(d) (requiring that any FDCPA action must be brought within one year from the date on which the violation occurs).[4]

---

[4]    The Court previously indicated that it would leave the issue of whether Plaintiffs' claims against Green Tree related back to Plaintiffs' originally filed counterclaim against BOA for "a later stage in the proceedings."  *See Court's Order on Green Tree's Motion to Dismiss [DE 127] at page 7, fn. 1.*  In so doing, the Court cited to the case of *Williams v. Grieg Shipping A/S*, 219 F.R.D. 537, 538 (S.D. Ala. 2003) as one "laying out the three-part test that an amendment adding a new party must meet to relate back to the original pleading, for statute of limitations purposes").  Respectfully, the *Williams* case is inapplicable because the *Williams* case involved a plaintiff's attempt to substitute a new defendant in place of an existing defendant in order to correct a mistake about the identity of the defendant.  *Id.* at 538-539.

Here, by contrast, Plaintiffs are not seeking to substitute Green Tree in place of BOA to correct a mistake of identity, but instead seeking to add Green Tree as an additional new defendant a couple of years after Plaintiffs were first made aware of Green Tree's existence in May 2013.  The 11th Circuit has held that the relation back doctrine does not apply under such circumstances, where the plaintiffs knew or should have known about the existence of the new defendant but elected not to sue the defendant.  *See Powers v. Graff*, 148 F.3d 1223, 1225-1228 (11th Cir. 1998) (holding that the relation-back doctrine only applies to a newly added defendant where the plaintiff is seeking to substitute the new defendant for an existing defendant to correct the problem of a misnamed defendant; it does not apply though to a plaintiff who was fully aware of the potential defendant's identity but not of its responsibility for the alleged harm); *see also Stewart v, Bureaus Investment Group, LLC*, 309 F.R.D. 654, 661 (M.D. Ala. 2015) (holding (cont.)

Third, summary judgment should be entered in Green Tree's favor on Plaintiffs' FDCPA claim to the extent that such claim is based on Green Tree's alleged violation of 15 U.S.C. § 1692f(1) (the "FDCPA Section 1692f(1) Claim"). *See Complaint [D.E. 142] at Count VI, ¶* 137. Section 1692f(1) provides that a debt collector violates the FDCPA by collecting any amount unless such amount is expressly authorized by the agreement creating the debt. Here, the only amounts that Green Tree ever attempted to collect from Plaintiffs are outstanding principal, interest, late charges, escrow advances, and attorney's fees. (*DE 202, SOF at ¶ 68*) All of these amounts are expressly authorized by the Note and Mortgage, and thus Green Tree's attempts to collect same did not violate Section 1692f(1) of the FDCPA. *Id.* Further, Plaintiffs' only argument to the contrary -- that the debt had allegedly previously been satisfied as a result of the April 2012 sale and thus the amounts at issue were not authorized – is without merit. This is because, as has been shown above, the April 2012 sale of the Mortgaged Property was not authorized and BOA did not give its final approval for the closing of the short sale as was required under the March 2012 Short Sale Approval Letter. (*DE 202, SOF at ¶¶ 14-25*) The Loan therefore had not been satisfied at the time that Green Tree attempted to collect the debt from Plaintiffs.

Moreover, even if the Loan had been satisfied by the April 2012 sale, summary judgment should still be entered in Green Tree's favor on Plaintiffs' FDCPA Section 1692f(1) Claim with regard to any alleged collection efforts made by Green Tree prior to June 15, 2014. This is because Plaintiffs first filed their third party complaint against Green Tree on June 15, 2015 and thus any claims based on any collection efforts made prior to June 15, 2014 are time-barred by the applicable 1-year statute of limitations under the FDCPA. *See* 15 U.S.C. § 1692k(d).

