**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

BANK OF AMERICA, N.A., SUCCESSOR
BY MERGER TO BAC HOME LOANS
SERVICING, LP f/k/a COUNTRYWIDE
HOME LOANS SERVICING, LP,

                Plaintiff,

vs.

GARY L. ZASKEY a/k/a GARY LYNN
ZASKEY, et. al.,

                Defendants.

_____/

GARY L. ZASKEY and LORI A. ZASKEY,

                Counter-Plaintiffs/Third
                Party Plaintiffs,

v.

BANK OF AMERICA, N.A.,

                Counter-Defendant,

     and

GREEN TREE SERVICING, LLC, et al.,

                Third-Party Defendants.

_____/

**CASE NO.: 9:15-CV-81325**

**COUNTER-DEFENDANT, BANK OF AMERICA, N.A.'S**
**MOTION SUMMARY FINAL JUDGMENT AGAINST**
**<u>COUNTER-PLAINTIFFS, GARY L. ZASKEY AND LORI A. ZASKEY</u>**

Counter-Defendant, BANK OF AMERICA, N.A. ("BANA"), by and through

undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1,

hereby moves this Court for entry of summary final judgment against Counter-Plaintiffs, GARY

L. ZASKEY and LORI A. ZASKEY (collectively, the "ZASKEYS") and, in support thereof,

states as follows:

## I.     SUMMARY OF ARGUMENT

BANA is entitled summary judgment on all counts raised against it by the ZASKEYS'

Fourth Amended Counterclaims for the following reasons:

Count I: Breach of Contract (Short Sale Agreement) against BANA fails as a matter of

law because the ZASKEYS breached a material term of the short sale contract which excused

BANA from any further performance.   The ZASKEYS and BANA entered into an agreement

whereby a short sale of real property would serve to satisfy the existing indebtedness owed under

a promissory note.   The ZASKEYS failed to timely deliver the funds from the short sale to

BANA by the agreed upon deadline. To the extent the ZASKEYS attempt to extend agency

liability to BANA for the actions of others in this breach, such efforts fail as the ZASKEYS

chose the parties responsible for completing the closing.   Accordingly, BANA's performance

under the short sale contract was excused and no breach can lie.

Count II: Malicious Prosecution against BANA fails as a matter of law because BANA

was within its rights to initiate a foreclosure action against the ZASKEYS upon their default

under the subject promissory note.   The default was not nullified by the short sale agreement as

the ZASKEYS breached a material term in failing to remit payment to BANA timely.

Thereafter, BANA properly exercised its rights under the subject note and mortgage to institute

foreclosure proceedings against the ZASKEYS on a good faith basis. Accordingly, the

ZASKEYS have not and cannot demonstrate the requisite malice necessary to sustain a claim for

malicious prosecution.

Count III: Violation of Florida's Consumer Collection Practices Act (Fla. Stat. 559.72

against BANA fails as a matter of law because this matter does not involve a consumer debt. The

ZASKEYS used these monies evidenced by the subject promissory note to refinance indebtedness secured against real property which was used to derive income and services through rental.   Accordingly, the alleged conduct of BANA in the servicing of this loan does not fall under the guise of the FCCPA.   To the extent this Court was to find the FCCPA applicable and that BANA had violated it, the case law stands for the proposition that the ZASKEYS are not entitled to punitive damages for failure to allege the requisite malicious intent on the part of BANA or actual damages for emotional distress as the ailments and symptoms testified to by the ZASKEYS lack the hallmarks of a severe impact warranting actual damages.

## II.      STATEMENT OF UNDISPUTED MATERIAL FACTS

1.      The ZASKEYS took out a loan from E-loan, Inc. ("Loan"), as evidenced by a promissory note dated December 12, 2006 (the "Note") and secured by a mortgage (the "Mortgage") on real property commonly addressed as 5834 South 37th Court, Green Acres, Florida, 33463 (the "Property").[1]

2.      The ZASKEYS had previously purchased the Property in 1976.[2]

3.      The ZASKEYS have not lived at the Property since 1983.[3]

4.      Beginning in 2000, the ZASKEYS began using the Property as a rental property and derived rental payment income in the form of monetary payments or services.[4]

5.      BANA became the servicer of the Loan on January 14, 2007.[5]

6.      The ZASKEYS defaulted on the terms of the Note and Mortgage by failing to make the monthly payment due November 1, 2010 as well as all subsequent payments.[6]

---

[1]   ZASKEYS Resp. to BANA's Req. for Adms. No. 1 and 2, ECF No. 195-1; GARY Dep. at 32:25-40:3, Jun. 23, 2016, ECF No. 183-1.
[2]   GARY Dep. at 8:4-10, ECF No. 183-1.
[3]   GARY Dep. at 30:15-20, ECF No. 183-1.
[4]   GARY Dep. at 11:8-11; 22:25-30:14, ECF No. 183-1.
[5]   BANA's Aff. at ¶8, ECF No. 207.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130     (305) 379-0400

