**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

BANK OF AMERICA, N.A. Successor by          CASE NO:  15-cv-81325
Merger to BAC HOME LOANS
SERVICING LP, f/k/a COUNTRYWIDE
 HOME LOANS SERVICING

       Plaintiff,

vs.

GARY L. ZASKEY a/k/a Gary Lynn Zaskey;
LORI A. ZASKEY a/k/a Lori Ann Zaskey;
BRENDA LYNN ZASKEY; UNKNOWN SPOUSE
OF BRENDA LYNN ZASKEY; et al.

       Defendants.
_____/

GARY L. ZASKEY and LORI A. ZASKEY

       Counter-Plaintiffs

vs.

BANK OF AMERICA, N.A.,
GREEN TREE SERVICING, LLC, HARBOR LAND TITLE, L.C.
and OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY

       Counter-Defendants
_____/

**COUNTER-PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AGAINST BANK OF AMERICA, GREEN TREE SERVICING AND OLD REPUBLIC**
**NATIONAL TITLE INSURANCE COMPANY**

      Defendants/Counter-Plaintiffs, GARY L. ZASKEY and LORI A. ZASKEY, (hereinafter

"the Zaskeys") by and through their undersigned attorney, pursuant to Fed. R. Civ. P. 56 and this

Court's recent order dated July 25, 2016 (D.E. 233), hereby file this Motion for Partial Summary

Judgment against Counter-Defendants, BANK OF AMERICA, N.A. ("Bank of America"),

GREEN TREE SERVICING, LLC ("Green Tree") and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY ("Old Republic"), and state the following in support thereof:

## I.      INTRODUCTION

The Zaskeys move for the entry of partial summary judgment against Counter-Defendants on all issues of liability. Since the summary judgment record demonstrates that Counter-Defendants are liable on the claims raised in this case, the Zaskeys request this Court enter an order on the issue of Counter-Defendants' liability, and request that this case proceed to trial on the issue of damages.

## II.      FACTUAL BACKGROUND

The Zaskeys' claims arise following a short sale closing that took place on April 26, 2012. (G. Zaskey Dep 88:22-23 and Ex. 12.) Under the terms of the two letters detailing the short-sale agreement, Bank of America was to receive wired proceeds in the amount of $26,788.44, in full satisfaction of the Note and Mortgage it held on the subject property in Palm Beach County, Florida, and the Zaskeys were to receive a total of $5,000.00 in relocation assistance conditioned on full compliance and performance of the terms and obligations under the short sale agreement. (G. Zaskey Dep., Ex. 10 and 11.)

On or about April 26, 2012, Harbor Land Title, LLC (Harbor Title), the closing agent, attempted to wire the short sale proceeds to Bank of America. (Sadik Dep. 30:14-17.) However, for reasons unknown, the wire transfer was not completed.  On May 3, 2012 the Zaskeys received the $5,000.00 in relocation assistance. (G. Zaskey Dep., 87:5-7; 100:15-23.)

On or about August 9, 2012, Harbor Title successfully wired Bank of America the short-sale proceeds from the Zaskeys' short sale closing in the amount of $26,788.44. (Sadik Dep. 30:18-24.) On August 16, 2012, Bank of America returned these wired funds to Harbor Title (Sadik Dep. 30:18-24.) Despite the Zaskeys' full performance of all their obligations under the short-sale

agreement, Bank of America returned the short sale proceeds to Harbor Title without explanation, and without contacting the owner of the loan, Fannie Mae, to determine whether it would accept the sales proceeds. Simultaneously, in August 2012 Old Republic conducted an audit of Harbor Title, finding that Bank of America had not yet received the short sale proceeds, and referencing this as a "High Risk Issue". (See 2012 and 2013 Audits, attached as Composite Ex. C.) The next month Bank of America filed a foreclosure action against the Zaskeys. (Decl. of G. Zaskey, ¶ 7-12 and D.E. 142, p. 75 of 98.) No one, including Bank of America, ever informed the Zaskeys that Bank of America had rejected the short sale proceeds. (Decl. of G. Zaskey, ¶ 7.) The Zaskeys believed Bank of America received the proceeds from the closing in full satisfaction of the note and mortgage. (Decl. of G. Zaskey, ¶ 7.) Even when Bank of America initiated collections actions, it never informed the Zaskeys either by written notice or by telephone call that it had rejected the short-sale proceeds. (Decl. of G. Zaskey, ¶ 8.)

For two and one half years, Bank of America and Green Tree both failed to properly credit the Zaskeys' account, improperly refused to accept the sales proceeds, and instead proceeded with an aggressive and harassing debt collection campaign against the Zaskeys. (Decl. of G. Zaskey, ¶ 13-26.) While the Zaskeys repeatedly explained to Bank of America, Green Tree, and their representatives from various collection agencies that the approved short-sale had taken place, neither Bank of America nor Green Tree conducted a good faith investigation into the Zaskeys' dispute of the debt which should have been satisfied after a lender-approved short sale had closed. Or, if they did conduct such an investigation, neither informed the Zaskeys that Bank of America had rejected the short sale proceeds. (Decl. of G. Zaskey, ¶ 13-26.)

