**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

BANK OF AMERICA, N.A., SUCCESSOR      **CASE NO.: 9:15-CV-81325**
BY MERGER TO BAC HOME LOANS
SERVICING, LP f/k/a COUNTRYWIDE
HOME LOANS SERVICING, LP,

           Plaintiff,

vs.

GARY L. ZASKEY a/k/a GARY LYNN
ZASKEY, et. al.,

           Defendants.

_____/

GARY L. ZASKEY and LORI A. ZASKEY,

           Counter-Plaintiffs/Third
           Party Plaintiffs,

v.

BANK OF AMERICA, N.A.,

           Counter-Defendant,

     and

GREEN TREE SERVICING, LLC, et al.,

           Third-Party Defendants.

_____/

**COUNTER-DEFENDANT, BANK OF AMERICA, N.A.'S RESPONSE**
**IN OPPOSITION TO COUNTER-PLAINTIFFS, GARY L. ZASKEY AND**
**LORI A. ZASKEY'S MOTION FOR PARTIAL SUMMARY JUDGMENT**
**AGAINST BANK OF AMERICA, GREEN TREE SERVICING AND OLD REPUBLIC**
**NATIONAL TITLE INSURANCE COMPANY AND STATEMENT OF MATERIAL**
**FACTS IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT**

     Counter-Defendant, BANK OF AMERICA, N.A. ("BANA"), by and through

undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1,

hereby files its Response in Opposition to Counter-Plaintiffs, GARY L. ZASKEY ("GARY")

and LORI A. ZASKEY's ("LORI") (collectively, the "ZASKEYS") Motion for Partial Summary Judgment Against BANA, GREEN TREE SERVICING and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY (the "Motion for Summary Judgment")[1] and Statement of Material Facts in Support of Motion for Partial Summary Judgment (the "Statement of Facts")[2], and, in support thereof, states as follows:

## I.    SUMMARY OF ARGUMENT

This Court should deny the ZASKEYS' Motion for Summary Judgment as the record evidence actually provides support for entry of summary judgment in BANA's favor.   On the ZASKEYS' breach of contract claim, the undisputed material facts show that the ZASKEYS failed their underlying obligations to timely remit documents and payment to BANA per the express terms of the agreement.   Despite the short sale contract lacking an express recitation to "time is of the essence", its nature and the continuing loss experienced by BANA due to the ZASKEYS' failure to timely perform, made time of the essence.

The ZASKEYS' failure to perform under the short sale contract, coupled with their continuing default under the original loan terms provided BANA with the probable cause to initiate foreclosure proceedings against the ZASKEYS.   The ZASKEYS can prove neither malice nor legal malice by these actions, and their failure to reference any record evidence of their sustaining damages provides support for a denial of their malicious prosecution claim.

Furthermore, the facts establish that the subject debt was for an investment property, which negates any application of the Florida Consumer Collection Practices Act ("FCCPA") to the actions of BANA.   Notwithstanding, the facts clearly demonstrate that upon the ZASKEYS'

---

[1]  Mot. for Partial Summ. J., ECF No. 237. BANA only responds in opposition to the arguments raised by the ZASKEYS' Motion for Summary Judgment as to Counts I, II and III of the Fourth Amended Counterclaims which are raised solely against BANA.
[2]  Statement of Facts, ECF No. 237-1.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130    (305) 379-0400

failure to abide by the terms and conditions of the short sale agreement and their continuing default under the original obligation, BANA's legal right to collect and enforce the subject debt remained. The remainder of the ZASKEYS' other FCCPA claims are either unsupported by admissible record evidence or the material facts relied thereon are disputed.

As a result, the ZASKEYS are not entitled to summary judgment against BANA on any claims of the Fourth Amended Counterclaim, and summary judgment should be entered in favor of BANA.

II.  **STATEMENT OF MATERIAL FACTS IN OPPOSITION TO THE ZASKEYS' STATEMENT OF FACTS**[3]

1.   Undisputed.

2.   Undisputed.

3.   Undisputed.

4.   Undisputed.

5.   Disputed.  The CSSA[4] expressly provided terms, conditions and performance obligations required of the ZASKEYS in order for the short sale of the subject property to close.[5]

6.   Undisputed.

7.   Disputed.  The ZASKEYS selected Tony Pino from Re/Max to serve as the listing agent for the subject property in connection with the short sale and executed the Regional

---

[3] BANA's Response in Opposition to the ZASKEYS' Motion for Summary Judgment and Statement of Facts contains as one filing both its Response and Material Facts in Opposition to that of the ZASKEYS. This filing still falls within the page limitations of Local Rule 7.1(c)(1)(2) and 56.1(a)(1) for statements of fact in opposition and responses of legal memorandum.  *See St. Paul Fire & Marine Insurance Company v. Luke Ready Air, LLC*, 880 F.Supp.2d 1299, 1305 (S.D.Fla. Aug. 1, 2012) (finding 24 page brief containing 7 pages of statement of material facts did not violate page limits of Local Rules).

[4] All capitalized terms shall have the same meaning as defined in the ZASKEYS' Motion for Partial Summary Judgment, ECF No. 201, and Statement of Material Facts in Support of Motion for Partial Summary Judgment, ECF No. 201-1.

[5] GARY Dep. at Ex. 10, ECF No. 183-4.

MLS, Inc. Listing Change Sheet authorizing Mr. Pino to serve in that capacity.[6]   Mr. Pino acting as an agent for the ZASKEYS selected HARBOR LAND TITLE, L.C. ("HARBOR LAND"), to serve as closing agent for the short sale, so, in turn; the ZASKEYS selected HARBOR LAND to serve as closing agent.[7]   The ZASKEYS also executed the Third Party Authorization Form, which identified Gloria Pino, Tony Pino, Judy Pelfrey and HARBOR LAND as their "Designated Agents".[8]   Counsel for the ZASKEYS stipulated to this evidence as admissible at the deposition of BANA's corporate representative.[9]

8.    Disputed.   The ZASKEYS support this alleged fact simply by recitation to the *undated* Relocation Assistance Letter, yet provide a time frame in which it was received.   The Relocation Assistance Letter makes no reference to its date or when it was received by the ZASKEYS.   Moreover, GARY admitted receiving the Relocation Assistance Letter prior to receiving the CSSA.[10]

9.    Disputed.   The ZASKEYS support this alleged fact simply by recitation to the CSSA, which, itself, does not indicate that the ZASKEYS first received it with the closing documents sent to them by HARBOR TITLE or that the CSSA was incorrectly addressed to the Palm Beach County subject property.   The record evidence does not support this alleged undisputed fact.

