**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:15-cv-81325**

BANK OF AMERICA, N.A., Successor by Merger to BAC Home Loans Servicing LP, f/k/a Countrywide Home Loans Servicing,

    Plaintiff,

v.

GARY L. ZASKEY A/K/A GARY LYNN ZASKEY; LORI A. ZASKEY A/K/A LORI ANN ZASKEY; BRENDA LYNN ZASKEY; UNKNOWN SPOUSE OF BRENDA LYNN ZASKEY, *et al.*,

    Defendants.                                  /

GARY L. ZASKEY and LORI A. ZASKEY,

    Counter-Plaintiffs/

v.

BANK OF AMERICA, N.A., GREEN TREE SERVICING, LLC; HARBOR LAND TITLE, L.C.; and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,

    Counter-Defendants / Third Party Defendants.

                                                /

**THIRD-PARTY DEFENDANT GREEN TREE SERVICING'S RESPONSE IN OPPOSITION TO THIRD-PARTY PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST GREEN TREE SERVICING**

Third Party Defendant GREEN TREE SERVICING, LLC n/k/a DITECH FINANCIAL LLC ("Defendant" or "Green Tree"), pursuant to Fed. R. Civ. P. 56 and S.D.L.R. 56.1(a), hereby submits its response to Counter-Plaintiffs GARY L. ZASKEY's and LORI A. ZASKEY's (collectively, "Plaintiffs") Motion for Partial Summary Judgment Against Green Tree [DE 237] (the "Motion"), and states in opposition thereto as follows:

**I. Plaintiffs' Motion For Partial Summary Judgment Should Be Denied Because Plaintiffs Have Not Addressed Any Of Green Tree's Affirmative Defenses**

In their Motion, Plaintiffs move for partial summary judgment on three of their four claims against Green Tree for alleged violations of the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, *et seq.* ("FDCPA"), the Florida Consumer Collection Practices Act, Fla. Stat. §§ 559.55, *et seq.* ("FCCPA"), and the Real Estate Settlement Procedures Act, 12 U.S.C. § 2601, *et seq.*, ("RESPA").[1]  *See Plaintiffs' Motion [DE 237], generally*.  Plaintiffs, however, have failed to address any of the affirmative defenses Green Tree has asserted to these claims.  *See Id.; see also Green Tree's Answer and Affirmative Defenses [DE 151] (the "Answer") at pages 14-17*.  For example, Green Tree has asserted as an affirmative defense to Plaintiffs' FDCPA and FCCPA claims that "its alleged violation(s) of the FDCPA and FCCPA were not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error."  *See Green Tree's Answer [DE 151] at Affirmative Defenses, ¶¶ 1 and 3*.  This defense is a complete defense to Plaintiffs' FDCPA and FCCPA claims, and would preclude a finding of liability against Green Tree.  *See* 15 U.S.C. § 1692k(c) ("A debt collector **may not be held liable** in any action brought under this subchapter if the debt collector shows by a preponderance of the evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.") (emphasis added); *and* Fla. Stat. § 559.77(3) (same).  Thus, having failed to address Green Tree's affirmative defenses, Plaintiffs cannot obtain partial summary judgment against Green Tree on the issue of liability (as they seek to do in their Motion) and Plaintiffs' Motion should be denied.  *See North Pointe Ins. Co. v. Global Roofing & Sheet Metal, Inc.*, 2013

---

[1]  Plaintiffs have dropped their claim against Green Tree for alleged violations of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.* ("FDUTPA").

WL 1830544, *2 (M.D. Fla. May 1, 2013) (denying plaintiff's motion for summary judgment where plaintiff failed to address defendant's affirmative defenses in its initial motion).[2]

**II. Plaintiffs Failed To Comply With The Express Terms and Conditions Of The CSSA, Including The Provision Requiring Them To Wire The Short Payoff Amount Within 48 Hours Of The Sale;  As Such, BOA Did Not Breach The CSSA When It Returned The Proceeds From The April 2012 Unauthorized Sale In August 2012**

In Section III.B of their Motion, Plaintiffs suggest that Green Tree's defense of their action is primarily dependent on the argument that, "because [the proceeds from the April 2012 sale at issue] were not received by Bank of America within [48 hours of the April 2012 short sale closing], the CSSA was rendered void, the Zaskeys were in breach of the CSAA, and [Green Tree's] debt-collection actions were justified." *See Plaintiffs' Motion [DE 203] at page 5*.  This, however, is not true.  As explained in Green Tree's Motion for Summary Judgment (the "MSJ") and Statement of Material Facts (the "SOF"), Green Tree's argument is instead that the April 2012 short sale of the Mortgaged Property was not authorized by the prior servicer, Bank of America, N.A. ("BOA"), because Plaintiffs and their agent failed to provide certain required documents to BOA prior to the April 2012 sale and failed to obtain BOA's prior final approval to proceed with the sale.  *See, e.g., Green Tree's SOF [DE 202] at ¶¶ 14-21*.  Thus, contrary to Plaintiffs' suggestion, Green Tree's argument is that the April 2012 sale was an unauthorized sale, regardless of when BOA received the proceeds from same.  Further, because an authorized sale of the Mortgaged Property was not closed before the April 30, 2012 deadline[3], BOA's

