**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**WEST PALM BEACH DIVISION**

BANK OF AMERICA, N.A., SUCCESSOR      **CASE NO.: 9:15-CV-81325**
BY MERGER TO BAC HOME LOANS
SERVICING, LP f/k/a COUNTRYWIDE
HOME LOANS SERVICING, LP,

             Plaintiff,
vs.

GARY L. ZASKEY a/k/a GARY LYNN
ZASKEY, et. al.,

             Defendants.
_____/

GARY L. ZASKEY and LORI A. ZASKEY,

             Counter-Plaintiffs/Third
             Party Plaintiffs,
v.

BANK OF AMERICA, N.A.,

             Counter-Defendant,
     and

GREEN TREE SERVICING, LLC, et al.,

             Third-Party Defendants.
_____/

**COUNTER-DEFENDANT, BANK OF AMERICA, N.A.'S**
**REPLY TO COUNTER-PLAINTIFFS, GARY L. ZASKEY**
**AND LORI A. ZASKEY'S RESPONSE IN OPPOSITION TO**
**COUNTER-DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

Counter-Defendant, BANK OF AMERICA, N.A. ("BANA"), by and through

undersigned counsel, and pursuant to Federal Rule of Civil Procedure 56 and Local Rule 56.1,

hereby files its Reply[1] to Counter-Plaintiffs, GARY L. ZASKEY ("GARY") and LORI A.

_____

[1] BANA also incorporates by reference its Response in Opposition to the ZASKEYS' Motion for Partial Summary

ZASKEY's ("LORI") (collectively, the "ZASKEYS") Response in Opposition to BANA's Motion for Summary Judgment (the "Response")[2] and Response to Statement of Material Facts filed by BANA in Support of [BANA's] Motion for Summary Judgment ("Objections to BANA's Statement of Facts")[3], and, states as follows:

## I.   REBUTTAL TO THE ZASKEYS' OBJECTIONS TO BANA'S STATEMENT OF FACTS

The ZASKEYS objected to seven (7) undisputed facts alleged by BANA—Paragraphs 4, 5, 14, 15, 17, 22 and 23 of BANA's Statement of Undisputed Material Facts which were incorporated into its Motion for Summary Judgment.

4.      In Paragraph 4, BANA proffered that the ZASKEYS utilized the Property[4] as a rental property and derived rental payment income. The ZASKEYS objected to this statement by simply stating that the Property was not used as "typical rental property" and that only some rent was collected.   The ZASKEYS' rebuttal does not diminish the fact that the Property was used as rental property and income derived therefrom. The rental nature of the Property came up during the course of the April 26, 2012 short sale closing, when GARY refused to satisfy an outstanding water bill incurred by a prior tenant.[5]

5.      In Paragraph 5, the ZASKEYS contend that an Assignment of Mortgage somehow refutes the date BANA states it became servicer of the Loan.   "Servicer" of the Loan

---

Judgment against BANA, GREEN TREE SERVICING, LLC, and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY and Statement of Material Facts in Support of Motion for Partial Summary Judgment (the "Response to the ZASKEYS' Motion for Summary Judgment) (ECF No. 253), its Motion in Limine to Exclude Evidence Regarding Punitive Damages and Emotional Distress Damages (the "Motion in Limine") (ECF No. 210), and its Reply to the ZASKEYS' Memorandum of Law in Response to BANA's Motion in Limine to Exclude Evidence Regarding Punitive Damages and Emotional Distress Damages (the "Reply to the Response to the Motion in Limine") (ECF No. 243), as bearing relevant argument and case law for the issues to be decided by this Court on summary judgment.
[2]   Resp. in Opp. To Mot. for Summ. J., ECF No. 244.
[3]   Resp. to Statement of Material Facts of BANA, ECF No. 244-1.
[4]   All capitalized terms shall have the same meaning as defined in the BANA's Motion for Summary Judgment, ECF No. 213.
[5]   Zahera Sadik Dep. at 19:11-20, ECF No. 197-1.

LIEBLER, GONZALEZ & PORTUONDO
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

and "assignee" of the Mortgage are separate designations, and the date of the Assignment of Mortgage does not impact when BANA's servicing of the loan began.

14.     The ZASKEYS' objection to Paragraph 14, a representation of the date they executed the Short Sale Agreement, does nothing to refute this fact, but rather provides additional facts that have nothing to do with the contention being made by BANA.

