**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 9:15-cv-81325**

BANK OF AMERICA, N.A., Successor by Merger to BAC Home Loans Servicing LP, f/k/a Countrywide Home Loans Servicing,

    Plaintiff,

v.

GARY L. ZASKEY A/K/A GARY LYNN ZASKEY; LORI A. ZASKEY A/K/A LORI ANN ZASKEY; BRENDA LYNN ZASKEY; UNKNOWN SPOUSE OF BRENDA LYNN ZASKEY, *et al.*,

    Defendants.                                    /

GARY L. ZASKEY and LORI A. ZASKEY,

    Counter-Plaintiffs/

v.

BANK OF AMERICA, N.A., GREEN TREE SERVICING, LLC; HARBOR LAND TITLE, L.C.; and OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY,

    Counter-Defendants / Third Party Defendants.

                                                        /

**THIRD-PARTY DEFENDANT GREEN TREE SERVICING'S RESPONSE TO THIRD-PARTY PLAINTIFFS' STATEMENT OF MATERIAL FACTS <u>AND DECLARATION OF GARY ZASKEY</u>**

Third Party Defendant GREEN TREE SERVICING, LLC n/k/a DITECH FINANCIAL LLC ("Defendant" or "Green Tree"), pursuant to Fed. R. Civ. P. 56 and S.D.L.R. 56.1(a), hereby submits its response to (i) Counter-Plaintiffs GARY L. ZASKEY's and LORI A. ZASKEY's (collectively, "Plaintiffs") Statement of Material Facts [DE 237-1]; (ii) the Declaration of Plaintiff Gary Zaskey [DE 204] (the "Declaration"); and (iii) the Statement of Material Facts section set forth in Plainitffs' Motion for Partial Summary Judgment against Green Tree [DE 237].

I. **Green Tree's Response to Plaintiffs' Statement of Material Facts**

1. Admitted.

2. In response, Green Tree notes that BOA expressly advised Plaintiffs that they were not required to use ReMax Platinum as their realtor, but instead had the option to use any realtor of their choosing. (*DE 202, Green Tree's SOF[1] at ¶¶ 9-13); and (DE 183, Gary Dep. at 48:1-20, 50:8-18, 54:24-56:12, and 58:7-59:5; and at Exs. 7 and 9*).

3. Admitted.

4. In response, Green Tree notes that the proposed short sale that Plaintiffs submitted to Bank of America, N.A. ("BOA") was only conditionally approved by BOA and that Plaintiffs and their closing agent had to satisfy certain terms and conditions in order to close the conditionally-approved short sale, including obtaining BOA's final approval to close. *(DE 183, Gary Dep. at Ex. 10)*.

5. In Paragraph 5 of Plaintiffs' Statement [DE 237-1], Plaintiffs claim that "Mr. Zaskey … and his wife … relied on the advice and recommendations of Bank of America to ensure the short-sale was completed correctly." This contention is refuted by Mr. Zaskey's sworn testimony at his deposition where he admitted that, after receiving a August 22, 2011 letter from BOA offering Plaintiffs the opportunity to participate in BOA's Cooperative Short Sale program, Plaintiffs never spoke to anyone at BOA about the proposed short sale before the short sale at issue closed in April 2012. (*DE 183, Gary Dep.[2] at 48:1-20, 52:2-57:2 and 63:18-*

---

[1]   "Green Tree's SOF" refers to Green Tree's Statement of Material Facts filed in this action on July 8, 2016 at DE 202.

[2]   "Gary Dep." refers to the transcript of the deposition of Plaintiff Gary Zaskey taken in this action on June 23, 2016 and filed at DE 183. Further, the numbers following "Gary Dep." set forth the page and line numbers of the testimony being referenced.

