# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 9:15-cv-81325

BANK OF AMERICA, N.A., Successor by
Merger to BAC Home Loans Servicing LP,
f/k/a Countrywide Home Loans Servicing,

     Plaintiff,

v.

GARY L. ZASKEY A/K/A GARY LYNN
ZASKEY; LORI A. ZASKEY A/K/A
LORI ANN ZASKEY; BRENDA LYNN
ZASKEY; UNKNOWN SPOUSE OF
BRENDA LYNN ZASKEY, *et al.*,

     Defendants.                                    /

GARY L. ZASKEY and LORI A.
ZASKEY,

     Counter-Plaintiffs/ Third-Party
     Plaintiffs,

v.

BANK OF AMERICA, N.A., GREEN
TREE SERVICING, LLC n/k/a DITECH
FINANCIAL LLC; HARBOR LAND
TITLE, L.C.; and OLD REPUBLIC
NATIONAL TITLE INSURANCE
COMPANY,

     Counter-Defendants / Third-Party
     Defendants.                                    /

## DEFENDANT GREEN TREE SERVICING, LLC N/K/A DITECH FINANCIAL LLC'S REPLY TO PLAINTIFFS' RESPONSE IN OPPOSITION TO ITS MOTION FOR SUMMARY FINAL JUDGMENT

Defendant GREEN TREE SERVICING, LLC n/k/a DITECH FINANCIAL LLC ("Defendant" or "Green Tree"), pursuant to Fed. R. Civ. P. 56, hereby files its reply to Plaintiffs GARY L. ZASKEY's and LORI A. ZASKEY's (collectively, "Plaintiffs") Response In Opposition To Green Tree's Motion for Summary Judgment [DE 250] (the "Response"):

## I.  Summary Judgment Should Be Entered In Green Tree's Favor On All Of Plaintiffs' Remaining Claims Because The Loan Was For Business Purposes

In its Motion, Green Tree argued that summary judgment should be entered in Green Tree's favor on all of Plaintiff's remaining claims, including their FDCPA, FCCPA and RESPA claims, because the Mortgaged Property was a rental property at the time that the Loan was originated and thus the Loan was not for personal purposes, but instead for business purposes.  In response, Plaintiffs argue that there is "no evidence that Mr. Zaskey used the property for commercial purposes, or did he ever market the property for rent.  Mr. Zaskey never used the property to derive rental income."  *See Response [DE 250] at 6*.  This, however, is not true.

As Plaintiffs acknowledge in their Response, "the relevant time for determining the nature of the debt is when the debt first arises."  *Id. at 6*.  Here, Mr. Zaskey acknowledged in his deposition that he never lived at the Mortgaged Property from 1983 through 2012[1] and that he rented the Mortgaged Property for many years prior to when the Loan was originated in December 2006.  *(DE 183, Gary Dep. at 22:23-30:20)*.  More specifically, Mr. Zaskey testified that (i) he had rented the Mortgaged Property to paying tenants, a mother and her son, Sean Williams, from the 1980s through 2004 or 2006, (ii) the two always paid rent while they lived there, and (iii) Mr. Zaskey insisted that Sean Williams's mother agree to "be sure that [Sean Williams] would pay the rent".  *Id. at 28:20-30:14*.  Thereafter, Mr. Zaskey testified that he continued to have a series of tenants at the Mortgaged Property from 2006 through 2012, and his agreement with all of them was that they pay him rent to the extent that they could afford same and keep up the Mortgaged Property.  *Id. at 22:23-28:11*.  Thus, contrary to Plaintiffs' argument, there is indeed evidence that Mr. Zaskey used the Mortgaged Property to derive rental income from the 1980s on and, as such, the Mortgaged Property had long been a rental property at the

---

[1]      Mr. Zaskey's wife, Lori Zaskey, in turn, testified that she had never spent the night at the Mortgaged Property.  *(DE 188, Lori Dep. at 6:5-11 and 46:25-47:8)*

