# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
### CASE NO. 9:15-cv-81325

BANK OF AMERICA, N.A., Successor by
Merger to BAC Home Loans Servicing LP,
f/k/a Countrywide Home Loans Servicing,

      Plaintiff,

v.

GARY L. ZASKEY A/K/A GARY LYNN
ZASKEY; LORI A. ZASKEY A/K/A
LORI ANN ZASKEY; BRENDA LYNN
ZASKEY; UNKNOWN SPOUSE OF
BRENDA LYNN ZASKEY, *et al.*,

      Defendants.            /

GARY L. ZASKEY and LORI A.
ZASKEY,

      Counter-Plaintiffs/

v.

BANK OF AMERICA, N.A., GREEN
TREE SERVICING, LLC; HARBOR
LAND TITLE, L.C.; and OLD REPUBLIC
NATIONAL TITLE INSURANCE
COMPANY,

      Counter-Defendants / Third Party
      Defendants.

_____/

**THIRD-PARTY DEFENDANT GREEN TREE SERVICING'S REPLY TO PLAINTIFFS'
RESPONSE TO DEFENDANT'S STATEMENT OF MATERIAL FACTS AND
PLAINTIFF'S CONTROVERTED FACTS ADDITIONAL MATERIAL FACTS**

Third Party Defendant GREEN TREE SERVICING, LLC n/k/a DITECH FINANCIAL LLC ("Defendant" or "Green Tree"), pursuant to Fed. R. Civ. P. 56 and S.D.L.R. 56.1(a), hereby submits its reply to Plaintiffs GARY L. ZASKEY's and LORI A. ZASKEY's (collectively, "Plaintiffs") Response to Defendant's Statement of Material Facts [DE 250-1] (the "Response").[1]

1. In Paragraph 1, Plaintiffs do not dispute the facts set forth in Paragraph 1 of Defendant's Statement of Material Facts ("SMF"). Rather, Plaintiffs raise an altogether different issue, and allege that the Loan was not for a business purpose because the Mortgage at issue "was a Second Home Mortgage and has a rider attached to the Mortgage to that effect." In reply, Defendant refers the Court to Paragraphs 5 and 6 of its SMF, which set forth the testimony of both Plaintiffs showing that the Property was, in fact, a rental property at the time of the origination of the Loan and thus was for a business purpose. In addition, Defendant notes that merely because Plaintiffs may have misled the original lender of the Loan by advising the lender that the Property was a second home and not a rental property does not make it true.

3. Plaintiffs' purported dispute is non-responsive and immaterial.

4-5. Plaintiffs contend that the Mortgaged Property was not a rental property at the time that the Loan was originated in 2006. This contention is refuted by Mr. Zaskey's own testimony. Specifically, Mr. Zaskey testified that (i) he had rented the Mortgaged Property to paying tenants, a mother and her son, Sean Williams, from the 1980s through 2004 or 2006, (ii) the two always paid rent while they lived there, and (iii) Mr. Zaskey insisted that Sean Williams's mother agree to "be sure that [Sean Williams] would pay the rent". *Id. at 28:20-30:14*. Thereafter, Mr. Zaskey testified that he continued to have a series of tenants at the Mortgaged Property from 2006 through 2012, and his agreement with all of them was that they pay him rent to the extent that they could afford same and keep up the Mortgaged Property. *Id. at 22:23-28:11*.

8. Plaintiffs' purported dispute is non-responsive. Plaintiffs do not contend that they cured their default, which is the fact set forth in Paragraph 8 of Defendant's SMF. Instead, they raise an altogether different issue, that the Loan was purportedly satisfied as a result of the

---

[1]     Defendant will only address those responses of Plaintiffs where they disputed Defendant's Statement of Material Facts.

unauthorized April 2012 short sale of the Property. Defendant refers the Court to Paragraphs 14-25 of its SMF, which prove that the April 2012 short sale was not authorized by BOA.

9-11. Plaintiffs' purported clarifications are immaterial and do not change the facts set forth in Paragraphs 9-11 of Defendants' SMF, namely that Plaintiffs were expressly advised by BOA that they were free to choose their own real estate agent and that they freely elected to choose Re/Max Platinum ("Re/Max") as their agent. In addition, the statement allegedly made by Tony Pino of Re/Max to Mr. Zaskey that Re/Max represented BOA is inadmissible hearsay and should not be considered by the Court.

