IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

BANK OF AMERICA, N.A. Successor by          CASE NO:   15-cv-81325
Merger to BAC HOME LOANS
SERVICING LP, f/k/a COUNTRYWIDE
HOME LOANS SERVICING

    Plaintiff,

vs.

GARY L. ZASKEY a/k/a Gary Lynn Zaskey;
LORI A. ZASKEY a/k/a Lori Ann Zaskey;
BRENDA LYNN ZASKEY; UNKNOWN SPOUSE
OF BRENDA LYNN ZASKEY; et al.

    Defendants.
_____/

GARY L. ZASKEY and LORI A. ZASKEY

    Counter-Plaintiffs

vs.

BANK OF AMERICA, N.A.,
GREEN TREE SERVICING, LLC, HARBOR LAND TITLE, L.C.
and OLD REPUBLIC NATIONAL TITLE INSURANCE
COMPANY

    Counter-Defendants
_____/

**COUNTER-PLAINTIFFS' REPLY TO OLD REPUBLIC'S RESPONSE TO COUNTER-PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

Defendants/Counter-Plaintiffs, GARY L. ZASKEY and LORI A. ZASKEY, (hereinafter "the Zaskeys") by and through their undersigned counsel and pursuant to the Court's August 16, 2016 order (D.E 274), hereby file this Reply to Counter-Defendant, OLD REPUBLIC NATIONAL TITLE INSURANCE COMPANY'S (hereinafter "Old Republic") Response (D.E. 232), to the Zaskeys' Motion for Summary Judgment, and state as follows:

**ARGUMENT IN REPLY**

A. **Old Republic Created a Foreseeable Zone of Risk by Assuming Control of the Short Sale Proceeds in August of 2012, and Later Possession of those Funds in November of 2013, When It Was Not Otherwise Obligated to do so.**

In this case, the Zaskeys do not contend that "simply by conducting an audit of their agent, [Old Republic] created a 'foreseeable zone of risk' exposing 'both Harbor Title and Old Republic to potential liability.'" (See Old Republic Response, D.E. 232, ¶5.) Instead, the Zaskeys contend when Old Republic conducted an audit of its agent, Harbor Title, Old Republic became aware of the threat of harm to itself, to Harbor Title, to the third party purchasers, and to the Zaskeys. Clearly, closing on a short sale, and Bank of America rejecting the proceeds from the short sale, generated several potential legal issues for all these involved parties. Thus, Old Republic's knowledge of these potential legal issues, coupled with its negligent failure to act immediately, its lack of follow through on its directives to Harbor Title, and its subsequent leisurely actions upon taking possession of the funds, together, created a foreseeable zone of risk. Old Republic *voluntarily assumed control over these funds in August of 2012, when it directed Harbor Title how to act, by identifying the retained short sale funds in the Zaskey case as a "High Risk" item in its 2012 Audit.*[1] This is the fundamental difference between the Zaskeys' argument, and how Old Republic characterizes the Zaskeys' argument in its response brief.

In its Response, Old Republic argues that "[c]ommon sense tells us that Old Republic was never in a position to control the actions of its agent . . . ." This argument, however, is contradicted by the summary judgment record. In this case, the underlying contract between Old Republic and Harbor Title provided that Harbor Title was obligated to follow Old Republic's directives. (See D.E. 219, Ex. D, Section II(L), stating that the Agent is required to "[c]omply with and follow all Bulletins, Alerts, Directives, Policies and Procedures issued by Insurer.")

In its response, Old Republic next argues that the Zaskeys' case of *National Title Insurance Co. v. Lakeshore 1 Condo Ass'n.*, 691 So.2d 1104 (Fla. 3rd DCA 1997) is distinguishable, because in this case the Zaskeys did not own the funds held by Harbor Title (D.E. 232, ¶14-15.) That argument misses the point. Whether the Zaskeys legally owned the funds or not is irrelevant; they undeniably had an interest in the use of these funds, as the Zaskeys transferred the property they

---

[1] In Part III. HIGH RISK ISSUES: Item 1. of the 2012 Audit, Old Republic identifies the Zaskey file as file HLN 16764. (See D.E. 219, Ex.B, 2012 Audit.)

owned to the third-party purchasers in exchange for these funds, with the expectation that the money would be forwarded and used to satisfy the Zaskeys' mortgage debt.

Old Republic correctly notes that in *Lakeshore,* the court concluded, when managing proceeds for the benefit of others, the manager owes a duty of care to those who might be injured through the mismanagement of those funds. However, Old Republic's argument that the funds "were simply held, pending Green Tree's decision to accept those funds…" is an inaccurate portrayal of the actual facts in this case. (D.E. 232, ¶15.)

