# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No.  9:15-CV-81325-ROSENBERG/HOPKINS

BANK OF AMERICA, N.A., Successor by
Merger to BAC Home Loans Servicing, LP,
*f/k/a* Countrywide Home Loans Servicing,

      Plaintiff,

v.

GARY L. ZASKEY *a/k/a* GARY LYNN
ZASKEY; LORI A. ZASKEY *a/k/a* LORI
ANN ZASKEY; and BRENDA LYNN ZASKEY,

      Defendants.

_____/

GARY L. ZASKEY and LORI A. ZASKEY,

      Counter-Plaintiffs/Third-Party
      Plaintiffs,

v.

BANK OF AMERICA, N.A.,

      Counter-Defendant,

GREEN TREE SERVICING, LLC;
HARBOR LAND TITLE, L.C., and
OLD REPUBLIC NATIONAL TITLE
INSURANCE COMPANY,

      Third-Party Defendants.

_____/

### ORDER GRANTING IN PART AND
### DENYING IN PART BANK OF AMERICA'S
### MOTION FOR SUMMARY JUDGMENT,
### GRANTING IN PART AND DENYING IN PART GREEN
### TREE SERVICING'S MOTION FOR SUMMARY JUDGMENT,
### <u>AND DENYING THE ZASKEYS' MOTION FOR SUMMARY JUDGMENT</u>

This matter is before the Court on Counter-Defendant Bank of America's Motion for Summary Judgment [DE 213], Third-Party Defendant Green Tree Servicing's Motion for Summary Judgment [DE 209], and Counter-Plaintiffs' Motion for Summary Judgment [DE 237].  Each motion has been fully briefed.  For the reasons set forth below Bank of America's motion for summary judgment is granted in part and denied in part, Green Tree's motion for summary judgment is granted in part and denied in part, and Counter-Plaintiffs' motion for summary judgment is denied.

## I.      DISPUTED AND UNDISPUTED FACTS

This case is about a failed short sale.  More specifically, this case is about a negligent closing agent[1] at a short sale closing and the impact that negligence has had on two homeowners and two mortgage servicing companies.

On December 12, 2006, Counter-Plaintiffs Gary and Lori Zaskey (the "Zaskeys") took out a loan from E-loan, Inc.  DE 213 at 3.[2]  That loan was secured by a mortgage on residential real property.  *Id.*  The Zaskeys stopped living at the property in 1983.  *Id.*  Since the year 2000, the Zaskeys have permitted others to live at the property and, from time to time, the occupants of the property have paid the Zaskeys rent.  *Id.*  The parties disagree over whether the property was a residential property or a commercial rental property at the time the Zaskeys took out their loan in 2006.  *Compare* DE 213 at 3 *with* DE 244-1 at 2.

Bank of America became the servicer for the Zaskeys' loan.[3]  The Zaskeys defaulted on the loan on November 1, 2010.  DE 213 at 3.  After that default, the Zaskeys failed to make any subsequent payments.  *Id.*  In August of the following year, Bank of America invited the Zaskeys to participate in a

---

1 By virtue of a default entered by the Clerk of the Court on September 2, 2016, Defendant Harbor Title has admitted all of the allegations of negligence against it.  *See* DE 298.

2 For the sake of brevity, the Court cites to Bank of America's statement of undisputed material facts when the fact is not disputed.  If the fact is disputed and is relevant, the Court notes the disputed fact.

3 The parties dispute the date upon which Bank of America began to service the loan.

short sale program.  *Id.* at 4.  The Zaskeys accepted the offer, hired an approved realtor, and a buyer was found for the property.  *Id.*

A short sale closing was conducted on April 26, 2012 and, at the closing, the Zaskeys executed a Cooperative Short Sale Agreement (the "Short Sale Agreement" or "agreement").[4]  *Id.*  All necessary funds were delivered to the closing agent at the closing.  *See id.*  The Short Sale Agreement stated that the closing funds had to be wired to Bank of America no later than forty-eight business hours from the time of the closing.  *Id.* at 5.  Third-Party Defendant Harbor Title was the closing agent.  *Id.*  Harbor Title did not transmit the closing funds within forty-eight hours.  *Id.*

Two months later, on June 27, 2012, Bank of America mailed the Zaskeys a letter which informed the Zaskeys that the short sale had been declined.  *Id.*[5]  Approximately five weeks after that letter, on August 9, 2012*,* Harbor Title finally wired Bank of America the closing funds from the April closing.  *Id.*  Bank of America, having previously declined the short sale in June, refused to accept the closing funds and instead returned the funds to Harbor Title.  *Id.*  The following month, September 26, 2012, Bank of America instituted foreclosure proceedings against the Zaskeys.  *Id.* at 6.