In addition, summary judgment should also be entered in Green Tree's favor on the FDCPA Section 1692f(1) Claim with regard to any communications made by Green Tree to Plaintiffs after December 6, 2013 because all such communications were not made by Green Tree in connection with the collection of a debt. In order to prevail on an FDCPA claim, a plaintiff must prove that, among other things, the plaintiff has been the object of collection

---

that "the relation-back doctrine does not apply in instances where a plaintiff attempts to join entirely new defendants in addition to existing defendants"). As such, Plaintiffs' third party complaint against Green Tree does not relate back to the filing of Plaintiffs' Counterclaim against BOA.

activity arising from consumer debt.  *See Hasbun v. Recontrust Co., N.A.*, 2011 WL 3837158, *2 (S.D. Fla. August 24, 2011).

Here, Green Tree did not make any telephone calls to Plaintiffs after December 6, 2013, and never sent Plaintiffs any monthly billing statements.  (*DE 202, SOF at ¶¶ 52-59 and 66*) Further, none of the correspondence that Green Tree sent to Plaintiffs after December 6, 2013 were sent in connection with the collection of a debt.  This is because Plaintiffs filed for bankruptcy protection on December 6, 2013 (*see DE 184 at ¶ 1 and Ex. A*), and, as a result, the letters that Green Tree sent to Plaintiffs after December 6, 2013 expressly advised Plaintiffs that they were not intended as an attempt to collect a debt from them personally and were instead sent only for informational purposes and/or for purposes of foreclosing on the Mortgaged Property. (*DE 198, GT Aff. at ¶ 39 and Comp. Ex. L*).  For example, Green Tree's post-December 6, 2013 letters advised Plaintiffs:

> **THIS IS NOT A BILL.  THIS STATEMENT IS FOR INFORMATIONAL PURPOSES ONLY.  If you filed bankruptcy, this notice is not an attempt to collect a debt, but instead allows the creditor to comply with statutory notice requirements.**;
>
> **If you filed bankruptcy or obtained a discharge in bankruptcy, this communication is not intended as an attempt to collect a debt from your personally.  You therefore have no personal obligation to pay on this account.  …**; and
>
> **THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT.  IF YOU ARE CURRENTLY IN BANKRUPTCY OR YORU ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS YOUR PERSONAL LIABILITY.**

(*DE 198, GT Aff. at Comp. Ex. L*) (bold and all caps in originals).  As such, Green Tree's post-December 6, 2013 letters containing these notices to Plaintiffs that they were not sent in connection with the collection of a debt are not actionable under the FDCPA.  *See, e.g., Helman v. Udren Law Offices, P.C.*, 2014 WL 7781199, *6 (S.D. Fla. Dec. 18, 2014) (holding that defendant's monthly statements did not constitute debt collection activity under the FDCPA because they expressly advised the plaintiff as follows: "This statement is sent for informational purposes only and is not intended as an attempt to collect, assess, or recover a discharged debt from you …  If this account is active or has been discharged in a bankruptcy proceeding, be

advised this communication is for informational purposes only and is not an attempt to collect upon a debt").

Fourth, summary judgment should be entered in Green Tree's favor on Plaintiffs' FDCPA claim to the extent that such claim is based on Green Tree's alleged violation of 15 U.S.C. § 1692d (the "FDCPA Section 1692d Claim"). *See Complaint [D.E. 142] at Count VI, ¶* 140. Section 1692d provides that a debt collector violates the FDCPA if it engages in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt, such as threatening violence, using profane language, making continuous telephone calls, etc. Here, Plaintiffs allege only that Green Tree violated Section § 1692d by "continuing to pursue collection of a disputed debt for which [Plaintiffs] had no financial responsibility." *See Complaint [D.E. 142] at Count VI, ¶* 140. Thus, this claim is once again based on Plaintiffs' contention that the debt had allegedly previously been satisfied as a result of the April 2012 sale. However, as has been shown above, this contention is without merit because the April 2012 sale of the Mortgaged Property was not authorized and BOA did not give its final approval for the closing of the short sale as was required under the March 2012 Short Sale Approval Letter. *(DE 202, SOF at ¶¶ 14-25)* The Loan therefore had not been satisfied at the time that Green Tree attempted to collect the debt from Plaintiffs. *(DE 202, SOF at ¶¶ 6-8, 16-25, and 29-31).*