7.     On or about December 17, 2010, BANA sent a breach letter to the ZASKEYS informing them that the Loan was in default and the full balance of future installment payments would be accelerated unless they cured the default by paying $1,720.66 by January 16, 2011.[7]

8.     The ZASKEYS did not cure the default by January 16, 2011.[8]

9.     BANA sent the ZASKEYS a letter dated August 22, 2011 inviting the ZASKEYS to participate in the Cooperative Short Sale program (the "Short Sale Invitation").[9]

10.     The Short Sale Invitation outlined the program to the ZASKEYS and informed them that the first step to participate was to select a realtor.[10]

11.     The Short Sale Invitation included an introduction to a REMAX/Platinum agent as a possible real estate agent, but did not require that the ZASKEYS use the REMAX/Platinum agent or any other real estate professional.[11]

12.     By executing the Customer Agent Option Awareness attached to the Short Sale Invitation, the ZASKEYS confirmed their agreement to participate in the Cooperative Short Sale program as a method of avoiding foreclosure.[12]

13.     The ZASKEYS executed the Exclusive Right of Sale Listing Agreement selecting ReMax/Platinum and Gloria Pino as their "Broker" for this short sale transaction of the Property.[13]

14.     The ZASKEYS executed the Cooperative Short Sale Agreement dated March 16, 2012 on April 24, 2012 (the "Short Sale Agreement").[14]

---

[6]  BANA's Aff. at ¶9, ECF No. 207.
[7]  BANA's Aff. at ¶10, ECF No. 207, at Ex. C, ECF No. 207-1.
[8]  GARY Dep. at 45:19-46:15, ECF No. 183-1; BANA's Aff. at ¶9-12, ECF No. 207, at Ex. D, ECF No. 207-1.
[9]  BANA's Aff. at ¶13, ECF No. 207, at Ex. E, ECF No. 207-1.
[10]  BANA's Aff. at ¶14, ECF No. 207, at Ex. E, ECF No. 207-1.
[11]  BANA's Aff. at ¶14-16, ECF No. 207, at Ex. E, ECF No. 207-1.
[12]  GARY Dep. at 54:24-55:1-14, ECF No. 183-1; GARY Dep. at Ex. 7, ECF No. 183-4.
[13]  BANA's Aff. at ¶20, ECF No. 207, at Ex. F, ECF No. 207-1.
[14]  GARY Dep. at 78:1-12, ECF No. 183-1; BANA Aff. at ¶27, ECF No. 207; GARY Dep. at 102:15-19.

15.     Pursuant to the Short Sale Agreement, the short sale transaction of the Property was required to close by April 30, 2012.[15]

16.     Pursuant to the Short Sale Agreement, BANA was to receive no less than $26,788.44 from the closing of the short sale of the Property.[16]

17.     Pursuant to the Short Sale Agreement, BANA was to receive no less than $26,788.44 from the closing of the short sale of the Property within 48 business hours of the closing.[17]

18.     The short sale transaction closed on April 26, 2012.[18]

19.     HARBOR LAND TITLE, LLC ("HARBOR TITLE") served as the closing agent for the short sale of the Property.[19]

20.     BANA did not receive payment of the short payoff funds within 48 business hours of the short sale transaction closing.[20]

21.     On August 9, 2012, HARBOR TITLE wired the funds to BANA.[21]

22.     BANA did not accept the funds wired by HARBOR TITLE as the funds were untimely.[22]

23.     On June 27, 2012, BANA sent the ZASKEYS correspondence advising that the short sale of the Property had been declined.[23]

---

[15]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 3, ECF No. 186-1.
[16]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 4, ECF No. 186-1.
[17]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 5, ECF No. 186-1.
[18]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 6, ECF No. 186-1.
[19]  GARY Dep. at 70:2-5; 94:21-22.
[20]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 7-8, ECF No. 186-1; BANA's Aff. at ¶29, ECF No. 207.
[21]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 8, ECF No. 186-1.
[22]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 11, ECF No. 186-1.
[23]  BANA's Aff. at ¶33, ECF No. 207, at Ex. M, ECF No. 207-1.

24.     On September 26, 2012, BANA commenced this action against the ZASKEYS seeking to foreclose the Mortgage against the Property in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, styled *Bank of America, N.A. v. Gary L. Zaskey, Lori A. Zaskey, et al.*, Case No. 50-2012 CA 018071 XXXXMB, seeking to foreclose a residential mortgage against real property located in Palm Beach County, Florida

25.     On April 30, 2013, BANA ceased servicing the loan.[24]

26.     On May 1, 2013, GREEN TREE SERVICING, LLC ("GREEN TREE") began servicing the loan.[25]

27.     On October 29, 2014, GREEN TREE recorded a Satisfaction of Mortgage for the mortgage at issue.[26]

28.     On July 21, 2015, BANA dismissed its foreclosure claim against the ZASKEYS.[27]

## III.   STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56, a "court *shall* grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."[28] "The court's focus in reviewing a motion for summary judgment is whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law."[29]

"[A] movant for summary judgment bears the initial responsibility of informing the court of the basis for [the] motion, and identifying those portions of the record, including pleadings,

---

[24]  BANA's Aff. at ¶35, ECF No. 207.
[25]  BANA's Aff. at ¶36, ECF No. 207.
[26]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 19, ECF No. 186-1.
[27]  BANA's Aff. at ¶37, ECF No. 207.
[28]  Fed. R. Civ. P. 56 (emphasis added).
[29]  *Faye L. Roth Revocable Trust v. UBS Painewebber Inc.*, 323 F. Supp. 2d 1279, 1284 (S.D. Fla. 2004) (internal quotations omitted).