Subsequently, Harbor Title contacted Green Tree, which on May 1, 2013 assumed the servicing of the Zaskeys' loan, and asked a representative named Mario to accept a wire transfer

of the short sale proceeds in full satisfaction of the Zaskeys' debt, and in accordance with the Zaskeys' short-sale agreement. (Sadik Dep. 31:1-20; 33:12-23.) Green Tree refused the funds, refused in any way to acknowledge the April 26, 2012 short sale closing, and instead demanded the Zaskeys either again short sale the Property which they no longer owned, or pay the debt in full in the amount of $99,327.02. (Sadik Dep. 31:1-20; 33:12-23.)

These short sale proceeds remained in the possession of Harbor Title until November 26, 2013, at which time Harbor Title transferred the proceeds to Old Republic. (Sadik Dep., Ex. C; Roberts Dep. 16:14-18.) Old Republic then maintained possession of the funds for nine months. (Roberts Dep. 16:19-22.) On August 27, 2014, Old Republic transferred the short sale funds in the amount of $26,788.44 to Green Tree. (Roberts Dep. 16:19-22.) From August 16, 2012 forward neither Old Republic nor Harbor Title took any action to inform that Zaskeys that Bank of America had rejected the short sale proceeds without explanation, or that Old Republic had possession of the funds for nine months while Bank of America and Green Tree had proceeded with their efforts to collect these funds against the Zaskeys. (D.E. 172-2, page 4-5 of 26.)

On October 29, 2014 Green Tree recorded a Satisfaction of Mortgage regarding the Zaskeys' note and mortgage. (D.E. 142-1, page 24 of 37.) Nine months later on July 21, 2015, Bank of America filed a notice of voluntary dismissal, dismissing its foreclosure action with prejudice. (D.E. 142-1, page 28 of 37.) Both Green Tree and Bank of America took these actions without informing the Zaskeys they would do so, without the Zaskeys signing any additional closing documents, and without the Zaskeys contributing any money toward the debt Bank of America and Green Tree sought to collect.

## III. ARGUMENT

### A. STANDARD OF REVIEW

The burden of a movant seeking relief pursuant to Fla. R. Civ. P. 56 is well known.  The movant must bring forward sufficient evidence to establish that there are no genuine issues of material fact and that the movant is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986). A "genuine" fact does not exist simply by the nonmoving party demonstrating some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Instead, the nonmoving party must come forward with evidence significantly probative of its claims. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-49 (1986).

## B. SUMMARY JUDGMENT IS WARRANTED ON THE ZASKEYS' CLAIM FOR BREACH OF THE SHORT-SALE AGREEMENT AGAINST BANK OF AMERICA

A primary issue in this case concerns the competing interpretations of the March 16, 2012 Cooperative Short Sale Agreement ("CSSA") and Relocation Assistance Letter, representing the valid contract between the parties. Bank of America and Green Tree take assert that the CSSA required the sales proceeds be wired to Bank of America within 48 hours of the short sale closing. They argue that because those funds were not received by Bank of America within that time frame, the CSSA was rendered void, the Zaskeys were in breach of the CSAA, and the Counter-Defendants debt-collection actions were justified[1]. This argument fails for a host of reasons, and the Zaskeys are entitled to summary judgment as a matter of law on this issue.

Among other things, the Cooperative Short Sale Agreement contains seventeen (17) different terms and conditions, set forth in consecutively numbered paragraphs. (See G. Zaskey Dep., Ex. 10.) Paragraph Five of the CSSA states that the bank's short-sale approval "is void" if

---

[1] See, e.g. Bank of America's Motion for Summary Judgment (D.E. 213, p. 2) and Green Tree's Motion for Summary Judgment (D.E. 209, p. 2.)

the closing does not occur by April 30, 2012 (G. Zaskey Dep., Ex. 10, ¶5). However, the CSSA does <u>not</u> contain a similar "void" provision concerning the receipt of the sales proceeds. The provision dealing with receipt of funds (Paragraph 14) only states that "payoff funds must be received within 48 hours ..." (G. Zaskey Dep., Ex. 10, ¶14.)

Unlike the closing date provision found in Paragraph 5 of the CSSA, there is no similar language in Paragraph 14 that would automatically void the agreement. Nor does the CSSA contain any general, all-encompassing provision that would automatically void the agreement based on any delay in compliance. Additionally, there is no "time is of the essence" language with respect to the 48-hour wire transfer provision. In fact, the words "time is of the essence" are not mentioned. Without an express "time is of the essence" provision governing the receipt of the payoff funds, there is not a breach of the CSSA. Florida law is clear that absent an express stipulation that time is of the essence, a delay in performance will not void an otherwise valid agreement[2].