10.    Disputed.   The CSSA provided that the conditions and next steps required to be completed in order for BANA to issue a release of lien on the first lien mortgage, i.e. the

---

[6]  GARY Dep. at ¶57:3-59:5, ECF No. 183-1; at Ex. 9, ECF No. 183-4.
[7]  GARY Dep. at 70:3-5, ECF No. 183-1; Zahera Sadik Dep., at 19:21-20:1, ECF No. 197-1.
[8]  BANA Dep. at 137:10-138:21, ECF No. 182-1, at Ex. 19, ECF No. 182-2.
[9]  *Id.*
[10]  GARY Dep. at 83:19-85:8, ECF No. 183-1.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130    (305) 379-0400

Mortgage, of which included that the pay off funds of $26,788.44 be received by BANA via wire transfer within 48 business hours of the HUD-1 settlement date.[11]

      11.     Undisputed.

      12.     Undisputed.

      13.     Undisputed.

      14.     Undisputed.

      15.     Disputed.   The CSSA states in relevant part "[d]etailed below are the conditions of this approval, along with next steps that will need to be completed by the dates and/or timeframes noted", of which included that the pay off funds of $26,788.44 be received by BANA via wire transfer within 48 business hours of the HUD-1 settlement date.[12]

      16.     Disputed.   The Relocation Assistance Letter states "[t]he terms and conditions of your short sale agreement have not changed" and follows with a footnote that reads "[t]he exact terms and conditions are set forth in the short sale agreement."[13]   The CSSA provided that the short sale closing date must occur by April 30, 2012[14] and the ZASKEYS never requested and BANA never approved an extension for this closing date.[15]

      17.     Disputed.   The Relocation Assistance Letter states "[t]he terms and conditions of your short sale agreement have not changed" and follows with a footnote that reads "[t]he exact terms and conditions are set forth in the short sale agreement."[16]   The CSSA provided that the

---

[11]  GARY Dep. at Ex. 10, ECF No. 183-4.
[12]  GARY Dep. at Ex. 10, ECF No. 183-4.
[13]  GARY Dep. at Ex. 11, ECF No. 183-4.
[14]  GARY Dep. at Ex. 10, ECF No. 183-4.
[15]  BANA's Dep. at 169:7-15, ECF No. 182-1.
[16]  GARY Dep. at Ex. 11, ECF No. 183-4.

short sale closing date must occur by April 30, 2012[17] and the ZASKEYS never requested and BANA never approved an extension for this closing date.[18]

18.     Disputed. The Relocation Assistance Letter states "[t]he terms and conditions of your short sale agreement have not changed" and follows with a footnote that reads "[t]he exact terms and conditions are set forth in the short sale agreement."[19]   There is no term or provision contained in either the CSSA or Relocation Assistance Letter which states that the two documents constitute the short sale agreement between BANA and the ZASKEYS.

19.     Disputed. While a short sale closing involving the ZASKEYS occurred on April 26, 2012, this short sale closing was not approved by BANA due to the failure of the ZASKEYS to comply with the terms and conditions of the CSSA—namely the providing of documentation in advance of the closing date as required.[20]   BANA was not even aware that a closing had taken place on April 26, 2012, given these and other failures of the ZASKEYS and their agent.[21]

20.     Disputed. While the testimony referenced by the ZASKEYS of Zahera Sadik (30:14-17) states that a wire transfer to BANA took place on either April 26 or April 27 or 2012, her earlier testimony on this same subject indicated that the wire transfer to BANA did not go out.[22]

21.     Disputed. The CSSA concludes with a section entitled "Important Instructions for the Seller and Agent" which contains four (4) specific instructions stated as follows:

> 1. Please complete the enclosed Assignment of Unearned Premium and Important Notice Regarding Income Tax Reporting and provide this form to the closing agent by April 30, 2012.

---

[17]  GARY Dep. at Ex. 10, ECF No. 183-4.
[18]  BANA's Dep. at 169:7-15, ECF No. 182-1.
[19]  GARY Dep. at Ex. 11, ECF No. 183-4.
[20]  BANA's Aff. at ¶28, ECF No. 207-1, at Ex. L, ECF No. 207-1; BANA's Dep. at 145:5-12, ECF No. 182-1.
[21]  BANA's Dep. at 119:25-120:1; 133:16-22; 184:4-8, ECF No. 182-1.
[22]  Zahera Sadik Dep. at 27:18-28:1, ECF No. 197-1.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

2. The closing agent will need to upload the completed Assignment of Unearned Premium and Important Notice Regarding Income Tax Reporting and a certified copy of the final estimated HUD-1 Settlement Statement into the short sale system 72 hours prior to closing. Please note that you cannot close without final approval of the closing costs.

3. Payoff funds must be wired (unless otherwise specified) and must be received within 48 business hours of the HUD-1 settlement date, per the instructions below. Reference loan# xxxxx8901

Bank of America
275 Valencia Avenue
Brea, CA 92823
MRC Account # 12357-47067
ABA 026-009-593

Please note: Wire transfers must include the loan number, Borrower's names and property address. If the funds cannot be properly identified, they will be returned.

4. A certified copy of the Final HUD-1 Settlement Statement must be uploaded into the short sale system at the time of closing.[23]

The CSSA defines "Seller" as GARY ZASKEY and LORI ZASKEY.[24]   The CSSA states further under the "Important Instructions for the Seller and Agent" that "[u]pon receipt of the above stated items, BAC Home Loans Servicing, LP will issue a release of lien on the first lien mortgage loan."[25]   BANA did not receive the Assignment of Unearned Premium and Important Notice Regarding Income Tax Reporting or a certified copy of the final estimated HUD-1 Settlement Statement the required 72 hours before the closing.[26]   BANA did not receive short sale proceeds of $26,788.44 within 48 hours of the April 26, 2012 closing either.[27]   A certified copy of the Final HUD-1 Settlement Statement was not uploaded into the short sale system at the

---

[23]  GARY Dep. at Ex. 10, ECF No. 183-4.
[24]  GARY Dep. at Ex. 10, ECF No. 183-4.
[25]  GARY Dep. at Ex. 10, ECF No. 183-4.
[26]  BANA's Aff. at ¶28, ECF No. 207-1, at Ex. L, ECF No. 207-1; BANA's Dep. at 145:5-12, ECF No. 182-1.
[27]  BANA's Aff. at ¶29, ECF No. 207-1, at Ex. L, ECF No. 207-1; BANA's Aff. at ¶16, ECF No. 208-1, at Ex. B, ECF No. 208-1; BANA's Dep. at 149:17-24; 150:4-7, ECF No. 182-1.

time of closing.[28]  Accordingly, the ZASKEYS did not comply with the terms and conditions of the CSSA for release of the lien of the Mortgage[29].