---

[2]   The Court should also not permit Plaintiffs to correct this deficiency in their initial Motion by permitting Plaintiffs to address Green Tree's affirmative defenses for the first time in their reply brief.  This is because the time for Plaintiffs to have addressed Green Tree's affirmative defenses has passed, as Plaintiffs were required to address the affirmative defenses in their initial motion.  *See North Pointe Ins.*, 2013 WL 1830544 at *2 ("The Court also notes that, in its reply to [defendant's] response, [plaintiff] disputes each of [defendant's] affirmative defenses.  However, the time for [plaintiff] to do that has passed.  A party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion.") (*citing Stillman v. Travelers Ins. Co.*, 88 F.3d 911, 914 (11th Cir. 1996)).

[3]   Plaintiffs argue in their Motion that "the parties had a valid contract as late as August 31, 2012." *See Motion [DE 237] at page 6*.  Plaintiffs contend that, after entering into the CSSA, Plaintiffs received an undated letter from BOA (the "Undated Letter") that purportedly modified the April 30, 2012 closing deadline set forth in the CSSA and extended same until August 31, 2012.  This argument is without merit.  <u>First</u>, Plaintiffs did not receive the Undated Letter after entering into the CSSA, but instead received the Undated Letter before they first saw the CSSA

(cont.)

3

conditional approval of the proposed short sale was void. *See Conditional Approval Letter, Ex. 7 to Gary Dep. [DE 183], at page 2, ¶5*.

In addition, Green Tree also argues that, even if the April 2012 short sale was authorized and BOA did timely receive the proceeds from the sale, Green Tree's alleged collection activities were still proper because Green Tree was never advised by BOA that there was an authorized short sale of the Mortgaged Property and instead was repeatedly told by BOA that there had not been any authorized short sale. *See Green Tree's MSJ [DE 209]; see also Green Tree's SOF [DE 202] at ¶¶ 29-43*. As such, Green Tree always believed (and still believes) that the debt at issue was legitimate. *Id*. Plaintiffs, however, do not address any of these arguments / defenses in their Motion, and thus Plaintiffs' Motion should be denied.

Moreover, even if Plaintiffs had satisfied the terms and conditions of the CSSA and the April 26, 2012 sale had been authorized (which it was not), Plaintiffs' argument in Section III.B of their Motion that they allegedly did not breach the express terms of the CSSA because the CSSA did not contain any "time is of the essence" language with regard to their obligation to wire the sale proceeds to BOA within 48 hours of a sale is without merit. As Plaintiffs acknowledge, they entered into the Conditional Approval Letter with BOA in order to resolve / settle their default on their mortgage loan. *See Plaintiffs' Statement of Material Facts [DE 237-1] at ¶1 ("After falling behind on their mortgage payments, the Zaskeys contacted [BOA] to explore loss mitigation alternatives, and ultimately obtained approval to list the subject property for short sale.")*. That said, this is not the situation that is present in the cases cited by Plaintiffs in their Motion[4], where there is a dispute between the buyer and seller of property over a missed closing

---

(which Mr. Zaskey testified he first saw on April 24, 2012). *(DE 183, Gary Dep. at 77:24-78:20, 83:13-85:17, 86:6-13, and 88:9-89:12, and at Exs. 10 and 11) ("Q. You said you received it [the Undated Letter] before the April 2012 closing? A. Yes. Q. Did you receive it before the short sale approval letter [i.e., the CSSA] we just looked at? A. Yes.")*. Second, even if Plaintiffs did receive the Undated Letter after the CSSA, the Undated Letter still did not modify the April 30, 2012 closing date deadline set forth in the CSSA because the Undated Letter expressly provided that "**The terms and conditions of your short sale agreement [i.e., the CSSA] have not changed**. … The exact terms and conditions are set forth in the short sale agreement." *(DE 183, Gary Dep. at Ex. 11 (emphasis added))*.

[4]   Plaintiffs' cases include the following: *National Exhibition Co. v. Ball*, 139 So.2d 489 (Fla. 2d DCA 1962); *Jackson v. Holmes*, 307 So.2d 470 (Fla. 2d DCA 1975); *Command Sec. Corp. v. Moffa*, 84 So.3d 1097 (Fla. 4th DCA 2012); *and Royal Dev. & Mgmt. Corp. v. Guardian 50/50 Fund V, Ltd.*, 583 So.2d 403 (Fla. 3d DCA 1991).