15.     The undated Form Short Sale Correspondence cited by the ZASKEYS in rebuttal to Paragraph 15 did nothing to change the terms of the Short Sale Agreement, including the closing deadline of April 30, 2012.   The Form Short Sale Correspondence states "[t]he terms and conditions of your short sale agreement have not changed" and follows with a footnote that reads "[t]he exact terms and conditions are set forth in the short sale agreement."[6]   The Short Sale Agreement provided that the short sale closing date must occur by April 30, 2012[7] and the ZASKEYS never requested, nor did BANA ever approve an extension for this closing date.[8]

17.     The ZASKEYS'   objection to Paragraph 17 actually doesn't contradict the fact set forth by BANA, but goes on to state language not contained in that term. This does nothing to take away from the undisputed nature of the fact represented by BANA.

22.     In Paragraph 22, BANA stated that it did not accept the funds wired by HARBOR LAND TITLE, L.C. ("HARBOR LAND") because the funds were untimely. The ZASKEYS' objection does not refute this fact, but goes on to couch or otherwise qualify it through mischaracterization of testimony and unsupported inferences as to actions of BANA and other parties. BANA testified that the short sale payoff funds were returned because the short sale had been declined.[9]

---

[6] GARY Dep. at Ex. 11, ECF No. 183-4.
[7] GARY Dep. at Ex. 10, ECF No. 183-4.
[8] BANA's Dep. at 169:7-15, ECF No. 182-1.
[9] BANA's Dep. at 59:10-60:10; 115:10-16; 118:5-11, ECF No. 182-1.

23.     The ZASKEYS' recitation to record evidence of a letter from BANA to the ZASKEYS in objection to Paragraph 23 does not support the representations made in their rebuttal statement that they did not receive mail to the Florida address or that they lived in Wisconsin.

## III.     LEGAL ARGUMENT & MEMORANDUM OF LAW

**A.     BANA is entitled to Summary Judgment on Count I: Breach of Contract.**

**i.     There is no evidence that BANA provided the ZASKEYS' with the $5,000.00 payment to acknowledge performance of the Short Sale Agreement.**

The ZASKEYS incorrectly assert that their receipt of a $5,000.00 payment constituted an acknowledgment by BANA of performance under the Short Sale Agreement.  In support of their contention, the ZASKEYS reference the language of the Form Short Sale Correspondence which states that "[i]f you do not complete the short sale or comply with the terms and conditions of your short sale agreement, you will not receive the relocation assistance payment."[10]   At deposition, GARY testified that he received two (2) checks, each in the amount of $2,500.00, from "Harbor Land Title" dated February 26, 2012, and that these checks were received by him on May 3, 2012.[11]   The record is devoid of any evidence that BANA either issued or authorized this payment of $5,000.00 to the ZASKEYS, more so due to the fact that the checks were prepared prior to the alleged April 26, 2012 closing.

The Short Sale Agreement clearly provided instructions to the ZASKEYS, as Sellers, that required them to perform the obligations of the Short Sale Agreement of furnishing documents and payment to BANA by specific deadlines.[12]   It was only after full performance of these

---

[10]  GARY Dep. at Ex. 11, ECF No. 183-4.
[11]  GARY Dep. at 120:8-121:22, ECF No. 183-1;at Ex. 13, ECF No. 183-4.
[12]  GARY Dep. at Ex. 10, ECF No. 183-4.

obligations that BANA would "issue a release of lien on the first lien mortgage loan."[13]   The record does not reflect that BANA ever issued such release of lien.   In fact, the record reflects that some years later, GREEN TREE SERVICING, LLC, recorded a Satisfaction of Mortgage.[14] Accordingly, there is no evidence that BANA provided any acknowledgment that the ZASKEYS complied with the terms of the Short Sale Agreement.

**ii.        Time was of the essence for the Short Sale Agreement.**

Despite lacking an express term that "time is of the essence", the nature of the Short Sale Contract, i.e. recitation to specific dates, times and deadlines, and the loss experienced by BANA for the ZASKEYS' continuing default, made time of the essence.

For time to be of the essence for a contract, it must be the case that either: (1) the contract contains an express recital; (2) it may be determined by the nature of the contract; or (3) where notice has been given to the defaulting party requiring the contract to be performed within a stated time, which must be reasonable given the circumstances.[15]

In *Treasure Coast, Inc. v. Ludlum Constr. Co.*, 760 So. 2d 232, 234-35 (Fla. 4th DCA 2000), the appellate court found time to be of the essence for the parties' settlement agreement based on the nature of the terms even though there was not an express recital specifically stating "time is of the essence."   In so finding, the appellate court reasoned that because the settlement agreement contained an express provision for the payment of a sum of money on a specific date, the parties had essentially agreed for time to be of the essence.[16]

Here, the Short Sale Agreement expressly stated that the ZASKEYS obligations were "to be completed by the dates and/or timeframes noted" and then went on to provide specific dates