*65:1) ("Q. So neither you nor your wife spoke to anyone at Bank of America about this proposed short sale beforehand? A. That's correct.").*

6.      Admitted.

7.      In Paragraph 7 of Plaintiffs' Statement [DE 237-1], Plaintiffs claim that "The Zaskeys did not select Harbor Title as their closing agent." This contention is not true. Plaintiffs chose to use ReMax Platinum as their realtor. *(DE 202, Green Tree's SOF at ¶¶ 9-13); and (DE 183, Gary Dep. at 48:1-20, 50:8-18, 54:24-56:12, 58:7-59:5; and at Exs. 7 and 9).* Plaintiffs' agent, ReMax Platinum, in turn chose to use Harbor Title as the closing agent for the April 2012 sale. *(DE 183, Gary Dep. at 70:3-5) (where Mr. Zaskey testified that Mr. Pino at ReMax Platinum chose Harbor Title as the closing agent).* Moreover, Plaintiffs understood at the time of the April 2012 sale that the closing agent, Harbor Title, was communicating with BOA on their behalf. *(DE 183, Gary Dep. at 98:1-9).*

8.      In Paragraphs 8 and 16-18 of Plaintiffs' Statement [DE 237-1], Plaintiffs claim that (i) "Sometime after the date of the March 16, 2012 CSSA, but prior to the April 26, 2012 closing, Bank of America sent an undated Relocation Assistance Letter to the Zaskeys"; (ii) the undated letter at issue (the "Undated Letter") states that "the short-sale closing must occur by August 31, 2012"; and (iii) "This Relocation Assistance Letter provid[es] for a short sale closing date of no later than August 31, 2012." As indicated, Plaintiffs' purpose in making these claims is to argue that the Undated Letter purportedly modified or amended the April 30, 2012 closing date deadline set forth in the March 16, 2012 Conditional Approval Letter (or CSSA).

Plaintiffs' contention in this regard, however, is refuted by the express language of the Undated Letter. Specifically, the Undated Letter expressly provided that "The terms and conditions of your short sale agreement <u>have not changed</u>. … The exact terms and conditions are set forth in the short sale agreement." *(DE 183, Gary Dep. at Ex. 11 (emphasis added)).* This language that the terms and conditions of the Conditional Approval Letter (or CSSA) "have not changed" is clear and unambiguous, and any suggestion by Plaintiffs to the contrary is without merit. The Undated Letter did not modify or amend the April 30, 2012 closing date deadline set forth in the March 16, 2012 Conditional Approval Letter.

Moreover, Mr. Zaskey has admitted that he received the Undated Letter before, not after, he first saw the March 16, 2012 Conditional Approval Letter (which Mr. Zaskey testified he first saw on April 24, 2012). *(DE 183, Gary Dep. at 77:24-78:20, 83:13-85:17, 86:6-13, and 88:9-*

*89:12, and at Exs. 10 and 11) (Q. You said you received it [the Undated Letter] before the April 2012 closing? A. Yes. Q. Did you receive it before the short sale approval letter [the March 16, 2012 Conditional Approval Letter] we just looked at? A. Yes.")*. As such, from a timing perspective, even if the Undated Letter did not make clear that it did not amend or modify any of the terms of the CSSA (which it did), the closing deadline set forth in the CSSA would have amended the purported closing deadline set forth in the Undated Letter, not the other way around.

9. Admitted that Plaintiffs received the CSSA prior to the April 26, 2012 sale and that the address set forth in the CSSA was Plaintiffs' Palm Beach County property.

10. In Paragraph 10 of Plaintiffs' Statement [DE 237-1], Plaintiffs claim that "Under the terms of the [CSSA], Bank of America was to receive wired proceeds in the amount of $26,788.44, in full satisfaction of the Note and Mortgage it held on the subject Property." This characterization of the CSSA (or "Conditional Approval Letter") is not accurate. Rather, under the Conditional Approval Letter, BOA simply agreed to accept the amount of $26,788.44 in full satisfaction of the Note and Mortgage if the other terms and conditions of the letter were met. *(DE 183, Gary Dep. at Ex. 10)*. The Conditional Approval Letter, however, did not guarantee that BOA would receive the "wired proceeds", as Plaintiffs try to suggest (rather, Plaintiffs and their agents were responsible for that happening).