SHUTTS.COM  |  FORT LAUDERDALE  |  MIAMI  |  ORLANDO  |  SARASOTA  |  TALLAHASSEE  |  TAMPA  |  WEST PALM BEACH

time the Loan was originated in December 2006.[2]  None of the statutes under which Plaintiffs have sued Green Tree – FDCPA, FCCPA or RESPA – therefore apply because the Loan was not for personal purposes, but instead for business purposes.  *See, e.g., Zwicky v. Carlson & Associates, Ltd.*, 2011 WL 6203058, *1 (D. Minn. Dec. 3, 2011) (*quoting* 15 U.S.C. § 1692a(5)) (holding FDCPA does not apply to a loan for a rental property); *Strauss v. The CBE Group, Inc.*, 2016 WL 1273913, *6 (S.D. Fla. March 28, 2016) (FCCPA does not apply for to a loan for business purpose); *and Johnson v. Wells Fargo Home Mortgage, Inc.,* 635 F.3d 401, 417 (9th Cir. 2011) (holding RESPA does not apply to a loan for non-owner-occupied rental properties).

## II.  Summary Judgment Should Be Entered On Plaintiffs' FDCPA Claim

A.  Plaintiffs' FDCPA Claim Is, In Whole or In Part, Time-Barred:  In its Motion, Green Tree argued that Plaintiffs' FDCPA claim is barred under the applicable 1-year statute of limitations for any alleged violation that occurred prior to June 15, 2014, insofar as Plaintiffs' Third Party Complaint (the "Complaint") was not filed against Green Tree until June 15, 2014. In response, Plaintiffs argue that their Complaint should be deemed to have been filed on December 6, 2014, when they filed their motion for leave to file their Complaint.  While Green Tree acknowledges that this is the general rule, it contends that this general rule should not be applied here because Plaintiffs did not act diligently to get their motion granted and Green Tree served with the Complaint.  *See, e.g., Wallace v. Sherwin Williams Co., Inc.*, 720 F. Supp. 158, 159-160 (D. Kan. 1988) (where the court, in allowing the filing of plaintiff's complaint to relate back to the date that the plaintiff filed his motion for leave for statute of limitations purposes, noted that, "[f]urthermore, plaintiff served defendant … with the amended complaint within ninety days of filing the motion to amend").  Here, Plaintiffs did not serve Green Tree within 90 (or 120) days of the filing of their December 2014 motion for leave.  Rather, they waited over six (6) months until June 15, 2015 to have a hearing on their motion and over eight (8) months until August 14, 2015 to serve Green Tree with the Complaint.  *See Green Tree's Amended Notice of*

---

[2]  Plaintiffs' argument that some of Mr. Zaskey's tenants could not always afford to pay the rent is immaterial.  Mr. Zaskey's expectation and agreement with his tenants was that his tenants pay him rent *(DE 183, Gary Dep. at 22:23-30:20)*, and the fact that some of them could not always afford to do so does not mean that the Mortgaged Property was not a rental property. *See Forgeron v. Hough*, 2011 WL 3205295, *5 (N.D. Ill. July 26, 2011) (dismissing plaintiff's FDCPA action after rejecting plaintiff's argument that the debt was not for business purposes because he did not succeed in his business efforts").

*Removal [DE 64] at Ex. A*.  As such, Plaintiffs should be deemed to have filed their Complaint against Green Tree on June 15, 2015, and not December 6, 2014, and therefore Plaintiffs' FDCPA claim is barred under the applicable 1-year statute of limitations for any alleged violations that occurred prior to June 15, 2014.[3]

Further, even if Plaintiffs are deemed to have filed their Complaint against Green Tree on December 6, 2014, Plaintiffs' FDCPA claim is still time-barred with regard to any alleged violations that occurred prior to December 6, 2013.  As such, Plaintiffs' FDCPA is time-barred with regard to the following alleged violations:  (i) any letters that Green Tree sent to Plaintiffs prior to December 6, 2013; (ii) any telephone calls that Green Tree made to Plaintiffs prior to December 6, 2013 (which, in this case, is all of Green Tree's phone calls to Plaintiffs, as the last phone call that Green Tree made to Plaintiffs was on November 20, 2013[4]); (iii) any information that Green Tree provided to any credit reporting agency prior to December 6, 2013; and (iv) Plaintiffs' FDCPA claim based on Green Tree's alleged violation of Section 1692g(b).[5]

B.  <u>The FDCPA Does Not Apply To A Majority Of Green Tree's Letters To Plaintiffs</u>:  In its Motion, Green Tree argued that the FDCPA does not apply to any of Green Tree's letters sent to Plaintiffs after December 6, 2013 because these letters expressly advised Plaintiffs that the letters

---

[3]  This same argument applies to Plaintiffs' FCCPA claim, and therefore Plaintiffs' FCCPA claim is barred under the applicable 2-year statute of limitations for any alleged violations that occurred prior to June 15, 2013.