12. Plaintiffs' purported dispute is non-responsive. Defendant did not contend in Paragraph 12 that Plaintiffs signed the Third Party Authorization Form, only that BOA received same from Plaintiffs or one of their agents.

13. Plaintiffs' purported dispute is, in fact, a clarification and does not change the facts set forth in Paragraph 13 of Defendant's SMF, namely that Plaintiffs understood that Harbor Title was acting on their behalf with regard to the April 2012 short sale at issue.

14. Plaintiffs' purported dispute with regard to when they received a copy of the March 16, 2012 CSSA is, in fact, a clarification and does not change the facts set forth in Paragraph 14 of Defendant's SMF. On March 16, 2012, BOA uploaded a copy of the CSSA on its Equator system, which BOA was using to provide information and communicate with Plaintiffs' agents regarding the conditionally approved short sale. (*DE 182, BOA Dep.*[2] *at 153:19-154:18 and 162:20-163:10 and at Ex. 25*). Further, the portions of the CSSA cited by Defendant in Paragraph 14 of its SMF are accurate and not disputed by Plaintiffs. The other issues raised by Plaintiffs in response to Paragraph 14 of Defendant's SMF repeat arguments made by Plaintiffs elsewhere.

16. In disputing Paragraph 16 of the SMF, Plaintiffs contend that their real estate agent, G. Pino, "states in the Equator notes on June 18, 2012 that she had previously twice uploaded the closing documents in the Equator Library." This statement made by Plaintiffs' agent should not be accepted for the truth of the matter because it constitutes inadmissible hearsay. Moreover, the undisputed evidence shows that this contention made by Plaintiffs' agent is not true. This is

---

[2]     "BOA Dep." refers to the transcript of the deposition of Defendant BOA's corporate representative, Sandra Prestia, taken in this action on June 17, 2016 and filed at DE 182.

because BOA's Equator notes show that the closing documents were never uploaded onto the Equator system, a fact confirmed by BOA's corporate representative.  *(DE 182, BOA Dep. at 147:4-18 and 152:3-7, and at Ex. 25) (where BOA's Equator report shows that neither the estimated or final HUD-1 Settlement Statement were ever uploaded into BOA's Equator system by Plaintiffs' agent, and this fact is confirmed by BOA's corporate representative).*

17-19. Plaintiffs' purported disputes in regards to Paragraphs 17-19 are, in fact, clarifications and do not change the facts set forth in Paragraphs 17-19 of Defendant's SMF, namely that BOA had the referenced communications with Plaintiffs' agent regarding the conditionally-approved short sale in May and June 2012.  Further, Plaintiffs' repeated argument that Re/Max was not their agent, but instead BOA's agent, is without merit.  *See Paragraphs 9-11, above; and Paragraphs 9-13 of Defendant's SMF.*

20. Plaintiffs' purported dispute is non-responsive and offers no record evidence to refute the facts set forth in Paragraphs 20 of Defendant's SMF.  Defendant did not contend that BOA sent the letter at issue to Plaintiffs, but instead to Plaintiffs' agent via BOA's Equator system.

21. Plaintiffs' purported dispute offers no admissible record evidence to refute the facts set forth in Paragraphs 21 of Defendant's SMF.  As previously stated in Paragraph 16, above, the statement made by Plaintiffs' agent on BOA's Equator system that she allegedly "previously uploaded the closing documents into the Equator Library twice" should not be accepted for the truth of the matter because it constitutes inadmissible hearsay and is further refuted by the record evidence.  In addition, Plaintiffs' repeated argument that Harbor Title was not their agent, but instead Old Republic's or BOA's agent, is without merit.  *See Paragraph 23, below.*