As of August of 2012, after Old Republic audited Harbor Title, Old Republic knew that its agent was engaging in "High Risk" conduct, which exposed, [among others,] both Old Republic and Harbor Title to potential liability. (D.E. 219, Ex. B.) Despite recognizing the retention of the sale proceeds as a "High Risk" matter, Old Republic negligently failed to address this matter in any way until it conducted the next annual audit in 2013. While other items in the 2012 Audit were addressed during this time, the "High Risk" item concerning the Zaskeys' funds was not addressed by Old Republic or Harbor Title. Simply put, while Old Republic assumed control and responsibility over other matters in the 2012 Audit, it did very little during the year following the 2012 Audit to correct this issue.[2]

In its Response, Old Republic also rhetorically asks, "[w]hat exactly is it that the Zaskeys would have had Old Republic do in this case?" (D.E. 232, ¶15.) For starters, Old Republic could have taken the basic step of notifying the Zaskeys that Harbor Title, while under Old Republic's supervision, and later Old Republic itself, held these short sale proceeds.

Old Republic takes the position that it did all it could do under the circumstances. (D.E. 232, ¶15-16.)  It bears repeating that Old Republic was under no obligation to assume control, and later possession, of the short sale proceeds. This is confirmed via Old Republic's owns Response, in which Old Republic takes the position that the only duty it owed was to its named insureds under its title insurance policy. (D.E. 232, ¶16.) Having voluntarily assumed control of the short sale proceeds through its directives and then by taking possession of these funds, Old Republic also assumed the duty to manage those funds in a non-negligent manner, which it failed to do.

---

[2] For example, Debbie Carr, the Old Republic employee who conducted the 2012 Audit stated in the Escrow Accounting section that she would follow up on all file shortages. All six of the file shortages identified under Escrow Recommendations for First Southern Bank section were resolved by the 2013 Audit. (See D.E. 219, Ex. B, 2012 Audit, and Ex. C, 2013 Audit.)

Further, Old Republic's argument that it did all it could is belied by the actual evidence in this case, which demonstrates that over the relevant nine-month period, Old Republic's counsel leisurely sent fewer than ten substantive emails to Green Tree or employees of Old Republic in an effort to forward the short-sale proceeds to the correct party. (See D.E. 219, p.15; Brodt Affidavit and emails, attached to D.E. 172, Ex "C".) Surely no one, not even Old Republic, can reasonably argue that less than ten substantive emails over nine months demonstrates any sense of urgency.

In this case, the record supports the Zaskeys' position, that by its own affirmative conduct Old Republic created a foreseeable zone of risk. On this issue, the case law cited by Old Republic does not advance its position. For instance, in the case of *Sharp v. Leichus*, 2006 Fla. App. LEXIS 22736 (2d DCA Feb. 17, 2006), the court noted that the foreseeability element is established ". . . when a company can foresee dangers arising from its own acts." *Id*. at *14-15. This is precisely what the Zaskeys allege, and what the summary judgment record demonstrates. Again, Old Republic is not liable simply because Harbor Title acted negligently. Old Republic is liable because it assumed control of this matter when through its 2012 Audit it identified Harbor Title's retention of the short sale proceeds as a "High Risk" item, which by its nature directed Harbor Title to take corrective action. Old Republic then negligently failed to follow through on this directive until a year later after its 2013 Audit. Old Republic then took possession of those funds voluntarily. Thus, Old Republic created a foreseeable danger to the Zaskeys "arising from its own acts."

Similarly, Old Republic's cases of *Hernandez v. Tallahassee Medical Center, Inc.*, 896 So.2d 839 (Fla. 1st DCA 2005) and *Demelus v. King Motor Co.*, 24 So.3d 759, 761 (Fla. 4th DCA 2009) are consistent with the Zaskeys' position in this case. (See Response, D.E. 232, ¶11.) In both *Hernandez* and *Demelus*, the courts noted that the danger or peril must arise from the defendant's own conduct, rather than some general threat of harm. See *Hernandez* at 841; *Demelus* at 761. Here, the record indicates that Old Republic learned that Harbor Title was still in possession of the short sale proceeds in August 2012, when it conducted the 2012 Audit. (See D.E. 219, Ex. B.) The summary judgment record also demonstrates that Mr. Zaskey was not aware of the location of the funds, and believed they were properly sent to Bank of America. (Decl of G. Zaskey, D.E. 204, ¶7.) The harm created by Old Republic's conduct is readily apparent. On September 26, 2012, Bank of America sued the Zaskeys in foreclosure. (D.E. 142, p. 75 of 98.) Thereafter, the Zaskeys were subjected to ongoing harassment and abuse from Bank of America and Green Tree. (See

Decl. of G. Zaskey, D.E. 204, ¶14, 18, 21-22, 24-27.) Ultimately, it was not until August 27, 2014, over two years after the closing, when Old Republic transferred the short sale funds in the amount of $26,788.44 to Green Tree. (Roberts Dep. 16:19-22.)