On May 1, 2013, Bank of America ceased to service the Zaskeys' loan and Third-Party Defendant Green Tree Servicing began to service the loan instead.  *Id.*  After a title insurer discovered the Zaskeys' closing funds in an audit of Harbor Title, Green Tree and the title insurer were able to negotiate an agreement whereby a satisfaction of mortgage was entered for the Zaskeys' loan in exchange for the closing funds from the April 26, 2012 closing.  *Id.*[6]  After the satisfaction of mortgage was entered, the Zaskeys' counterclaimed in their foreclosure lawsuit against Bank of America and

---

4 The parties dispute when the Zaskeys were provided the agreement and when the agreement was executed.  The parties do not dispute, however, that the Zaskeys executed the agreement by no later than the closing date.
5 The Zaskeys aver that they did not receive this letter as they did not receive mail sent to the address of the (Florida-based) real property—at this time they had moved from Florida to to the state of Wisconsin.  *See* DE 244-1 at 4.
6 This matter was the subject of the Court's order on summary judgment at docket entry 310.

Green Tree.  That suit was removed from state court and has resulted in the motions for summary judgment before the Court.

## II.    SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The existence of a factual dispute is not by itself sufficient grounds to defeat a motion for summary judgment; rather, "the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986).  A dispute is genuine if "a reasonable trier of fact could return judgment for the non-moving party." *Miccosukee Tribe of Indians of Fla. v. United States*, 516 F.3d 1235, 1243 (11th Cir. 2008) (citing *Anderson*, 477 U.S. at 247-48).  A fact is material if "it would affect the outcome of the suit under the governing law." *Id.* (citing *Anderson*, 477 U.S. at 247-48).

In deciding a summary judgment motion, the Court views the facts in the light most favorable to the non-moving party and draws all reasonable inferences in that party's favor.  *See Davis v. Williams*, 451 F.3d 759, 763 (11th Cir. 2006).  The Court does not weigh conflicting evidence.  *See Skop v. City of Atlanta*, 485 F.3d 1130, 1140 (11th Cir. 2007).  Thus, upon discovering a genuine dispute of material fact, the Court must deny summary judgment.  *See id.*

The moving party bears the initial burden of showing the absence of a genuine dispute of material fact.  *See Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008).  Once the moving party satisfies this burden, "the nonmoving party 'must do more than simply show that there is some metaphysical doubt as to the material facts.'" *Ray v. Equifax Info. Servs., LLC*, 327 F. App'x 819, 825 (11th Cir. 2009) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).  Instead, "[t]he non-moving party must make a sufficient showing on each essential element of

4

the case for which he has the burden of proof." *Id.* (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). Accordingly, the non-moving party must produce evidence, going beyond the pleadings, to show that a reasonable jury could find in favor of that party. *See Shiver*, 549 F.3d at 1343.

## III.    ANALYSIS

Bank of America has moved for summary judgment as to each count against it: Count I (Breach of Contract), Count II (Malicious Prosecution), and Count III (Florida Consumer Collection Practices Act). Green Tree has moved for summary judgment as to each count against it: Count IV (Florida Deceptive and Unfair Trade Practices Act), Count V (Florida Consumer Collection Practices Act), Count VI (Fair Debt Collection Practices Act), and Count VII (Real Estate Settlement Procedures Act). The Zaskeys have moved for summary judgment as to each count except Count IV. Each count is addressed in turn.

### Count I: Breach of Contract against Bank of America

The Zaskeys' breach of contract claim is based on the Short Sale Agreement between the Zaskeys and Bank of America. Although the parties raise a number of arguments in connection with this count, the dispositive issue is ultimately whether time was of the essence for a certain clause pertaining to the transmission of closing funds. The Court, therefore, begins its analysis of the Zaskeys' breach of contract claim by summarizing the portions of the Short Sale Agreement pertinent to this issue:

> Please note that if the cooperative short sale does not close within the 120 day marketing period, then we will resume normal servicing activities allowed under the Agreement, which may include foreclosure.
>
> . . .
>
> The sale and closing must comply with all terms and conditions of the Cooperative Short Sale Agreement between the BAC Home Loan Servicing, LP and you (the

5

Borrower/Seller) as well as all terms and representations provided herein by the Borrower.

. . .

**Closing must take place no later than April 30, 2012 or this approval is void.**

. . .

**If the terms and conditions of the short sale approval are not met, we will cancel the approval of this offer and continue the foreclosure process as permitted by the mortgage documents**.

. . .

All funds must be wired.  Please be advised that any other form of payment of funds will be returned.  **Payoff funds must be received within 48 hours of the HUD-1 settlement** date.

DE 188-6 at 2-3; DE 183-4 at 38-39 (emphasis added).