Moreover, even if the Loan had been satisfied by the April 2012 sale, summary judgment should still be entered in Green Tree's favor on Plaintiffs' FDCPA Section 1692d Claim for the same reasons set forth above with respect to Plaintiffs' FDCPA Section 1692f(1) Claim – namely, that (i) any portion of Plaintiffs' FDCPA Section 1692d Claim that is based on any collection efforts made by Green Tree prior to June 15, 2014 are time-barred by the applicable 1-year statute of limitations under the FDCPA; and (ii) any portion of Plaintiffs' FDCPA Section 1692d Claim that is based on any communications made by Green Tree after December 6, 2013 are not actionable under the FDCPA because they were not made by Green Tree in connection with the collection of a debt. *See Pages 12-14, above.*

Fifth, summary judgment should be entered in Green Tree's favor on Plaintiffs' FDCPA claim to the extent that such claim is based on Green Tree's alleged violation of 15 U.S.C. § 1692e (the "FDCPA Section 1692e Claim"). *See Complaint [D.E. 142] at Count VI, ¶¶ 141-*142. In their FDCPA Section 1692e Claim, Plaintiffs allege that Green Tree violated this

particular statutory section by allegedly reporting misleading information to the credit reporting agencies about the debt. *Id.* This claim too is based on Plaintiffs' contention that the debt had allegedly previously been satisfied as a result of the April 2012 short sale, and thus Green Tree's reporting that the Loan was in foreclosure and/or in bankruptcy was misleading. However, this contention is without merit because the April 2012 sale of the Mortgaged Property was not authorized and BOA did not give its final approval for the closing of the short sale as was required under the March 2012 Short Sale Approval Letter. *(DE 202, SOF at ¶¶ 14-25)* The Loan then had not been satisfied at the time that Green Tree reported the debt to the credit reporting agencies, and thus Green Tree reporting that the Loan was first in foreclosure and, after December 6, 2013, in bankruptcy was not misleading. *(DE 202, SOF at ¶¶ 6-8 and 29-31)*

Moreover, even if the Loan had been satisfied by the April 2012 sale, summary judgment should still be entered in Green Tree's favor on Plaintiffs' FDCPA Section 1692e Claim for that portion of the claim based on any information that Green Tree furnished to the credit reporting agencies prior to June 15, 2014 because that portion of the claim is barred by the applicable 1-year statute of limitations under the FDCPA. 15 U.S.C. § 1692k(d).

## IV.   Summary Judgment Should Be Entered In Green Tree's Favor On Plaintiffs' FCCPA Claim

In Count V of Plaintiffs' Complaint, Plaintiffs have asserted a claim against Green Tree for various alleged FCCPA violations. *See Complaint [D.E. 142] at Count V, ¶¶ 102-119*. Summary judgment should be entered on Plaintiffs' FCCPA claim in Green Tree's favor.

First,  summary judgment should be entered in Green Tree's favor on Plaintiffs' FCCPA claim because the FCCPA does not apply to the debt at issue for the same reason the FDCPA did not apply, namely that the debt at issue, the Loan, was not for personal purposes, but instead for business purposes. *See First Argument in Section III*, above; *see also Strauss v. The CBE Group, Inc.*, 2016 WL 1273913, *6 (S.D. Fla. March 28, 2016) (holding that the FCCPA, just like the FDCPA, also requires that the debt at issue be for a personal purpose, not a business purpose, and granting summary judgment against the plaintiff on his FCCPA claim for this reason).

Second, even if the FCCPA did apply to the debt, summary judgment should still be entered in Green Tree's favor on Plaintiffs' FCCPA Claim with regard to any alleged collection efforts made by Green Tree prior to June 15, 2013. This is because Plaintiffs first filed their third party complaint against Green Tree on June 15, 2015 and thus any claims based on any

collection efforts made prior to June 15, 2013 are time-barred by the applicable 2-year statute of limitations under the FCCPA.  *See* Fla. Stat. § 559.77(4).