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130    (305) 379-0400

discovery material, and affidavits, which it believes demonstrate the absence of a genuine issue of material fact."[30] If the party seeking summary judgment meets the initial burden of demonstrating the absence of a genuine issue of material fact, the burden then shifts to the nonmoving party, to come forward with sufficient evidence to rebut this showing with affidavits or other relevant and admissible evidence.[31]

## IV.    LEGAL ARGUMENT & MEMORANDUM OF LAW

### A. BANA is entitled to Summary Judgment on the ZASKEYS' Count I: Breach of Contract (Short Sale Agreement).

The ZASKEYS' claim for breach of contract fails as a matter of law such that BANA is entitled to summary final judgment.

In Florida, to prevail on a claim for breach of contract, a plaintiff "must establish:   (1) a valid contract; (2) a material breach; and (3) damages."[32]   A contract is formed when three elements are present: offer, acceptance, and consideration.[33]  In addition, in order to be successful in his breach of contract action, a plaintiff must prove performance of his obligations under the contract, or a legal excuse for its non-performance.[34]

#### i.  BANA was excused from performance under the Short Sale Agreement by the ZASKEYS' material breach.

The ZASKEYS' claim for breach of contract fails as a material term of the Short Sale Agreement was not met by the ZASKEYS themselves—namely timely payment.

---

[30]  *Mobley v. Bradshaw*, 2013 U.S. Dist. LEXIS 189585, *9-10 (S.D. Fla. Aug. 13, 2013) citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).
[31]  *Bradshaw*, 2013 U.S. Dist. LEXIS 189585 at *11 citing *Avirgan v. Hull*, 932 F.2d 1572, 1577 (11th Cir.), c*ert. denied*, 502 U.S. 1048 (1992).
[32]  *Federico v. Excelsior Benefits, LLC*, No. 8:13-cv-3162-T-33TGW, 2014 U.S. Dist. LEXIS 78912, at *10-11 (M.D. Fla. June 10, 2014) (internal citations omitted).
[33]  *Id*. (citing *Pezold Air Charters v. Phoenix Corp*., 192 F.R.D. 721, 725 (M.D. Fla. 2000).
[34]  *Rollins, Inc. v. Rutland*, 951 So. 2 860 (Fla. 2d DCA 2006); *Old Republic Ins. Co. v. Von Onweller Constr. Co.*, 239 So. 2d 503, 505 (Fla. 2d DCA 1970); *Marshall Constr., Ltd. v. Coastal Sheet Metal & Roofing, Inc.*, 569 So. 2d 845, 848 (Fla. 1st DCA 1990).

A material breach of a contract excuses the non-breaching party from its obligations.[35] To constitute a vital or material breach, a party's non-performance must go to the essence of a contract.[36]

Under Florida law, "to constitute a material breach, [a] late payment must occur where time is of the essence."[37]   "As a general rule, time is considered to be of the essence where an agreement specifies[.]"[38]

Here, the Short Sale Agreement required transmittal of the short payoff funds to BANA within 48 business hours of closing.[39]  The transmittal did not occur within 48 hours as required by the Short Sale Agreement.[40]  In turn, the ZASKEYS breached a material term of the Short Sale Agreement and BANA's obligations under same were obviated. The ZASKEYS' claim for breach of contract therefore fails as a material term of the contract was not met.

As shown by the nature of the Short Sale Agreement, BANA agreed to accept payment of significantly less than the loan balance and release the lien on the property so long as certain other material terms were met.[41]  Pursuant to the Short Sale Agreement, the short sale transaction was required to close by April 30, 2012.[42]  Further, the funds payable to BANA were required to be transmitted to BANA within 48 business hours of closing.[43]  The closing took place on April

---

[35]  *See Green Tree Servicing, LLC v. Milam*, 177 So. 3d 7, 14 (Fla. 2d DCA 2015); *Bradley v. Health Coalition, Inc.*, 687 So. 2d 329, 333 (Fla. 3d DCA 1997) ("A party is not entitled to enjoin the breach of a contract by another, unless he himself has performed what the contract requires of him so far as possible; if he himself is in default or has given cause for nonperformance by defendant, he has no standing in equity.")