Here, it is undisputed that the closing took place on April 26, 2012, within the deadline set forth in the CSSA. Since the CSSA was not automatically void, and since time was <u>not</u> "of the essence" – the parties had a valid contract in place, even as late as August 31, 2012. Bank of America breached this contract when it rejected the wired short sale proceeds without explanation

---

[2] See *National Exhibition Co. v. Ball*, 139 So. 2d 489, 492 (Fla. 2d DCA 1962) ("the modern trend of decisions concerning brief delays by one party in performance of a contract or conditions thereunder, in the absence of an express stipulation in the contract that time is of the essence, is to not treat such delays as a failure of a constructive condition discharging the other party unless performance on time was clearly an essential and vital part of the bargain."); *Jackson v. Holmes,* 307 So. 2d 470, 472 (Fla. 2d DCA 1975) (refusing to apply a "time is of the essence" clause contained within a paragraph concerning the ultimate closing to a different provision concerning bank loan certification); *Command Sec. Corp. v. Moffa*, 84 So. 3d 1097, 1101 (Fla. 4th DCA 2012)("Even if a contract contains a specified date for performance, when the contract does not specify that time is of the essence, a delay will not necessarily invalidate the provision.*"); Royal Dev. & Mgmt. Corp. v. Guardian 50/50 Fund V, Ltd*., 583 So. 2d 403 (Fla. 3d DCA 1991)(strictly construing a time is the of the essence provision, such that the provision did not apply to every obligation under the contract.)

on August 16, 2012 after holding them for a week. Had Bank of America wanted the agreement to automatically void where the proceeds were not received within 48 hours of the closing, it could have easily added "time is of the essence" language to Paragraph 14. The CSSA, on its face, provides that the failure to timely *close* would void the agreement, but no such provision automatically voids the agreement should the closing agent fail to timely wire the funds.

While the Zaskeys believe the CSSA is clear, *at best* Bank of America and Green Tree can only demonstrate that the CSSA is ambiguous with respect to whether "time was of the essence" to forward the short-sale proceeds. Such an ambiguity must be construed against the drafter, Bank of America. See *Arriaga v. Fla. Pac. Farms, L.L.C.,* 305 F.3d 1228, 1247 (11th Cir. 2002) ("When 'ambiguity in meaning remains after resort to the ordinary rules of construction,' an ambiguous term is to be construed against the drafter."); *City of Homestead v. Johnson*, 760 So. 2d 80, 84 (Fla. 2000) ("An ambiguous term in a contract is to be construed against the drafter.")

## C.  THE ZASKEYS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR MALICIOUS PROSECUTION CLAIM.

The elements of malicious prosecution are (1) a legal proceeding commenced or continued against the plaintiff, (2) the defendant caused or commenced the proceeding, (3) the proceeding had a bona fide termination in plaintiff's favor, (4) there was no probable cause for commencing the proceeding, (5) the defendant acted with malice, and (6) the plaintiff suffered damage. See *Shidlowsky v. National Car Rental Systems, Inc.*, 344 So.2d 903 (Fla. 3d DCA 1977); *Alamo Rent-A-Car, Inc. v. Mancusi,* 632 So. 2d 1352, 1355 (Fla. 1994). The first three elements of a malicious prosecution claim are undisputed in this case.

Thus, the elements remaining for the Court to consider aside from damages include whether probable cause for the foreclosure proceeding existed, and whether Bank of America acted with malice *Mancusi*, at 1355. This Court previously recognized that these elements

can be examined together: "In an action for malicious prosecution it is not necessary for plaintiff to prove actual malice; legal malice is sufficient and may be inferred from, among other things, a lack of probable cause . . ." *Muradas v. M&T Bank*, No. 13-60178-CIV-ROSENBAUM/HUNT, 2013 U.S. Dist. Lexis 89060, *10-11 (S.D. Fla. June 25, 2013) *(citing Mancusi* at 1357).

Here, the summary judgment record demonstrates a complete absence of probable cause to initiate and maintain the foreclosure action. The undisputed evidence demonstrates that Bank of America initiated a foreclosure lawsuit against the Zaskeys, on a property the Zaskeys did not legally own, and after improperly rejecting the short sale proceeds. A final judgment would have been void since the lawsuit never named as defendants Bernardo Moreno and Doralba Tellez Vargas, the fee simple owners of the property (D.E. 142, p. 75 of 98). See *English v. Bankers Trust Co. of Cal., N.A.,* 895 So. 2d 1120, 1121 (Fla. 4th DCA 2005) (noting that a foreclosure judgment obtained in an action where the current owner of the property is not joined is void.)

Bank of America then prosecuted that action for nearly three years. Green Tree filed a Satisfaction of Mortgage on October 29, 2014 after it was the first servicer to contact Fannie Mae since the short sale closing. Once Fannie Mae agreed to accept the short sale proceeds, Bank of America realized its foreclosure action was without merit. Having no other choice, nine months later Bank of America dismissed the claim with prejudice. (D.E. 142-1, page 28 of 37.)

This lack of probable cause is also supported by Bank of America's own documents. For instance, since the CSSA was not "void" when Bank of America received the short sale proceeds on August 9, 2012, it should have credited these proceeds to the Zaskey short sale account, or if in doubt, obtained Fannie Mae's approval rather than unilaterally rejecting the short sale wire from Harbor Title. Because Bank of America received these proceeds on August 9, 2012, prior to the end of the 120-day marketing period as stated in the CSSA (and before August 31, 2012 as stated

in the Relocation Assistance letter), then in accordance with its own short sale agreement, a foreclosure lawsuit was not an available option for Bank of America[3]. Foreclosure was available only should the short sale not close as required in the CSSA, which it did. As noted above, Bank of America's remedy was limited to pursuing a deficiency action, but Bank of America instead chose to foreclose which was not available option.