22.     Undisputed.

23.     Disputed.  HARBOR LAND did not successfully wire BANA the short sale proceeds of $26,788.44 on August 9, 2012, as BANA returned those same funds on August 16, 2012.   There is no evidence that the ZASKEYS or HARBOR LAND ever successfully wired the short sale proceeds from the April 26, 2012 closing to BANA under the terms of the CSSA.[30]

24.     Undisputed.

25.     Undisputed.

26.     Undisputed.

27.     Disputed. On May 3, 2012, seven days after the closing, BANA contacted the ZASKEYS' agents and requested that the documents be provided as soon as possible to prevent the short sale from being declined.[31]   The entry for May 3, 2012, in BANA's records indicates correspondence was sent to the ZASKEYS' agents reading "[h]ello, The Approval Letter has expired and no communication has been received. Please provide the status of this file immediately to avoid having the file declined. Thank you."[32]   BANA did not receive any documents from the ZASKEYS following the May 3, 2012 correspondence to them.[33]   On June 27, 2012, BANA advised the ZASKEYS in writing, through their agents, that the short sale had been declined.[34]

---

[28]  BANA's Aff. at ¶30, ECF No. 207-1, at Ex. L, ECF No. 207-1; BANA's Dep. at 145:13-18; 147:6-12, ECF No. 182-1.
[29]  BANA's Dep. at 152:13-17, ECF No. 182-1.
[30]  BANA's Aff. at ¶29, ECF No. 207-1, at Ex. L, ECF No. 207-1; BANA's Aff. at ¶16, ECF No. 208-1, at Ex. B, ECF No. 208-1.
[31]  BANA's Aff. at ¶31, ECF No. 207-1, at Ex. L, ECF No. 207-1
[32]  *Id.*
[33]  BANA's Aff. at ¶32, ECF No. 207-1, at Ex. L, ECF No. 207-1
[34]  BANA's Aff. at ¶33, ECF No. 207-1, at Ex. M, ECF No. 207-1

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

28.     Undisputed.

29.     Undisputed.

30.     Undisputed.

31.     Disputed. The ZASKEYS support this alleged fact simply by recitation to BANA's Complaint, which contains no evidence supporting the fact that Bernardo Moreno and Doralba Vargas purchased the property from the ZASKEYS at the April 26, 2012 closing or that at that time they held and still hold fee simple title to the property.

32.     Undisputed.

33.     Undisputed.

34.     Undisputed.

35.     Undisputed.

36.     Undisputed.

37.     Undisputed.

38.     Undisputed.

39.     Undisputed.

40.     Undisputed.

41.     Disputed.  The ZASKEYS' recitation to the "Home Base Notes" provides no record evidence that BANA ever communicated to the ZASKEYS from June 2012 through April 2013 demanding payment.   None of the entries provide any summary or facts indicating that a demand for payment was made and the ZASKEYS do not reference any transcripts of these telephone calls providing further proof as to their substance.

42.     Disputed.   The "Home Base Notes" reflect that BANA contacted the ZASKEYS via telephone 74 times from June 2012 through April 2013, and that the ZASKEYS contacted

BANA via telephone 2 times during this time frame.[35]   There are approximately 77 entries denoted by the "Home Base Notes" from June 5, 2012, through April 30, 2012, all of which indicate a telephone call of some sort except for the entry dated June 6, 2012.[36]

43.   Disputed.   Many of the entries on the "Home Base Notes" show no telephone call being connected as between the ZASKEYS and BANA and for the telephone calls in which a connection is made, a summary of the telephone call is included in the entry, which speaks for itself.   A blanket assertion by GARY that all telephone calls were placed in an attempt to collect the balance of the Mortgage is not supported by the record evidence.

44.   Disputed. Many of the entries on the "Home Base Notes" show no telephone call being connected as between the ZASKEYS and BANA and for the telephone calls in which a connection is made, a summary of the telephone call is included in the entry, which speaks for itself.   A blanket assertion by GARY that all telephone calls included an explanation by him of the prior short sale is not supported by the record evidence.

45.   Disputed. On June 27, 2012, BANA advised the ZASKEYS in writing, through their agents, that the short sale had been declined.[37]

46.   Undisputed.

47.   Disputed.   BANA disputes the vagueness of this asserted undisputed fact as the ZASKEYS assert in Paragraph 46 that they received additional debt collection calls from other third-parties, yet this asserted fact indicates simply that thirty debt collection calls were received in the month of July 2012.   The "Home Base Notes" show no telephone calls being made by BANA to the ZASKEYS for the month of July 2012.[38]

---

[35]   ZASKEYS' Mot. Summ. J. at Ex. B, ECF No. 237-2.
[36]   ZASKEYS' Mot. Summ. J. at Ex. B, ECF No. 237-2.
[37]   BANA's Aff. at ¶33, ECF No. 207-1, at Ex. M, ECF No. 207-1
[38]   ZASKEYS' Mot. Summ. J. at Ex. B, ECF No. 237-2.

LIEBLER, GONZALEZ & PORTUONDO
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

48.     Undisputed.

49.     Undisputed.

50.     Undisputed.

51.     Undisputed.

52.     Undisputed.

53.     Undisputed.

54.     Undisputed.

55.     Undisputed.

56.     Undisputed.

57.     Undisputed.

58.     Undisputed.

59.     Undisputed.

60.     The "dates and/or timeframes" reflected in the numbered paragraphs of the CSSA

are as follows:

- 3. A preliminary HUD-1 Settlement Statement must be provided to BAC Home Loans Servicing, LP no later than one business day before the Closing Date of April 30, 2012.

- 5. Closing must take place no later than April 30, 2012 or this approval is void…

- 12. There are to be no transfers of property within 30 days of the closing of this transaction.

- 14. …Payoff funds must be received within 48 business hours of the HUD-1 settlement date.