4

deadline. Instead, this is a dispute between a creditor and debtor over the payment of money that is owed to the creditor. Under such circumstances, "[i]in the absence of an express agreement otherwise, a debtor owes his creditor nothing less that the unconditional delivery of money on or before the last day specified for payment". *See Polezoes v. Bartlett*, 921 So. 2d 35, 36-37 (Fla. 4th DCA 2006) (*citing Treasure Coast, Inc. v. Ludlum Construction Co.*, 760 So.2d 232 (Fla. 4th DCA 2000)).

In the *Polezoes* case, the plaintiff and defendants had entered into a settlement agreement to resolve pending litigation between them pursuant to which the plaintiff agreed to sell the property in dispute to the defendants for a certain amount, and specified that the closing and passage of title to the defendants "shall occur" within 30 days of the date of their agreement. *Polezoes*, 921 So. 2d at 36. The parties' agreement further provided that, if the sale did not close within 30 days, the defendants were required to execute and deliver to the plaintiff a quitclaim deed to the property and dismiss their counterclaim. *Id.* The defendants then failed to close within 30 days, and asked the plaintiff for an extension of time to close, which the plaintiff declined. *Id.* The plaintiff instead sought to enforce the settlement agreement, and the defendants argued that the absence of a "time-is-of-the-essence" clause entitled them to a "reasonable" period of time to close beyond the 30 days. *Id.* The Florida appellate court however rejected this argument and affirmed the trial court's order enforcing the parties' agreement, holding that, where an agreement between a creditor and debtor clearly contains an express provision for payment of a sum certain by a certain date, a court should construe the agreement to implicitly make time of the essence. *Id.* at 36-37.

Here, as in the *Polezoes* case, BOA and Plaintiffs entered into an agreement to resolve potential litigation (a potential foreclosure action), pursuant to which Plaintiffs were to sell their Mortgaged Property (after first obtaining BOA's final approval) by a date certain, April 30, 2012, and then to wire a payment of a sum certain, $26,788.44, to BOA within 48 hours of the short sale closing date. *See Green Tree's SOF [DE 202] at ¶¶ 6-15*. Moreover, the parties' agreement, the CSSA, used the mandatory term "must" to make it clear to Plaintiffs that they only had 48 hours to wire the required payment to BOA, not anything more. *See Conditional Approval Letter, Ex. 7 to Gary Dep. [DE 183], at page 2, ¶14, and page 3*. ("Payoff funds must be received within 48 business hours of the HUD-1 settlement date."). As such, Plaintiffs owed their creditor, BOA, nothing less that the unconditional delivery of the payoff amount on or

5

before the last day specified for payment, *i.e.*, within 48 business hours of the April 26, 2012 sale date. Plaintiffs, however, failed to comply with this express contract provision as the sale proceeds were first received by BOA several months later on August 9, 2012. *See Green Tree's SOF [DE 202] at ¶23*. Plaintiffs therefore did breach the terms of the Conditional Approval Letter in failing to make timely payment to BOA, despite their suggestion to the contrary. As such, BOA had the right to refuse to accept the late payment and instead to enforce the terms of the parties' agreement by canceling the approval of the offer and proceeding with the foreclosure action.[5] *See Conditional Approval Letter, Ex. 7 to Gary Dep. [DE 183], at page 3* ("If the terms and conditions of the short sale approval are not met, we will cancel the approval of this offer and continue the foreclosure process as permitted by the mortgage documents.").

Further, even if the CSSA did not implicitly make time of the essence with regard to Plaintiffs' payment of the payoff amount, BOA nevertheless subsequently made time of the essence. Under Florida law, if time is not of the essence with regard to the original contract, it may subsequently be made so by an express notice, given by a party who is not in default to the other party who is in default, requiring the contract to be performed within a stated time. *See I. Kushnir Hotels, Inc. v. Durso*, 912 So.2d 633, 636 (Fla. 4th DCA 2005); *see also The National Exhibition Co. v. Ball*, 139 So.2d 489, 493 (Fla. 2nd DCA 1962) (same). Here, a few days after the April 30, 2012 closing date, on May 3, 2012, BOA sent a message to Plaintiffs' closing agent