---

[13]  GARY Dep. at Ex. 10, ECF No. 183-4.
[14]  BANA's Aff. at ¶38, ECF No. 207-1.
[15]  *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 471 (Fla. 4th DCA 2003); *Blaustein v. Weiss*, 409 So. 2d 103, 105 (Fla. 4th DCA 1982).
[16]  *Id.*

for the providing of the preliminary HUD-1 Settlement Statement, the closing date, a prohibition on transfers of the property, the wiring of the payoff funds constituting payment to BANA, the furnishing of the completed Assignment of Unearned Premium and Important Notice Regarding Income Tax Reporting, and the furnishing of a certified copy of the FINAL HUD-1 Settlement Statement at closing[17]--none of which the ZASKEYS performed timely, save for the closing occurring on April 26, 2012[18], but even that closing date was not approved or even known by BANA.

Just like the terms in the agreement from *Treasure Coast*, the terms of the Short Sale Agreement were clear and unambiguous as to the dates certain by which the ZASKEYS were required to perform their obligations.   In every instance where a deadline or timeframe is given, the Short Sale Agreement provides a date certain, not a range of time which would potentially be open for interpretation.   Where the terms of a contract are unambiguous and clear, then "[c]ourts may not rewrite, alter, or add terms of a written agreement between the parties and may not substitute their judgment of that of the parties.."[19]

The ZASKEYS' Response fixates only on express recitals of time being of the essence, which is only one of the three forms for a contract, and incorrectly states that absent such provision, time cannot be considered of the essence for the Short Sale Agreement.   Their Response also focuses on the application of "time is of the essence" clauses from one term in a contract to another, and mostly in instances where a blank clause is applied to abstract, indefinite time frames[20].   All of these scenarios are inapplicable to the Short Sale Agreement and are

---

[17]  GARY Dep. at Ex. 10, ECF No. 183-4.
[18]  BANA's Aff. at ¶28-30.
[19]  *Rybovich Boat Works, Inc. v. Atkins*, 587 So. 2d 519, 521 (Fla. 4th DCA 1991) (citing *International Expositions, Inc. v. City of Miami Beach*, 274 So. 2d 29 (Fla. 3d DCA 1973).
[20]  *See National Exhibition Co. v. Ball*, 139 So. 2d 489, 490 (Fla. 2d DCA 1962) (attempting to apply an express "time is of the essence" provision to a term which contained the phrase "shall have a reasonable time to do so"); *Royal Dev. & Management Corp. v. Guardian 50/50 Fund V, Ltd.*, 583 So. 2d 403 (Fla. 3d DCA 1991);

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130    (305) 379-0400

inapposite to the Court's analysis of whether the nature of the Short Sale Agreement itself dictates that time is of the essence.

As stated under *Sublime*, time is considered of the essence when implied by the nature of the contract.[21]   Notwithstanding the other provisions, the ZASKEYS failed to timely perform. The Short Sale Agreement expressly provided that the payoff funds from the short sale were to be provided to BANA through wire transfer within 48 business hours of closing.[22]  A material breach of a contract excuses the non-breaching party from its obligations thereunder.[23]  To constitute a vital or material breach, a party's non-performance must go to the essence of a contract.[24]  Under Florida law, "to constitute a material breach, [a] late payment must occur where time is of the essence."[25]   Here, the Short Sale Agreement required transmittal of the short payoff funds to BANA within 48 business hours of closing.[26]  The transmittal did not occur within 48 business hours as required by the Short Sale Agreement.[27]  In turn, the ZASKEYS breached a material term of the Short Sale Agreement and BANA's obligations under same were obviated. The ZASKEYS' claim for breach of contract therefore fails because a material term of the contract was not met.

To consider otherwise would work an injustice on BANA and result in a continuing loss. As previously stated, the ZASKEYS were in default under the terms of the Note and Mortgage for failure to make the monthly payment due for November 1, 2010, and at no time did the

---

[21] *Sublime, Inc.* 849 So. 2d at 471.
[22] GARY Dep. at Ex. 10, ECF No. 183-4.
[23] *See Green Tree Servicing, LLC v. Milam*, 177 So. 3d 7, 14 (Fla. 2d DCA 2015); *Bradley v. Health Coalition, Inc.*, 687 So. 2d 329, 333 (Fla. 3d DCA 1997)
[24] *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 470 (Fla. 4th DCA 2003). *Burlington & Rockenbach, P.A. v. Law Offices of E. Clay Parker*, 160 So. 3d 955, 960 (Fla. 5th DCA 2015) (holding that a material breach "goes to the essence of the contract," and that "trivial noncompliance and minor failings" are not material breaches); *Beefy Trail, Inc. v. Beefy King Int'l, Inc.*, 267 So. 2d 853, 857 (Fla. 4th DCA 1972) (same).
[25] *Centurion Air Cargo v. UPS Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005).
[26] GARY Dep. at Ex. 10, ECF No. 183-4.
[27] ZASKEYS' Resp. to GREEN TREE's Req. for Admis. No. 7, ECF No. 186-1; BANA's Aff. at ¶29, ECF No. 207; BANA's Aff. at ¶13-18, ECF No. 208, at Ex. B, ECF No. 208-1.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130   (305) 379-0400