11-13. Admitted that Plaintiffs have accurately cited the specific language of the CSSA in these paragraphs.

14. In Paragraph 14 of Plaintiffs' Statement [DE 237-1], Plaintiffs state that "There is no provision within the CSSA which states that 'time is of the essence.'" While these exact words do not appear in the CSSA, the CSSA does contain numerous provisions / conditions which required Plaintiffs to meet specific time deadlines. For example, the CSSA required that the short sale closing take place prior to April 30, 2012 or the conditional approval would be void. *(DE 183, Gary Dep. at Ex. 10, page 2, ¶ 5)*. In addition, the CSSA required Plaintiffs' closing agent to upload certain documents, including "a certified copy of the final estimated HUD-1 Settlement Statement in to the short sale system 72 hours prior to closing" and that the "[p]ayoff funds must be wired … and must be received within 48 business hours of the HUD-1 settlement date …" *Id. at page 3*.

15. Admitted that the CSSA does not contain this specific language.

4

16-18.   See Green Tree's response to Paragraph 8, above.

19.   In Paragraph 19 of Plaintiffs' Statement [DE 237-1], Plaintiffs claim that "The short sale closing took place on April 26, 2012."   In response to this contention, Green Tree notes that this April 26, 2012 short sale closing took place without Plaintiffs having first received BOA's final approval for the short sale to proceed.  (*DE 202, Green Tree's SOF at ¶¶ 14-21*).

20.   In Paragraph 20 of Plaintiffs' Statement [DE 237-1], Plaintiffs claim that "On April 26, 2012, Harbor Title unsuccessfully attempted to wire the short sale proceeds to Bank of America."   In response, Green Tree notes that Plaintiffs have admitted that BOA did not receive the sale proceeds from Plaintiffs' closing agent, Harbor Title, within 48 hours of the April 26, 2012 unauthorized sale. *(DE 186, Plaintiffs' RFA Response at No. 7)*.   Instead, BOA first received the sale proceeds from the April 26, 2012 unauthorized sale several months later on August 9, 2012.  *(DE 186, Plaintiffs' RFA Response at No. 8)*.[3]

21.   In Paragraph 21 of Plaintiffs' Statement [DE 237-1], Plaintiffs claim that "The Zaskeys complied with the terms and conditions of the CSSA [or Conditional Approval Letter]."  This contention is not true.  As explained in Paragraphs 14-20 and 23 of Green Tree's Statement of Material Facts [DE 202], Plaintiffs failed to satisfy several of the conditions set forth in BOA's March 16, 2012 Conditional Approval Letter.  For example, Plaintiffs failed (i) to upload either a certified copy of the final estimated HUD-1 Settlement Statement or a certified copy of the Final HUD-1 Settlement Statement onto BOA's short sale system, Equator, prior to the April 26, 2012 sale, and (ii) to have the proceeds from the April 26, 2012 sale wired to BOA within 48 hours of the sale.  *(DE 202, Green Tree's SOF at ¶¶ 16 and 23)*.

22.   Admitted, though Green Tree notes that (i) the April 2012 short sale closing was not authorized by BOA, (ii) the April 2012 short sale closing was conducted without BOA's knowledge, and (iii) the $5,000.00 in relocation assistance was paid to Plaintiffs without BOA's knowledge.  *(DE 202, Green Tree's SOF at ¶¶ 16-21 and 23)*.

23.   Admitted.

---

[3]   Green Tree further disputes the veracity of Harbor Title's testimony, insofar as Harbor Title is the company that made the many errors that caused the April 26, 2012 sale to close without first receiving BOA's final approval and thus has every reason to lie in order to cover up its own mistakes (and liability).

24.     Admitted that BOA returned the wired funds on or about August 16, 2012. Without knowledge as to whether BOA returned the wired funds without explanation, thus this contention is neither disputed nor admitted.

25.     Without knowledge.  Neither disputed nor admitted.

26.     In response, Green Tree notes that Plaintiffs have failed to identify the time period that they are referring to in Paragraph 26, and that, at some point, Plaintiffs did become aware that BOA did not receive the proceeds from the April 26, 2012 closing.