[4]  In their Response, Plaintiffs make the unsupported claim that "Green Tree has [allegedly] failed to produce a complete set of records of telephone calls Green Tree and its agents made to the Zaskeys." *See Response [DE 250] at 10*.  There is no merit to this claim, and Plaintiffs' Motion to Compel has nevertheless been denied.  Moreover, there is no record evidence that Green Tree ever made any telephone call to Plaintiffs after November 20, 2013.  Green Tree has introduced record evidence of all of its calls to Plaintiffs, the last of which was on November 20, 2013, and, in his Declaration, Mr. Zaskey has not identified a single telephone call made by Green Tree or its alleged representatives after November 20, 2013.  *See Green Tree's SMF [DE 202] at ¶¶52-59; and Mr. Zaskey's Declaration [DE 204] at ¶¶21-22.*

[5]  This is because Green Tree's alleged violation of Section 1692g(b) occurred prior to December 6, 2013.  Rather, Green Tree's alleged violation occurred in May/June 2013, when Green Tree failed to verify the debt and provide Plaintiffs with verification of same in response to Plaintiffs' alleged May 2013 letter disputing the debt and instead continued with its efforts to collect the debt.  *See Plaintiffs' Motion for Partial Summary Judgment [DE 237] at 15 (where Plaintiffs contend that they sent Green Tree a letter disputing the debt in May 2013 and that Green Tree failed to respond to same in violation of Section 1692g(b)).*

were for informational purposes only and were not intended as an attempt to collect a debt.[6]  *See Green Tree's MSJ [DE 209] at 12-14*.  In response, Plaintiffs argue that the caselaw cited by Green Tree, *Helman v. Udren Law Offices*, is inapplicable and instead the case of *Gburek v. Litton Loan Servicing, L.P.*, 614 F.3d 380 (7th Cir. 2010), should control.  The court in the *Gburek* case, however, unlike the *Helman* court, did not specifically address the argument made by Green Tree here, that its letters are not actionable under the FDCPA because they contained express language for persons who had filed for bankruptcy protection that they were sent for informational purposes only and not in an attempt to collect a debt.  *Compare Gburek*, 614 F.3d 380; *with Helman v. Udren Law Offices, P.C.*, 85 F. Supp. 3d 1319, 1327-1328 (S.D. Fla. Dec. 18, 2014) (holding that defendant's monthly billing statements were not actionable because they included express language for persons who had received a bankruptcy discharge that they were for information purposes only and not to collect a debt). As such, the Court should follow the holding in *Helman*, not *Gburek*.

The Court should also disregard Plaintiffs' contention that Green Tree's argument does not apply to its February 2014 letters[7] because "Green Tree's February 2014 disclaimer notes that in the case of a discharge, it is not attempting to collect a debt" and Plaintiffs' debt had not yet been discharged (the debt was discharged in March 2014[8]).  *See Response [DE 250] at 10-11*.  This is because Green Tree's February 2014 letters expressly advised Plaintiffs that they were not intended as an attempt to collect a debt "if you filed bankruptcy **or** obtained a discharge in bankruptcy," and thus the disclaimer language in the February 2014 letters was not just limited to

---

[6]     Green Tree also argued that the FDCPA / FCCPA does not apply to four (4) letters that Green Tree sent to Plaintiffs in May, October, and December 2013 and in February 2014 in which Green Tree simply advised Plaintiffs of their new account representative and where they could find account information online.  *See Green Tree's Motion [DE 209] at 17*.  Plaintiffs do not make any argument in their Response that the FDCPA applies to these Account Rep Letters, and thus summary judgment should be entered in Green Tree's favor with regard to these letters.

[7]     Plaintiffs do not make this same argument with respect to Green Tree's August 2014 letters at issue.