23. In Paragraph 23, Plaintiffs dispute that Harbor Title was their agent.  This contention is without merit.  Plaintiffs' elected to use Re/Max as their real estate agent to try to sell the Property pursuant to a short sale.  Plaintiffs' agent, Re/Max, in turn, elected to use Harbor Title as the closing agent for the short sale.  Harbor Title therefore is Plaintiffs' agent, not BOA's agent (a fact that Plaintiffs fully understood when they admitted that they understood that Harbor Title was communicating with BOA regarding the conditionally-approved short sale on their behalf).  *See Paragraphs 9-11, above; and Paragraphs 9-13 of Defendant's SMF.*

24. In reply, Defendant notes that BOA sent a letter to Plaintiffs' agent on June 27, 2012 in which BOA notified Plaintiffs that it had declined the conditionally-approved short sale.  *See Paragraph 20 of Defendant's SMF.*

- 4 –

25. Plaintiffs' purported clarification is immaterial. Moreover, BOA did send a letter to Plaintiffs' agent on June 27, 2012 in which BOA notified Plaintiffs that it had declined the conditionally-approved short sale and provided the reasons for same. *See Paragraph 20 of Defendant's SMF.* In addition, Fannie Mae agreed to the proposed short sale on the condition that all of the terms, conditions and instructions set forth in the March 16, 2012 Conditional Approval Letter were met. That said, these conditions were not met, and thus Fannie Mae did not approve the unauthorized short sale that occurred on April 26, 2012. *See Paragraph 14-25 of Defendant's SMF.* Finally, speculating on what Fannie Mae may have done in August 2012 had BOA contacted it about the funds from the unauthorized April 2012 sale is immaterial.

28. Plaintiffs' purported dispute is non-responsive, as Defendant was referring to the May 3, 2013 letter, not the May 1, 2013 letter.

29. Plaintiffs did not "complete[] all of their responsibilities associated with the closing of the short sale." For example, the final HUD-1 Settlement Statement was never uploaded onto BOA's Equator system, BOA's final approval to close was never obtained by Plaintiffs, and the Net Proceeds were not sent to BOA with 48 hours of the April 26, 2012 closing. *See Paragraph 14-25 of Defendant's SMF.* As for Plaintiffs' contention that their agent claims to have uploaded the required documents prior to the short sale closing, see Paragraph 16, above.

30. In Paragraph 30, Plaintiffs contend that "[t]here has been no credible evidence produced that details or provides a list of the documents sent by BOA to Green Tree" and speculate that "the loan payment history provided by BOA to the Zaskeys is woefully incomplete …" In reply, Defendant notes that it has provided credible evidence of the facts asserted, that the loan payment history provided to Defendant by BOA at the time of servicing transfer showed that Plaintiffs were still due for their monthly mortgage payment due November 1, 2010 and that the amount of outstanding principal due and owing on the Loan was $99,327.02. This evidence includes the Affidavit of Stewart Derrick, together with a copy of Defendant's loan payment history containing all of the loan payment history information that it received from BOA. (*DE 198, GT Aff.*[3] *at ¶¶ 9-10 and at Ex. E, the BOA Loan Payment History*). In addition, BOA's corporate representative has confirmed that this is the same loan payment history information

---

[3]    "GT Aff." refers to Affidavit of Green Tree in Support of its Motion for Summary Judgment filed in this action on July 8, 2016 at DE 198.

that BOA provided to Defendant at the time of the May 2013 servicing transfer.  *(DE 182, BOA Dep. at 176:4-178:9 and at Ex. 27).*

    31. In Paragraph 31, Plaintiffs contend that "[t]here has been no credible evidence produced" that shows that Defendant was aware that BOA had filed a foreclosure action prior to the transfer of the servicing rights to Defendant.  This contention, however, is not true.  Defendant's Collection Comment List shows that Defendant was aware in May 2013 that Plaintiffs' account was a "Foreclosure Account."  *(DE 198, GT Aff. at ¶1 and at Ex. G, Collection Comment List, at page 27).*

    32. Plaintiffs claim to dispute Paragraph 32 of Defendant's SMF, but offer no record evidence to controvert same.[4]  Therefore, pursuant to S.D. Fla. Local Rule 56.1(b), the facts set forth in Paragraph 33 of Defendant's SMF are deemed admitted (as Defendant has supported such facts with evidence in the record).