### B. The Element of Causation is Ultimately a Jury Question.

In its Response, Old Republic contends that the court should decide the issue of causation in favor of Old Republic, because "reasonable men could not differ in their determination" on whether Old Republic caused the Zaskeys' damages. (D.E. 232, ¶19.)

On this issue, Old Republic suggests since the Zaskeys' undersigned attorneys could not "control" the collection activities of Bank of America and Green Tree, and convince those entities to accept the proceeds, then it follows that Old Republic "had no legal duty to try to control these activities." (D.E. 232, ¶19.) Pointing the finger at the Zaskeys' attorneys is particularly astonishing, and does not advance Old Republic's position because this argument completely ignores the fact that neither the Zaskeys nor their attorneys knew the location of the short sale proceeds. Old Republic completely failed to advise the Zaskeys or their attorneys of that basic fact until December 19, 2014, which was after Green Tree accepted the short sale proceeds and filed the Satisfaction of Mortgage. (Ex. A, Email to Daryl L. Jones from David Broad.) The Zaskeys' initial pleadings including Old Republic in this case also indicate of this lack of knowledge. (See the Zaskeys' 12/5/14 Amended Counterclaim, D.E. 1, pp. 39-40 of 78, ¶118, where the Zaskeys included an unjust enrichment count against Harbor Title and Old Republic, "to the extent the sales proceeds from the Zaskeys' short sale were not disbursed to Bank of America, and were instead disbursed or retained, in whole or in part, by Third Party Defendants Harbor Title or Old Republic.")

Here, reasonable men <u>could</u> differ in their determination of the causation element, and as such, the matter is properly left for a jury determination. In this case, there is substantial evidence that Old Republic's failure to notify the Zaskeys that it or Harbor Title held the short sale proceeds directly caused damages to the Zaskeys. Further, it is entirely foreseeable that if Old Republic acted to conduct the 2012 Audit, assumed responsibility for corrective action regarding the funds, but in the interim negligently failed to act reasonably to correct its agent's errors, and then subsequently took possession of the short sale funds, all without notifying the Zaskeys, then the Zaskeys would be subjected to debt collection efforts by Bank of America and Green Tree. As noted in previous filings, Old Republic's corporate representative, acknowledged during her

deposition that "[o]nce short sales became very commonplace, there were a lot of the agents who had problems with the lenders accepting payoffs." (D. Roberts Dep. 18:5-13.)

Had Old Republic notified the Zaskeys that Old Republic's agent did not immediately send the proceeds, and had Old Republic later notified the Zaskeys that Old Republic was in possession of those funds, Mr. Zaskey could have relayed this information during the many debt collection calls he received from Bank of America, and later Green Tree, and their respective collection agencies, and thus mitigated some, if not all, of the damages the Zaskeys incurred.

**WHEREFORE**, in view of the foregoing, the Counter-Plaintiffs request this Court enter an order granting the Zaskeys' Motion for Summary judgment in-full, and grant any further relief this Court deems just and proper.

### CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was sent via U.S. Mail and/or E-mail and/or CM/ECF on this the 22nd day of August, 2016 to: Liebler, Gonzalez & Portuondo, Attorneys for Bank of America, N.A., Courthouse Tower, 25th Floor, 44 West Flagler Street, Miami, FL 33130, service@lgplaw.com; bg@lgplaw.com; sqr@lgplaw.com; akg@lgplaw.com; mkv@lgplaw.com; Shutts & Bowen, LLP, JBustard@shutts.com; Harbour Land Title, LLC, c/o Zahera Sadik, 11301 Okeechobee Blvd, Suite 1A, Royal Palm Beach, FL 33411, VIA EMAIL: zee@harborlandtitle.com; Cohen, Norris, Wolmer, Ray, Telepman & Cohen, VIA EMAIL: jst@fcohenlaw.com

Respectfully Submitted,

Law Offices of Daryl L. Jones, P.A.
14707 South Dixie Hwy., Ste 101
Miami, FL 33176
Tel: 888-328-5942
djones@DLJonesLaw.com
fkhan@DLJonesLaw.com
eromanowski@DLJonesLaw.com

By: **/s/ *Faequa A. Khan*_____**
☐ Daryl L. Jones, Esq./FBN.: 742589
■ Faequa A. Khan, Esq./FBN.: 100278