The Zaskeys have alleged that Bank of America breached the Short Sale Agreement by refusing to accept, on August 9, 2012, funds from the short sale closing held on April 26, 2012.  The Zaskeys argue that while the Short Sale Agreement required closing funds to be transmitted within forty-eight hours of closing, the agreement did not specify that time was of the essence for this transmission requirement.  Bank of America responds by arguing that in August of 2012, it was no longer bound by the Short Sale Agreement.  Bank of America argues that when a party is in material breach of a contract that material breach excuses the non-breaching party from obligations under the contract.  *Green Tree Servicing, LLC v. Milam*, 177 So. 3d 7, 14 (Fla. Dist. Ct. App. 2015).  Thus, it is Bank of America's position that when it did not receive funds from the closing by the latest possible date permitted under the Short Sale Agreement (forty-eight hours from April 30, 2012)[7] it was excused from any further performance under that agreement.

---

7 The Zaskeys also attempt to cite to other deadlines referenced in the agreement.  For example, the agreement states that the short sale must "close within the 120 day marketing period."  DE 183-4 at 37; 188-6 at 1.  The Court finds that this argument has no relevance for two reasons.  First, the dispositive question in this matter pertains to the forty-eight hour

Under Florida law, "to constitute a material breach, [a] late payment must occur where time is of the essence." *Centurion Air Cargo, Inc. v. United Parcel Serv. Co.*, 420 F.3d 1146, 1151 (11th Cir. 2005). As a general rule, time is considered to be of the essence where an agreement specifies. *See id.* The Short Sale Agreement in this case did not specify that time was of the essence with respect to the deadline for the transmission of funds. There is an exception to this general rule, however, when it may be determined that time is of the essence by the nature of the contract. *Sublime, Inc. v. Boardman's Inc.*, 849 So. 2d 470, 471 (Fla. Dist. Ct. App. 2003). Similarly, time is of the essence when "from the nature of the subject matter or fluctuations in the value . . . the treating of time as a non-essential will produce a hardship." *Blaustein v. Weiss*, 409 So. 2d 103, 105 (Fla. Dist. Ct. App. 1982). The Court must therefore examine the nature of the agreement in this case, the corresponding subject matter, and the overall impact of the passage of time to determine whether time was of the essence.

With respect to the "nature of the subject matter" and the "nature of the contract" in this case, the Court examines the relationship of the parties and the Short Sale Agreement. The Zaskeys and Bank of America did not enter into the Short Sale Agreement as strangers. The Zaskeys owed a debt serviced by Bank of America, a debt that had been in default for two years. During the period of time that the Zaskeys did not make payments on their debt, the owner of the Zaskeys' loan continued to suffer economic loss and late fees and interest continued to accrue. While certain avenues of recourse were available to Bank of America, most prominently foreclosure, those options were not without certain drawbacks and risks. Presumably for that reason, Bank of America contracted with the Zaskeys to accept a small payment (compared to the amount owed) in exchange for relinquishing its mortgage lien on the Zaskeys' real property. The contextual relationship of the parties is therefore easily distinct,

---

requirement to transmit funds from a closing. Second, the agreement is clear that the closing must occur by April 30, 2012—it is immaterial to the matter at hand what the agreement may have meant by referring to a "120 day marketing period" when the agreement (which is drafted as a letter) is dated **March 16, 2012** and funds were not transmitted until **August 9, 2016**.

for example, from two parties who bargain at arm's length to buy and sell a piece of real property, parties who contract for the provision of services, or parties who bargain for the purchase and sale of a product. Here, the owner of the Zaskeys' loan was experiencing financial loss each day the Zaskeys did not pay upon their debt. Bank of America, as the servicer, had avenues of recourse (detrimental to the Zaskeys) from which it was abstaining. Bank of America contracted, to an extent, to stay foreclosure in exchange for funds from an unrelated third party. It is therefore unsurprising that Bank of America established a latest-possible date upon which it would accept a short sale payment before it initiated costly foreclosure proceedings, just as it is unsurprising that when Bank of America did not receive timely payment it ultimately did institute foreclosure proceedings.

    With respect to whether "the treating of time as a non-essential will produce a hardship" in this case, the owner of the Zaskeys' loan continued to suffer economic loss while the Zaskeys' remained delinquent on their debt. What Bank of America contracted for was grace, grace to the Zaskeys in exchange for a partial offset of their loss on the loan. There is hardship in this case for the non-breaching party if time is treated as nonessential—hardship in the form of the continued accrual of interest and fees, and hardship in the form of, essentially, concluding that Bank of America was required to wait an undefinable period of time before it could initiate foreclosure proceedings. The initiation of foreclosure proceedings—Bank of America's primary recourse—itself generates a cost. Furthermore, the delay in this case was substantial. The Short Sale Agreement required closing by April 30th. The funds were transmitted in this case on August 9th—a passage of 101 days. In the Court's opinion, however, it is short sighted to limit a consideration of the passage of time in this case to 101 days. The Zaskeys' creditor's losses did not begin on April 30th. Those losses began to accrue on November 1, 2010 when the Zaskeys first defaulted on their loan. A relevant metric then for considering the passage of time is 648 days because the end result of the cancellation of the Short Sale

8

Agreement (which, by its terms was expressly void if funds were not received in time) was to *return the parties to their prior contractual relationship*. This is not a case where the parties were strangers. When the closing did not occur pursuant to the terms of the Short Sale Agreement, the parties returned to their prior posture.