Third, summary judgment should be entered in Green Tree's favor on Plaintiffs' FCCPA claim to the extent that such claim is based on Green Tree's alleged violation of Fla. Stat. § 559.72(7)  (the "FCCPA Section 559.72(7) Claim").  *See Complaint [D.E. 142] at Count V, ¶ 116.*  Section 559.72(7) prohibits any person from "willfully communicat[ing] with the debtor … with such frequency as can reasonably be expected to harass the debtor …, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor …"  Here, Green Tree did not violate this section of the statute.

Green Tree only placed a total of seven (7) telephone calls to Plaintiffs during the time that it serviced Plaintiffs' Loan from May 1, 2013 through October 2014.  *(DE 202, SOF at ¶¶ 52-59)*  Green Tree called Plaintiffs and spoke with one of them three (3) times, on September 25th, October 4th, and November 20th, 2013.  *Id. at ¶¶ 52-55.*    In addition, Green Tree attempted to call Plaintiffs but did not speak with one of them four (4) other times, on May 9th, June 3rd, October 31st and November 18th, 2013.  *Id. at ¶ 56.*  Green Tree did not hire or retain any other third party to make any other telephone calls to Plaintiffs during the time that it serviced Plaintiffs' Loan, and is not aware of any other such calls made by any third parties.  *Id. at ¶¶ 58-59.*  Green Tree's seven (7) total calls to Plaintiffs over the course of seven (7) months, with essentially one call each month, were not with such frequency as can reasonably be expected to harass the debtor.  This is especially true insofar as all of Green Tree's telephone calls on September 25, 2013 and thereafter were made to Plaintiffs to follow-up on their contention that the Loan has allegedly been satisfied following a purported short sale in April 2012.  *(DE 198, GT Aff. at Ex. G, at pages 21, 23, and 24)*.

Moreover, Green Tree did not send Plaintiffs letters with such frequency as could reasonably be expected to harass Plaintiffs either.  Green Tree sent Plaintiffs a debt validation and a notice of servicing transfer in early May 2013, both of which were required by federal law and were sent prior to Green Tree having any knowledge of the purported April 2012 short sale.  *(DE 202, SOF at ¶¶ 60-61)*; *see also* 15 U.S.C. § 1692g (requiring debt collectors to send a debt validation letter to a debtor); *and* 24 CFR § 3500.21(d) (requiring a transferee servicer to send a notice of servicing transfer within 15 days of the servicing transfer).  Thereafter, Green Tree sent Plaintiffs the following letters:

(i)     four (4) letters on May 8, 2013, October 2, 2013, December 3, 2013 and February 25, 2014 advising Plaintiffs of a change in the account representative responsible for their Loan (collectively, the "Account Rep Letters"). *(DE 202, SOF at ¶ 60); (DE 198, GT Aff. at Ex. L).*

(ii)    following Green Tree's determination that the April 2012 short sale was unauthorized, a November 19, 2013 letter regarding loss mitigation options (the "November 2013 Loss Mitigation Letter"). *(DE 202, SOF at ¶ 62); (DE 198, GT Aff. at ¶ 41 and Ex. L).*

(iii)   following the lifting of the stay in Plaintiffs' bankruptcy action, eight (8) letters in February and March 2014 providing Plaintiffs with an opportunity to cure their default or to pursue other loss mitigation options (collectively, the "Post-BK Letters"). *(DE 202, SOF at ¶ 63); (DE 198, GT Aff. at ¶ 42 and Ex. L).*

(iv)    following Green Tree's request for, and receipt of, Fannie Mae's agreement to accept the Net Proceeds from the April 2012 short sale in full satisfaction of the Loan, eight (8) letters in August and September 2014 providing Plaintiffs with notice of the short sale and other related matters (collectively, the "2014 Short Sale Letters"). *(DE 202, SOF at ¶ 64); (DE 198, GT Aff. at ¶ 43 and Ex. L).*

These letters were not sent by Green Tree with such frequency nor were they sent with such purpose as can reasonably be expected to harass Plaintiffs.