[36]  *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 470 (Fla. 4th DCA 2003). *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th DCA 2015) (holding that a material breach "goes to the essence of the contract," and that "trivial noncompliance and minor failings" are not material breaches); *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972) (same).

[37]  *Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005).

[38]  *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 470 (Fla. 4th DCA 2003).

[39]  GARY Dep. at Ex. 10, ECF No. 183-4.

[40]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 7, ECF No. 186-1; BANA's Aff. at ¶29, ECF No. 207; BANA's Aff. at ¶13-18, ECF No. 208, at Ex. B, ECF No. 208-1.

[41]  GARY Dep. at Ex. 10, ECF No. 183-4.

[42]  GARY Dep. at Ex. 10, ¶4, ECF No. 183-4.

[43]  GARY Dep. at Ex. 10, ¶14, ECF No. 183-4.

26, 2012.[44] Despite the clear terms of the Short Sale Agreement, the funds were not wired to BANA within 48 business hours of closing.[45]

To the extent that the ZASKEYS contend that a subsequent correspondence from BANA amended the terms of the Short Sale Agreement, such as the form short sale correspondence disclosed at the ZASKEYS' depositions as Exhibit 11 ("Form Short Sale Correspondence"), the Court need not look beyond the terms of that document itself to defeat the ZASKEYS' contention.[46] The Form Short Sale Correspondence contains express language noting that the Form Short Sale Correspondence is not a modification of any short sale agreement, which would include the Short Sale Agreement.   Specifically, it states that "the terms and conditions of your short sale agreement have not changed."[47] Hammering home that point is the footnote at the bottom of the Form Short Sale Correspondence advising that the "exact terms and conditions [of the short sale agreement] are set forth in the short sale agreement." Finally, GARY admitted that he received the Form Short Sale Correspondence *before* receiving and executing the Short Sale Agreement.[48] There was no ambiguity created by the Form Short Sale Correspondence. The Form Short Sale Correspondence did not amend or modify the Short Sale Agreement, nor did the document allay the requirement that BANA receive the short payoff funds within 48 business hours of closing.   Accordingly, BANA is entitled to summary judgment on the ZASKEYS' breach of contract count.

---

[44]  GARY Dep. at 102:22-23, ECF No. 183-1.
[45]  ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 7, ECF No. 186-1; BANA's Aff. at ¶29, ECF No. 207; BANA's Aff. at ¶13-18, ECF No. 208, at Ex. B, ECF No. 208-1.
[46]  GARY Dep. at Ex. 11, ECF No. 183-4.
[47]  GARY Dep. at Ex. 11, ECF No. 183-4.
[48]  GARY Dep. at 83:19-85:8, ECF No. 183-1.

### ii. BANA is not responsible for the actions of ReMax/Platinum, Tony Pino, Gloria Pino, or HARBOR TITLE because they were not BANA's agents, but rather the ZASKEYS' agents.

The ZASKEYS' allegations of agency attempting to hold BANA liable for actions of non-related third-parties run contrary to established Florida law The ZASKEYS allege throughout the Fourth Amended Counterclaim that HARBOR TITLE was BANA's agent, and therefore BANA should be held liable for HARBOR TITLE's failure to transmit the short sale funds to BANA within 48 business hours of the closing.  In addition to the absence of an agency relationship between BANA and HARBOR TITLE, the ZASKEYS were free to choose any closing agent they sought fit and selected HARBOR TITLE on their own volition.[49]

"Essential to the existence of an actual agency relationship is (1) acknowledgment by the principal that the agent will act for him, (2) the agent's acceptance of the undertaking, and (3) control by the principal over the actions of the agent."[50]  In the context of real estate transactions, "acting as a closing agent in a loan transaction does not create an agency or employer-employee relationship between the closing agent and the lending institution."[51]

Here, the ZASKEYS were advised that they could use any real estate professionals they preferred.[52] The ZASKEYS executed the Exclusive Right of Sale Listing Agreement selecting ReMax/Platinum and Gloria Pino as their "Broker" for this short sale transaction of the Property.[53] The Short Sale Invitation noted that the ZASKEYS' "eligibility to participate in the Cooperative Short Sale program does not require [the ZASKEYS] to use a specific real estate professional. [the ZASKEYS] may select a real estate professional of [their] choice."[54] By way of a Customer Agent

---

[49] BANA's Aff. at ¶15-16, ECF No. 207, at Ex. B, ECF No. 207-1.
[50] *Goldschmidt v. Holman*, 571 So. 2d 422, 424 n.5 (Fla. 1990) (*citing* Restatement (Second) of Agency § 1 (1957)).
[51] *Beach Cmty. Bank v. St. Paul Mercury Ins. Co.*, 635 F.3d 1190 (11th Cir. 2011) (citations omitted).
[52] BANA's Aff. at ¶15-16, ECF No. 207, at Ex. E, ECF No. 207-1.
[53] BANA's Aff. at ¶20, ECF No. 207, at Ex. F, ECF No. 207-1.
[54] GARY Dep. at 48:1-52-16, ECF No. 183-1, at Ex. 7, ECF No. 183-4.