Since the undisputed evidence in this case demonstrates that Bank of America lacked probable cause to file a foreclosure action, and acted with "legal malice", the Zaskeys are entitled to summary judgment on their malicious prosecution claim, and request a trial solely on the amount of damages they sustained.

### D. THE ZASKEYS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FCCPA CLAIMS AGAINST BANK OF AMERICA AND GREEN TREE.

The Zaskeys have raised several different violations of the FCCPA in their Fourth Amended Counterclaim, and each separate provision of the FCCPA is addressed separately below.

### i.     Fla. Stat. § 559.72(9)

To establish a violation under Section 559.72(9), a plaintiff must show that a legal right that did not exist was asserted and that the person had actual knowledge that the right did not exist. See *Pollock v. Bay Area Credit Serv., LLC*, No. 08-61101, 2009 U.S. Dist. LEXIS 71169, *24 (S.D. Fla. Aug. 12, 2009).

Here, the summary judgment evidence demonstrates that Bank of America repeatedly asserted its right to collect on the mortgage debt when it placed collection calls and sent debt collection letters to the Zaskeys, after it rejected the proceeds from a short sale it previously

---

[3] See Relocation Assistance Letter, (D.E.142-2, page 26 of 36) which states: "While you may receive relocation assistance, Bank of America N.A. and their successors and assigns may reserve the right to pursue collection of any deficiency following completion of the short sale, unless prohibited by law."

approved. Bank of America asserted these rights even though the Zaskeys had fully complied with the CSSA as evidenced by their receipt of the $5,000.00 in relocation assistance. The record is filled with examples where Bank of America improperly asserted this right, including:

    i.    From June 5, 2012 until it filed foreclosure on September 26, 2012, Bank of America called the Zaskeys dozens of times in an effort to collect on the underlying mortgage debt, despite the fact that the debt was no longer legitimate. (See Bank of America call log, entitled "Home Base Notes", attached as Ex. B.)

    ii.    On July 25, 2012, Bank of America sent the Zaskeys a loan modification offer. The letter stated that "until you have made all three of the trial payments on time, your loan is subject to foreclosure" and that once the foreclosure process starts, foreclosure activities will continue until you have made all three of the Trial Period Plan payments by the required due dates." (D.E. 142-2, 28 of 36)

    iii.    Mr. Zaskey received additional debt collection calls from a company named Resolve, and other calls from REDC Default Solutions, BAC Home Loans, on behalf of Bank of America. (G. Zaskey Dep., 124:20 -125:5.) In July 2012, Mr. Zaskey received approximately 30 debt collection calls. (G. Zaskey Dep., 124:20 -125:5.)

    iv.    Mr. Zaskey's Declaration also verifies numerous other debt collection calls he received, and his communications with those Bank of America representatives. (Decl of G. Zaskey, ¶14.)

With respect to Green Tree, the summary judgment record also conclusively establishes that Green Tree improperly asserted its right to collect, including:

    i.    On May 1, 2013, Green Tree sent the Zaskeys a letter demanding payment of $127,120.84. (D.E. 142-3, page 4 of 45.)

    ii.    On June 13, 2013, Green Tree sent the Zaskeys a letter advising that Green Tree intended to procure insurance on the property and would charge the Zaskeys $2,792.81, plus interest. (D.E. 142-3, page 11 of 45). On July 1, 2013, Green Tree confirmed that it purchased said insurance and demanded payment of that amount. (Id.)

    iii.    On March 27, 2014, Green Tree sent the Zaskeys a letter advising that Green Tree intended to procure insurance on the property and would charge the Zaskeys that amount, plus interest.  (D.E. 142-3, page 16 of 45). On May 2, 2014, Green Tree advised that it would bill the Zaskeys $2,318.12, and on May 23, 2014, demanded payment of that amount. (Id.)

iv. On November 19, 2013, Green Tree sent the Zaskeys a letter stating that their mortgage payment was 60 days or more past due, and if payment is not made the loan may be referred to foreclosure. (D.E. 142-3, page 25 of 45.)

v. On February 17, 2014, Green Tree sent the Zaskeys a letter stating that their loan was in default, and that the Zaskeys must pay $44,487.03 within thirty days, or else Green Tree may file for foreclosure and seek acceleration of all amounts under the Zaskey note and mortgage. (D.E. 142-3, page 29 of 45.)

vi. On February 24, 2014, Green Tree sent the Zaskeys a letter stating that their loan was in default, and that the Zaskeys must pay $44,520.32 within thirty days, or else Green Tree may file for foreclosure and seek acceleration of all amounts under the Zaskeys note and mortgage. (D.E. 142-3, page 31 of 45.)

vii. On May 2, 2014, Green Tree sent the Zaskeys a letter advising that Green Tree intended to procure insurance on the property and would charge the Zaskeys $2,318.12.  (D.E. 142-3, page 33 of 45.)

viii. On August 29, 2014, over two years after the short-sale closing took place, Green Tree sent the Zaskeys a letter offering a short sale. That same day, Green Tree issued a second letter, stating that the Zaskeys were ineligible for the FNMA Home Affordable Modification Program. (D.E. 142, page 36 of 45.)

i. Mr. Zaskey's Declaration also verifies numerous other debt collection calls he received, and his communications with those Green Tree representatives. (Decl of G. Zaskey, ¶21-23.)