- 16. The closing agent must email a completed Assignment of Unearned Premium and Important Notice Regarding Income Tax Reporting (enclosed) along with a certified copy of the final estimated HUD-1 Settlement Statement to closing desk 72 hours before closing.[39]

---

[39] GARY Dep. at Ex. 10, ECF No. 183-4.

61.     The ZASKEYS defaulted on the terms of the loan documents by failing to timely make all payments due under the Note and Mortgage. Specifically, the ZASKEYS failed to make the payment due for November 1, 2010 and all subsequent payments.[40]

62.     The ZASKEYS did not cure their default.[41]

63.     On September 26, 2012, BANA filed a foreclosure suit against the ZASKEYS in the Circuit Court of the Fifteenth Judicial Circuit in and for Palm Beach County, Florida, styled *Bank of America, N.A., successor by merger to BAC Home Loans Servicing, LP f/k/a Countrywide Home Loans Servicing, LP v. Gary L. Zaskey, et al.*, Case No. 2012 CA 018071 (the "Foreclosure Action").[42]

64.     BANA reiterates and reincorporates all additional undisputed facts used to rebut the original paragraphs of the ZASKEYS' Statement of Facts for further use in BANA's Legal Argument & Memorandum in its opposition to the ZASKEYS' Motion for Summary Judgment.

## III.    LEGAL ARGUMENT & MEMORANDUM OF LAW

### A. The ZASKEYS are not entitled to Summary Judgment on Count I: Breach of Contract (Short Sale Agreement).

The ZASKEYS are not entitled to summary judgment on Count I: Breach of Contract (Short Sale Agreement) because the ZASKEYS breached  material terms of the CSSA by failing to timely abide by the terms and conditions of the CSSA, including those terms pertaining to submission of payment and documents confirming that the short sale actually closed.   The subject matter of the CSSA necessitated that time was of the essence and a failure to timely comply with the terms and conditions, including that of payment, constituted a material breach absolving BANA of further performance under the CSSA.   The ZASKEYS' reliance on the

---

[40]  BANA's Aff. at ¶9, ECF No. 207-1, at Ex. D, ECF No. 207-1.
[41]  BANA's Aff. at ¶12, ECF No. 207-1, at Ex. D, ECF No. 207-1.
[42]  BANA's Aff. at ¶34, ECF No. 207-1; Not. of Removal, ECF No. 1.

subsequent Relocation Assistance Letter is immaterial as that letter did not amend the terms of the CSSA.

> **i.**    **The ZASKEYS breached the CSSA by failing to timely comply with the terms and conditions.**

The ZASKEYS' failure to timely comply with the terms and conditions of the CSSA per the timeframes and deadlines, precludes entry of summary judgment in their favor.

For time to be of the essence for a contract, it must be the case that either (1) the contract contains an express recital; (2) it may be determined by the nature of the contract; or (3) where notice has been given to the defaulting party requiring the contract to be performed within a stated time, which must be reasonable given the circumstances.[43] For purposes of the CSSA, time was of the essence given the nature of the contract.

In *Treasure Coast, Inc. v. Ludlum Constr. Co.*, 760 So. 2d 232, 234-35 (Fla. 4th DCA 2000), the appellate court found time to be of the essence for the parties' settlement agreement based on the nature of the terms even though there was not an express recital specifically stating "time is of the essence."   In so finding, the appellate court reasoned that because the settlement agreement contained an express provision for the payment of a sum of money on a specific date, the parties had essentially agreed for time to be of the essence.[44]

Here, the CSSA expressly stated that the ZASKEYS' obligations were "to be completed by the dates and/or timeframes noted" and then went on to provide specific dates for the providing of the preliminary HUD-1 Settlement Statement, the closing date, a prohibition on transfers of the property, the wiring of the payoff funds constituting payment to BANA, the furnishing of the completed Assignment of Unearned Premium and Important Notice Regarding

---

[43] *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 471 (Fla. 4th DCA 2003); *Blaustein v. Weiss*, 409 So. 2d 103, 105 (Fla. 4th DCA 1982).
[44] *Id.*

Income Tax Reporting, and the furnishing of a certified copy of the FINAL HUD-1 Settlement Statement at closing[45]--none of which the ZASKEYS performed timely, save for the closing occurring on April 26, 2012.[46]

Just like the terms in the agreement from *Treasure Coast*, the terms of the CSSA were clear and unambiguous as to the dates certain when the ZASKEYS were required to perform their obligations.   In every instance where a deadline or timeframe is given, the CSSA provides a date certain, not a range of time which would potentially be open for interpretation.   Where the terms of a contract are unambiguous and clear, then "[c]ourts may not rewrite, alter, or add terms of a written agreement between the parties and may not substitute their judgment for that of the parties'."[47]

The ZASKEYS' Motion for Summary Judgment fixates only on express recitals of time being of the essence, which is only one of the three forms for a contract, and incorrectly states that absent such provision, time cannot be considered of the essence for the CSSA.   Their Motion for Summary Judgment also focuses on the application of "time is of the essence" clauses from one term in a contract to another, and mostly in instances where a blank clause is applied to abstract, indefinite time frames[48].   All of these scenarios are inapplicable to the CSSA and are inapposite to the Court's analysis of whether the nature of the CSSA itself dictates that time is of the essence.

As stated under *Sublime*, time is considered of the essence when implied by the nature of

---

[45] GARY Dep. at Ex. 10, ECF No. 183-4.
[46] BANA's Aff. at ¶28-30.
[47] *Rybovich Boat Works, Inc. v. Atkins*, 587 So. 2d 519, 521 (Fla. 4th DCA 1991) (citing *International Expositions, Inc. v. City of Miami Beach*, 274 So. 2d 29 (Fla. 3d DCA 1973).
[48] *See National Exhibition Co. v. Ball*, 139 So. 2d 489, 490 (Fla. 2d DCA 1962) (attempting to apply an express "time is of the essence" provision to a term which contained the phrase "shall have a reasonable time to do so"); *Royal Dev. & Management Corp. v. Guardian 50/50 Fund V, Ltd.*, 583 So. 2d 403 (Fla. 3d DCA 1991);

the contract.[49]   Notwithstanding the other provisions, the ZASKEYS failed to timely perform. The CSSA expressly provided that the payoff funds from the short sale were to be provided to BANA through wire transfer within 48 business hours of closing, but this did not happen.[50] Further, it's not as if the ZASKEYS missed the 48 hour deadline by a few hours or a couple days.   The payoff funds were not sent for another few months.   A material breach of a contract excuses the non-breaching party from its obligations thereunder.[51] To constitute a vital or material breach, a party's non-performance must go to the essence of a contract.[52] Under Florida law, "to constitute a material breach, [a] late payment must occur where time is of the essence."[53]

Here, the CSSA required transmittal of the short payoff funds to BANA within 48 business hours of closing.[54] The transmittal did not occur within 48 business hours as required by the CSSA.[55] In turn, the ZASKEYS breached a material term of the CSSA and BANA's obligations under same were obviated. The ZASKEYS' claim for breach of contract therefore fails because a material term of the contract was not met.