---

[5] In their previously filed Motion for Partial Summary Judgment [DE 203], Plaintiffs argued that, "[o]nce the Zaskeys received [a payment of $5,000 in relocation assistance from the closing agent,] [BOA] was obligated to resolve this issue without any further assistance from the Zaskeys. [BOA's] own [Undated Letter] demonstrates that [BOA] was of the view that the Zaskeys complied with the CSSA. Otherwise, [BOA] would have never sent the $5,000 payment, or allowed it to be sent to the Zaskeys." *See Motion [DE 203] at page 8-9*. In anticipation of Plaintiffs again raising this argument in their reply, Green Tree notes that this argument is frivolous. Plaintiffs have not introduced any record evidence showing that BOA had any knowledge of the April 2012 sale or the issuance of the $5,000 relocation assistance check to Plaintiffs before they happened. Rather, the record evidence shows that BOA had no knowledge whatsoever of the April 2012 unauthorized sale until after the sale had already taken place and the $5,000 relocation assistance check had already been issued to Plaintiffs by their closing agent. *See Green Tree's SOF [DE 202] at ¶¶ 16-24*. Moreover, the record evidence also shows that BOA did not believe that Plaintiffs had complied with all of the terms and conditions of the CSSA, but instead believed that Plaintiffs had failed to comply with same (and thus declined the file in June 2012). *Id.*

notifying the closing agent that "The Approval Letter has expired and no communication has been received. Please provide the status of this file **immediately** to avoid having the file declined. Thank you." *See Green Tree's SOF [DE 202] at ¶17 (emphasis added)*. In sending this message to Plaintiffs' closing agent, BOA notified Plaintiffs that time was of the essence with regard to the contract and that they needed to provide BOA with information regarding their short sale efforts immediately to avoid having the file declined. In addition, the May 3, 2012 message also put Plaintiffs' agent on notice that it immediately needed to wire to BOA any proceeds from the April 2012 sale. BOA, however, did not receive a response to this May 3, 2012 message within thirty (30) days, and declined Plaintiffs' short sale request on June 4, 2012. *See Green Tree's SOF [DE 202] at ¶¶ 18-20*. Thus, when BOA later received the proceeds from the April 2012 unauthorized sale on August 9, 2012, BOA's conditional short sale approval had long been void and BOA had long ago declined the file. BOA then had no obligation to accept the proceeds from the unauthorized April 2012 sale in August 2012.

### III. Plaintiffs Are Not Entitled To Summary Judgment On Their FCCPA Claim

Plaintiffs are not entitled to Summary Judgment on their FCCPA claim against Green Tree. First, Plaintiffs have failed to address Green Tree's affirmative defenses to their FCCPA claim, including Green Tree's bona fide error defense, thus precluding the entry of summary judgment in their favor. *See Section I, above*. Second, even if Plaintiffs had addressed Green Tree's affirmative defenses, Plaintiffs' Motion with regard to their FCCPA claim should still be denied for the same reasons set forth in Green Tree's MSJ:

(i) The FCCPA is inapplicable because Plaintiffs' Loan was not for personal purposes, but instead for business purposes, as the Mortgaged Property was being used as a rental property at the time the Loan was originated.

(ii) Plaintiffs' FCCPA claim based on any alleged violations that occurred prior to June 15, 2013 are barred by the applicable 2-year statute of limitations insofar as Plaintiffs did not file their third-party complaint against Green Tree until June 15, 2015.

(iii) Plaintiffs' FCCPA claim based on Green Tree's mailing of certain letters advising Plaintiffs of (i) the name of their new account representative, (ii) their right to cure the default and their loss mitigation options following the February 2014 lifting of a bankruptcy stay, (iii) Green Tree's / Fannie Mae's August 2014 decision to accept the funds from the unauthorized April 2012 short sale in full satisfaction of the Loan, and (iv) the need for insurance and Green Tree's purchase of LPI is without merit because these letters were not sent in connection with the collection of a debt.

*See Green Tree's MSJ [DE 209] at pages 15-17*.

Third, Plaintiffs' claims with regard to specific FCCPA violations are without merit for the additional reasons set forth below.

   A.  **Fla. Stat. § 559.72(9)**

In their Motion, Plaintiffs argue that summary judgment should be entered in their favor on their claim that Green Tree allegedly claimed, attempted or threatened to enforce a debt that it "knew" was not legitimate in violation of Fla. Stat. § 559.72(9). In addition to the reasons set forth above, Plaintiffs' Motion with regard to the alleged Fla. Stat. § 559.72(9) violation should also be denied because (i) the debt was legitimate, and (ii) even if it was not, Green Tree did not know that the debt was not legitimate. *See Green Tree's SOF [DE 202] at ¶¶ 14-25 and 27-43*. Further, the fact that Plaintiffs may have told Green Tree about the April 2012 unauthorized sale does not change this result. This is because Green Tree was not required to merely accept Plaintiffs' version of events, but instead was entitled to review the records and other information provided by the prior servicer, BOA, to determine whether there was, in fact, an authorized short sale of the Mortgaged Property while BOA was servicing the Loan. That said, Green Tree did conduct such an investigation and determined (and confirmed with BOA) that the April 2012 sale of the Mortgaged Property was not authorized by BOA. *Id. at ¶¶ 34-43*. The record evidence therefore shows that Green Tree, at all material times, believed (and still believes) that the debt at issue was legitimate. *Id. at ¶¶ 29-43*.