ZASKEYS cure this default.[28]   Per the terms of the Note, upon default, interest, late charges and fees would begin to accrue against the existing indebtedness.[29]   The ZASKEYS' failure to perform their obligations under the Note and cure their defaults opened BANA up to continuing loss from the increasing indebtedness, which only continued to compound when the ZASKEYS also failed to perform under the Short Sale Agreement.   The fact that BANA continued to experience loss at the ZASKEYS' failure to timely perform the obligation of payment under the Short Sale Agreement provides further evidence that time was of the essence.[30]

### iii.      The Form Short Sale Correspondence did not amend the Short Sale Agreement.

The ZASKEYS' argument that the Relocation Assistance Letter amended the CSSA fails as a matter of law.   The Court need not look beyond the terms of the Relocation Assistance Letter to defeat the ZASKEYS' contention.[31]   The Relocation Assistance Letter contains express language noting that it is not a modification of any short sale agreement, which would mean the CSSA.   Specifically, it states that "the terms and conditions of your short sale agreement have not changed."[32]   Hammering home that point is the footnote at the bottom of the Relocation Assistance Letter advising that the "exact terms and conditions [of the short sale agreement] are set forth in the short sale agreement."   Finally, despite the representations made in the ZASKEYS' Motion for Summary Judgment and Statement of Facts to the contrary, GARY admitted that he received the Relocation Assistance Letter *before* receiving and executing the CSSA.[33]   There was no ambiguity created by the Relocation Assistance Letter. The Relocation

---

[28]  BANA's Aff. at ¶9 and 12, ECF No. 207-1, at Ex. D, ECF No. 207-1.
[29]  BANA's Aff. at ¶1, ECF No. 207-1, at Ex. A, ECF No. 207-1.
[30]  *See Blaustein*, 409 So. 2d at 105 ("[w]here, from the nature of the subject matter or fluctuations in the value or from terms of the agreement, the treating of time as a non-essential will produce a hardship, and delay by one party in completing or in complying with a term would necessarily subject the other parties to serious injury or loss" then time will be considered of the essence.); *Realty Securities Corp. v. Johnson*, 111 So. 532 (1927).
[31]  GARY Dep. at Ex. 11, ECF No. 183-4.
[32]  GARY Dep. at Ex. 11, ECF No. 183-4.
[33]  GARY Dep. at 83:19-85:8, ECF No. 183-1.

**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor, 44 West Flagler Street, Miami, FL 33130     (305) 379-0400

Assistance Letter did not amend or modify the CSSA, nor did the document allay the requirement that BANA receive the short payoff funds within 48 business hours of closing. Further, the Relocation Assistance Letter did not incorporate the terms of the CSSA, nor vice versa, therefore this argument fails as a matter of law.

**B.**     **BANA is entitled to Summary Judgment on Count II: Malicious Prosecution.**

BANA is entitled to summary judgment on Count II: Malicious Prosecution because it had probable cause to file the Foreclosure Action and the ZASKEYS have referenced no record evidence establishing they sustained damage.

First, the ZASKEYS have not demonstrated, nor can they demonstrate, an absence of probable cause for BANA to bring the foreclosure action.   It is undisputed that the ZASKEYS defaulted on the loan that was the subject of the foreclosure suit.[34] When the ZASKEYS failed to perform under the Short Sale Agreement, the Loan remained in default and BANA asserted its rights under the Note and Mortgage to file the Foreclosure Action.

Second, the ZASKEYS have not referenced, and the record evidence lacks, any finding of damages sustained by the ZASKEYS under this cause of action.   Accordingly, the ZASKEYS' malicious prosecution claim fails as a matter of law and summary final judgment should be entered in favor of BANA on this count.

**C.**     **BANA is entitled to Summary Judgment on Count III: Violation of the FCCPA.**

   **i.**     **The Loan was not a consumer debt falling within the purview of the FCCPA.**

The Loan was not a consumer debt because its proceeds were used to refinance a mortgage on the Property, which at the time the Loan was originated was used as rental property.