27.     In Paragraph 27 of Plaintiffs' Statement [DE 237-1], Plaintiffs claim that "Bank of America never sent any written notice or telephoned the Zaskeys to advise that it rejected the short-sale proceeds, or that the property did not close properly."  This contention is not true. Rather, the record evidence shows that, on June 27, 2012, BOA sent Plaintiffs a letter to Plaintiffs' closing agent declining the short sale for the Mortgaged Property.  (*DE 182, BOA Dep. at 152:18-153:18 and at Ex. 24*).  In the letter, BOA advised Plaintiffs "We have received your request to complete a short sale on your property.  We are sorry to inform you that we are unable to approve your request for the reason provided below:  Decline – Supporting Documents Not Received in 14 Days."  (*DE 182, BOA Dep. at Ex. 24*).

28-31.  Admitted.

32-33.  Green Tree has no business records reflecting the referenced communications with Harbor Title.  Green Tree, however, admits that it had similar discussions with the title company for the April 2012 sale of the Mortgaged Property, Old Republic National Title Insurance Company ("Old Republic"), in November and December 2013.  (*DE 198, GT Aff.[4] at Ex. G*).

34-35.  Admitted.

36-37.  Admitted, however Green Tree notes that the April 26, 2012 sale of the Mortgaged Property was not authorized by BOA. (*DE 202, Green Tree's SOF at ¶¶ 14-21*). Green Tree only obtained the agreement of the investor, Fannie Mae, to accept the proceeds from the April 2012 unauthorized sale in August 2014. (*DE 202, Green Tree's SOF at ¶¶ 44-49*).

---

[4]     "GT Aff." refers to Affidavit of Green Tree in Support of its Motion for Summary Judgment filed in this action on July 8, 2016 at DE 198.

38-39.   Admitted that BOA filed a Notice of Voluntary Dismissal in the state foreclosure action on July 21, 2015.

40.   Admitted.

41-47.   Without knowledge.  Neither disputed nor admitted.

48.   Admitted.

49.   In Paragraph 49 of Plaintiffs' Statement [DE 237-1], Plaintiffs claim that "From May through October of 2013, Green Tree and its representatives called and otherwise communicated with the Zaskeys numerous times, demanding payment for the Zaskeys' mortgage."  In response to this contention, Green Tree notes that it only spoke with Plaintiffs on the telephone three (3) different dates in September, October and November 2013, and made another four (4) telephone calls to Plaintiffs in May, June, October and November 2013 which Plaintiffs did not answer.  (*DE 198, GT Aff.*[5] *at ¶¶ 31-38 and at Ex. G*).[6]  In addition, Green Tree did not demand payment of the underlying mortgage during all of the calls when it actually spoke to Plaintiffs, but instead was merely following up with Plaintiffs on their contention that the Mortgaged Property was allegedly the subject of a short sale in April 2012.  (*DE 198, GT Aff. at Comment List, Ex. G, at pages 24, 23, and 21*) *(which pages set forth the subject matter of Green Tree's calls with Plaintiffs on September 25th, October 4th and November 20th, 2013)*.  Finally, to the extent that Plaintiffs are also referring to any letters that Green Tree sent to Plaintiffs in Paragraph 51, Green Tree did not demand payment of the underlying mortgage in all of letters that it sent to Plaintiffs.  (*DE 198, GT Aff. at Comp. Ex. L*).

50-59.   Without knowledge.  Neither disputed nor admitted.

---

[5]   "GT Aff." refers to Affidavit of Green Tree in Support of its Motion for Summary Judgment filed in this action on July 8, 2016 at DE 198.

[6]   In Paragraph 49, Plaintiffs suggest that Green Tree had third-party representatives call the Zaskeys numerous times.  This contention is not true.  Green Tree never retained or hired any third party to place any telephone calls to Plaintiffs regarding the Loan and/or Plaintiff's delinquency.   (*DE 198, GT Aff. at ¶ 37*).  In addition, Green Tree has no record of any third party making any collection calls to Plaintiffs during the time that Green Tree serviced Plaintiffs' Loan. *(DE 198, GT Aff. at ¶ 38 and Ex. G)*.