[8]     *See March 24, 2014 Discharge Order, Ex. G to DE 184.*

situations where they had obtained a discharge in bankruptcy, as Plaintiffs misleadingly suggest. *(DE 198, GT Aff.[9] at ¶39 and at Ex. L)(emphasis added)*.[10]

C. <u>Green Tree Did Not Violate The FDCPA Because The Debt Was Legitimate</u>:  The foregoing arguments are sufficient grounds to enter summary judgment in Green Tree's favor as to the entirety of Plaintiffs' FDCPA.  Plaintiffs' claim for alleged violation of Section 1692g(b) is barred by the applicable 1-year statute of limitations.  The remaining portions of Plaintiffs' FDCPA claim for alleged violations of Sections 1692f(l), 1692d, and 1692e are based on Green Tree's telephone calls and letters to Plaintiffs.  That said, Plaintiffs cannot maintain their FDCPA claim based on Green Tree's phone calls because all of Green Tree's phone calls occurred before December 6, 2013, and thus any claims based on such calls are time-barred.[11]  As for Green Tree's letters to Plaintiffs, Green Tree's letters sent prior to December 6, 2013 are not actionable under the FDCPA because any claims based on same are also time-barred.  Similarly, Green Tree's letters sent to Plaintiffs after December 6, 2013 are not actionable under the FDCPA because such letters were not sent in connection with the collection of a debt.

However, even if there were no merit to the foregoing arguments, the Court should still enter summary judgment in Green Tree's favor on Plaintiffs' FDCPA claims for alleged violations of Sections 1692f(l), 1692d, and 1692e.  This is because these FDCPA claims are dependent on Plaintiffs' argument that the debt was not legitimate because the Mortgage was allegedly satisfied as a result of the April 2012 short sale at issue.  As argued by Green Tree in its Motion, Plaintiffs' contention in this regard is without merit because the April 2012 short sale was

---

[9]     "GT Aff." refers to Affidavit of Green Tree in Support of its Motion for Summary Judgment filed in this action on July 8, 2016 at DE 198.

[10]     Plaintiffs also argue that some of Green Tree's post-December 2013 loss mitigation letters were allegedly not good faith offers of "loss mitigation" or settlement, and thus "they are properly classified as debt collection activities."  *See Response [DE 250] at 11-12*.  The Court should disregard this argument.  This is because Green Tree did not argue that the FDCPA does not apply because these letters were merely loss mitigation letters.  Rather, Green Tree argued that the FDCPA does not apply to these letters because they contained express language advising Plaintiffs that they were not sent in an attempt to collect a debt.

[11]     Even if Plaintiffs' FDCPA claim based on Green Tree's phone calls to Plaintiffs was not time-barred, summary judgment should still be entered in Green Tree's favor because the frequency of Green Tree's calls to Plaintiffs, seven in seven months, is not actionable under FDCPA.  *See Green Tree's argument with regard to Plaintiff's FCCPA claim, page 7, Section III.C, below.*

unauthorized and the debt was, in fact, legitimate. *See Green Tree's MSJ [DE 209] at 12, 14 and 15*. In response, Plaintiffs argue that, because the March 16, 2012 letter at issue conditionally approving a short sale of the Mortgaged Property (the "CSSA") did not contain an express stipulation that "time is of the essence", BOA allegedly breached the terms of the CSSA by refusing to accept the Net Proceeds from the April 2012 short sale when it received them from Plaintiffs' closing agent in August 2012 (which Plaintiffs argue BOA "had no legal right to reject"). *See Response [DE 250] at 8-9 and 13-14*. From there, Plaintiffs argue that "neither [BOA] nor Green Tree were authorized to pursue collection of any sums from the Zaskeys, since the Zaskeys fully performed under the CSSA." *Id. at 9*.

Plaintiffs have raised the very same argument in their Motion for Partial Summary Judgment against Green Tree, that BOA breached the terms of the CSSA and that the debt was therefore not legitimate. *See Plaintiffs' Motion for Partial Summary Judgment [DE 237] at 5-7*. Green Tree, in turn, has filed a Response in opposition thereto where it has shown that there is no merit to Plaintiffs' "time is of the essence" argument and/or their contention that BOA breached the CSSA. Instead, the record evidence shows that Plaintiffs and their agents failed to satisfy all of the terms and conditions set forth in the CSSA and therefore the April 2012 short sale was unauthorized and BOA had no obligation to accept the Net Proceeds when it received them in August 2012. *See Green Tree's Response to Plaintiffs' Motion for Partial Summary Judgment [DE 254] at 3-7*. The debt then was legitimate during the entire time that Green Tree was servicing Plaintiffs' Loan. *Id*. Green Tree therefore did not violate 1692f(l), 1692d, and 1692e of the FDCPA, and summary judgment should be entered in Green Tree's favor on these claims.