    33. Plaintiffs claim to dispute Paragraph 33 of Defendant's SMF, but offer no record evidence to controvert same.[5]  Therefore, pursuant to S.D. Fla. Local Rule 56.1(b), the facts set forth in Paragraph 33 of Defendant's SMF are deemed admitted (as Defendant has supported such facts with evidence in the record).

---

[4]    The Court should not consider Plaintiffs' unsupported allegation that "Green Tree's corporate representative [allegedly was not] able to detail conclusively the documents received from BOA upon transfer of the Zaskey loan."  This is because such contention is unsupported by record evidence as Plaintiffs have failed to file a copy of the deposition of Defendant's corporate representative in this action (Defendant's undersigned counsel does not have a copy of the deposition transcript, and thus cannot file same).  Moreover, to the extent that Plaintiffs believed that Defendant's corporate representative was unable to answer a question on a topic they had identified for deposition, Plaintiffs could have filed a motion to compel an answer to the alleged question(s) asked, which Plaintiffs did not do.  That said, Plaintiffs' failure to conduct cross examination and/or obtain satisfactory answers on the facts at issue in Paragraph 32 is not a defense to Defendant's Motion for Summary Judgment.

[5]    The Court should not consider Plaintiffs' unsupported allegation that Defendant's assertion "is not subject to cross-examination prior to trial" because "the corporate representative [allegedly] was unable to attest to that at deposition."  This is because such contention is unsupported by record evidence as Plaintiffs have failed to file a copy of the deposition of Defendant's corporate representative in this action.  Moreover, even if a particular question was asked and not answered, Plaintiffs could have filed a motion to compel an answer to the alleged question asked, which Plaintiffs did not do.  That said, Plaintiffs' failure to conduct cross examination and/or obtain answers on the facts at issue in Paragraph 33 is not a defense to Defendant's Motion for Summary Judgment.

34. Defendant has no record of ever receiving the alleged QWR in May 2013. *(DE 198, GT Aff. at page 5, fn.4)*. Further, Defendant's records show that the first time Defendant became aware of the April 2012 short sale was on September 25, 2015. *(DE 198, GT Aff., at ¶14)*.

35. Plaintiffs' purported dispute is non-responsive and Plaintiffs offer no record evidence to refute the facts set forth in Paragraph 35 of Defendant's SMF. In addition, Defendant has no record of ever receiving the alleged QWR in May 2013. *(DE 198, GT Aff. at page 5, fn.4)*. Further, there is evidence that Defendant reported the results of its alleged investigation into the alleged short sale to Plaintiffs. Specifically, Defendant's loan notes reflect that, on November 20, 2013, one of its employees advised Mr. Zaskey that the short sale was unauthorized. *(DE 198, GT Aff., at ¶18 and at Ex. G, Collection Comment List, at page 21)*.

36-37.  Plaintiffs' purported disputes as to Paragraphs 36 and 37 of Defendant's SMF are non-responsive, offer no record evidence to refute the facts set forth in Paragraphs 36 and 37, and contain improper argument which should be stricken. In addition, as to Plaintiffs' claim that they were unable to conduct any cross-examination regarding the facts set forth in Paragraphs 36 and 37, see Defendant's replies to Paragraphs 33 and 39-43.

39-43.  Plaintiffs claim to dispute Paragraphs 39-43 of Defendant's SMF, but offer no record evidence to controvert same.[6] Therefore, pursuant to S.D. Fla. Local Rule 56.1(b), the facts set forth in Paragraphs 39-42 of Defendant's SMF are deemed admitted (as Defendant has supported such facts with evidence in the record).

44. Plaintiffs' purported dispute is non-responsive, offers no record evidence to refute the facts set forth in Paragraph 44 of Defendant's SMF, and is speculative.

45-46.  See Defendant's replies to Paragraphs 33 and 39-43.

49. In Paragraph 49 of its SMF, Defendant provided record evidence that it sent a particular letter to Plaintiffs on September 2, 2014. In response, Plaintiffs contend that they allegedly did not receive this letter and that Defendant allegedly "manufactured this letter for the purposes of this assertion before this court." However, Plaintiffs do not introduce any record evidence to

---

[6]     Plaintiffs' contention that they have not cross-examined any witness with regard to the facts set forth in Paragraphs 39-43 of Defendant's SMF, all of which are supported by record evidence, is immaterial. Plaintiffs had an opportunity to obtain whatever relevant discovery they wanted in this action, and their failure to conduct cross examination of any witness on the facts at issue in these paragraphs (which they certainly had an opportunity to do) is not a defense to Defendant's Motion for Summary Judgment.