The case of *Treasure Coast, Inc. v. Ludlum Construction Co.*, 760 So. 2d 232, 233-34 (Fla. Dist. Ct. App. 2001) is instructive because it is analogous to this case. In *Treasure Coast*, the parties executed a settlement agreement. *Id.* The settlement agreement stated that the defendant in that case would pay the plaintiff a sum certain on a specific date. *Id.* The agreement specified what would happen if timely payment was not made—the plaintiff would be entitled to a judgment against the defendant for a certain amount. *Id.* Although the defendant did make a few timely payments, the defendant ultimately failed to make a payment on time. *Id.* at 234. Later, the defendant argued that an untimely payment did not amount to a material breach because the agreement did not contain an express time-is-of-the-essence provision. *Id.* The appellate court rejected this argument noting that (i) the agreement required payment on a specific day, (ii) that payment was not made, and (iii) the agreement provided for the remedy when an untimely payment was made. *Id.* The court further noted that, at least with commercial parties, there is no such thing as substantial performance when there is a duty to pay a sum certain by a certain day—either payment is made or it is not. *Id.*

In the instant case, the Short Sale Agreement required funds to be transmitted to Bank of America by no later than a certain day. The amount of those funds was fixed. The Short Sale Agreement addressed what would happen if Bank of America did not receive those funds: "If the terms and conditions of the short sale approval are not met, *we will cancel* the approval of this offer and continue the foreclosure process as permitted by the mortgage documents." DE 188-6 at 1-2; DE 183-4 at 37-38 (emphasis added). Other provisions in the agreement were equally clear: "Closing must take

9

place no later than April 30, 2012 or this approval is void" and "Payoff funds must be received within 48 hours." *Id.*

While it is true that *Treasure Coast* was decided in the context of a strictly commercial transaction and the Zaskeys are not commercial parties, case law that has applied a more forgiving standard for individuals does not suggest cases such as *Treasure Coast* should not apply here.  For example, the case of *Rose v. Ditto*, 804 So. 2d 351, 353 (Fla. Dist. Ct. App. 2003) declined to apply *Treasure Coast* to the facts in *Rose*.  In *Rose*, a settlement agreement was reached between two individuals.  *Id.*  Unlike *Treasure Coast*, the settlement agreement in *Rose* did not specify what would happen in the event an untimely payment was made nor did it contain a grace provision.  *Id.*  The *Rose* court found that a lack of notice was dispositive.  *Id.*  More specifically, the *Rose* court held that there was no contractual provision "that would have put Former Husband on notice that any brief delay in payment would accelerate payments due or otherwise trigger total default."  *Id.*  In the instant case, the effect of a failure to transmit funds did not have the effect of triggering immediate damages against the Zaskeys—the effect was to return the parties to their former contractual relationship.  On *this* point, the Court concludes that the Short Sale Agreement *did* put the Zaskeys on clear notice, and thus the reasoning in *Rose* does not apply here.

The Zakeys cite case law in their response to Bank of America's motion that is not persuasive. The Zaskeys' cases fall into one of two categories: (i) cases that do not address whether a contract required time to be of the essence (when there was no express provision) or (ii) cases in which the relationship of the parties is not analogous to the relationship of the parties in this case.[8]  This is not the prototypical case where the parties contracted for the sale of, for example, real estate and the closing

_____

8 Furthermore, the cases cited by the Zaskeys stand for the proposition that "brief" delays in payment, absent an express stipulation that time is of the essence, do not amount to material breach.  *E.g., Nat'l Exhibition Co. v. Ball*, 139 So. 2d 489, 492 (Fla. Dist. Ct. App. 1962).  The delay in this case was not brief.

did not occur by a certain date.  This is a case where a servicer, by a date certain, was willing to abstain from a remedy it was contractually entitled to exercise.    Because time was of the essence, Bank of America was relieved of its obligations under the Short Sale Agreement when it did not receive payment according to the terms of the Short Sale Agreement.  Thus, Bank of America's motion is granted as to Count I and the Zaskeys' cross motion is denied as to Count I.