<u>Fourth</u>, even if the foregoing communications could reasonably be expected to harass Plaintiffs, summary judgment should still be entered in Green Tree's favor on Plaintiffs' FCCPA claim to the extent that Plaintiff's claim is based on certain of Green Tree's letters to Plaintiffs. This is because, as with Plaintiffs' FDCPA claim, the FCCPA does not apply to most of Green Tree's letters to Plaintiffs as they were not sent in connection with the collection of a debt.  The letters not subject to the FCCPA include: (i) the four Account Rep Letters, in which there was no demand for payment or other effort to collect the debt made by Green Tree; and (ii) the eight Post-BK Letters and the eight 2014 Short Sale Letters that expressly advised Plaintiffs that they were not intended as an attempt to collect a debt from them personally and were instead sent only for informational purposes and/or for purposes of foreclosing on the Mortgaged Property. *See Pages 13-14, above.*

<u>Fifth</u>, summary judgment should be entered in Green Tree's favor on Plaintiffs' FCCPA claim to the extent that such claim is based on Green Tree's alleged violation of Fla. Stat. § 559.72(9)  (the "FCCPA Section 559.72(9) Claim").  *See Complaint [D.E. 142] at Count V, ¶¶ 117-118.*  Section 559.72(9) prohibits any person from "claim[ing], attempt[ing], or threaten[ing]

to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some other legal right when such person knows that the right does not exist." Here, Green Tree did not <u>know</u> that the debt at issue was not legitimate nor that it did not have the legal right to pursue a foreclosure action against Plaintiffs. Rather, as previously explained, all of the information that had been provided to Green Tree by BOA showed that BOA had declined the conditionally-approved short sale. *(DE 202, SOF at ¶¶ 14-25 and 29-43)* As such, Green Tree believed (and still believes) that the debt was legitimate and that it had the right to pursue a foreclosure action against Plaintiffs. *Id.*

Sixth, summary judgment should be entered in Green Tree's favor on Plaintiffs' FCCPA claim to the extent that the claim is based on the information that Green Tree furnished (or did not furnish) to the credit reporting agencies. *See Complaint [D.E. 142] at Count V, ¶ 115.* This is because Plaintiffs' state law claim is preempted by the federal Fair Credit Reporting Act ("FCRA"), which provides at 15 U.S.C. § 1681t(b) that "No requirement or prohibition may be imposed under the laws of any State ... (1) with respect to any subject matter regulated under ... (F) section 1681s-2 of this title, relating to the responsibilities of persons who furnish information to consumer reporting agencies, except [for inapplicable exceptions]...." Section 1861s-2 of FCRA, in turn, provides, among other things, that: (i) "a person shall not furnish any information relating to a consumer to any consumer reporting agency if the person knows or has reasonable cause to believe that the information is inaccurate"; and (ii) "if the completeness or accuracy of any information furnished by any person to any consumer reporting agency is disputed to such person by a consumer, the person may not furnish the information to any consumer reporting agency without notice that such information is disputed by the customer". 15 U.S.C. § 1681s(a)(1) and (a)(3).

As such, Plaintiffs' state law FCCPA claim that is based on Plaintiffs' allegations that Green Tree reported inaccurate information to the credit reporting agencies and failed to notify the credit reporting agencies that Plaintiffs disputed the debt is preempted by the FCRA. 15 U.S.C. § 1681t(b); *see also Davidson v. Capital One, N.A.*, 2014 WL 3767677, *5 (S.D. Fla. July 31, 2014) (dismissing plaintiff's FCCPA claim based on allegations that defendant violated the FCCPA by, among other things, making false reports to the credit reporting agencies and failing to reveal the fact that the defendant had disputed the reports, holding that such claims were preempted under the FCRA); *and Osborne v. Vericrest Financial, Inc.*, 2011 WL 1878227,

*2-3 (M.D. Fla. May 17, 2011) (same).