Option Awareness certification attached to the Short Sale Invitation, the ZASKEYS certified that they understood that they could use and consult with the real estate professional of their choice and that neither BANA or any other parties involved in the transaction conditioned the short sale on, or otherwise required, selection of certain real estate professionals.[55]

Similarly the Short Sale Agreement from BANA advising the ZASKEYS that the short sale offer on the subject property was approved also notified the ZASKEYS that they had the freedom to use the real estate professionals of their choosing.[56] During his deposition, GARY admitted that he was "advised that there was absolutely no requirement [that the ZASKEYS] utilize Re/Max."[57] The ZASKEYS selected the realtor, the real estate broker, and closing agent. To the extent the ZASKEYS cast blame on the realtor, the real estate broker, or the closing agent for the failure to transmit the short sale proceeds to BANA prior to the deadline imposed by the Short Sale Agreement, that failure inures to the ZASKEYS and not BANA.

**B. BANA is Entitled to Entry of Summary Judgment on Count II: Malicious Prosecution.**

BANA is entitled to summary judgment on the ZASKEYS' malicious prosecution claim as the record is devoid of any requisite malice to sustain such a charge and BANA had a good faith basis for initiating foreclosure proceedings against the ZASKEYS.

For a plaintiff to succeed on a claim for malicious prosecution, a plaintiff must demonstrate that:

> (1) an original … proceeding against him was commenced or continued; (2) the present defendant was the legal cause of that original proceeding; (3) there was a bone fide termination of the original proceeding in his favor; (4) there was an absence of probable cause for the original proceeding; (5) the present defendant acted with malice; and (6) he suffered damages as a

---

[55] GARY Dep. at 54:24-55-16, ECF No. 183-1, at Ex. 7, ECF 183-4.
[56] GARY Dep. at Ex. 10, ECF No. 183-4.
[57] GARY Dep. at 52:13-16, ECF No. 183-1.

result of the original proceeding.[58]

The failure to establish any one of the six elements is fatal to a claim for malicious prosecution.[59]

BANA is entitled to summary judgment on the ZASKEYS' malicious prosecution claim because the ZASKEYS' have not demonstrated, nor can they demonstrate, an absence of probable cause for BANA to bring the foreclosure action, or that BANA acted with malice in bringing the foreclosure action. BANA had probable cause to initiate the foreclosure. It is undisputed that the ZASKEYS defaulted on the loan that was the subject of the foreclosure suit.[60] The Mortgage entitled BANA to commence a suit for foreclosure upon the ZASKEYS' default.[61] BANA did exactly that. The loan had not been repaid and remained in default.[62] The terms of the Short Sale Agreement had not been met for the ZASKEYS' breach for failure to remit timely payment as discussed above so BANA exercised its rights under the Mortgage to foreclose.

In addition to the fact that BANA had probable cause to sue to foreclose, the ZASKEYS cannot show any evidence of malice on the part of BANA in its efforts to prosecute the action to obtain a foreclosure judgment. To the extent BANA negligently filed the foreclosure suit (to wit BANA does not agree or stipulate), the ZASKEYS were entitled to a dismissal and perhaps attorneys' fees under the terms of the Mortgage.[63] To the extent the Court deemed the suit frivolous or unsubstantiated, the ZASKEYS may have been entitled to sanctions under Florida Statute § 57.105. Those are not the facts here. Here, the ZASKEYS had defaulted on the terms of

---

[58] *Martinez v. Brink's, Inc.*, 171 F. App'x 263, 265 (11th Cir. 2006) (*citing Alamo Rent-A-Car v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). Though *Martinez* refers to a criminal proceeding, the claim may be brought against a Defendant for bringing a civil action, the key distinction is that probable cause "is measured by a lesser standard." *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010) (internal citations omitted).

[59] *Martinez* 171 F. App'x at 265.

[60] BANA's Aff. at ¶9, ECF No. 207.

[61] GARY Dep. at Ex. 3, ECF No. 183-4.

[62] BANA's Aff. at ¶11-12, ECF No. 207.

[63] GARY Dep. at Ex. 3, ECF No. 183-4.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130    (305) 379-0400

the Note and Mortgage, the terms of the Short Sale Agreement had not been met, and the Loan continued to be in default entitling BANA to file suit for a foreclosure judgment. BANA rightfully filed the foreclosure suit without malice.   Accordingly, BANA is entitled to summary final judgment against the ZASKEYS on Count II: Malicious Prosecution.

### C. BANA is Entitled to Summary Judgment on Counter-Plaintiffs' Count III: Violation of the FCCPA.

#### i.   The Loan was not a consumer debt falling within the purview of the FCCPA.

The FCCPA is inapplicable to the alleged actions of BANA as the Loan of the ZASKEYS was not a consumer debt.