The summary judgment record also demonstrates that Bank of America and Green Tree had actual knowledge that they did not have the right to collect this debt. First, Bank of America cannot reasonably claim it had no knowledge of the contents of the CSSA and Relocation Assistance letter that it wrote, which limited it to a collection action and not a foreclosure lawsuit once the closing occurred. Second, and most notably, this actual knowledge also stems from Mr. Zaskey's numerous communications with Bank of America and Green Tree representatives, during which time Mr. Zaskey told those representatives that he had already completed an approved short-sale. (See Ex. B herein, call entries dated 11/7/2012 and Decl of G. Zaskey, ¶14, ¶16 and ¶22.)

Finally, evidence of actual knowledge can be found from Bank of America's own conduct, where it held the short-sale proceeds for a week (from August 9, 2012 to August 16, 2012), and

then sent the wire transfer back to Harbor Land Title without explanation. Green Tree had actual knowledge, (a) via collection calls to Mr. Zaskey where he informed the representatives of the disputed nature of the debt, and (b) via two qualified written requests (QWRs) Mr. Zaskey sent Green Tree, in which he told Green Tree, that a Bank of America approved short-sale was concluded in April 2012, and that "I owe nothing on this loan." (Decl of G. Zaskey, ¶24-25, and D.E. 142-4, page 2-6 of 6.)

### ii.  Fla. Stat. § 559.72(3) and (6)

Section 559.72(3) of the FCCPA states that a person collecting a consumer debt such as Defendant shall not:

> [t]ell a debtor who disputes a consumer debt that she or he or any person employing her or him will disclose to another, orally or in writing, directly or indirectly, information affecting the debtor's reputation for credit worthiness without also informing the debtor that the existence of the dispute will also be disclosed as required by subsection (6).

Section 559.72(6) similarly states that a person collecting a consumer debt shall not "[d]isclose information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact." Fla. Stat. § 559.72(6).

Here, Bank of America's "Home Base Notes" and "Equator" notes contain a record of approximately 77 phone calls between Bank of America and Mr. Zaskey between June 5, 2012 and April 30, 2013. Both reference at least two conversations where Mr. Zaskey told Bank of America representatives the short sale closed and no debt was owed. (See Ex. B herein, entries dated 11/7/2012.) Those records do <u>not</u> reflect that Bank of America advised Mr. Zaskey that it would disclose the disputed nature of the debt.

Similarly, Mr. Zaskey's Declaration sets forth numerous instances where he advised Green Tree's representatives that he disputed the nature of the debt, but Green Tree failed to disclose that the disputed nature of the debt would be noted or reported. (Decl. of G. Zaskey, ¶22 - 23).  Further,

Mr. Zaskey sent Green Tree two handwritten letters (QWRs), in which he advised Green Tree that the property sold via an approved short sale, and that the debt was no longer owed. (Decl. of G. Zaskey, ¶24 - 25, D.E. 142-4, page 2-6 of 6.)

Additionally, the evidence reveals that Bank of America and Green Tree never reported that the debt was disputed. For instance, all of Mr. Zaskeys' Credit Karma reports, from 2012 through 2013, show neither Bank of America, nor Green Tree, nor any other entity ever reported that these debts were disputed. (See G. Zaskey Decl., ¶23 Ex. A thereto.) In light of this undisputed evidence, Bank of America and Green Tree are liable under §559.72(3) and (6).

### iii.    Fla. Stat. § 559.72(7)

Section 559.72(7) prohibits a debt collector from engaging in harassing or abusive behavior. When analyzing the related provision of the FDCPA[4] (Section 1692d), courts consider both the volume and the pattern of the telephone calls[5].  Like the cases of *Sanchez* and *Kuhn* noted above, the frequency and pattern of Bank of America and Green Tree's communications to the Zaskeys demonstrates that the Counter-Defendants intended to annoy, abuse, and harass them.

### E.  THE ZASKEYS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR FDCPA CLAIMS AGAINST GREEN TREE.

---

[4] Section 559.77(5) of the FCCPA expressly provides that: "In applying and construing this section, due consideration and great weight shall be given to the interpretations of the Federal Trade Commission and the federal courts relating to the federal Fair Debt Collection Practices Act."