To consider otherwise would work an injustice on BANA and result in a continuing loss. As previously stated, the ZASKEYS were in default under the terms of the Note and Mortgage for failure to make the monthly payment due for November 1, 2010, and at no time did the

---

[49] *Sublime, Inc.* 849 So. 2d at 471.
[50] GARY Dep. at Ex. 10, ECF No. 183-4.
[51] *See Green Tree Servicing, LLC v. Milam*, 177 So. 3d 7, 14 (Fla. 2d DCA 2015); *Bradley v. Health Coalition, Inc.*, 687 So. 2d 329, 333 (Fla. 3d DCA 1997) ("A party is not entitled to enjoin the breach of a contract by another, unless he himself has performed what the contract requires of him so far as possible; if he himself is in default or has given cause for nonperformance by defendant, he has no standing in equity.")
[52] *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 470 (Fla. 4th DCA 2003). *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th DCA 2015) (holding that a material breach "goes to the essence of the contract," and that "trivial noncompliance and minor failings" are not material breaches); *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972) (same).
[53] *Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005).
[54] GARY Dep. at Ex. 10, ECF No. 183-4.
[55] ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 7, ECF No. 186-1; BANA's Aff. at ¶29, ECF No. 207; BANA's Aff. at ¶13-18, ECF No. 208, at Ex. B, ECF No. 208-1.

ZASKEYS cure this default.[56]   Per the terms of the Note, upon default, interest, late charges and fees would begin to accrue against the existing indebtedness.[57]   The ZASKEYS' failure to perform their obligations under the Note and cure their defaults opened BANA up to continuing loss from the increasing indebtedness, which only continued to compound when the ZASKEYS also failed to perform under the CSSA.   The fact that BANA continued to experience loss due to the ZASKEYS' failure to timely perform the obligation of payment under the CSSA provides further evidence that time was of the essence.[58]

In order to be successful in his breach of contract action, a plaintiff must prove performance of his obligations under the contract, or a legal excuse for its non-performance.[59] As indicated, the ZASKEYS failed to perform their obligations under the CSSA which obviated any further requirement for BANA to perform under same.   Therefore, the ZASKEYS' material breach of the CSSA dictates entry of summary judgment in favor of BANA on Count I of the Fourth Amended Counterclaims.

### ii.        The Relocation Assistance Letter did not amend the CSSA

The ZASKEYS' argument that the Relocation Assistance Letter amended the CSSA fails as a matter of law.

The Court need not look beyond the terms of the Relocation Assistance Letter to defeat the ZASKEYS' contention.[60] The Relocation Assistance Letter contains express language noting that it is not a modification of any short sale agreement, which would mean the CSSA.

---

[56]  BANA's Aff. at ¶9 and 12, ECF No. 207-1, at Ex. D, ECF No. 207-1.
[57]  BANA's Aff. at ¶1, ECF No. 207-1, at Ex. A, ECF No. 207-1.
[58]  *See Blaustein*, 409 So. 2d at 105 ("[w]here, from the nature of the subject matter or fluctuations in the value or from terms of the agreement, the treating of time as a non-essential will produce a hardship, and delay by one party in completing or in complying with a term would necessarily subject the other parties to serious injury or loss" then time will be considered of the essence.); *Realty Securities Corp. v. Johnson*, 111 So. 532 (1927).
[59]  *Rollins, Inc. v. Rutland*, 951 So. 2 860 (Fla. 2d DCA 2006); *Old Republic Ins. Co. v. Von Onweller Constr. Co.*, 239 So. 2d 503, 505 (Fla. 2d DCA 1970); *Marshall Constr., Ltd. v. Coastal Sheet Metal & Roofing, Inc.*, 569 So. 2d 845, 848 (Fla. 1st DCA 1990).
[60]  GARY Dep. at Ex. 11, ECF No. 183-4.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130     (305) 379-0400

Specifically, it states that "the terms and conditions of your short sale agreement have not changed."[61] Hammering home that point is the footnote at the bottom of the Relocation Assistance Letter advising that the "exact terms and conditions [of the short sale agreement] are set forth in the short sale agreement." Finally, despite the representations made in the ZASKEYS' Motion for Summary Judgment and Statement of Facts to the contrary, GARY admitted that he received the Relocation Assistance Letter *before* receiving and executing the CSSA.[62] There was no ambiguity created by the Relocation Assistance Letter. The Relocation Assistance Letter did not amend or modify the CSSA, nor did the document allay the requirement that BANA receive the short payoff funds within 48 business hours of closing. Further, the Relocation Assistance Letter did not incorporate the terms of the CSSA, nor vice versa, therefore this argument fails as a matter of law.

### iii.    There is no evidence that BANA provided the ZASKEYS' with the $5,000.00 payment to acknowledge performance of the CSSA.

The ZASKEYS' allegation that their receipt of a $5,000.00 payment constituted an acknowledgment of performance under the CSSA, by BANA, lacks any merit[63].

In support of their contention, the ZASKEYS reference the language of the Relocation Assistance Letter which states that "[i]f you do not complete the short sale or comply with the terms and conditions of your short sale agreement, you will not receive the relocation assistance payment."[64]   At deposition, GARY testified that he received two (2) checks each in the amount of $2,500.00 from "Harbor Land Title" dated February 26, 2012, and that these checks were

---

[61]  GARY Dep. at Ex. 11, ECF No. 183-4.
[62]  GARY Dep. at 83:19-85:8, ECF No. 183-1.
[63]  While this argument is not raised under subsection B of the ZASKEYS' Motion for Summary Judgment, it does appear on under subsection D as alleged support that the ZASKEYS complied with the terms of the CSSA.
[64]  GARY Dep. at Ex. 11, ECF No. 183-4.

received by him on May 3, 2012.[65]   The record is devoid of any evidence that BANA either issued or authorized this payment of $5,000.00 to the ZASKEYS, more so due to the fact that the checks were prepared prior to the closing even occurring.