Further, even if the Court were to accept Plaintiffs' contention that Green Tree "knew" that the debt was not legitimate merely because Plaintiffs had informed Green Tree of the April 2012 unauthorized sale (which it should not), Plaintiffs' FCCPA claim under Fla. Stat. § 559.72(9) is still without merit with regard to any of Green Tree's alleged debt collection efforts made prior to September 25, 2013. This is because Green Tree has no record of ever receiving Plaintiffs' two alleged qualified written requests in which Plaintiffs purportedly advised Green Tree in writing of the alleged short sale, and instead Green Tree first became aware of Plaintiffs' claim that the Mortgaged Property had been the subject of an alleged short sale during a telephone call with Ms. Zaskey on September 25, 2013. *See Green Tree's SOF [DE 202] at ¶¶ 29-34*.

   B.  **Fla. Stat. § 559.72(3) and (6)**

In their Motion, Plaintiffs argue that summary judgment should be entered in their favor on their claim that Green Tree allegedly violated Fla. Stat. § 559.72(3) and (6) by purportedly

8

"fail[ing] to disclose that the disputed nature of the debt would be noted or reported" and "never report[ing] that the debt was disputed." This argument is without merit. First, as argued in Green Tree's Motion for Summary Judgment, Plaintiffs' Fla. Stat. § 559.72(6) claim is preempted by the federal Fair Credit Reporting Act ("FCRA"). *See Green Tree's MSJ [DE 209] at pages 18-19*.

Second, Fla. Stat. § 559.72(6) provides that a person need only disclose to a third party that the debt is disputed if the debt is **known to be reasonably disputed** by the debtor. Here, the record evidence shows that Plaintiffs' dispute with regard to the debt was not reasonable, as there was no merit to Plaintiffs' claim that there was an authorized short sale of the Mortgaged Property. *See Green Tree's SOF [DE 202] at ¶¶ 14-25 and 27-43*. Moreover, there is no record evidence that Green Tree knew the debt to be "reasonably" disputed, as all of the information it was provided by BOA with regard to Plaintiffs' dispute indicated that their dispute was not reasonable. *Id. at ¶¶ 27-43*. For example, when BOA transferred servicing of the Loan to Green Tree in May 2013, BOA did not advise Green Tree that there had been an approved short sale that had closed or that an approved short sale was pending at the time. *Id. at ¶ 32*. Green Tree also did not receive from BOA at the time of the May 2013 servicing transfer any documents or other data indicating that an approved short sale had closed or that BOA had received the proceeds from an April 2012 short sale of the Mortgaged Property. *Id. at ¶ 33*. Further, BOA twice advised Green Tree that there had not been any authorized short sale of the Mortgaged Property. *Id. at ¶¶ 40-43*.

Third, even if Green Tree at some point knew that the debt was reasonably disputed, there is still a factual issue as to when Green Tree knew that the debt was reasonably disputed, thereby precluding the entry of summary judgment. *See Green Tree's SOF [DE 202] at ¶ 34 and page 10, fn. 7 (Green Tree claims that it first learned of alleged dispute in September 2013, Plaintiffs contend Green Tree was advised of dispute in May 2013)*.

Fourth, Plaintiffs fail to cite to any admissible record evidence in support of their Fla. Stat. § 559.72(3) and (6) claims. For example, in support of their claim that Green Tree allegedly "failed to disclose that the disputed nature of the debt would be noted or reported", Plaintiffs cite only to Mr. Zaskey's Declaration at ¶¶ 22-23. *See Plaintiffs' Motion [DE 237] at page 12*. However, in reading Paragraphs 22 and 23 of Mr. Zaskey's Declaration, there is no actual mention that Green Tree allegedly told Plaintiffs either that (i) Green Tree would disclose to a

third party information affecting their reputation for credit worthiness or (ii) that Green Tree "failed to disclose that the disputed nature of the debt would be noted or reported". *See Mr. Zaskey's Declaration [DE 204] at ¶¶ 22-23*. Without such record evidence, Plaintiffs have failed to prove a violation of Fla. Stat. § 559.72(3) (which requires a plaintiff to prove that the defendant (i) told him or him that it would disclose to another, orally or in writing, information affecting the debtor's reputation for credit worthiness without (ii) also telling him or her that the existence of the dispute would also be disclosed to the other person).

Similarly, in support of their claim that Green Tree allegedly "never reported that the debt was disputed", Plaintiffs cite only to Exhibit A to Mr. Zaskey's Declaration. *See Plaintiffs' Motion [DE 237] at page 13*. However, the credit reports attached as Exhibit A to Mr. Zaskey's Declaration are inadmissible hearsay. *See Fed. R. Evid. 801-802*. As such, there is no record evidence that Green Tree, in fact, "never reported that the debt was disputed".