---

[34] BANA's Aff. at ¶9, ECF No. 207.

The ZASKEYS mischaracterize their own testimony by alleging the Loan was used to pay off liens for GARY's divorce and credit cards and to purchase a residence in Wisconsin.[35] Rather, GARY testified that a prior 2005 loan in the amount of $78,000.00 paid for these items.[36] For purposes of this matter, the Note is dated December 12, 2006, in the original principal amount of $104,000.00[37] and GARY testified that $79,915.18 of those proceeds were used to pay off this prior 2005 loan.[38]

The ZASKEYS had been deriving rental income from the Property since 2000.[39] Specifically, the ZASKEYS used the subject real property as a rental property to derive income in the form of monetary payments or services.[40]  In fact, the rental nature of the property came up during the course of the April 26, 2012 closing when GARY refused to satisfy an outstanding water bill incurred by a prior tenant.[41]   Using the "quantitative approach" from *Drew v. Ocwen Loan Servicing, LLC*, 2015 U.S. Dist. LEXIS 134163 (M.D.Fla. Sep. 17, 2015), the majority of the proceeds from the Note were used to refinance the rental Property.   Accordingly, the Loan is not a consumer debt falling within the scope of the FCCPA.

    ii.       **The ZASKEYS' claims for actual damages for emotional distress and punitive damages fail as a matter of law.**

BANA re-avers and reincorporates the argument and case law set forth in BANA's Response to the ZASKEYS' Motion for Summary Judgment, BANA's Motion in Limine, and BANA's Reply to the ZASKEYS' Response to the Motion in Limine.   In sum, the conduct described by the ZASKEYS' own testimony does not rise to the level of "severe impact" required to sustain an award of actual damages for emotional distress, and the case law cited by

---

[35]  *See* Resp. in Opp. to Mot. for Summ. J. at Pg. 16, ECF No. 244.
[36]  GARY's Dep. at 18:8-19:14, ECF No. 183-1.
[37]  GARY's Dep. at Ex. 2, ECF No. 183-4.
[38]  GARY's Dep. at 39:23-25, ECF No. 183-1, at Ex. 5, ECF No. 183-4.
[39]  GARY Dep. at 11:8-11; 22:25-30:14, ECF No. 183-1.
[40]  GARY Dep. at 11:8-11; 22:25-30:14, ECF No. 183-1.
[41]  Zahera Sadik Dep. at 19:11-20, ECF No. 197-1.

the ZASKEYS is either mischaracterized or distinguishable.   Likewise, the ZASKEYS cannot establish that the conduct alleged in the Fourth Amended Counterclaims contains the willfulness and malicious intent required under the FCCPA for an award of punitive damages.   This Court can determine as a matter of law that the ZASKEYS are precluded from an award of actual damages for emotional distress and punitive damages regardless of whether any liability is found under the FCCPA.

WHEREFORE, Counter-Defendant, BANK OF AMERICA, N.A., hereby requests this Court enter an Order granting BANA's Motion for Summary Judgment on Count I: Breach of Contract, Count II: Malicious Prosecution, and Count III: Violation of FCCPA, of the Fourth Amended Counterclaim, and any other relief deemed just, equitable and proper.

 /s/ Adam J. Wick
ANDREW KEMP-GERSTEL
Florida Bar No. 044332
BERIT GRIFFIN
Florida Bar No. 68902
ADAM J. WICK
Florida Bar No. 057950
**LIEBLER, GONZALEZ & PORTUONDO**
Courthouse Tower - 25th Floor
44 West Flagler Street
Miami, FL 33130
Telephone:   (305) 379-0400
Fax:   (305) 379-9626
*Counsel for Bank of America, N.A.*

[CERTIFICATE OF SERVICE ON FOLLOWING PAGE]

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that on this **<u>8th</u>**  day of August, 2016, a true and correct copy of the foregoing was furnished *via* E-mail and/or CM/ECF to: **Faequa A. Khan, Esq.** and **Daryl L. Jones, Esq.**, Law Offices of Daryl L. Jones, P.A., djones@DLJonesLaw.com & fkhan@DLJonesLaw.com, located at 14707 South Dixie Hwy., Suite PH402, Miami, Florida 33176; **James Scott Telepman, Esq.,** Law Firm of Cohen Norris Wolmer Ray Telepman Cohen, located at 200 East Broward Boulevard, Suite 2100, Fort Lauderdale, FL 33301 and served via E-mail and US Mail to: **Harbor Land Title, LLC**, c/o Zahera Sadik, zee@harborlandtitle.com, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411.


 */s/ Adam J. Wick_____*
ADAM J. WICK