**II.    Green Tree's Response to Additional Facts Set Forth In the Declaration of Plaintiff Gary Zaskey Which Do Not Appear In Plaintiffs' Statement of Material Facts[7]**

22.     In Paragraph 22 of the Declaration [DE 204], Mr. Zaskey claims that he received five (5) telephone calls from Green Tree and their agents on July 3, 2013, July 10, 2013, July 15, 2013, July 19, 2013, and July 20, 2013.  This contention is not true.  Green Tree and its representatives did not make any calls to Plaintiffs in July 2013, and did not retain or hire any third party to place any telephone calls to Plaintiffs regarding the Loan and/or Plaintiff's delinquency.  (*DE 198, GT Aff. at ¶¶ 31-38 and at Ex. G*).

24-25.  In Paragraphs 24 and 25 of the Declaration [DE 204], Mr. Zaskey claims that he mailed two handwritten letters to Green Tree in May 2013.  Green Tree disputes this contention insofar as Green Tree has no record of ever receiving either of these two letters.  (*DE 198, GT Aff. at page 5, fn. 4*).

27.     In Paragraph 27 of the Declaration [DE 204], Mr. Zaskey claims that "It was especially upsetting and disturbing that Green Tree Servicing, LLC sent me default letters stating that I was at risk for a foreclosure, when Bank of America had already filed a foreclosure action against me regarding a property I no longer owned."  In response to this contention, Green Tree notes that it sent the Notice of Default and Right to Cure Letters to Plaintiffs in February 2014 in accordance with Green Tree's regular business practice after the stay imposed by Plaintiffs' December 2013 bankruptcy action had been lifted.  (*DE 198, GT Aff. at ¶ 42 and at Comp. Ex. L*).  Green Tree's purpose in sending Plaintiffs these letters in February 2014 was to provide Plaintiffs with an opportunity to cure the default of the Loan or to pursue other loss mitigation options after the lifting the bankruptcy stay and before Green Tree proceeded with the foreclosure action.  *Id.*  In addition, Green Tree expressly advised Plaintiffs in the default letters at issue that

> **If you filed bankruptcy or obtained a discharge in bankruptcy, this communication is not intended as an attempt to collect a debt from**

---

[7]     Green Tree will address only those paragraphs set forth in the Declaration of Gary Zaskey that it has not already addressed in Section I, above, and that it disputes and/or wishes to clarify in responding in opposition to Plaintiffs' Motion for Partial Summary Judgment against Green Tree.  However, by not addressing the remaining paragraphs of the Declaration of Gary Zaskey, Green Tree is not agreeing to the truth of the statements contained therein and will insist that Plaintiffs prove the truth of such statements at any trial in this action.

>    **your personally.  You therefore have no personal obligation to pay on this account.  ...**

*(DE 198, GT Aff. at Comp. Ex. L)* (bold in originals).

      28.    In Paragraph 28 of the Declaration [DE 204], Mr. Zaskey claims that "Green either completed a loss mitigation application on its own, without my permission, or fabricated the August 2014 letters entirely." Mr. Zaskey further claims that "[t]hese communications were extremely disturbing and frustrating, because I never requested nor applied for any loss mitigation program for this loan …"  In response to these contentions, Green Tree notes it sent Plaintiffs the August 28th and 29th, 2014 letters in question in accordance with Green Tree's regular business practice after Green Tree had first requested and then received the investor Fannie Mae's approval to accept the proceeds from the April 2012 unauthorized short sale in full satisfaction of the Loan. (*DE 198, GT Aff. at ¶ 43 and at Comp. Ex. L*).  Green Tree's purpose in sending Plaintiffs these letters on August 28th and 29th, 2014 was to advise Plaintiffs of the short sale approval and to comply with certain statutory, regulatory and Fannie Mae obligations Green Tree had with regard to the short sale approval.  *Id.*  In addition, Green Tree expressly advised Plaintiffs in the August 2014 letters at issue that