### III. Summary Judgment Should Be Entered On Plaintiffs' FCCPA Claim

A. Plaintiffs' FCCPA Claim Is, In Part, Time-Barred: Green Tree respectfully directs the Court to Section II.A, above, for its argument on this issue.

B. The FCCPA Does Not Apply To A Majority Of Green Tree's Letters To Plaintiffs: Green Tree respectfully directs the Court to Section II.B, above, for its argument on this issue.

C. There Is No Merit To Plaintiffs' Fla. Stat. § 559.72(9) Claim: In its Motion, Green Tree argued that summary judgment should be entered in Green Tree's favor on Plaintiffs' FCCPA claim for alleged violation of Fla. Stat. § 559.72(9) because Green Tree did not know that the debt was not legitimate. *See Green Tree's MSJ [DE 209] at 17-18*. In response, Plaintiffs argue that Green Tree allegedly "had actual knowledge" that the debt was not legitimate and that it had

7

no right to collect the debt because Plaintiffs "told Green Tree representatives that he completed an approved short sale, and that a closing had already occurred." *See Plaintiffs' Response [DE 250] at 16*. This argument is without merit. As argued in Green Tree's MSJ, the information provided to Green Tree by Plaintiffs and their closing agent, Harbor Title, about the April 2012 short sale did not prove that the April 2012 short sale had been authorized by BOA. Instead, the March 2012 CSSA showed only that BOA had conditionally approved a short sale in March 2012, not that the conditions set forth therein had been met or that BOA had given its final approval for the sale. Similarly, the HUD-1 Settlement Statement from the April 2012 sale and the Warranty Deed from Plaintiffs to the buyers showed only that the sale had occurred, not that the conditions set forth in BOA's March 2012 Short Sale Approval Letter had been satisfied or that BOA had given its final approval for the sale.

Moreover, Green Tree certainly did not have to accept Plaintiffs' version of events as the truth, as Plaintiffs seem to believe. Rather, Green Tree was entitled to investigate Plaintiffs' claim and inquire of the prior servicer, BOA, if a short sale had occurred and, if so, if it had been authorized. That said, Green Tree did conduct such an investigation and was twice advised by the prior servicer, BOA, that no authorized short sale had occurred. *See Green Tree's Statement of Material Facts [DE 202] ("SMF") at ¶¶34-43*. The record evidence thus shows that Green Tree never "knew" that the debt was not legitimate, but instead at all times believed (and still believes) that the April 2012 was unauthorized and the debt was legitimate. *Id.* Summary judgment should therefore be entered in Green Tree's favor on Plaintiffs' Fla. Stat. § 559.72(9) claim. This is true even if the Court ultimately agrees with Plaintiffs' argument that BOA breached the terms of the CSSA and that the debt was not legitimate (which the Court should not), because Green Tree did not "know" that this would happen and the Court would find that the debt was not legitimate in 2013 and 2014, when it was engaging in the conduct at issue.[12]

---

[12]   Green Tree also did not have the benefit of knowing the many creative theories that Plaintiffs would raise in this action to argue that the debt was not legitimate at the time of its alleged conduct at issue in 2013 and 2014 (including, but not limited to, Plaintiffs' creative arguments that (i) Re/Max and Harbor Title were not Plaintiffs' agents, but instead BOA's; (ii) the closing deadline for the conditionally-approved short sale was not April 30, 2012, as expressly stated in the March 16, 2012 CSSA that Green Tree had been provided, but instead August 31, 2012, as purportedly provided in an undated letter that Green Tree did not have; and (iii) Plaintiffs were not required to wire the Net Proceeds to BOA within 48 hours of the short

(cont.)