SHUTTS.COM   |   FORT LAUDERDALE   |   MIAMI   |   ORLANDO   |   SARASOTA   |   TALLAHASSEE   |   TAMPA   |   WEST PALM BEACH

controvert Defendant's assertion that it sent the letter to Plaintiffs or that Defendant "allegedly manufactured this letter" (which contention is entirely speculative and offensive).

51. Plaintiffs' purported dispute is non-responsive and Plaintiffs offer no record evidence to refute the facts set forth in Paragraph 51 of Defendant's SMF.

52. In their Response, Plaintiffs claim that "[t]he Zaskeys received numerous other phones calls … from May 1, 2013 to October 29, 2014 either from Green Tree or from other collection agencies stating they were calling on behalf of Green Tree." The record evidence cited by Plaintiffs in support of this contention, however, does not show that Plaintiffs received "numerous other phone calls … from May 1, 2013 to October 29, 2014", but instead only five (5) additional phone calls in a single month, July 2013, that were purportedly "from Green Tree, Bank of America and their agents". *See Mr. Zaskey's Declaration [DE 204] at ¶ 22.* Moreover, the record evidence shows that the July 2013 telephone calls were not made by Defendant, but instead by a company called Resolve. *(DE 183, Gary Dep. at 149:16-151:12) (where Mr. Zaskey admits that he did not receive any telephone calls from Defendant in July 2013, and that the telephone calls that he received in July 2013 were from a company called Resolve).* That said, Plaintiffs offer no record evidence that Resolve was retained or hired by Defendant to collect the debt.[7] Rather, the only record evidence in this case is that Defendant has no business relationship with a company called "Resolve", and never retained or hired a company called "Resolve" or any other third party to place any telephone calls to Plaintiffs regarding the Loan and/or Plaintiff's delinquency. *(DE 198, GT Aff. at ¶ 37).*

53-56. See Defendant's reply to Paragraph 52, above.

58-59. See Defendant's replies to Paragraphs 33 and 39-43.

60. Plaintiffs dispute that they received one of the letters referenced in Paragraph 60 of Defendant's SMF. That said, Plaintiffs cannot contend that this letter violated any of the statutes at issue.

61-62. See Defendant's replies to Paragraphs 33 and 39-43.

63. In their Response, Plaintiffs contend that, "had the Zaskeys agreed to any loss mitigation, they would have committed fraud as they did not own the subject property." This legal

---

[7]     Mr. Zaskey's contention that a person from Resolve allegedly told him during one of the July 2013 phone calls that Resolve was calling Mr. Zaskey "on behalf of Green Tree" is inadmissible hearsay and should not be considered by the Court.

SHUTTS.COM  |  FORT LAUDERDALE  |  MIAMI  |  ORLANDO  |  SARASOTA  |  TALLAHASSEE  |  TAMPA  |  WEST PALM BEACH

conclusion is erroneous. For example, Plaintiffs could have agreed to a modification of the loan, even though they did not own the subject property.

64-65. See Defendant's replies to Paragraphs 33 and 39-43.

67. In their Response, Plaintiffs contend that they "disputed this debt on every received call and twice by mail." As already established, the record evidence shows that Defendant has no record of ever receiving the two dispute letters at issue by mail. *(DE 198, GT Aff. at page 5, fn.4)*. Moreover, irrespective of the fact that Plaintiff may have advised them about the alleged short sale during the three calls that Defendant made to Plaintiffs in September, October and November 2013, Defendant has no record of Plaintiffs ever complaining to it about the letters it had sent to them. *(DE 198, GT Aff. at ¶ 38)*. In fact, except for Defendant's October 2, 2013 letter advising Plaintiffs of their new account representative, Defendant sent all of the letters at issue to Plaintiffs either before it first became aware of the alleged short sale on September 25, 2013 or after it had investigated such claim and determined that the alleged short sale was unauthorized in November 2013. *(DE 198, GT Aff. at ¶ 39 and Ex. L)*. As such, Defendant was not intending to abuse, harass or annoy Plaintiffs when it sent any letters to Plaintiffs, and Defendant has no record of Plaintiffs ever advising it that its letters did so.