As a final matter, however, the Court briefly addresses additional arguments raised by the Zaskeys.  The Zaskeys argue that it was not their responsibility to transmit funds to Bank of America—it was the title agent's responsibility.  This argument lacks relevance.  The Short Sale Agreement merely states that the transmittal of the funds "will" occur, and the material breach of this provision has the result (for the reasons described herein) of relieving Bank of America of further obligations.  Bank of America is not seeking damages against the Zaskeys for breach of the Short Sale Agreement.  Bank of America merely seeks to be relieved of its obligations under that agreement.  No closing agent was a party to the contract—only the Zaskeys.  As the signatories to the agreement and as the party which stood to benefit from the agreement, it was incumbent upon the Zaskeys to ensure that the necessary conditions in the agreement were met. [9]  It is therefore immaterial if the actual transmission of the funds was to be accomplished by a closing agent; the ultimate burden for ensuring that the closing agent performed his or her duties fell to the Zaskeys.

The Zaskeys also argue that they fully complied with the Short Sale Agreement by virtue of their receipt of relocation assistance funds.  That argument also lacks merit.  Those funds were not delivered to the Zaskeys by Bank of America; those funds were delivered to the Zaskeys by the same closing agent who failed to transmit the closing funds *to* Bank of America.  DE 183-1 at 31.  Finally, the Zaskeys argue the Short Sale Agreement was amended to permit a later closing date by citing to an

---

9 Even if the Zaskeys had no burden to ensure that the funds were transmitted in a timely manner, Bank of America's own obligations under the agreement were contingent upon the satisfaction of a condition, a condition which was not satisfied.

11

undated letter.  That letter had no impact on the Short Sale Agreement by the plain terms on its face: "The terms and conditions of your short sale agreement have not changed."  DE 183-4 at 40.

### Count II: Malicious Prosecution against Bank of America

The Zaskeys' second count for malicious prosecution is based upon the fact that Bank of America filed a foreclosure action against them notwithstanding the fact that the Zaskeys attended the short sale closing, executed all necessary paperwork at the closing, moved out of the home, and the short sale buyers moved into the home.  Bank of America argues that it is entitled to summary judgment on this claim because the Zaskeys cannot satisfy the elements for a malicious prosecution claim.  A malicious prosecution claim requires:

> (1) an original criminal proceeding against him was commenced or continued; (2) the present defendant was the legal cause of that original proceeding; (3) there was a bone fide termination of the original proceeding in his favor; (4) there was an absence of probable cause for the original proceeding; (5) the present defendant acted with malice; and (6) he suffered damages as a result of the original proceeding.

*Martinez v. Brink's, Inc.*, 171 F. App'x 263, 265 (11th Cir. 2006); *see also Mee Indus. v. Dow Chem. Co.*, 608 F.3d 1202, 1211 (11th Cir. 2010) (noting that the key distinction between civil and criminal malicious prosecution is that the probable cause element is measured by a lesser standard in civil cases).  Bank of America focuses primarily on the fourth element, whether there was probable cause for their actions, and the fifth element, whether Bank of America acted with actual malice.  In support of its argument, Bank of America emphasizes that the Zaskeys were in default, Bank of America's actions were authorized by the terms of the mortgage, and Bank of America had no duties under the Short Sale Agreement after the funds from that closing were not transmitted by the latest possible date.  The Court agrees with Bank of America: Bank of America had no obligations under the Short Sale Agreement and its actions were authorized pursuant to the mortgage in this case.  There can be no question that Bank of America had probable cause to institute a foreclosure action and Bank of America did not act with

actual malice.  The Zaskeys' arguments against this conclusion are premised upon their contention that there was no material breach sufficient to relieve Bank of America of its obligations—an argument this Court has already rejected.  Accordingly, Bank of America's motion is granted as to Count II and the Zaskeys' cross motion is denied.

### Count III: Florida Consumer Collections Practices Act against Bank of America

Bank of America argues that it is entitled to summary judgment on the Zaskeys' third count because the Florida Consumer Collection Practices Act only encompasses efforts to collect upon consumer debt and the Zaskeys' debt was commercial debt.  Bank of America's argument is premised upon the proposition that real property at issue in this case was a rental property.  The use of the real property in this case was discussed at length at the deposition of Mr. Gary Zaskey:

Q: What did you do -- I understand it was a second home. Did you use it as a vacation home or as a rental unit?

A: Just as a second home.

Q: When would you ever spend time in the second home?

A: I have family.

. . .

Q: Was someone living there?

A: There was a gentleman there by the name of Sean Williams, but I cannot recall if he was still living there in 2006 or not. I don't believe he was.

Q: Was anybody besides Mr. Williams living at the property in 2006 when you took out the loan with E-Loan?

A: Not that I can recall.

Q: In 2006 until 2012, did anyone live at the Greenacres, Florida property?

A: Several people, yes.

Q: What were the names of those people?

A: One was Rodriguez. They lost their jobs when Albertsons closed, but they stayed there. And then they moved to, I believe, Dallas, Texas where Albertsons was at, that's what I was told. Prior to that, I really can't remember their names. It was a woman that lived there, a young woman. She was single. And then there was another gentleman and his wife and a little child that lived there prior to that. They didn't pay any rent. They just -- they were down hard -- hard luck, so they helped me and I actually helped them.