**V.      Summary Judgment Should Be Entered In Green Tree's Favor On Plaintiffs' RESPA Claim**

   In Count VII of Plaintiffs' Complaint, Plaintiffs have asserted a claim against Green Tree for alleged RESPA violations based on their contention that Green Tree failed to respond to two (2) alleged QWRs (the "May 2013 Letters") purportedly mailed by Gary Zaskey to Green Tree in or about May 2013 (the "May 2013 Letters").  *See Complaint [D.E. 142] at Count VII, ¶ 146-154 and at Exs. "X" and "Y".*  Summary judgment should be entered in Green Tree's favor on Plaintiffs' RESPA claim.

   <u>First</u>, summary judgment should be entered in Green Tree's favor on Plaintiffs' RESPA claim because, as previously discussed, the Mortgaged Property was non-owner-occupied rental property at the time the Loan was originated, and therefore RESPA does not apply.  *(DE 202, SOF at ¶¶ 4-5); see also* 12 U.S.C. §2606(a)(1); *and* 12 CFR §1024.5(a)(2) (providing that RESPA does not apply to an extension of credit primarily for a business, commercial or agricultural purpose); *see also Johnson v. Wells Fargo Home Mortgage, Inc.,* 635 F.3d 401, 417 (9th Cir. 2011) ("[Plaintiff] does not dispute that the properties [at issue] were non-owner-occupied rental properties.  [The loans at issue], the mortgages on those properties, thus fall within Regulation Z's definition of a business-purpose loan, and, so, RESPA does not apply to them."); *and Henok v. Chase Home Finance, LLC*, 950 F.Supp.2d 96, 98 (D.D.C. 2013) (noting that, in interpreting 12 U.S.C. §2606, courts have found that RESPA does not apply to loans for non-owner-occupied rental properties.).

   <u>Second</u>, even if RESPA did apply to the Loan, summary judgment should still be entered in Green Tree's favor on Plaintiffs' RESPA claim because Gary Zaskey did not mail the May 2013 Letters to Green Tree's designated address for QWRs and thus May 2013 Letters did not trigger Green Tree's duties under RESPA.  Under 24 CFR § 3500.21(e)(1)[5], which are part of the servicing guidelines promulgated by HUD, a transferee loan servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests by providing notice of same included in the Notice of Transfer sent to the borrower by the transferee

---

[5]  A courtesy copy of the version of 24 CFR §3500.21 in effect in May 2013, when the May 2013 Letters were allegedly sent, is attached hereto as Exhibit "1".

within 15 days after the effective date of the transfer.  Further, if a servicer has established a separate and exclusive address for receiving QWRs, a borrower's correspondence must be sent to that designated address to trigger the servicer's duties under RESPA to respond to the correspondence.  *See Berneike v. Citimortgage, Inc.*, 708 F.3d 1141, 1148-1149 (10th Cir. 2013) (affirming the dismissal of plaintiff's RESPA claim against the defendant servicer because the plaintiff did not send the purported QWRs to the servicer's designated address, and thus the plaintiff's correspondence at issue did not trigger the servicer's duties under RESPA to respond); *see also Warren v. Green Tree Servicing, LLC*, 2015 WL 9259454, *4-5 (D. Colo. Dec. 18, 2015) (entering summary judgment in Green Tree's favor on plaintiff's RESPA claim because plaintiff did not send the alleged QWRs at issue to Green Tree's Designated Address; "Because plaintiff did not send any of her letters to the QWR Address, her letters were not QWRs, but instead constituted 'general correspondence' insufficient to trigger defendant's duty to respond under RESPA.").