The FCCPA prohibits certain actions undertaken in the court of collection of a consumer debt.[64]   Consumer debts, as defined by the FCCPA, are those obligations "of a consumer to pay money arising out of the transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family or household purposes."[65] The FCCPA does not create a private cause of action for efforts undertaken to collect non-consumer debt.[66] Mortgages obtained for "investment purposes," such as rental properties, are not consumer debts and therefore, the FCCPA is inapplicable to such debts.[67]

Here, BANA did not undertake efforts to collect a consumer debt as the ZASKEYS began using the Property as a rental unit in 2000.[68] Specifically, the ZASKEYS used the Property as a rental property to derive rental payment income in the form of monetary payments

---

[64] Fla. Stat. 559.72
[65] Fla. Stat. §559.55(1)
[66] *See Supermedia LLC v. Kantaras & Andreopoulos*, 2012 U.S. Dist. LEXIS 35422 (M.D. Fla. 2012) (dismissing an FCCPA claim where the debt related to the plaintiffs' business and noting the debts did "not in any way stem from a transaction conducted for 'personal, family, or household purposes.'").
[67] *See Acciard v. Whitney*, 2008 U.S. Dist. LEXIS 98131 at *27, (M.D. Fla. 2008); *see also Drew v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 134163 at *6, (M.D. Fla. 2015) (finding that when borrowers used proceeds to pay for an investment property, the debt was not a consumer debt as explained in the FCCPA.).
[68] GARY Dep. at 11:8-11; 22:25-30:14, ECF No. 183-1.

or services.[69] By turning the Property into a rental unit whereby tenants were required to pay monetary rental payments or perform services in exchange for use of the Property during their tenancy the debt became non-consumer debt and BANA, therefore, could not have violated the FCCPA[70].

<strong>ii.     To the extent this Court was to find a violation of the FCCPA against BANA, the ZASKEYS are not entitled to actual damages for emotional distress.</strong>

The ZASKEYS' testimony, responses to discovery and other record evidence are insufficient as a matter of law to sustain a finding of actual damages suffered in the event BANA's alleged conduct is found to have violated the FCCPA.

The ZASKEYS have alleged sustaining actual damages consisting of "emotion distress, anxiety, fear, worry, embarrassment, inconvenience, stress, mental suffering, mental anguish, and loss of capacity for the enjoyment of life."[71]. Both the Fair Debt Collection Practice Act ("FDCPA") and the FCCPA allow for an award of actual damages including for emotional distress.[72] "Both acts generally apply to the same types of conduct, and Florida courts must give 'great weight' to federal interpretations of the FDCPA when interpreting and applying the FCCPA."[73]

Under the FDCPA, actual damages for mental anguish or emotional distress are limited to cases of extreme and outrageous conduct that had a severe impact on the plaintiff.[74] Actual damages for emotional distress must be proven by competent evidence including medical records

---

[69]  GARY Dep. at 11:8-11; 22:25-30:14, ECF No. 183-1.

[70]  *See Acciard* at \*27.

[71]  ECF No. 142 at ¶¶48, 53, 55 and 89.

[72]  *Minnifield v. Johnson & Freedman, LLC*, 448 Fed.Appx. 914 (11th Cir. 2011); *Fini v. Dish Network, L.L.C.,* 955 F.Supp.2d 1288 (M.D.Fla. March 6, 2013); *Crespo v. Brachfeld Law Group*, 2011 WL 4527804 (S.D.Fla. September 28, 2011).[72]

[73]  *Read v. MFP, Inc.,* 85 So. 3d 1151, 1153 (Fla. 2d DCA 2012).

[74]  *Montgomery v. Fla. First Fin. Grp. Inc.*, 2008 WL 3540374 (M.D.Fla. August 12, 2008) (citing *Jordan v. Collection Servs., Inc.* 2001 WL 959031 (Fla. 1st Cir. Ct. 2001).

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130    (305) 379-0400

and expert testimony establishing said distress.[75] Additionally, a plaintiff must also show that the distress had a severe impact on him or her in order to receive an award of actual damages.[76] "To find evidence of severe impact, courts look for medically significant physical symptoms of the underlying mental anguish, or a combination of genuine fear, humiliation, and anxiety[77]. The ZASKEYS' claims for emotional distress, anxiety, stress and inconvenience fail as BANA's purported conduct was neither extreme nor outrageous.

GARY also testified to feeling embarrassment at a social event at this home[78], humiliation of going to his wife's ex-husband for financial aid[79], embarrassment in front of a job counselor[80], embarrassment at his daughter's wedding[81], humiliation of explaining his situation to friends, family and employers[82], and experiencing stress, anxiety and frustration[83], all of which he attributed to the conduct of BANA instituting a foreclosure action, sending debt collection letters and making debt collection calls[84].   No testimony was offered by GARY that he ever sought professional medical treatment for these conditions and symptoms.