[5] *See Katz v. Capital One*, 2010 WL 1039850, *3 (E.D. Va. Mar. 18, 2010); *Martin v. Select Portfolio Serving Holding Corp.*, 2008 WL 618788, *6 (S.D. Ohio Mar. 3, 2008) ("In determining whether the debt collector intended to annoy, abuse and harass the consumer, the Court may consider frequency, persistence, and volume of the telephone calls."); *Sanchez v. Client Services, Inc.*, 520 F. Supp. 2d 1149 (N.D. Cal. 2007) (summary judgment for consumer on section 1692d(5) claim where collector placed 54 telephone calls to debtor's place of employment during six month period, including 17 calls in one month and six on one day); *Kuhn v. Account Control Tech., Inc.*, 865 F. Supp. 1443, 1453 (D. Nev.1994) (six calls to consumer's place of employment within twenty-four minutes constituted harassment under section 1692d(5)).

Like their FCCPA claim, the Zaskeys allege several violations of the FDCPA in their Fourth Amended Counterclaim, and each provision of the FDCPA is addressed separately below.

**a. <u>Section 1692f</u>**

A debt collector is liable under Section 1692f where it attempts to collect a debt that is illegitimate. See, e.g. *Carey v. Pinnacle Credit Servs., LLC*, No. 6:13-cv-426, 2014 U.S. Dist. LEXIS 1413, *5 (M.D. Fla. Jan. 7, 2014) Unlike the FCCPA, a debtor is <u>not required</u> to prove the debt collector had "actual knowledge" that the underlying debt was not authorized or was invalid. See *McCorriston v. L.W.T., Inc.,* 536 F. Supp. 2d 1268, 1279 (M.D. Fla. 2008); *Kaplan v. Assetcare, Inc*., 88 F. Supp. 2d 1355, 1361 (S.D. Fla. 2000).

In this case, there is undisputed evidence that Green Tree repeatedly attempted to collect a debt that was illegitimate. This was evidenced when Green Tree filed its Satisfaction of Mortgage and Bank of America dismissed its foreclosure action with prejudice, both without the Zaskeys paying anything toward the alleged debt, or signing any other closing documents. Therefore, Green Tree is liable under Section 1692f. Evidence of attempts to collect on this illegitimate debt includes the numerous collection calls made by Green Tree and its agents to Mr. Zaskey (Decl. of G. Zaskey, ¶21-23, ¶26), as well as the two handwritten letters (QWRs) Mr. Zaskey wrote after being advised that Green Tree was the new servicer on the account. (See Decl. of G. Zaskey, ¶24 - 25, and D.E. 142-4, page 2-6 of 6.) All of these communications occurred *after* Green Tree's predecessor, Bank of America, wrongfully rejected the August 9, 2012 wire transfer to complete the short sale.

Since Bank of America should not have rejected the August 9, 2012 wire transfer, and since the Zaskeys' fully performed under the Bank of America short sale agreement, Green Tree, as

successor, repeatedly attempted to collect a debt not authorized "by the agreement creating the debt or permitted by law." 15 U.S.C. § 1692f(1)

**b. <u>Section 1692g(b)</u>**

Section 1692g(b) of the FDCPA mandates that where a debtor disputes the validity of a debt, a debt collector must cease collection efforts until it obtains verification of the debt. Here, Green Tree notified Mr. Zaskey via a May 1, 2013 letter that it assumed the servicing of the Zaskey loan from Bank of America. (Dep. of G. Zaskey, Ex. 20.) Within a day of receiving that letter, Mr. Zaskey responded via regular mail. He wrote a handwritten response on the May 1, 2013 letter, which stated: "This property was sold thru a Bank of America short sale 4-26-12. I owe nothing on this loan. Gary Zaskey." (Decl. of G. Zaskey, ¶24-25, D.E. 142-4, page 2 of 6.)

There is no record evidence in this case that Green Tree ever responded at all, let alone within the statutory period found in Section 1692g. Since Mr. Zaskey disputed the debt in writing, and since Green Tree failed to respond, or to cease its debt collections efforts, summary judgment on this issue is proper.

**c. <u>Section 1692d</u>**

Here, the Zaskeys specifically identified approximately one dozen written communications, along with numerous telephone calls directed to the Zaskeys, demanding payment for a debt obligation that was illegitimate. (See Decl. of G. Zaskey, ¶14, 19, 21, 22, and 26.) These included new default letters by Green Tree, as well as letters stating that that the Zaskeys applied for, but were ultimately turned down, for a loan modification or short sale offer. (Id. at ¶26) The Zaskeys found these communications extremely disturbing and frustrating, since the Zaskeys never requested or applied for any such loss mitigation programs, and since they closed on a short sale of the subject property about two years earlier. (Decl. of G. Zaskey, ¶27.)

For these reasons, and based upon the case law cited above in support of liability under Section 559.72(7) of the FCCPA (see p. 13, n. 5), here the frequency and circumstances of Green Tree's communications to the Zaskeys shows that Green Tree intended to annoy, abuse and harass them.

### d.   Section 1692e(8)

Section 1692e of the FDCPA prohibits a debt collector from, among other things, using "any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e.

Green Tree is liable under Section 1692e(8) of the FDCPA, for the same reason it is liable under Sections 559.72(3) and (6) of the FCCPA. The summary judgment record establishes that Green Tree made no effort to actually disclose the disputed nature of the debt when Bank of America notified various credit agencies. (See Decl. of G. Zaskey, ¶23, and Credit Karma reports attached thereto as Ex. 1.)