Clearly, these checks were dated prior to the closing date of April 26, 2012.   As previously indicated, BANA did not provide final approval for the short sale as the ZASKEYS failed to comply with the terms of the CSSA by not providing certain documents or any payment by the required, specific deadlines. At the time these checks were received by the ZASKEYS on May 3, 2012, BANA had not been provided the preliminary HUD-1 Settlement Statement, the wired payoff funds, the completed Assignment of Unearned Premium and Important Notice Regarding Income Tax Reporting, or the certified copy of the FINAL HUD-1 Settlement Statement at closing.[66]   In fact, on May 3, 2012, BANA actually contacted the ZASKEYS inquiring as to the status of these documents as it had no logical reason to believe, given their absence, that the short sale closing had even occurred.[67]

The CSSA clearly provided instructions to the ZASKEYS, as Seller, that required them to perform the obligations of the CSSA of furnishing documents and payment to BANA per prescribed, date-specific deadlines.[68]   It was only after full performance of these obligations that BANA would "issue a release of lien on the first lien mortgage loan."[69]   The record does not reflect that BANA ever issued such release of lien.   In fact, the record reflects that some years later, GREEN TREE SERVICING, LLC, recorded a Satisfaction of Mortgage.[70] Accordingly, there is no evidence that BANA provided any acknowledgment that the ZASKEYS

---

[65] GARY Dep. at 120:8-121:22, ECF No. 183-1; at Ex. 13, ECF No. 183-4.
[66] BANA's Aff. at ¶28-30, ECF No. 207-1.
[67] BANA's Aff. at ¶31; ECF No. 207-1; at Ex. L, ECF No. 207-1; BANA's Dep. at 119:25-120:1; 184:4-8, ECF No. 182-1.
[68] GARY Dep. at Ex. 10, ECF No. 183-4.
[69] GARY Dep. at Ex. 10, ECF No. 183-4.
[70] BANA's Aff. at ¶38, ECF No. 207-1.

complied with the terms of the CSSA, or that the issuance of the checks by Harbor Land Title would be such evidence.

**B. The ZASKEYS are not entitled to Summary Judgment on Count II: Malicious Prosecution.**

The ZASKEYS are not entitled to summary judgment on their malicious prosecution claim because BANA had probable cause to initiate the Foreclosure Action given the ZASKEYS' continued default and that BANA acted with no malice in bringing the foreclosure action.

For a plaintiff to succeed on a claim for malicious prosecution, a plaintiff must demonstrate that:

> (1) an original ... proceeding against him was commenced or continued; (2) the present defendant was the legal cause of that original proceeding; (3) there was a bone fide termination of the original proceeding in his favor; (4) there was an absence of probable cause for the original proceeding; (5) the present defendant acted with malice; and (6) he suffered damages as a result of the original proceeding.[71]

The failure to establish any one of the six elements is fatal to a claim for malicious prosecution.[72] The record lacks evidence as to prongs (4), (5) and (6).

First, the ZASKEYS have not demonstrated, nor can they demonstrate, an absence of probable cause for BANA to bring the foreclosure action.   It is undisputed that the ZASKEYS defaulted on the loan that was the subject of the foreclosure suit.[73] The Mortgage entitled BANA to commence a suit for foreclosure upon the ZASKEYS' default.[74] BANA did exactly

---

[71] *Martinez v. Brink's, Inc.*, 171 F. App'x 263, 265 (11th Cir. 2006) (*citing Alamo Rent-A-Car v. Mancusi*, 632 So. 2d 1352, 1355 (Fla. 1994). Though *Martinez* refers to a criminal proceeding, the claim may be brought against a Defendant for bringing a civil action, the key distinction is that probable cause "is measured by a lesser standard." *Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010) (internal citations omitted).

[72] *Martinez* 171 F. App'x at 265.

[73] BANA's Aff. at ¶9, ECF No. 207.

[74] GARY Dep. at Ex. 3, ECF No. 183-4.

that. The loan had not been repaid and remained in default.[75] The terms of the CSSA had not been met due to the ZASKEYS' failures denoted above, namely to remit timely payment, so BANA exercised its rights under the Mortgage to foreclose.

The ZASKEYS infer that BANA undertook no due diligence based on allegation that the fee simple owners of the subject real property were not named in the Foreclosure Action.   No record evidence supports this inference.   In addition, the ZASKEYS' claims that any subsequent judgment would have been rendered void, ignore BANA's ability to amend the Foreclosure Action to name additional parties.

In addition to the fact that BANA had probable cause to sue to foreclose, the ZASKEYS cannot show any evidence of malice on the part of BANA in its efforts to prosecute the action to obtain a foreclosure judgment. To the extent that BANA negligently filed the foreclosure suit (to wit BANA does not agree or stipulate), the ZASKEYS were entitled to a dismissal and perhaps attorneys' fees under the terms of the Mortgage.[76] To the extent the Court deemed the suit frivolous or unsubstantiated, the ZASKEYS may have been entitled to sanctions under Florida Statute § 57.105. Those are not the facts here. Here, the ZASKEYS had defaulted on the terms of the Note and Mortgage, the terms of the CSSA had not been met, and the subject loan continued to be in default, entitling BANA to file suit for a foreclosure judgment. BANA rightfully filed the foreclosure suit without malice.

The ZASKEYS base their malice argument on a finding of "legal malice" based on an absence of probable cause.   While legal malice can be inferred from, as the ZASKEYS have asserted, a lack of probable cause, it still requires a finding of an intentional act performed

---

[75] BANA's Aff. at ¶11-12, ECF No. 207.
[76] GARY Dep. at Ex. 3, ECF No. 183-4.

LIEBLER, GONZALEZ & PORTUONDO
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130     (305) 379-0400

without legal justification or excuse.[77]   This lack of legal justification is absent from this set of facts. The Foreclosure Action represents BANA's rights under the Note and Mortgage to commence a legal proceeding against the ZASKEYS for their continued default under same. The ZASKEYS' failure to perform under the CSSA provided no bar to the Foreclosure Action.

Lastly, the ZASKEYS request entry of summary judgment on their malicious prosecution claim without any record evidence substantiating that they suffered any damages.   As expressly pointed out by the ZASKEYS, they "request that this case proceed to trial on the issue of damages"[78] yet neither the Declaration of GARY[79] nor their Statement of Facts contain any record evidence substantiating that damages were in fact suffered by them.   The Motion for Summary Judgment references no other record evidence to support a finding of damages.