### C. Fla. Stat. § 559.72(7)

In their Motion, Plaintiffs argue that summary judgment should be entered in their favor on their claim that Green Tree allegedly violated Fla. Stat. § 559.72(7) by placing telephone calls and sending letters to Plaintiffs with a frequency and in a pattern such that it was intended to annoy, abuse and harass them. This argument is without merit. Green Tree only placed a total of seven (7) telephone calls to Plaintiffs during the time that it serviced Plaintiffs' Loan from May 1, 2013 through October 2014. *See Green Tree's SOF [DE 202] at ¶¶ 52-59*.[6] These seven (7) total calls made by Green Tree to Plaintiffs over the course of seven (7) months, with essentially one call each month, were not with such frequency as can reasonably be expected to harass the debtor. *See Schauer v. Morse Operations, Inc.*, 5 So. 3d 2, 4-5 (Fla. 4th DCA 2009) (holding that the defendant's seven telephone calls over six months were neither so frequent nor so harassing so as to violate Fla. Stat. § 559.72(7) as a matter of law, thus entitling defendant to the entry of summary judgment on plaintiff's Fla. Stat. § 559.72(7) claim). This is especially

---

[6] Green Tree called Plaintiffs and spoke with one of them three (3) times, on September 25th, October 4th, and November 20th, 2013. *See Green Tree's SOF [DE 202] at ¶¶ 52-55*. In addition, Green Tree attempted to call Plaintiffs but did not speak with one of them four (4) other times, on May 9th, June 3rd, October 31st and November 18th, 2013. *Id. at ¶ 56*. Further, despite Plaintiffs' mistaken belief to the contrary, Green Tree did not hire or retain any other third party to make any other telephone calls to Plaintiffs during the time that it serviced Plaintiffs' Loan, and is not aware of any other such calls made by any third parties. *Id. at ¶¶ 58-59*.

true insofar as all of Green Tree's telephone calls on September 25, 2013 and thereafter were made to Plaintiffs to follow-up on their contention that the Loan has allegedly been satisfied following a purported short sale in April 2012.[7]  *(DE 198, GT Aff. at Ex. G, at pages 21, 23, and 24)*.

In addition, the record evidence also shows that Green Tree did not mail letters to Plaintiffs with a frequency and in a pattern such that it was intended to annoy, abuse and harass them. Green Tree sent Plaintiffs a debt validation and a notice of servicing transfer in early May 2013, both of which were required by federal law and were sent prior to Green Tree having any knowledge of the purported April 2012 short sale.  *See Green Tree's SOF [DE 202] at ¶¶ 60-61*; *see also* 15 U.S.C. § 1692g (requiring debt collectors to send a debt validation letter to a debtor); *and* 24 CFR § 3500.21(d) (requiring a transferee servicer to send a notice of servicing transfer within 15 days of the servicing transfer).  Thereafter, Green Tree sent Plaintiffs (i) a few letters advising Plaintiffs of a change in the account representative responsible for their Loan, (ii) a November 19, 2013 letter regarding Plaintiffs' loss mitigation options after Green Tree determined that the April 2012 short sale was unauthorized, (iii) several letters in February and March 2014 providing Plaintiffs with an opportunity to cure their default or to pursue other loss mitigation options after the stay in Plaintiffs' bankruptcy action had been lifted by the bankruptcy court, and (iv) several letters in August and September 2014 related to Green Tree's request for Fannie Mae's August 2014 agreement to accept the funds from the April 2012 short sale in full satisfaction of their debt.  *See Green Tree's SOF [DE 202] at ¶¶ 60-64 and Ex. L.* Green Tree also sent some letters to Plaintiffs regarding their failure to maintain insurance on the Mortgaged Property, as required under the express provisions of the Mortgage.  *Id. at ¶¶ 69-70.*

These letters were not sent by Green Tree with such frequency nor were they sent with such purpose as can reasonably be expected to annoy or harass Plaintiffs.  Instead, these letters were sent to provide certain information to Plaintiffs, including their loss mitigation options to try to avoid foreclosure, and to advise Plaintiffs that Green Tree would be purchasing lender-placed insurance if Plaintiffs did not provide evidence of their own insurance so as to protect the

---

[7]  *See Arianas v. LVNV Funding, LLC*, 132 F. Supp. 3d 1322, 1329-1330 (M.D. Fla. 2015) (holding that defendant debt collector was entitled to summary judgment on plaintiff's Fla. Stat. § 559.72(7) claim because, in part, the animating purpose of the telephone calls at issue was to respond to plaintiff's inquiries, not to harass).

11

investor's security interest in the Mortgaged Property. The simple truth is that Plaintiffs only found these innocuous letters from Green Tree, all sent in the ordinary course of business, "extremely disturbing and frustrating … since [Plaintiffs] closed on a short sale of the subject property about two years earlier." *See Plaintiffs Motion [DE 237] at page 15*. Plaintiffs' complaint with these letters (and telephone calls) then is really based on the contention made in their Fla. Stat. § 559.72(9) claim that Green Tree was allegedly attempting to collect a debt which they believed was not legitimate (but which the evidence shows was legitimate). As shown above, however, there is no merit to Fla. Stat. § 559.72(9) claim and thus there is also no merit to their Fla. Stat. § 559.72(7) claim.