> **THIS INFORMATIONAL NOTICE IS NOT AN ATTEMPT TO COLLECT A DEBT.  IF YOU ARE CURRENTLY IN BANKRUPTCY OR YOUR ACCOUNT WAS DISCHARGED IN BANKRUPTCY WITHOUT A REAFFIRMATION, THE SERVICER IS NOT ATTEMPTING TO COLLECT OR RECOVER THE DEBT AS YOUR PERSONAL LIABILITY.**
>
> **This is not an attempt to collect debt.  If you were an obligor on this account prior to the filing of a Chapter 7 bankruptcy that is now discharged and you did not reaffirm the debt, or you filed bankruptcy and Green Tree … has obtained a lift of stay, Green Tree is simply exercising its rights under the security agreement as allowed by law.  Green Tree is not attempting to collect the debt but is only complying with statutory notice requirements.**

*(DE 198, GT Aff. at Comp. Ex. L)* (bold and all caps in originals).

### III. Green Tree's Response to Additional Facts Set Forth In The Factual Background Section Of Plaintiffs' Motion For Partial Summary Judgment Which Do Not Appear In Plaintiffs' Statement of Material Facts

1. In Plaintiffs' Factual Background section, at page 3 of Plaintiffs' Motion for Partial Summary Judgment [DE 237], Plaintiffs claim that "Green Tree … failed to properly credit the Zaskeys' account, improperly refused to accept the sales proceeds, and instead proceeded with an aggressive and harassing debt collection campaign against the Zaskeys." These contentions are not true.

<u>First</u>, Green Tree had no obligation to accept the proceeds from the April 2012 sale of Plaintiffs' Mortgaged Property or to credit same to Plaintiffs' account until the investor Fannie Mae agreed to accept the proceeds from the April 2012 sale in August 2014. This is because the April 2012 sale of Plaintiffs' Mortgaged Property was unauthorized and did not close with BOA's final approval. (*DE 202, Green Tree's SOF at ¶¶ 14-25*). Further, even if the required conditions of the short sale had been met by Plaintiffs and BOA should have accepted the payoff funds from the April 2012 short sale in full satisfaction of Plaintiffs' debt, Green Tree never knew, nor should have known, this to be the case. (*DE 202, Green Tree's SOF at ¶¶ 29-43*).

<u>Second</u>, Green Tree did not engage in an "aggressive and harassing debt collection campaign against the Zaskeys". Green Tree only spoke with Plaintiffs on the telephone on three (3) different dates in September, October and November 2013, and only made another four (4) telephone calls to Plaintiffs in May, June, October and November 2013 which Plaintiffs did not answer. (*DE 198, GT Aff. at ¶¶ 31-38 and at Ex. G*). Further, Green Tree did not demand payment of the underlying mortgage during the calls when it actually spoke to Plaintiffs, but instead was merely following up with Plaintiffs on their contention that the Mortgaged Property was allegedly the subject of a short sale in April 2012. (*DE 198, GT Aff. at Comment List, Ex. G, at pages 24, 23, and 21*) *(which pages set forth the subject matter of Green Tree's calls with Plaintiffs on September 25th, October 4th and November 20th, 2013).*

In addition, Green Tree did not send any correspondence to Plaintiffs for the purpose of harassing Plaintiffs. Rather, Green Tree sent letters to Plaintiffs that were either (i) required by federal law; (ii) intended to advise Plaintiffs of their options to try to avoid foreclosure; (iii) intended to provide Plaintiffs with an opportunity to cure the default of the Loan or to pursue other loss mitigation options after the lifting the bankruptcy stay and before Green Tree proceeded with the foreclosure action; or (iv) intended to advise Plaintiffs of the short sale

approval by Fannie Mae in August 2014 and to comply with certain statutory, regulatory and Fannie Mae obligations Green Tree had with regard to the short sale approval. (*DE 198, GT Aff. at ¶¶ 39-46 and at Comp. Ex. L*).