D.  Underline There Is No Merit To Plaintiffs' Fla. Stat. § 559.72(7) Claim: In its Motion, Green Tree argued that summary judgment should be entered in Green Tree's favor on Plaintiffs' FCCPA claim for alleged violation of Fla. Stat. § 559.72(7) because Green Tree did not engage in any conduct intended to harass, annoy or abuse Plaintiffs. *See Green Tree's MSJ [DE 209] at 16-17.* In response, Plaintiffs raise several arguments. First, Plaintiffs argue that Green Tree has allegedly failed to produce "a complete set of records of the telephone calls Green Tree and its agents made to the Zaskeys." *See Plaintiffs' Response [DE 250] at 15.* This speculative contention is not true, and the record evidence shows that Green Tree, in fact, only made seven (7) calls to Plaintiffs. *See Fn. 4, above.* That said, Green Tree's seven (7) telephone calls to Plaintiffs do not violate Fla. Stat. § 559.72(7) as a matter of law. *See Schauer v. Morse Operations, Inc.,* 5 So. 3d 2, 4-5 (Fla. 4th DCA 2009) (holding that the defendant's seven telephone calls over six months were neither so frequent nor so harassing so as to violate Fla. Stat. § 559.72(7) as a matter of law, thus entitling defendant to the entry of summary judgment on plaintiff's Fla. Stat. § 559.72(7) claim).

Second, Plaintiffs argue that "the frequency and circumstances of Green Tree's communications … show that Green Tree intended to annoy, abuse and harass the Zaskeys. … This is not a case … where a debt collector had a good faith belief that the debt was legitimate. Here, Mr. Zaskey repeatedly told Green Tree representatives that a prior short sale closed, and the debt no longer owed." *See Plaintiffs' Response [DE 250] at 15-16.* Thus, Plaintiffs' complaint about Green Tree's telephone calls and letters to them is really based on the contention made in their Fla. Stat. § 559.72(9) claim that Green Tree was allegedly attempting to collect a debt which Plaintiffs believed was not legitimate (but which the record evidence shows was legitimate and, even if it were not, Green Tree always believed the debt was legitimate).  As shown above, however, there is no merit to Fla. Stat. § 559.72(9) claim and thus there is also no merit to their Fla. Stat. § 559.72(7) claim.[13]

---

sale, as provided in the March 16, 2012 CSSA, because the CSSA did not have an express "time is of the essence" clause).

[13]      In their Response, Plaintiffs cite to two cases which held that "a single threatening letter can create liability" under Section 1692d of the FDCPA. *See Rutyna v. Collection Accounts, Terminal, Inc.,* 478 F. Supp. 980 (N.D. Ill. 1979); *and Henderson v. Credit Bureau of Lockport, Inc.,* 1989 WL 78235 (W.D.N.Y. July 14, 1989).  However, these two cases have no applicability to the facts of this case.  In *Rutyna,* the debt collector sent a letter to plaintiff in which it

(cont.)

E. <u>Plaintiffs' Fla. Stat. § 559.72(6) Claim Is Preempted</u>: In its Motion, Green Tree argued that summary judgment should be entered in Green Tree's favor on Plaintiffs' FCCPA claim to the extent that the claim is based on the information that Green Tree furnished (or did not furnish) to the credit reporting agencies because such claim is preempted by the federal Fair Credit Reporting Act (the "FCRA"). *See Green Tree's MSJ [DE 209] at 18-19.* Plaintiffs do not assert any argument in opposition thereto. Instead, in their Response, Plaintiffs argue that their claim for an alleged violation of Fla. Stat. § 559.72(3) is not preempted by FCRA because such claim is not based on what information Green Tree provided to the credit reporting agencies, but instead what Green Tree allegedly told Plaintiffs. *See Plaintiffs' Response [DE 250] at 17.* However, this was not Green Tree's argument. In addition to their claim for an alleged violation of Fla. Stat. § 559.72(3), Plaintiffs also asserted a FCCPA claim against Green Tree for allegedly violating Fla. Stat. § 559.72(6) by failing to disclose to the credit reporting agencies that Plaintiffs disputed the debt.[14] It is this claim for an alleged violation of Fla. Stat. § 559.72(6) that Green Tree has argued is preempted, a fact that Plaintiffs do not dispute. As such, the Court should enter summary judgment in Green Tree's favor on Plaintiffs' Fla. Stat. § 559.72(6) claim.