68. Plaintiffs' purported dispute is non-responsive and offers no record evidence to refute the facts set forth in Paragraph 68 of Defendant's SMF. Moreover, Plaintiffs' contention that "the Note and Mortgage ceased to exist" after their closing agent sent them $5,000 in relocation assistance without BOA's knowledge is ridiculous. Finally, as to Plaintiffs' claim that they were unable to conduct any cross-examination regarding the facts set forth in Paragraph 68, see Defendant's replies to Paragraphs 33 and 39-43.

70. In their Response, Plaintiffs contend that it was not their obligation to maintain insurance on the Mortgaged Property to protect Defendant's interest in same, but instead the obligation of the purchasers of the Mortgaged Property (the "Purchasers") at the April 2012 short sale. The Purchasers, however, were not parties to the Mortgage, and thus had no obligation to Defendant to provide insurance. *(DE 198, GT Aff. at Ex. B)*. Rather, Plaintiffs had such obligation under the Mortgage. *Id.* Moreover, Plaintiffs have not proffered any record evidence that the Purchasers did maintain insurance for the Mortgaged Property or, if they did, that such insurance named Defendant as an insured (as was required under the express provisions of Plaintiffs' Mortgage).

– 9 –

74. Plaintiffs' response to Paragraph 74 of Defendant's SMF contains improper argument, which should be stricken.

75. Plaintiffs' purported dispute is non-responsive and Plaintiffs offer no record evidence to refute the facts set forth in Paragraph 75 of Defendant's SMF.  In addition, Plaintiff claim in their Response that "Mr. Zaskey … mailed [the first alleged QWR] prior to receiving the May 3, 2013 letter from Green Tree designating the QWR address."  This contention is not supported by Mr. Zaskey's Declaration, and is controverted by Mr. Zaskey's sworn testimony where he admitted that he could not recall if he mailed the first alleged QWR before or after he received the May 3, 2013 letter from Green Tree designating the QWR address.  *(DE 183, Gary Dep. at 138:21-142:16, and 143:8-147:13).*

76. In their Response, Plaintiffs claim that they "filed their counterclaim against Green Tree on December 5, 2014."  This is not true.  Plaintiffs filed their motion for leave to file their Third Party Complaint against Defendant on December 5, 2014, which motion was granted approximately six (6) months later in June 2015.

Respectfully submitted,

By:     *s/ John W. Bustard*
John W. Bustard (0641871)
jbustard@shutts.com
David McCrea (239038)
dmccrea@shutts.com
SHUTTS & BOWEN LLP
*Attorneys for Third Party Defendant Green Tree Servicing, LLC*
200 S. Biscayne Blvd., Suite 4100
Miami, Florida 33131
Telephone: (305) 358-6300
Facsimile:  (305) 415-9836

## **CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 11th day of August, 2016, a true and correct copy of the foregoing was furnished *via* E-mail and facsimile to: **Faequa A. Khan, Esq.** and **Daryl L. Jones, Esq.**, Law Offices of Daryl L. Jones, P.A., djones@DLJonesLaw.com & fkhan@DLJonesLaw.com, 14707 South Dixie Hwy., Suite PH402, Miami, Florida 33176; and *via* E-mail to **Daniel Cardenal, Esq.,** Liebler, Gonzalez & Portuondo, service@lgplaw.com; Courthouse Tower-25th Floor, 44 West Flagler Street, Miami, FL 33130; **James Scott Telepman, Esq.,** Law Firm of Cohen Norris Wolmer Ray Telepman Cohen, jst@fcohenlaw.com, 712 US Highway 1, Suite 400, North Palm Beach, FL 33408; and *via* U.S. Mail to **Harbor Land Title, LLC,** c/o Zahera Sadik, zee@harborlandtitle.com, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411.

*/s/ John W. Bustard*
Of Counsel

MIADOCS 13415350 1 13309.0283