. . .

Q: Anyone else that lived there during that period?

A: There was a squatter that moved in. I don't have any idea what her name was. She was there for six months

. . .

Q: Do you remember when that was?

A: I had her thrown out in December of '11. She in in June, when the Rodriguez' moved.

Q: How long did the Rodriguez' live there?

A: Maybe a year.

Q: Were they paying you rent?

A: They paid me what they could afford to pay.

Q: What was that amount?

A: Sometimes they sent $400, sometimes they sent 550. It started out at 550 when they had a job and then they lost their jobs and it dropped down.

Q: So when they first moved in, they were paying 550 a month and at a certain point during that year he lost his job –

A: Both of them.

Q: Both of them did?

A: Yes.

14

Q: And then they paid you as much as they could afford and then your agreement with them?

A: That's correct.

. . .

Q: Did you have a written agreement with the Rodriguez?

A: Not that I recall. Not that I can recall that I would still have. I may have had something in writing that said that they had to put the utilities in their name, but as far as like -- I think the lease did say -- I think the term said he would pay me 550, but he couldn't do it.

Q: When they moved in, they were paying you 550?

A: Yes.

Q: What about the young woman, was she paying you any rent?

A: No.

Q: Who was she?

A: You know, I, unfortunately, can't even recall her name.

Q: Who was she to you? How'd you meet her?

A: She was a friend of my daughter's. My daughter lives here, so she knew some people that could help me out by taking care of the property to keep it occupied so it didn't get destroyed.

Q: What was your expectation of of the young woman that was living there? I know she wasn't paying rent.

A: Whatever she could afford. No drugs, no – nothing like that. Just keep the property, grass cut.

Q: So she would pay for the grass cutting?

A: She would either pay for it or cut it herself. I don't know which.

Q: Did she have any other responsibilities to upkeep the property?

A: No.

15

Q: Did she pay for electricity and water and all that?

A: She paid for electricity and water. I paid for trash and sewer and all repairs.

Q: Did she -- you said she paid you what she could afford.

A: Yes.

Q: Did she ever make any payments during the time she was living there to you?

A: No.

Q: So what she could afford was zero during the entire time she was there?

A: That's correct. She kept saying the check was in the mail, but it was never in the mail.

DE 183-1 at 4-8.  At summary judgment the Court must construe all inferences in favor of non-moving party.  To "determin[e] whether a debt is a consumer debt, it is necessary to look at the transaction as a whole, paying particular attention to the borrower's purpose in obtaining the credit."  *Hepsen v. J.C. Christensen & Assocs., Inc.*, No. 8:07-cv-1935, 2009 WL 3064865, at *3 (M.D. Fla. Sept. 22, 2009). "An important factor in deciding whether a debt was incurred primarily for personal, family, or household purposes is whether the debt was incurred in a personal capacity."  *Id.*  Here, there is a question as to generally whether the property was commercial in nature (purchased via the debt at issue) and, more specifically, there is a question of material fact as to whether the property was a commercial rental property at the time the Zaskeys signed their promissory note.  The record on this matter is unclear.  The Court cannot ascertain the Zaskeys' purpose in obtaining their credit nor can the Court adequately review the "transaction as a whole" in order to classify the debt in this case.  As a result, the Court concludes that summary judgment cannot be granted as to Count III for Bank of America or for the Zaskeys.[10]

---

10 Bank of America also seeks adjudication as to whether the Zaskeys may seek emotional and punitive damages for this count.  This matter was the subject of a prior motion in limine which the Court denied without prejudice.  *See* DE 271.  The

**Count IV: Florida Deceptive and Unfair Trade Practices Act against Green Tree Servicing**

In response to Green Tree's motion for summary judgment as to Count IV, the Zaskeys' have withdrawn their claim. The Court therefore grants Green Tree's motion as to Count IV in light of the Zaskeys' lack of opposition.

**Count V: Florida Consumer Collection Practices Act against Green Tree Servicing**

The Zaskeys' fifth count is premised upon the allegation that Green Tree Servicing improperly attempted to collect upon the debt at issue in this case after the Zaskeys complied with their obligations at the short sale closing. Green Tree argues that it is entitled to summary judgment on several grounds, the first of which is that the debt in this case was commercial debt, not consumer debt. The Court rejects this argument for the same reasons the Court rejected the argument under Count III.