Here, Green Tree sent a Notice of Transfer to Plaintiffs on May 3, 2015, within 15 days of the May 1, 2013 effective date of the servicing transfer from BOA.  *(DE 202, SOF at ¶ 74)*  In the Notice of Transfer, Green Tree expressly advised Plaintiffs that there was a designated address to send any QWR (the "Designated QWR Address").  *Id.*  Specifically, the Notice of Transfer stated the following in a separate section of the notice boxed off from the rest:

### NOTICE ABOUT YOUR RIGHTS

You should be aware of the following information, which is set out in more detail in Section 6 of the Real Estate Settlement Procedures Act ("RESPA") (12 U.S.C. § 2605):

…

Section 6 of RESPA (12 U.S.C. § 2605) gives you certain consumer rights.  If you send a "qualified written request" to your loan servicer concerning the servicing of your loan, your servicer must provide you with a written acknowledgment within 20 Business Days of receipt of your request.  A "qualified written request" is a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, which includes your name and account number, and your reasons for the request.  <u>If you want to send a "qualified written request" regarding the servicing of your loan to your new servicer, it must be sent to this address:  Green Tree, PO Box 6176, Rapid City, SD 57709-6176</u>.

Not later than 60 Business Days after receiving your request, your servicer

must make any appropriate corrections to your account, and must provide
you with a written clarification regarding any dispute. …

*Id.* (underlining added).

Plaintiffs, however, did not send the May 2013 Correspondence to Green Tree's Designated QWR Address. *(DE 202, SOF at ¶ 75)* Rather, Mr. Zaskey sent one of the May 2013 Letters to an address in Pasadena, California and the other to Green Tree, PO Box *6172*, Rapid City, SD 57709-6176. *Id.* Summary judgment should therefore be entered in Green Tree's favor on Plaintiffs' RESPA claim because Green Tree's duties under RESPA were never triggered by the May 2013 Letters.[6]

## VI.    Conclusion

WHEREFORE, for all of the foregoing reasons, this Court should enter summary final judgment in Green Tree's favor on Counts IV, V, VI and VII of Plaintiff's Fourth Amended Complaint, and award Green Tree its reasonable attorney's fees and costs incurred in this action pursuant to the Note and Mortgage and applicable statutory law.

---

[6]     Green Tree notes that it has no record of ever receiving either of the May 2013 Letters allegedly sent by Mr. Zaskey in May 2013. *(DE 198, GT Aff. at page 5, fn. 4)* However, even if Green Tree had received the May 2013 Letters, Green Tree's duties under RESPA would still not have been triggered because the letters were not sent to Green Tree's Designated QWR Address. *See Berneike*, 708 F.3d at 1149 (holding that the defendant servicer had no liability under RESPA even though the servicer had received the correspondence at issue and had responded to it because the correspondence was sent to the wrong address).

Respectfully submitted,

By:    *s/ John W. Bustard*
        John W. Bustard (0641871)
        jbustard@shutts.com
        David McCrea (239038)
        dmccrea@shutts.com
        SHUTTS & BOWEN LLP
        *Counsel for Defendant Green Tree*
        1500 Miami Center
        201 South Biscayne Boulevard
        Miami, Florida 33131
        Telephone: (305) 358-6300
        Facsimile:  (305) 415-9836

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 8th day of July, 2016, a true and correct copy of the foregoing was furnished *via* E-mail to: **Faequa A. Khan, Esq.** and **Daryl L. Jones, Esq.**, Law Offices of Daryl L. Jones, P.A., djones@DLJonesLaw.com & fkhan@DLJonesLaw.com, 14707 South Dixie Hwy., Suite PH402, Miami, Florida 33176; **Daniel Cardenal, Esq.,** Liebler, Gonzalez & Portuondo, service@lgplaw.com; Courthouse Tower-25[th] Floor, 44 West Flagler Street, Miami, FL 33130; **James Scott Telepman, Esq.,** Law Firm of Cohen Norris Wolmer Ray Telepman Cohen, jst@fcohenlaw.com, 712 US Highway 1, Suite 400, North Palm Beach, FL 33408; and *via* U.S. Mail to **Harbor Land Title, LLC**, c/o Zahera Sadik, zee@harborlandtitle.com, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411.

        */s/ John W. Bustard*
        Of Counsel