LORI testified that BANA's conduct in this matter affected her wellbeing and caused her stress and anxiety[85], weight gain[86], humiliation[87], depression[88], helplessness[89] and

[75] *Titus v. Commercial Recovery Systems, Inc.*, 2014 WL 55016 (M.D.Fla. January 7, 2014).
[76] *Montgomery*, 2008 WL 3540374, at *9-10.
[77] *Crespo*, 2011 WL 4527804, at *5
[78] GARY Dep. at 241:3-5, ECF No. 183-2.
[79] GARY Dep. at 241:12, 242:23-25, 243:1, ECF No. 183-2.
[80] GARY Dep. at 241:16-17, 245:1-3, ECF No. 183-2.
[81] GARY Dep. at 241:17, 246:8-25, ECF No. 183-2.
[82] GARY Dep. at 241:18-19, 242:3-4, 247:20-25, 250:5-8, 253:6-11, ECF No. 183-2.
[83] GARY Dep. at 258: 4-14, ECF No. 183-2.
[84] GARY Dep. at 258:12-25, 259:1-10 ECF No. 183-2. These symptoms were also attributed to GREEN TREE once the servicing of the subject residential mortgage loan was transferred from BANA to GREEN TREE and similar conduct (GARY Dep. at 259:11-16, ECF No. 183-2).
[85] LORI Dep. at 107:5-7, 167:2-4, ECF No. 188-1.
[86] LORI Dep. at 107:16-17, 108:5-6, 115:15-17, ECF No. 188-1.
[87] LORI Dep. at 107:17, ECF No. 188-1.
[88] LORI Dep. at 108:4, ECF No. 188-1.
[89] LORI Dep. at 114:1-3, ECF No. 188-1.

embarrassment[90].   LORI did not see psychiatric or medical treatment for these conditions[91]. LORI considers her feelings of stress, anxiety and depression as one in the same[92].

Other courts have found these exact types of claims insufficient to rise to the level of severe impact warranting award of actual damages, including claims of mental anguish[93], anxiety[94], and sleeplessness[95]. Accordingly, because the symptoms and conditions noted by these types of self-serving statements do not rise to the severe impact necessary to warrant actual damages under the FCCPA, the ZASKEYS should be precluded from testifying at trial on these issues to avoid unfair prejudice or confusion to the fact finder which may result.

The fact that the ZASKEYS testified to having not sought medical treatment or required hospitalization further prohibits any award of actual damages for emotional distress based on their testimony.[96]

To the extent the ZASKEYS attempt to correlate their emotional distress as affecting an existing or resulting in a new medical condition, such testimony should be precluded on the basis neither have been designated experts in a medical field qualified to render such opinion. GARY has provided no testimony establishing any background, experience or education in a field of medicine which would qualify him to render any such expert medical opinion in support

---

[90] LORI Dep. at 198:2-4, ECF No. 188-1.

[91] LORI Dep. at 108:9-25, 109:1-5, ECF No. 188-1.

[92] LORI Dep. at 111:14-24, ECF No. 188-1.

[93] *See Titus*, 2014 WL 55016, at *2 (declining to award actual damages where claim supported only by statement of debtor that she suffered mental anguish)

[94] *Lane v. Accredited Collection Agency, Inc.*, 2014 WL 1685677, at *8 (M.D.Fla. April 28, 2014) (adopting a report and recommendation recommending no actual damages despite testimony that the plaintiff suffered nervousness, anxiety and sleeplessness); *Montgomery,* 2008 WL 3540374, at *8-9 (finding that, although the plaintiff suffered some temporary loss of appetite, sleeplessness, and worry due to the defendant's conduct, such conduct did not have a severe impact upon the plaintiff and did not warrant an award of actual damages)

[95] *Marchman v. Credit Solutions Corp.*, 2011 WL 1557853 (M.D.Fla. April 25, 2011) (awarding no actual damages where the plaintiff testified that she spent nights wake with worry and was withdrawn and dressed but did not provide evidence that she required medical or professional services)

[96] *Rodriguez v. Fla. First Fin. Grp.*, No. 6:06-cv-1678-Orl-28DAB, 2009 WL 535980 (M.D.Fla. Mr. 3, 2009) (refusing to award actual damages for emotional distress because it "did not result in hospitalizations or doctor visits, and [the p]laintiff did not miss work or suffer other lasting effects").

of his allegations that emotional stress and anxiety caused issues with an ulcer on his foot.[97] LORI has likewise not been designed an expert in a medical field such that she could render an opinion on this issue.  Moreover, the ZASKEYS responded to BANA's interrogatories that "[n]o one could determine the cause for my immune system to react in this manner"[98] as to any impact on the medical issue of his diabetic ulcer and that there correlation to an exacerbation caused from a medical article read by the ZASKEYS.

Accordingly, there is no record evidence that the ZASKEYS have sustained any emotional distress of such a severe impact to warrant an award of actual damages should BANA be found liable for any violation of the FCCPA.

### iii.   To the extent this Court was to find a violation of the FCCPA against BANA, the ZASKEYS are not entitled to punitive damages.