### F.   THE ZASKEYS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR RESPA CLAIM AGAINST GREEN TREE.

RESPA imposes certain disclosure obligations on loan servicers who transfer or assume the servicing of a federally related mortgage loan. 12 U.S.C. § 2605. Among those duties is the obligation to respond to a Qualified Written Request (QWR) submitted by a borrower. 12 U.S.C. § 2605(e).

To state a claim for violation of RESPA § 2605(e), plaintiffs must allege facts showing that: (1) defendant is a loan servicer, (2) plaintiffs sent defendant a valid QWR, (3) defendant failed to adequately respond within the 20/60 day statutory period, and (4) plaintiffs are entitled to actual or statutory damages. 12 U.S.C. § 2605(e); See *Frazile v. EMC Mortg. Corp.*, 382 F. App'x 833, 836 (11th Cir. 2010). It is undisputed that Green Tree was a loan servicer of the Zaskeys' loan.

Here, there is clear evidence that Mr. Zaskey sent Green Tree two (2) Qualified Written Requests, which consisted of handwritten notes that were returned via regular mail by Mr. Zaskey on Green Tree's correspondence. (Decl of G. Zaskey ¶24-25, and D.E. 142-4, page 2-6 of 6.) Putting aside that Mr. Zaskey is legally blind, and due to this disability has significant difficulty complying with RESPA's requirement for a written request, the handwritten notes from Mr. Zaskey undoubtedly are sufficient to meet RESPA's requirements. The QWR requirement in RESPA does not mandate that a QWR be dated, nor does it require any special form of service. See 12 U.S.C. § 2605(e)(1)(B).

Since there is no record evidence Green Tree responded within the statutory period, summary judgment of Green Tree's liability under RESPA is proper. See 12 U.S.C. § 2605(f).

## G. THE ZASKEYS ARE ENTITLED TO SUMMARY JUDGMENT ON THEIR NEGLIGENCE CLAIM AGAINST OLD REPUBLIC

To prove a cause of action for negligence, a plaintiff must prove that the defendant had a legal duty, the defendant breached that duty, the breach proximately caused the plaintiff's injury, and the plaintiff incurred damages as a result. *McCain v. Florida Power Corp.*, 593 So. 2d 500, 502 (Fla. 1992).

The existence of a legal duty is a threshold question for the court. Id. at 502; *Aime v. State Farm Mut. Ins. Co.,* 739 So. 2d 110, 112 (Fla. 4th DCA 1999). Once a foreseeable zone of risk is created, the defendant has a duty "either to lessen the risk or to see that sufficient precautions are taken to protect others from the harm that the risk poses." *Kaisner v. Kolb*, 543 So. 2d 732, 735 (Fla. 1989). Thus, as to duty the proper inquiry "is whether the defendant's conduct created a foreseeable zone of risk, not whether the defendant could foresee the specific injury that actually occurred." *McCain*, 593 So. 2d at 504; *Lakeshore 1 Condo. Ass'n*, 691 So. 2d 1104, 1106 (Fla. 3d DCA 1997) (citing Restatement (Second) of Torts, § 285 (1965)).

On this issue, the relevant summary judgment record includes the transfer of the short sale proceeds from Harbor Title to Old Republic, recently produced 2012 and 2013 Audits performed by Old Republic on Harbor Title, and the underlying agency agreement between Old Republic and Harbor Title. The August 2012 Audit revealed that the Zaskey short sale proceeds remained with Harbor Title. Old Republic classified this as a "High Risk Issue." Thus, Old Republic knew the Zaskey payoff to Bank of America did not clear, despite the fact that the wire transfer was sent by Harbor Title on August 9, 2012.

The 2013 Audit repeats this "High Risk Issue" finding that the Zaskey short sale proceeds remained in Harbor Title's possession. (Ex. C, pp. 12-13.) The 2013 Audit also reflects that Old Republic advised Harbor Title to contact Bank of America to determine where the funds should be sent, and to send a check to Bank of America, "along with a copy of their short sale approval letter and a letter explaining what occurred." (Ex. C, p. 13, ¶1.) Old Republic's auditor commented that "[h]opefully this will take care of the problem," and that "I will follow up on this." (Id.)

The "Agreement for Appointment of Policy Issuing Agent" is the underlying contract between Old Republic and Harbor Title, as agent. That Agreement (at Section II. AGENT'S DUTIES, Paragraph F) specifies that Harbor Title, as agent, is required to "Keep safely . . . all funds received by Agent from any source in connection with transactions where Insurer's Title Insurance Forms are issued, and disburse said funds for the purpose for which same are entrusted, and reconcile all such accounts not less frequently than monthly". (See Ex. D, Agreement between Old Republic and Harbor Title)

In light of this evidence, the "foreseeable zone of risk" began, and was created by Old Republic, at the time Old Republic conducted the 2012 Audit. As of that date, Old Republic recognized that Harbor Title, its agent, had engaged in "High Risk" conduct, which exposed both

Old Republic and Harbor Title to potential liability. Old Republic directed Harbor Title on how to proceed in this matter, and exercised control over Harbor Title with respect to these matters. In addition, Old Republic failed to follow up with Harbor Title on this High Risk Issue after the August 2012 audit until *after* it concluded its 2013 Audit. The contract between Old Republic and Harbor Title also provides that Harbor Title is obligated to follow Old Republic's Directives, Policies and Procedures (See Ex. D, Section II. AGENT'S DUTIES, Paragraph L). Despite knowing of the risk, and having control over Harbor Title's conduct with respect to that risk, Old Republic had a duty to follow up with Harbor Title regarding this "High Risk Issue:" It did not, nor did it direct Harbor Title to remedy this situation following the completion of the 2012 Audit.