Accordingly, the ZASKEYS' malicious prosecution claim fails as a matter of law and summary final judgment should be entered in favor of BANA on this count.

## C.   The ZASKEYS are not entitled to Summary Judgment on Count III: Violation of the FCCPA.

### i.   The Loan was not a consumer debt falling within the purview of the FCCPA.

The FCCPA is inapplicable to the alleged actions of BANA as the subject loan of the ZASKEYS was not a consumer debt.

The FCCPA prohibits certain actions to be undertaken in the collection of a consumer debt.[80]   Consumer debts, as defined by the FCCPA, are those obligations "of a consumer to pay money arising out of the transaction in which the money, property, insurance, or services which

---

[77] *Muradas v. M&T Bank*, 2013 U.S. Dist. LEXIS 89060, *10 (S.D.Fla. Jun. 25, 2013); *Reed v. State*, 837 So. 2d 366, 369 (Fla. 2002).
[78] Mot. for Partial Summ. J. at ¶I, ECF No. 237.
[79] Dec. of GARY, ECF No. 204.
[80] Fla. Stat. 559.72

are the subject of the transaction are primarily for personal, family or household purposes."[81] The FCCPA does not create a private right of action for efforts undertaken to collect non-consumer debt.[82] Mortgages obtained for "investment purposes," such as rental properties, are not consumer debts and therefore, the FCCPA is inapplicable to such debts.[83]

      Here, BANA did not undertake efforts to collect a consumer debt as the ZASKEYS began using the subject real property as a rental unit in 2000.[84] Specifically, the ZASKEYS used the subject real property as a rental property to derive income in the form of monetary payments or services.[85] In fact, the rental nature of the subject real property came up during the course of the April 26, 2012 closing when GARY refused to satisfy an outstanding water bill incurred by a prior tenant.[86] Using the "quantitative approach" from *Drew v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 134163 (M.D.Fla. Sep. 17, 2015), the majority of the proceeds from the Note were used to refinance an existing lien on the subject real property at a time when the ZASKEYS had been using it as investment property[87]. By turning the subject real property into a rental unit whereby tenants were required to pay monetary rental payments or perform services in exchange for use of the subject real property during their tenancy, the debt became non-consumer debt and BANA, therefore, could not have violated the FCCPA[88].

---

[81] Fla. Stat. §559.55(1)
[82] *See Supermedia LLC v. Kantaras & Andreopoulos*, 2012 U.S. Dist. LEXIS 35422 (M.D. Fla. 2012) (dismissing an FCCPA claim where the debt related to the plaintiffs' business and noting the debts did "not in any way stem from a transaction conducted for 'personal, family, or household purposes.'").
[83] *See Acciard v. Whitney*, 2008 U.S. Dist. LEXIS 98131 at *27, (M.D. Fla. 2008); *see also Drew v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 134163 at *6, (M.D. Fla. 2015) (finding that when borrowers used proceeds to pay for an investment property, the debt was not a consumer debt as explained in the FCCPA.).
[84] GARY Dep. at 11:8-11; 22:25-30:14, ECF No. 183-1.
[85] GARY Dep. at 11:8-11; 22:25-30:14, ECF No. 183-1.
[86] Zahera Sadik Dep. at 19:11-20, ECF No. 197-1.
[87] GARY's Dep. at 39:23-25, ECF No. 183-1, at Ex. 5, ECF No. 183-4.
[88] *See Acciard* at *27.

ii.     **BANA had a legal right to collect the debt of the ZASKEYS.**

BANA had a legal right for collection actions against the ZASKEYS, including the filing of the Foreclosure Action because the ZASKEYS were in default.   The ZASKEYS were in default under the terms of the Note and Mortgage for failure to make the monthly payment due for November 1, 2010, and at no time did the ZASKEYS cure this default.[89]   Their failure to perform under the CSSA did nothing to cure this default and BANA had a legal right to begin collection activities against the ZASKEYS.   Accordingly, this legal right means that BANA cannot be found liable under Florida Statute § 559.72(9).

iii.    **The ZASKEYS are not entitled to a finding of liability against BANA under Florida Statutes §§ 559.72(3) and (6) as issues of fact remain.**

To the extent this Court determines the Loan to constitute a consumer debt, issues of fact preclude entry of summary judgment in favor of the ZASKEYS on their claims founded on Florida Statutes §§ 559.72(3) and (6).

Florida Statute § 559.72(3) reads in relevant part that a person collecting a consumer debt shall not "[t]ell a debtor who disputes a consumer debt that she or he or any person employing her or him will disclose to another, orally or in writing, directly or indirectly, information affecting the debtor's reputation for credit worthiness without also informing the debtor that the existence of the dispute will also be disclosed as required by subsection (6)."   Florida Statute § 559.72(6) provides a similar prohibition that reads a person collecting a consumer debt shall not "[d]isclose information concerning the existence of a debt known to be reasonably disputed by the debtor without disclosing that fact. If a disclosure is made before such dispute has been asserted and written notice is received from the debtor that any part of the debt is disputed, and if such dispute is reasonable, the person who made the original disclosure must reveal upon the

---

[89]   BANA's Aff. at ¶9 and 12, ECF No. 207-1, at Ex. D, ECF No. 207-1.

request of the debtor within 30 days the details of the dispute to each person to whom disclosure of the debt without notice of the dispute was made within the preceding 90 days."

To support a finding of liability under Florida Statute § 559.72(3), the ZASKEYS reference BANA's "Home Base Notes" of telephone conversations between BANA and the ZASKEYS and ask this Court to impose liability on BANA based on the absence of these records reflecting entries stating that BANA advised the ZASKEYS that it would disclose the disputed nature of the debt. While the ZASKEYS rely on these telephone calls for contending liability, they point to no other evidence related to the telephone calls. No record evidence is present establishing that these "Home Base Notes" reflect the entirety of those telephone calls with the ZASKEYS. The ZASKEYS likewise made no efforts to transcribe and authenticate the telephone calls referenced. In objecting to the Statement of Facts, BANA noted that the ZASKEYS misrepresent both the number and nature of telephone calls made by BANA. Furthermore, GARY makes no affirmative statement in his declaration supporting the ZASKEYS' claim that they were not informed that the debt would be disclosed as disputed. The record is weak, if not patently lacking, of undisputed facts establishing liability against BANA under Florida Statute § 559.72(3).