## IV. Plaintiffs Are Not Entitled To Summary Judgment On Their FDCPA Claim

Plaintiffs are not entitled to Summary Judgment on their FDCPA claim against Green Tree. <u>First</u>, Plaintiffs have failed to address Green Tree's affirmative defenses to their FDCPA claim, including Green Tree's bona fide error defense, thus precluding the entry of summary judgment in their favor. *See Section I, above*. <u>Second</u>, even if Plaintiffs had addressed Green Tree's affirmative defenses, Plaintiffs' Motion with regard to their FDCPA claim should still be denied for the same reasons set forth in Green Tree's MSJ:

(i) The FDCPA is inapplicable because Plaintiffs' Loan was not for personal purposes, but instead for business purposes, as the Mortgaged Property was being used as a rental property at the time the Loan was originated.

(ii) Plaintiffs' FDCPA claim based on any alleged violations that occurred prior to June 15, 2014 are barred by the applicable 1-year statute of limitations insofar as Plaintiffs did not file their third-party complaint against Green Tree until June 15, 2015.

(iii) Plaintiffs' FDCPA claims based on any written correspondence that Green Tree sent to Plaintiffs after December 6, 2013 is without merit because none of Green Tree's written correspondence after December 6, 2013 was sent in connection with the collection of a debt.

(iv) Plaintiffs' FDCPA claim based on Green Tree's alleged violations of 15 U.S.C. § 1692d and 15 U.S.C. § 1692e for allegedly "continuing to pursue collection of a disputed debt for which [Plaintiffs] had no financial responsibility" and allegedly reporting false information to the credit reporting agencies about the debt, respectively, are without merit because the April 2012 short sale was unauthorized and thus Plaintiffs were still responsible for the Loan.

*See Green Tree's MSJ [DE 209] at pages 9-15*.

Third, Plaintiffs' claims with regard to specific FDCPA violations are without merit for the additional specific reasons set forth below:

### A. Section 1692f

In their Motion, Plaintiffs argue that summary judgment should be entered in their favor on their claim that Green Tree allegedly attempted to collect a debt that was purportedly illegitimate in violation of Section 1692f of the FDCPA. In addition to the reasons set forth above (including that some, if not all, of Plaintiffs' claim is barred by the applicable 1-year statute of limitations), Plaintiffs' Motion with regard to the alleged Section 1692f violation should also be denied because the debt was legitimate. *See Green Tree's SOF [DE 202] at ¶¶ 14-25 (showing that the April 2012 short sale was not authorized and did not close with BOA's final approval).* Moreover, the Court should reject Plaintiffs' argument that the debt was not legitimate merely because, in October 2014, Green Tree filed a Satisfaction of Mortgage "without the Zaskeys paying anything toward the alleged debt, or signing any other closing documents." *See Plaintiffs' Motion [DE 237] at page 14*. The reason that Plaintiffs did not have to pay anything more toward the alleged debt or to sign any other closing documents was not because the debt was not legitimate from the time that Green Tree began servicing the Loan in May 2013 until the filing of the Satisfaction of Mortgage in October 2014. Instead, the reason was because, after conclusively determining in July 2014 that the April 2012 short sale was unauthorized by BOA, Green Tree asked the investor, Fannie Mae, whether it wanted to nevertheless agree to accept the funds generated by the unauthorized April 2012 short sale in full satisfaction of the debt, which Fannie Mae agreed to do in late August 2014. *See Green Tree's SOF [DE 202] at ¶¶ 44*-51. As such, Plaintiffs' debt was legitimate the entire time that Green Tree serviced Plaintiffs' Loan, and it was only because of Green Tree's conduct in getting Fannie Mae to accept the funds from the unauthorized April 2012 short sale (which Green Tree had no obligation to do) that Plaintiffs' debt was satisfied in 2014. *Id.*

### B. Section 1692g(b)

In their Motion, Plaintiffs argue that summary judgment should be entered in their favor on their claim that, after Plaintiffs allegedly sent a letter to Green Tree in May 2013 disputing the debt, Green Tree failed to cease their collection efforts until it obtained verification of the debt in violation of Section 1692g(b) of the FDCPA. As mentioned above, this claim being barred by

13

the applicable 1-year statute of limitations.[8]  In addition, Plaintiffs' Motion with regard to the alleged Section 1692g(b) violation should also be denied because there is a factual dispute over whether Plaintiffs ever sent the alleged letter to Green Tree disputing the debt insofar as Green Tree has no record of ever receiving same.  *See Green Tree's SOF [DE 202] at page 10, fn. 7*.