2. In Plaintiffs' Factual Background section, at page 3 of Plaintiffs' Motion for Partial Summary Judgment [DE 237], Plaintiffs claim that "Green Tree [did not] conduct[] a good faith investigation into the Zaskeys' dispute of the debt which should have been satisfied after a lender-approved short sale had closed." This contention is not true. First, Plaintiffs' mortgage loan was not "fully satisfied" when Green Tree began servicing the loan in May 2013. Rather, according to the loan payment history (the "BOA Loan Payment History") maintained by the prior loan servicer, BOA, that Green Tree received from BOA upon transfer of the servicing of the Loan, Plaintiffs were still due for their monthly mortgage payment due November 1, 2010 and thus were in default for failure to submit their monthly payment due November 1, 2010 and all subsequent payments thereafter. (*DE 198, GT Aff. at ¶¶ 9-10 and Ex. E*). In addition, at the time of servicing transfer in May 2013, the information that Green Tree received from BOA showed that the amount of outstanding principal due and owing on the Loan was $99,327.02. *Id.*

Second, Green Tree did conduct a good faith investigation into Plaintiffs' claim that the Mortgaged Property had been the subject of a short sale in April 2012 after it first became aware of this claim on September 25, 2012. (*DE 202, Green Tree's SOF at ¶¶ 32-43*). Based on this investigation and the records it had received from the prior servicer BOA, Green Tree first concluded in early November 2013 that the alleged April 2012 short sale had never closed with BOA's authorization. *Id. at ¶¶ 36-37.* On December 2, 2013, Green Tree was further advised by the prior servicer, BOA, in an email that "There was no completed Short Sale processed by [BOA]." *Id. at ¶ 40.* Then, on July 2, 2014, after Green Tree had requested additional information from BOA regarding the alleged short sale, Green Tree was advised by BOA that the short sale that BOA had conditionally approved in March 2012 had been declined by BOA "due to: Supporting Documents Not Received in 14 days." *Id. at ¶¶ 41-43*.

Moreover, on November 20, 2013, after Green Tree first concluded that the April 2012 had been unauthorized, Green Tree advised Mr. Zaskey of this fact, telling him that "[the April 2012 short sale] was an unauthorized sale." (*DE 202, Green Tree's SOF at ¶¶ 37-38*).

11

          Respectfully submitted,

        By: *s/ John W. Bustard*
          John W. Bustard (0641871)
          jbustard@shutts.com
          David McCrea (239038)
          dmccrea@shutts.com
          SHUTTS & BOWEN LLP
          *Counsel for Defendant Green Tree*
          1500 Miami Center
          201 South Biscayne Boulevard
          Miami, Florida 33131
          Telephone: (305) 358-6300
          Facsimile:  (305) 415-9836

### **CERTIFICATE OF SERVICE**

  I HEREBY CERTIFY that on this 9th day of August, 2016, a true and correct copy of the foregoing was furnished *via* E-mail to: **Faequa A. Khan, Esq.** and **Daryl L. Jones, Esq.**, Law Offices of Daryl L. Jones, P.A., djones@DLJonesLaw.com & fkhan@DLJonesLaw.com, 14707 South Dixie Hwy., Suite PH402, Miami, Florida 33176; **Daniel Cardenal, Esq.,** Liebler, Gonzalez & Portuondo, service@lgplaw.com; Courthouse Tower-25th Floor, 44 West Flagler Street, Miami, FL 33130; **James Scott Telepman, Esq.,** Law Firm of Cohen Norris Wolmer Ray Telepman Cohen, jst@fcohenlaw.com, 712 US Highway 1, Suite 400, North Palm Beach, FL 33408; and *via* U.S. Mail to **Harbor Land Title, LLC**, c/o Zahera Sadik, zee@harborlandtitle.com, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411.

          */s/ John W. Bustard*
          Of Counsel

MIADOCS 13336793 3