## IV. <u>Summary Judgment Should Be Entered On Plaintiffs' RESPA Claim</u>

In its Motion, Green Tree argued that summary judgment should still be entered in Green Tree's favor on Plaintiffs' RESPA claim because Gary Zaskey did not mail the May 2013 Letters to Green Tree's Designated QWR Address and thus May 2013 Letters did not trigger Green Tree's duties under RESPA. In response, Plaintiffs raise two arguments. <u>First</u>, Plaintiffs argue

---

threatened to have its "field investigator .. make an investigation in your neighborhood and to personally call on your employer. The immediate payment of the full amount, or a personal visit to this office, will spare you this embarrassment." *Rutyna*, 478 F. Supp. at 981. In *Henderson*, the debt collector wrote a handwritten note on one notice sent to the plaintiff "NO MORE FALSE PROMISES!" *Henderson*, 1989 WL 78235 at * 3 (all caps and exclamation point in original). Here, there are no allegations or evidence of any similar harassing or abusive language in any of Green Tree's letters. *See Green Tree's SMF [DE 202] at ¶ 60 and Ex. L.* Rather, Plaintiffs found the letters sent to them by Green Tree harassing because they believed that the debt was not legitimate, not because Green Tree threatened to embarrass Plaintiffs or wrote a handwritten note to harass them about their failure to pay.

[14]    Fla. Stat. § 559.72(6) prohibits a person from disclosing to a third party information concerning the existence of a debt know to be reasonably disputed without disclosing that fact – that the debtor disputes the debt – to the third party.

that Mr. Zaskey allegedly sent the first purported QWR "before Green Tree's subsequent May 3, 2013 letter which designated a special address for receiving QWRs." *See Plaintiffs' Response [DE 250] at 18.*  This contention, however, is refuted by Mr. Zaskey's sworn testimony at his deposition, where Mr. Zaskey testified that (i) he mailed the first purported QWR to a Green Tree address in Pasadena, California by May 5, 2013, "within a couple of days of getting [Green Tree's May 1, 2013 letter (on which he wrote the first purported QWR)]"; and (ii) he could not recall if he mailed the first purported QWR to Green Tree before or after he received Green Tree's May 3, 2013 Notice of Servicing Transfer letter advising him of Green Tree's Designated QWR Address). *(DE 183, Gary Dep. at 138:21-142:16, 143:8-147:13).*  Mr. Zaskey cannot now contradict his own clear testimony from his deposition that he did not recall when he sent the first purported QWR by claiming in a declaration that he now recalls sending it before receiving Green Tree's May 3, 2013 Notice of Servicing Transfer.  *See Kelly v. Dun & Bradstreet, Inc.,* 641 F. App'x 922 (11th Cir. 2016) ("A party may not create an issue of material fact with an affidavit that contradicts his own previous, unambiguous testimony.") (*citing Van T. Junkins & Assoc., Inc. v. U.S. Indust., Inc.,* 736 F.2d 656, 657 (11th Cir.1984).

Moreover, even if there were admissible record evidence that Mr. Zaskey sent the first purported QWR prior to receiving Green Tree's May 3, 2013 Notice of Servicing Transfer, this fact is immaterial and summary judgment should still be entered in Green Tree's favor.  This is because federal law expressly permits a transferee loan servicer to establish a separate and exclusive office and address for the receipt and handling of qualified written requests by providing notice of same included in the Notice of Transfer, which notice must sent to the borrower within 15 days after the effective date of the transfer.  *See* 24 CFR §§ 3500.21(d)(2) and (e)(1).[15]  Here, Green Tree complied with these regulations, and sent Plaintiffs the Notice of Transfer -- which included notice of Green Tree's Designated QWR Address -- on May 3, 2013, which was within the required 15 days of the May 1, 2013 transfer date.  *See Green Tree's SMF [DE 202] at ¶¶27-28.*   As such, Green Tree was entitled to rely on the benefits of establishing its Designated QWR Address and had no obligation to look out for any potential QWRs sent by Plaintiffs to any other address.  *See, e.g., Berneike v. Citimortgage, Inc.,* 708 F.3d 1141, 1148-

---

[15]     A courtesy copy of the version of 24 CFR §3500.21 in effect in May 2013, when the May 2013 Letters were allegedly sent, is attached hereto as Exhibit "1".