Green Tree's second argument is that many of the Zaskeys' contentions under this count should be dismissed as time barred. Green Tree concedes that while facially the Zaskeys' claims are *not* time barred due to the general rule that an amended claim relates back to the time the motion to amend was filed, and not the time the actual amendment itself is filed, Green Tree argues that this general rule should not apply. *See, e.g.*, *Wallace v. Sherwin Williams Co., Inc.*, 720 F. Supp. 158, 159-60 (D. Kan. 1988) (citing this general rule). Green Tree argues this general rule should not apply because the Zaskeys "did not act diligently to get their motion granted and Green Tree served with the Complaint." DE 268 at 3-4. At the time the motion at issue was filed and served, this matter was pending in state court. Green Tree therefore asks for this Court to make a factual (and possibly equitable) finding in regards to the diligence of the Zaskeys and the Zaskeys' counsel during the time this case was pending in a state court foreclosure action. At that time, this matter was not pending

---

Court previously concluded that this matter must be addressed at trial. *Id.* The Court's decision on this point remains unchanged.

before this Court.  Instead, the Zaskeys' case was subject to the Florida Rules of Civil Procedure, not federal, and the local and standing orders of the state court, not federal court.  This Court declines to make any finding pertaining to the diligence of the Zaskeys' and the Zaskeys' counsel in a different court, before a different judge, subject to different rules and procedures.

Green Tree's third argument is that the record evidence in this case cannot support the necessary element that Green Tree "willfully communicat[ed] with the debtor . . . with such frequency as can reasonably be expected to harass the debtor . . ., or willfully engage in other conduct which can reasonably be expected to abuse or harass the debtor."  Fla. Stat. § 559.72(7).  Green Tree's argument on this point is premised upon the fact that the summary judgment record shows seven phone calls to the Zaskeys and approximately twenty-one letters.  Courts must consider both the frequency and content of communications.  *See Martin v. Select Portfolio Serving Holiday Corp.*, No.1:05-cv-273, 2008 WL 618788, at *6 (S.D. Ohio Mar. 3, 2008).  Even a single letter can create liability.  *See Rutyna v. Collection Accounts Terminal, Inc.*, 478 F. Supp. 980 (N.D. Ill. 1979).  Although Green Tree cites one case for the proposition that seven phone calls over six months was insufficient to create liability under § 559.72(7), *Schauer v. Morse Operations, Inc.*, 5 So. 3d 2 (Fla. Dist. Ct. App. 2009), the Court finds that case to be distinguishable.  *Schauer* is distinguishable because the facts in the instant case are highly unusual.  There was a short sale closing in this case, albeit a problematic one, and the communications in this case should be evaluated in that light, particularly since the Zaskeys attempted to convey the history of their property to the individuals who called them to collect upon the debt.  *See generally* DE 183-1.[12]  Accordingly, the Court concludes that a trier of fact must weigh and judge this evidence and, as a result, the Court rejects Green Tree's arguments on this point.

---

12 Green Tree has also moved for a subset of the letters in this case to be excluded from the Court's consideration as those letters do not constitute debt collection activity.  The Court declines to undertake that analysis at this juncture because the parties have inadequately briefed this subject.

Green Tree's fourth argument is that summary judgment should be entered in its favor for any claim premised on section 559.72(9), Florida Statutes, which prohibits any person from "claim[ing], attempt[ing], or threaten[ing] to enforce a debt when such person knows that the debt is not legitimate, or assert the existence of some legal right when such person knows that the right does not exist."  The Court has already determined that the debt was legitimate—Bank of America had no obligation to accept untimely funds from the short sale.  Similarly, there is no basis in the record for Green Tree to have known that a foreclosure action could not arguably be pursued because, from Green Tree's perspective, there was neither a short sale nor a satisfaction of the debt owed to Bank of America. Accordingly the Court grants Green Tree's motion with respect to its argument under section 559.72(9).

Green Tree's sixth and final argument is that the Zaskeys' claim premised on section 559.72(6) is preempted by the Fair Credit Reporting Act.   Section 559.72(6) prohibits the disclosure of information pertaining to a reasonably disputed debt, and the Zaskeys have brought a claim under 559.72(6) in connection with Green Tree's reporting of certain information to credit reporting agencies.  Green Tree cites ample case law for its contention that the FCRA preempts FCCPA claims pertaining to the disclosure of information to credit reporting agencies.  *E.g. Davidson v. Capital One, N.A.*, No. 14-20478-CIV, 2014 WL 3767677, at *5 (S.D. Fla. July 31, 2014) (holding that claims under the FCCPA against a defendant that reported information to credit agencies is preempted by the FCRA).  In response, the Zaskeys make no argument.  Instead, the Zaskeys argue their claim under section 559.72(3) is not preempted.  But that is not the relief sought by Green Tree.  Green Tree seeks a

summary adjudication with respect to section 559.72(6).  Accordingly, Green Tree's motion is granted as to the Zaskeys' claims under section 559.72(6).[13]

### Count VI: Fair Debt Collection Practices Act against Green Tree Servicing

Green Tree makes several arguments that the Zaskeys' FDCPA count fails as a matter of law, however, the Court has already addressed Green Tree's arguments in its rulings, *supra*.  Accordingly, the Court grants Green Tree's motion as it pertains to 15 U.S.C. § 1692(f), denies Green Tree's motion as it pertains to 15 U.S.C. § 1692(d), grants Green Tree's motion as it pertains to 15 U.S.C. § 1692(e), and denies the Zaskeys' cross motion for all of the reasons set forth above.