The ZASKEYS failed to meet the pleading requirements for punitive damages under the FCCPA such that they should be precluded from any such recovery in the event BANA were to be found liable under the FCCPA.

Florida Statute § 559.77(2) provides that "[t]he court may award punitive damages…" in finding that a person has failed to comply with the requirements set forth in the FCCPA.[99] To recover punitive damages on an FCCPA claim, a plaintiff must **plead** that the defendant acted with malicious intent.[100] The Fourth Amended Counterclaim is devoid of any allegation that BANA acted with malicious intent toward the ZASKEYS and no action has been taken to seek

---

[97] *Ugarte v. Sunset Const., Inc.*, 2008 WL 4723600, at *3-4 (M.D.Fla. October 1, 2008) (finding that debtor own testimony not competent and that medical records or expert opinion needed to demonstrate that her suicide attempt was related to or her depression worsened due to the defendant's actions); *Titus*, 2014 WL 55016, at *2 (declining to award actual damages where claim supported only by statement of debtor that she suffered mental anguish)

[98] ZASKEYS' Resp. to BANA's 1st Interrog. No. 20, ECF No. 196-1; ZASKEYS' Resp. to BANA's 2nd Interrog. No. 1, ECF No. 200-1.
[99] *Fla. Stat. § 559.77(2).*
[100] *Tallahassee Title Co. v. Dean*, 411 So. 2d 204, 205 (Fla. 1st DCA 1982) (quoting *Story v. J.M. Fields, Inc*., 343 So. 2d 675, 677 (Fla. 1st DCA 1977).

amendment of this issue.   Accordingly, the ZASKEYS should be precluded from recovery of punitive damages for their FCCPA claim against BANA.[101]

## V.      CONCLUSION

As set forth herein, the record is devoid of any material issue of fact which would preclude entry of summary judgment in favor of BANA on Counts I, II, and III of the ZASKEYS' Fourth Amended Counterclaim. Count I: Breach of Contract fails given the ZASKEYS' material breach of the Short Sale Agreement for failure to remit timely payment after closing, which, in turn, excused any performance by BANA to satisfy the debt.   Any theory of agency which would impute liability to BANA fails as the parties responsible for completing the physical act of the closing were chosen by the ZASKEYS, not BANA.

Count II: Malicious Prosecution fails as BANA rightfully initiated the foreclosure action against the ZASKEYS following their breach of the Short Sale Agreement and continued default under the terms of the Note and Mortgage.   Further, the record is lacking of any malice on the part of BANA which would be required to sustain this count.

Count III: Violation of FCCPA fails as the Loan of the ZASKEYS is not a consumer debt making the provision of the FCCPA inapplicable to BANA's alleged conduct. The ZASKEYS' use of the Property as an investment which derived rental income and services removed the Loan from the application of the FCCPA.

WHEREFORE, Counter-Defendant, BANK OF AMERICA, N.A., hereby requests this Court enter summary final judgment in favor of BANA against the ZASKEYS on Count I:

---

[101] *See Malowney v. Zacur Graham & Costis, P.A.*, 2011 WL 1655572 (M.D.Fla. May 2, 2011) (striking plaintiff's claim for punitive damages where complaint failed to allege malicious intent by the defendants); *Ugarte*, 2008 WL 4723600, at *4 (recommending that plaintiff's request for punitive damages be denied due to plaintiff's failure to allege malicious intent; *Panayotov v. Wechler Product Sterling and Title*, 2012 WL 2116061, at *2 (M.D.Fla. June 11, 2012) (finding no sufficient cause for award of punitive damages where element of malicious intent not plead in complaint).

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130     (305) 379-0400

Breach of Contract, Count II: Malicious Prosecution, and Count III: Violation of FCCPA of the Fourth Amended Counterclaim, and any other relief deemed just, equitable and proper.

 */s/ Andrew Kemp-Gerstel*
ANDREW KEMP-GERSTEL
Florida Bar No. 044332
BERIT GRIFFIN
Florida Bar No. 68902
ADAM J. WICK
Florida Bar No. 057950
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone:   (305) 379-0400
Fax:   (305) 379-9626
*Counsel for Bank of America, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this **8th**  day of July, 2016, a true and correct copy of the foregoing was furnished *via* E-mail and/or CM/ECF to: **Faequa A. Khan, Esq.** and **Daryl L. Jones, Esq.**, Law Offices of Daryl L. Jones, P.A., djones@DLJonesLaw.com & fkhan@DLJonesLaw.com, located at 14707 South Dixie Hwy., Suite PH402, Miami, Florida 33176; **James Scott Telepman, Esq.,** Law Firm of Cohen Norris Wolmer Ray Telepman Cohen, located at 200 East Broward Boulevard, Suite 2100, Fort Lauderdale, FL 33301 and served via E-mail and US Mail to: **Harbor Land Title, LLC**, c/o Zahera Sadik, zee@harborlandtitle.com, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411.

 */s/ Andrew Kemp-Gerstel*
ANDREW KEMP-GERSTEL