In fact, Old Republic had a duty to, but did not address the matter in any way for more than a year, until after it conducted the 2013 audit, and subsequently took possession of the Zaskey short sale proceeds. While Old Republic followed up on other lower risk items in the 2012 Audit during this time, it did not address the High-Risk item concerning the Zaskeys' funds. Here, it was foreseeable to Old Republic that Bank of America's failure to receive the Zaskey short sale proceeds would result in damages to the Zaskeys. By its own conduct, including its auditing and directing the actions of Harbor Title, and ultimately taking possession of such funds at its discretion on November 26, 2013, Old Republic managed the short-sale proceeds since 2012.

On this issue, the case of *Nat'l Title Ins. Co. v. Lakeshore 1 Condo. Ass'n*, 691 So. 2d 1104 (Fla. 3d DCA 1997) is instructive. There, the court found that the defendant's conduct in managing certain insurance proceeds created a foreseeable zone of risk encompassing all persons who had an interest in the proceeds. *Id*. at 1107. The court noted that the situation was analogous to those cases where the lender of funds retains authority to disburse the funds, such a lender assumes a duty to act reasonably. *Id*. at 1108.

The holding and analysis by the court in *Nat'l Title Ins. Co. v. Lakeshore* requires a similar result in this case. Simply put, since the evidence in this case reveals that Old Republic had the authority to manage, and did in fact direct Harbor Title in managing the short sale proceeds, Old Republic had a legal duty to manage and disburse the short sale proceeds in a reasonable manner[6], and/or to inform the Zaskeys that Bank of America rejected the proceeds,

## **CONCLUSION**

Bank of America's liability in this case is readily apparent. After approving the Zaskeys for a short-sale, it took complete control over the Palm Beach, Florida short-sale process. The Zaskeys, who were residing in Wisconsin, conducted the closing via mail, and fully performed their responsibilities.

The Zaskeys suffered through years of unnecessary stress, harassment, and emotional turmoil through debt collection efforts of Bank of America and Green Tree. Further, Old Republic had a duty to take action to address Bank of America's rejection of the Zaskey short sale proceeds because after conducting its August 2012 Audit, it was foreseeable the Zaskeys would suffer damages, which they did. Based on the foregoing undisputed facts and applicable law, summary judgment on the issue of liability is proper.

**WHEREFORE**, in view of the foregoing, the Counter-Plaintiffs request this Court enter partial summary judgment against the Counter-Defendants on the issues addressed herein, and that the Court grant any further relief it deems just and proper.

---

[6] Upon a finding that there is a legal duty owed by Old Republic, the Zaskeys are entitled to a trial on whether Old Republic acted reasonably, and whether it caused the Zaskeys any damages. See *Hudge v. Xtra Super Food Ctrs.*, 677 So. 2d 405, 406 (3d DCA 1996)(noting that while the element of duty is a legal issue, the elements of reasonableness and proximate cause are jury questions)

## <u>CERTIFICATE OF SERVICE</u>

  I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail and/or E-mail and/or CM/ECF on this the <u>27th</u> day of July, 2016 to: Liebler, Gonzalez & Portuondo, Attorneys for Bank of America, N.A., Courthouse Tower, 25th Floor, 44 West Flagler Street, Miami, FL 33130, service@lgplaw.com; <u>bg@lgplaw.com</u>; <u>sqr@lgplaw.com</u>; <u>akg@lgplaw.com</u>; <u>mkv@lgplaw.com</u>; Shutts & Bowen, LLP, <u>JBustard@shutts.com</u>; Harbour Land Title, LLC, c/o Zahera Sadik, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411, VIA EMAIL: <u>zee@harborlandtitle.com</u>; Cohen, Norris, Wolmer, Ray, Telepman & Cohen, VIA EMAIL: <u>jst@fcohenlaw.com</u>

        Respectfully Submitted,

        Law Offices of Daryl L. Jones, P.A.
        14707 South Dixie Hwy., Ste 101
        Miami, FL 33176
        Tel: 888-328-5942
        <u>djones@DLJonesLaw.com</u>
        <u>fkhan@DLJonesLaw.com</u>
        <u>eromanowski@DLJonesLaw.com</u>

      By: <u>***/s/ Faequa A. Khan***</u>
        ☐ Daryl L. Jones, Esq./FBN.: 742589
        ■ Faequa A. Khan, Esq./FBN.: 100278