To support a finding of liability under Florida Statute § 559.72(6), the ZASKEYS ask this Court to accept unauthenticated records from Credit Karma and the website www.creditkarma.com. There is no record evidence establishing that BANA reported any information regarding the ZASKEYS to this entity other than an unsubstantiated statement from GARY that the debt was reported as delinquent to it.[90] Further, Credit Karma is not one of the credit reporting bureaus to which a report would have been made. No supporting statement or evidence is given that GARY works for www.creditkarma.com, that he is familiar with how

---

[90] Dec. of GARY, at ¶23, ECF No. 204.

these reports are made or from where information is collected, that these reports were made by someone with personal knowledge of the facts contained, that these records were kept in the ordinary course of regularly conducted business activities, that it was the regular practice of this entity to make such records, or any additional information that would  authenticate  the statements and records being relied upon.   BANA objects to these records as hearsay and inadmissible to be relied upon as a statement of fact under Federal Rule of Civil Procedure 56(c)(2).   Accordingly, the ZASKEYS are not entitled to summary judgment on their claims under Florida Statutes §§ 559.72(3) and (6).

      iv.    **The ZASKEYS are not entitled to a finding of liability against BANA under Florida Statutes §§ 559.72(7) as issues of fact remain.**

To the extent this Court determines the Loan constitutes a consumer debt, the record is either lacking undisputed evidence or issues of fact preclude entry of summary judgment in favor of the ZASKEYS on their claims founded on Florida Statute § 559.72(7).

Florida Statute § 559.72(7) reads in relevant part that a person collecting a consumer debt shall not "[w]illfully communicate with the debtor or any member of her or his family with such frequency as can reasonably be expected to harass the debtor or her or his family, or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor or any member of her or his family."

The ZASKEYS' Motion for Summary Judgment on this claim provides nothing more than conclusory allegations unsupported by material facts.   The ZASKEYS simply allege BANA "intended to annoy, abuse and harass the ZASKEYS" and that BANA ignored GARY's statements that the short sale closed and the debt was no longer owed.   No record evidence is referenced in support of these arguments.

As demonstrated through BANA's recitation to the record, the ZASKEYS failed to comply with the terms of the CSSA and never cured their outstanding default prior to BANA undertaking collection activities and filing the Foreclosure Action[91].   The circumstances dictate that BANA undertook, as its legal right under the Note and the Mortgage, to collect and enforce the debt against the ZASKEYS.

The ZASKEYS rely on case law to support their contention that BANA's frequency of collection calls constituted harassment and annoyance to a degree which would warrant a finding of liability.   The case of *Kuhn v. Account Control Technology,* 865 F.Supp. 1443, 1453 (D.Nev. Oct. 7, 1994), found harassment in violation of the Fair Debt Collection Practices Act ("FDCPA") upon records showing a debt collector called a debtor's place of employment two (2) times within a five (5) minute period following the debtor previously hanging up on the caller. In *Sanchez v. Client Servs.*, 520 F.Supp.2d 1149, 1161 (N.D.Cal. Oct. 29, 2007), the court found a violation of the FDCPA on record evidence of 54 telephone calls made to the debtors place of employment, with a number of those calls made on the same day in a limited scope of time. BANA would argue these cases are distinguishable and of little probative value to this Court given the facts and circumstances of this case.   Nowhere in the Declaration of GARY does he allege ever being called by BANA more than once in a day or at his place of employment. GARY does not provide an approximation of the exact number of calls received, but rather uses phrases like "I received several calls" and "I received numerous calls".[92]   The "Home Base Notes" likewise reflect that no more than one call per day was made by BANA to the ZASKEYS.[93]   The record is lacking undisputed material facts which would establish BANA

---

[91]   BANA's Aff. at ¶9 and 12, ECF No. 207.
[92]   Dec. of GARY, at ¶14, ECF No. 204.
[93]   ZASKEYS' Mot. Summ. J. at Ex. B, ECF No. 237-2.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

acted to harass or annoy the ZASKEYS to the degree necessary for culpability under Florida §
559.72(7).   Accordingly, summary judgment on this claim is inappropriate.

**III.    CONCLUSION**

The ZASKEYS should be denied summary judgment as the record evidence establishes
their failure to timely comply with the terms and conditions of the CSSA, resulting in their
material breach, which obviated BANA's further performance thereunder.   The fact that the
Loan remained in default following this breach gave BANA the right to engage in debt
collection activities in line with the mandates of the FCCPA and the probable cause to initiate
the Foreclosure Action.   Accordingly, BANA argues that the record evidence establishes
BANA to be entitled to summary judgment on all claims of the ZASKEYS' Fourth Amended
Counterclaims.

WHEREFORE, Counter-Defendant, BANK OF AMERICA, N.A., hereby requests this
Court enter an Order denying Counter-Plaintiffs, GARY L. ZASKEY and LORI A. ZASKEY's
Motion for Summary Judgment, enter summary final judgment in favor of BANA on Count I:
Breach of Contract, Count II: Malicious Prosecution, and Count III: Violation of FCCPA, of the
Fourth Amended Counterclaim, and any other relief deemed just, equitable and proper.

*/s/ Adam J. Wick*
ANDREW KEMP-GERSTEL
Florida Bar No. 044332
BERIT GRIFFIN
Florida Bar No. 068902
ADAM J. WICK
Florida Bar No. 057950
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone:   (305) 379-0400
Fax:   (305) 379-9626
*Counsel for Bank of America, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this **8<u>th</u>** day of August, 2016, a true and correct copy of the foregoing was furnished *via* E-mail and/or CM/ECF to: **Faequa A. Khan, Esq.** and **Daryl L. Jones, Esq.**, Law Offices of Daryl L. Jones, P.A., djones@DLJonesLaw.com & fkhan@DLJonesLaw.com, located at 14707 South Dixie Hwy., Suite PH402, Miami, Florida 33176; **James Scott Telepman, Esq.,** Law Firm of Cohen Norris Wolmer Ray Telepman Cohen, located at 200 East Broward Boulevard, Suite 2100, Fort Lauderdale, FL 33301 and served via E-mail and US Mail to: **Harbor Land Title, LLC**, c/o Zahera Sadik, zee@harborlandtitle.com, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411.

_/s/ Adam J. Wick_____
ADAM J. WICK