### C. Section 1692d

In their Motion, Plaintiffs argue that summary judgment should be entered in their favor on their claim that Green Tree allegedly violated Section 1692d of the FDCPA by making numerous telephone calls and sending numerous letters to Plaintiffs so as to annoy, abuse or harass Plaintiffs.  In addition to the reasons set forth above (including that some, if not all, of Plaintiffs' claim is barred by the applicable 1-year statute of limitations), Plaintiffs' Motion with regard to the alleged Section 1692d violation should also be denied for the same reasons that Plaintiffs' Motion with regard to their Fla. Stat. § 559.72(7) should be denied.  *See Section III.C, pages 10-12, above*.

### D. Section 1692e(8)

In their Motion, Plaintiffs argue that summary judgment should be entered in their favor on their claim that Green Tree allegedly violated Section 1692e(8) of the FDCPA by purportedly "ma[king] no effort to actually disclose the disputed nature of the debt when [Green Tree] notified various credit agencies."  In addition to the reasons set forth above (including that some, if not all, of Plaintiffs' claim is barred by the applicable 1-year statute of limitations), Plaintiffs' Motion with regard to the alleged Section 1692e(8) violation should also be denied because, as was the case with Plaintiffs' Fla. Stat. § 559.72(3) and (6) claims, Plaintiffs have failed to cite to any admissible record evidence in support of their Section 1692e(8) claim.  *See Section III.B, pages 9-10, above*.  In addition, there is also a factual issue as to when Green Tree first was advised by Plaintiffs that the debt was disputed, thereby precluding the entry of summary judgment.  *See Green Tree's SOF [DE 202] at ¶ 34 and page 10, fn. 7 (Green Tree claims that it first learned of alleged dispute in September 2013, Plaintiffs contend Green Tree was advised of dispute in May 2013)*.

---

[8]   Green Tree's alleged violation occurred in May 2013.  Plaintiffs, however, did not file their Third Party Complaint against Green Tree until more than two (2) years later on June 15, 2015.  *See Green Tree's MSJ [DE 209] at page 11*.

## V. Plaintiffs Are Not Entitled To Summary Judgment On Their RESPA Claim

Plaintiffs are not entitled to Summary Judgment on their RESPA claim against Green Tree. First, RESPA does not apply to Plaintiffs' Loan because the Mortgaged Property was non-owner-occupied rental property at the time the Loan was originated. *See Green Tree's MSJ [DE 209] at page 19*. Second, Plaintiffs' RESPA claim fails as a matter of law because Plaintiffs did not send the purported qualified written requests at issue to the specific address that Green Tree had advised Plaintiffs in writing they must use and thus Plaintiffs' correspondence did not trigger Green Tree's duties under RESPA. *See Green Tree's MSJ [DE 209] at page 19-21*. Third, Plaintiffs' Motion with regard to their RESPA claim should be denied because there is a factual dispute over whether Plaintiffs ever sent the alleged qualified written requests to Green Tree (as Green Tree has no record of ever receiving same). *See Green Tree's SOF [DE 202] at page 10, fn. 7*.

## VI. Conclusion

WHEREFORE, for all of the foregoing reasons, this Court should deny Plaintiffs' Motion for Partial Summary Judgment against Defendant Green Tree, award Green Tree its reasonable attorney's fees and costs incurred in this action pursuant to the Note and Mortgage and applicable statutory law, and grant such other relief as it deems necessary and warranted.

Respectfully submitted,

By:   *s/ John W. Bustard*
John W. Bustard (0641871)
jbustard@shutts.com
David McCrea (239038)
dmccrea@shutts.com
SHUTTS & BOWEN LLP
*Counsel for Defendant Green Tree*
1500 Miami Center
201 South Biscayne Boulevard
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile:  (305) 415-9836

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 8th day of August, 2016, a true and correct copy of the foregoing was furnished *via* E-mail to: **Faequa A. Khan, Esq.** and **Daryl L. Jones, Esq.**, Law Offices of Daryl L. Jones, P.A., djones@DLJonesLaw.com & fkhan@DLJonesLaw.com, 14707 South Dixie Hwy., Suite PH402, Miami, Florida 33176; **Daniel Cardenal, Esq.,** Liebler, Gonzalez & Portuondo, service@lgplaw.com; Courthouse Tower-25th Floor, 44 West Flagler Street, Miami, FL 33130; **James Scott Telepman, Esq.,** Law Firm of Cohen Norris Wolmer Ray Telepman Cohen, jst@fcohenlaw.com, 712 US Highway 1, Suite 400, North Palm Beach, FL 33408; and *via* U.S. Mail to **Harbor Land Title, LLC**, c/o Zahera Sadik, zee@harborlandtitle.com, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411.

*/s/ John W. Bustard*
Of Counsel

MIADOCS 13368212 3