1149 (10th Cir. 2013).  Instead, upon receiving the Notice of Transfer advising him of Green Tree's Designated QWR Address just a day or two after sending the first  purported  QWR (as Mr. Zaskey now tries to contend), Mr. Zaskey should have simply complied with the instructions set forth therein and immediately resent his QWR to Green Tree's Designated QWR Address.[16]

Second, Plaintiffs argue that they should not have been required to send their purported QWRS to Green Tree's Designated QWR Address because Green Tree allegedly "purposely designed [the Notice of Transfer] to mislead the consumer" by including in the Notice of Transfer other mailing addresses by which to contact Green Tree and by not conveying the Designated QWR Address "in a separate document".  *See Plaintiffs' Response [DE 250] at 18-20.*  This argument is without merit because it is directly in conflict with the applicable federal regulation, which expressly provides that (i) the notice of a separate designated address for QWRs may be "**either included in** the Notice of Transfer **or** separately delivered" (which means that, contrary to Plaintiffs' argument, the notice of designated address need only be "separately delivered" if it is not "included in" the Notice of Transfer); and (ii) the transferee servicer's Notice of Transfer must include, among other things, "[t]he name, consumer inquiry **addresses** (including, at the option of the servicer, a separate address where qualified written requests must be sent), and a toll-free or collect-call telephone number for an employee or department of the transferee servicer."  *See* 24 CFR §§ 3500.21(e)(1) and (d)(3) (emphasis added).  As such, Green Tree was not purposely trying to mislead Plaintiffs with its Notice of Transfer, but instead was merely complying with the applicable federal regulation when it included its notice of the Designated QWR Address in its Notice of Transfer and also included other consumer inquiry addresses in the same Notice of Transfer.  Moreover, Green Tree provided Plaintiffs notice of its Designated QWR Address in a separate section of the Notice of Transfer boxed off from the rest and clearly labeled "**NOTICE OF YOUR RIGHTS**".  *(DE 198, GT Aff. at Ex. D)* (all caps and bold in original).  There is no merit then to Plaintiffs' contention that Green Tree was purposely

---

[16]      In their Response, Plaintiffs cite to the case of *McClain v. Citimortgage*, 2016 WL 269568 (N.D. Ill. January 21, 2016), which held that it was "mind-boggling" that the defendant servicer could argue that "the designation of an exclusive address could possibly be retroactive in effect".  *See Response [DE 250] at 18*.  The *McClain* case, however, has no similarity to this case.  Rather, in *McClain*, the notice of the designated address for QWRS was provided to the plaintiff in a monthly mortgage statement in 2015 and plaintiff had sent the QWRs at issue to the defendant servicer years before in 2012 and 2013. *Id.* at *6.

trying to mislead Plaintiffs about the Designated QWR Address, and thus summary judgment should be entered in Green Tree's favor on the RESPA claim.

WHEREFORE, for all of the foregoing reasons, this Court should enter summary final judgment in Green Tree's favor, and award Green Tree its reasonable attorney's fees and costs.

Respectfully submitted,

By:    _s/ John W. Bustard___
    John W. Bustard (0641871)
    jbustard@shutts.com
    David McCrea (239038)
    dmccrea@shutts.com
    SHUTTS & BOWEN LLP
    *Counsel for Defendant Green Tree*
    1500 Miami Center
    201 South Biscayne Boulevard
    Miami, Florida 33131
    Telephone: (305) 358-6300
    Facsimile:  (305) 415-9836

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 11th day of August, 2016, a true and correct copy of the foregoing was furnished *via* E-mail to: **Faequa A. Khan, Esq.** and **Daryl L. Jones, Esq.**, Law Offices of Daryl L. Jones, P.A., djones@DLJonesLaw.com & fkhan@DLJonesLaw.com, 14707 South Dixie Hwy., Suite PH402, Miami, Florida 33176; **Daniel Cardenal, Esq.,** Liebler, Gonzalez & Portuondo, service@lgplaw.com; Courthouse Tower-25th Floor, 44 West Flagler Street, Miami, FL 33130; **James Scott Telepman, Esq.,** Law Firm of Cohen Norris Wolmer Ray Telepman Cohen, jst@fcohenlaw.com, 712 US Highway 1, Suite 400, North Palm Beach, FL 33408; and *via* U.S. Mail to **Harbor Land Title, LLC,** c/o Zahera Sadik, zee@harborlandtitle.com, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411.

*/s/ John W. Bustard*_____
Of Counsel

MIADOCS 13423187 1