### Count VII: Real Estate Settlement Procedures Act against Green Tree Servicing

Green Tree raises two arguments in connection with the Zaskeys' RESPA claim.  The first is that the loan in this case was commercial debt, not consumer debt, and that argument is rejected for the reasons set forth above.  Green Tree's second argument is that the Zaskeys did not send a qualified written request for information to the address Green Tree specified for such requests to be sent.  The Zaskeys were sent two letters when Green Tree began servicing their loan.  The first letter was dated May 1, 2013, and that letter did not specify any particular address for the Zaskeys to use for RESPA requests.  The second letter was dated May 3, 2016, and that letter *did* specify an address that the Zaskeys must use.  There is record evidence in the form of a declaration by Mr. Gary Zaskey, however, that the Zaskeys sent a qualified written request under RESPA *before* they were informed that they were limited to a specific address to which they must send such requests:

> I wrote two letters that I mailed to Green Tree Servicing, LLC regarding the collection of the debt of the previously sold property. The first handwritten letter I wrote to Green Tree is found on the May 1, 2013 correspondence from Green Tree. (D.E. 142, Exhibit X.) I mailed my response within a day of receiving the May 1, 2013 correspondence.

---

13 For all of the reasons set forth above, the Zaskeys' crossclaim on Count V is denied.

DE 204 at 6.  It is therefore Mr. Zaskeys' testimony that he sent his qualified written request before the May 3, 2016 letter (with its requirements) reached him.   Green Tree argues that Mr. Zaskey's declaration contradicts his deposition testimony, but the Court does not agree.   The deposition testimony of Mr. Zaskey is inconclusive with respect to when he sent his first qualified written request and when he received the letter from Green Tree dated May 3, 2016:

> Q: You said you received this in May 2013?
>
> A: What's the date at the top? May 1st, yes.
>
> Q: When did you receive this letter?
>
> A: Probably around the 3rd.
>
> Q: Did you contact Green Tree after receiving this letter?
>
> A: Can I see the bottom of the letter? Go on down further.  I think I wrote a note on this letter that the property had been sold by a short sale at Bank of America.  I believe this was the letter.
>
> . . .
>
> Q: When did you write that note?
>
> A: Within a couple of days of getting this.
>
> . . .
>
> Q: Just to get the sequence right. A letter was sent to you on May 1st, 2013; you got it a couple days later, and then you said a response a couple days after that?
>
> A: Yes.
>
> Q: Do you remember when you sent that response, the first one?
>
> A: By the 5th. It was before the Mario letter went out.
>
> Q: Was it before the one with the paystub check?
>
> A: I can't recall.
>
> Q: So it might have been before or it might have been after?
>
> A: Yes, could be.

DE 183-1 at 36, 38.  Construing all inferences in favor of the Zaskeys, the Court is not prepared to conclude that Mr. Zaskeys' deposition testimony contradicts his declaration.  Green Tree has provided no legal authority to the Court for the proposition that a requirement that a borrower send a qualified written request to a specific address applies *retroactively* to qualified written requests already sent.  By contrast, the Zaskeys have provided legal authority for the proposition that such a requirement *does not* apply retroactively.  *McClain v. Citimortgage, Inc.*, No. 15-C-6944, 2016 WL 269568 (N.D. Ill. Jan. 21, 2016) ("Citi has quite understandably pointed to no authority to support the mind-boggling notion that the designation of an exclusive address could possibly be retroactive in effect.").  Accordingly, Green Tree's motion is denied as to the Zaskeys' RESPA count, Count VII, and the lack of clarity in the record is also a basis, without limitation, for which this Court must deny the Zaskeys' cross motion for summary judgment as to Count VII.

## IV.    CONCLUSION

It is therefore **ORDERED AND ADJUDGED** that:

1.  Bank of America's Motion for Summary Judgment [DE 213] is **GRANTED** as to Count I and Count II and **DENIED** as to Count III;

2.  Green Tree Servicing's Motion for Summary Judgment [DE 209] is **GRANTED** as to Count IV, **GRANTED IN PART AND DENIED IN PART** as to Count V and Count VI (as more fully specified in this Order) and **DENIED** as to Count VII; and

3.  The Zaskeys' Motion for Summary Judgment [DE 237] is **DENIED**.

**DONE and ORDERED** in Chambers, Fort Pierce, Florida, this 19th day of September, 2016.

ROBIN L. ROSENBERG
UNITED STATES DISTRICT JUDGE

Copies furnished to Counsel of Record

22